**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|                              |   |                    |
|------------------------------|---|--------------------|
| UNITED STATES OF AMERICA     | : |                    |
|                              | : | No.: 21-cr-628-ABJ |
|                              | : |                    |
| v.                           | : |                    |
|                              | : |                    |
| MICHAEL ANGELO RILEY,        | : |                    |
|                              | : |                    |
| *Defendant*.                 | : |                    |
|                              | : |                    |

## DEFENDANT'S MOTION TO COMPEL DISCOVERY

Defendant Michael Angelo Riley, through his undersigned counsel, and pursuant to Federal Rule of Criminal Procedure 16, Local Rule of Criminal Procedure 5.1(b), and the United States Supreme Court's decisions in *Brady v. Maryland* and *Giglio v. United States*, moves for an Order compelling the Government to provide discovery that is material to the preparation of his defense.

## INTRODUCTION

Michael Riley, a 26-year veteran of the United States Capitol Police, has spent his life pursuing justice and not obstructing it. As is the case with many of his colleagues, Officer Riley engaged in acts of heroism on January 6, 2021, responding to the attack on the United States Capitol.

Prior to January 7, 2021, Officer Riley had never communicated with Jacob Hiles. On January 7, 2021, via Facebook, Jacob Hiles posted that he only entered the United States Capitol because he "was being pushed forward by a crowd" and was "scared that the crowd would push [him] down and [he] would then be trampled." Mr. Hiles further explained that "from the moment [he] entered the building, [he] followed the directions of the officers" inside to "exit" the building.

While individuals and social media platforms have either removed (or have suggested the

removal) of postings relating to the U.S. Capitol on January 6, 2021, Officer Riley is now subject to criminal prosecution for allegedly engaging in that same conduct. Specifically, in its Indictment, the Government alleges that on January 7, 2021, Officer Riley obstructed an "official proceeding" (*i.e.*, a grand jury investigation) by allegedly suggesting that Mr. Hiles take down part of a Facebook post indicating that Mr. Hiles was inside the U.S. Capitol — a suggestion that Mr. Hiles never followed.

Our legal system is predicated on the notion that the rights of a criminal defendant are the same, no matter the individual or the charged offense. The Government has demonstrably ignored that concept in this prosecution. As the Federal Bureau of Investigation ("FBI") revealed to Officer Riley — while surreptitiously recording him — Officer Riley was the subject of an investigation solely because of his status as a United States Capitol Police Officer and had he been a "gardener," he would not have been investigated. Moreover, rather than being an investigation initiated by a law enforcement entity — as the vast majority of potential crimes are — this was an investigation commenced by the U.S. Attorney's Office that resulted in the U.S. Attorney's Office requesting that the FBI open a case against Officer Riley.

Notwithstanding its motivation, the Government in its prosecution must prove beyond a reasonable doubt that Officer Riley *knew* there was a grand jury empaneled as to Mr. Hiles or had *reason to know* that one would be. After numerous requests, the Government refuses to provide any discovery relating to when this grand jury commenced and who was notified of it. The Government will not even confirm if the grand jury investigation was in existence on January 7, 2021, which is the requisite underpinning to any claim that Officer Riley knew or had reason to know about it at the time of his alleged suggestion to Mr. Hiles. The Government also fails to provide any discovery as to why Officer Riley should have known that a grand jury investigation

would have been empaneled against Mr. Hiles for conduct that does not rise to a felony offense (*i.e.*, his entry into the U.S. Capitol to avoid being trampled) and therefore would not be subject to a grand jury investigation, especially, when the vast majority of unlawful assembly on Capitol grounds offenses (prior to January 6) resulted in fines and not felony prosecutions. To be clear, Mr. Hiles was never charged with a felony offense.

As discussed below, the Government's discovery deficiencies do not end there. While initially informing counsel for Officer Riley that Mr. Hiles was *not a cooperator*, the Government asserted in its sentencing memorandum for Mr. Hiles that he provided "exceptional cooperation." To date, the Government has refused to provide: (i) a copy of the transcript from Mr. Hiles' sentencing hearing, which resulted in a sentence of probation; (ii) any discovery from Mr. Hiles' misdemeanor prosecution, which would demonstrate that Mr. Hiles' conduct would not have been subject to a felony grand jury proceeding; and/or (iii) all cellphone and social media accounts obtained from Mr. Hiles, which would highlight the numerous false statements made by Mr. Hiles prior to, during, and following his prosecution by the Government.

The Government has also failed to provide discovery as to: (i) its preservation requests to Facebook, which would negate the Government's theory that Officer Riley did anything that would "impair" the ability of the grand jury to obtain evidence from Facebook; (ii) prior cases of unlawful conduct on Capitol grounds and in restricted buildings resulting in fines and misdemeanor prosecutions that would negate any belief that a grand jury would be convened as to Mr. Hiles; (iii) evidence of other individuals known to the Government who removed information from Facebook, but were not subject to obstruction charges that would support a claim of selective prosecution; and (iv) evidence of Officer Riley's performance of his duties from January 6, 2021 until to his retirement, which would negate any claim that Officer Riley intended to do anything

other than pursue justice.

Accordingly, Officer Riley seeks an Order compelling the Government to produce this requested discovery, which is material to the preparation of his defense and undermines the Government's charges in this case.

## FACTUAL BACKGROUND

Officer Riley, who had a long and distinguished career with the United States Capitol Police,[1] engaged in acts of heroism on January 6, 2021 in responding to the attack on the U.S. Capitol. The Government has now charged Officer Riley with felony obstruction of justice. The operative facts underlying that charge arose on January 7, 2021. Jacob Hiles, via Facebook, provided a thorough description of how he was "pushed" into the U.S. Capitol on January 6, 2021 and "if [he] didn't go with the flow, [he'd] be trampled." USA-002756-002757. Mr. Hiles also explained that he "went inside the building" because he did not "know what choice [he] had in the matter" and "was being pushed forward by a crowd and was on steps outside the building." USA-002836. Mr. Hiles was allegedly "scared that the crowd would push [him] down and [he] would then be trampled." *Id.* According to Mr. Hiles, "[f]rom the moment [he] entered the building, [he] followed the directions of the officers inside" to "exit [] the building." *Id.*

The Government alleges that Officer Riley committed felony obstruction of justice by allegedly sending a Facebook message to Mr. Hiles on January 7, 2021, that stated, "Take down the part about being in the building[.]" USA-002758. In response, Mr. Hiles stated, "Thank you. I

---

[1] As appropriately summarized in a December 2, 2021 letter from the Capitol Police Board (attached hereto as Exhibit 3), during the course of his career, Officer Riley "consistently demonstrated the leadership and integrity [] essential in law enforcement" and his "attention to duty, professionalism, and dedication" was "above reproach" and served "as a tribute to [his] character." During his career, Officer Riley was also named the "Officer of the Month" by the National Law Enforcement Officers Memorial Fund (2011) and "Officer of the Year" by the Capitol Hill Executive Service Club & National Exchange Club (2010).

was told to go into the building. . . . There were no police outside the door. When we entered the door, there was a female officer standing there asking if everyone was ok." *Id.*

On January 7, 2021, Mr. Hiles had a public Facebook account. He had several thousand "friends" who could view his posts, forward them, and comment on them. Mr. Hiles ignored the suggestion of Officer Riley. Mr. Hiles at no point sought to take down any portion of his posts. However, Facebook took action and ultimately removed the posts from Mr. Hiles' Facebook account.

At trial, the Government must establish that on "January 7, 2021," Officer Riley "knowingly corruptly persuade[d], and attempt[ed] to do so, with intent to cause and induce any person to alter, destroy, mutilate, and conceal an object with intent to impair the object's integrity [*i.e.*, Mr. Hiles' Facebook post] and availability for use in an official proceeding." Indictment, ¶ 20 (D.E. 1). The Government also alleges in Count Two of the Indictment that Riley obstructed justice by deleting his *own* Facebook communications. *Id.* ¶ 22.

The Government should not be allowed to pursue a prosecution where, as here, there was no actual or contemplated impairment of the "integrity" of any Facebook post — given that Mr. Hiles' posts were stored on Facebook's server and were reviewed, liked, and forwarded by numerous other Facebook users (and likely preserved as a result of preservation requests from the Government).

For purposes of this motion, however, Officer Riley respectfully requests that this Court simply order the Government to meet its discovery obligations. The Government, in response to multiple requests, has failed to provide evidence in its possession that is material to Officer Riley's defense and which undermines the charges in this case.

**ARGUMENT**

Federal Rule of Criminal Procedure 16(a)(1)(E) provides:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i)   ***the item is material to preparing the defense***;
> (ii)  the government intends to use the item in its case-in-chief at trial; or
> (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E) (emphasis added). As the United States Court of Appeals for the D.C. Circuit instructed in *United States v. Marshall*, Rule 16(a)(1)(E) — formerly Rule 16(a)(1)(C) — covers evidence that is material "to *the preparation of* the defendant's defense." 132 F.3d 63, 67 (D.C. Cir. 1998) (emphasis in original). The rule "is not limited to evidence that is favorable or helpful to the defense and does not immunize inculpatory evidence from disclosure." *United States v. Safavian*, 233 F.R.D. 12, 15 (D.D.C. 2005). "Inculpatory evidence, after all, is just as likely to assist in 'the preparation of the defendant's defense' as exculpatory evidence" because "it is just as important to the preparation of a defense to know its potential pitfalls as to know its strengths." *Marshall*, 132 F.3d at 67; *accord United States v. O'Keefe*, No. 06-0249 (PLF), 2007 WL 1239204, at *2 (Apr. 27, 2007).

The discovery obligations of Rule 16 are "intended to provide a criminal defendant 'the widest possible opportunity to inspect and receive such materials in the possession of the Government as may aid him in presenting his side of the case.'" *O'Keefe*, 2007 WL 1239204, at *2 (quoting *United States v. Poindexter*, 727 F. Supp. 1470, 1473 (D.D.C. 1989)); *see also United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (instructing that the materiality standard "is not a heavy burden"; evidence is material if there is indication that it may play an "important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or

6

assisting impeachment or rebuttal"); *United States v. George*, 786 F. Supp. 11, 13 (D.D.C. 1991) (noting that the materiality hurdle "is not a high one").

"As a general matter, Rule 16 establishes the minimum amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases." *United States v. Apodaca*, 287 F. Supp. 3d 21, 39 (D.D.C. 2017) (quoting *United States v. Karake*, 281 F. Supp. 2d 302, 306 (D.D.C. 2003), Fed. R. Crim. P. 16 advisory committee's note to the 1974 amendments)). Moreover, as "this Court has noted on other occasions, the government cannot take a narrow reading of the term material in making its decisions on what to disclose under Rule 16. Nor may it put itself in the shoes of defense counsel in attempting to predict the nature of what the defense may be or what may be material to its preparation." *O'Keefe*, 2007 WL 1239204, at *2 (quoting *Safavian*, 233 F.R.D. at 15 (punctation omitted)).

Government disclosure of material exculpatory and impeachment evidence is part of the constitutional guarantee to a fair trial. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972). The law requires the disclosure of exculpatory and impeachment evidence when such evidence is material to guilt or punishment. *Brady*, 373 U.S. at 87; *Giglio*, 405 U.S. at 154. Because *Brady* and *Giglio* are constitutional obligations, *Brady/Giglio* evidence must be disclosed regardless of whether the defendant makes a request for exculpatory or impeachment evidence. *See Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995). And, because it is sometimes difficult to assess the materiality of evidence before trial, prosecutors generally must take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence. *Kyles*, 514 U.S. at 439.

The Department of Justice ("DOJ") Manual, § 9-5.001, provides as follows:

**Disclosure of exculpatory and impeachment information beyond that which is constitutionally and legally required**. Department policy recognizes that a fair trial will often include examination of relevant exculpatory or impeachment information that is significantly probative of the issues before the court but that may not, on its own, result in an acquittal or, as is often colloquially expressed, make the difference between guilt and innocence. As a result, this policy requires disclosure by prosecutors of information beyond that which is 'material' to guilt as articulated in *Kyles v. Whitley*, 514 U.S. 419 (1995), and *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999). The policy recognizes, however, that a trial should not involve the consideration of information which is irrelevant or not significantly probative of the issues before the court and should not involve spurious issues or arguments which serve to divert the trial process from examining the genuine issues. Information that goes only to such matters does not advance the purpose of a trial and thus is not subject to disclosure.

**Additional exculpatory information that must be disclosed**. A prosecutor must disclose information that is inconsistent with any element of any crime charged against the defendant or that establishes a recognized affirmative defense, regardless of whether the prosecutor believes such information will make the difference between conviction and acquittal of the defendant for a charged crime.

**Additional impeachment information that must be disclosed**. A prosecutor must disclose information that either casts a substantial doubt upon the accuracy of any evidence — including but not limited to witness testimony — the prosecutor intends to rely on to prove an element of any crime charged, or might have a significant bearing on the admissibility of prosecution evidence. This information must be disclosed regardless of whether it is likely to make the difference between conviction and acquittal of the defendant for a charged crime.

**Information**. Unlike the requirements of *Brady* and its progeny, which focus on evidence, the disclosure requirement of this section applies to information regardless of whether the information subject to disclosure would itself constitute admissible evidence.

**Cumulative impact of items of information**. While items of information viewed in isolation may not reasonably be seen as meeting the standards outlined in paragraphs 1 and 2 above, several items together can have such an effect. If this is the case, all such items must be disclosed.

*See* DOJ Manual, https://www.justice.gov/jm/jm-9-5000-issues-related-trials-and-other-court-proceedings, last visited, January 10, 2022 (emphasis in original).

The United States District Court for the District of Columbia Local Rules of Criminal Procedure specify the obligations of the Government as to this type of discovery. The provide, in

pertinent part, that the Government must disclose to the defense, without limitation, the following:

(1)  Information that is inconsistent with or tends to negate the defendant's guilt as to any element, including identification, of the offense(s) with which the defendant is charged;

(2)  Information that tends to mitigate the charged offense(s) or reduce the potential penalty;

(3)  Information that tends to establish an articulated and legally cognizable defense theory or recognized affirmative defense to the offense(s) with which the defendant is charged;

(4)  Information that casts doubt on the credibility or accuracy of any evidence, including witness testimony, the government anticipates using in its case-in-chief at trial; and

(5)  Impeachment information, which includes but is not limited to: (i) information regarding whether any promise, reward, or inducement has been given by the government to any witness it anticipates calling in its case-in-chief; and (ii) information that identifies all pending criminal cases against, and all criminal convictions of, any such witness.

LCrR 5.1(b).

Consistent with the Government's constitutional, legal, and institutional discovery obligations, Officer Riley seeks discovery that is material to his defense and which undermines the elements of the offenses charged by the Government in this case. Specifically, Officer Riley seeks discovery related to: (i) the "official proceeding" he is alleged to have obstructed; (ii) the Government's cooperator, Jacob Hiles; (iii) preservation requests sent to Facebook and other social media sites; (iv) instances of removal of information from Facebook that did not result in obstruction charges; and (v) actions by Officer Riley during and after the events of January 6, 2021.

1.    **Official Proceeding.**

At trial, the Government must establish a *direct nexus* between Officer Riley's alleged statement and an "official proceeding." Based on the theory that the Government has presented in

its discovery responses, proof beyond a reasonable doubt would be required that Officer Riley knew or had reason to know of a grand jury investigation (*i.e.*, the "official proceeding") into Mr. Hiles' January 6, 2021 activities at the U.S. Capitol.

In correspondence dated November 22, 2021 (attached hereto as Exhibit 1), counsel for Officer Riley requested from the Government the when and how of this grand jury investigation (*i.e.*, the "official proceeding")[2] and "documentation identifying what law enforcement entities were advised as to the opening of the grand jury investigation, to include, but not be limited to, the United States Capitol Police." The Government refused to provide any requested discovery on this topic and refuses to even confirm that a grand jury was impaneled on January 7, 2021 for an investigation covering the actions undertaken by Mr. Hiles.

In an attempt to avoid unnecessary motion practice, in a letter dated December 13, 2021 (attached hereto as Exhibit 2), counsel for Officer Riley noted that if no official "proceeding (*i.e.*, grand jury investigation) was commenced by January 7, 2021 — the date Count One of the Indictment allegedly occurred — and/or no notice was provided to Officer Riley or the United States Capitol Police prior to that date, it is impossible that Officer Riley knew of the official proceeding to allegedly obstruct it." Likewise, undersigned counsel informed the Government that if it was "attempting to rely on Officer Riley's experience as a law enforcement officer in that he should have known that a grand jury had already (or was going to be) commenced as to Mr. Hiles," Officer Riley was entitled to the "production of documents attesting to the long history of prior

---

[2] As counsel for Officer Riley noted in its discovery correspondence to the Government (Ex. 1 at 2), an FBI investigation cannot be the "official proceeding" underlying a charge of obstruction. *See, e.g.*, *United States v. Ermoian*, 752 F.3d 1165, 1170–72 (9th Cir. 2013); *United States v. Ramos*, 537 F.3d 439, 462–63 (5th Cir. 2008); *United States v. Binette*, 828 F. Supp. 2d 402, 403–04 (D. Mass. 2011). The Government has confirmed in writing that it considers the "official proceeding" referenced in its Indictment to be a grand jury proceeding.

cases of unlawful entry on U.S. Capitol grounds and the U. S. Supreme Court that have resulted in fines or at worst, misdemeanor offenses, as was the case of Mr. Hiles, all of which are not the subject of grand jury investigations" (or "official proceedings").

The Government again refused to provide any documents or information attesting to when the official proceeding was commenced and who was notified of it, as well as, all prior cases of offenses of unlawful entry resulting in non-felony adjudications that would not trigger an official proceeding (or grand jury investigation).

 2.  **Government's Cooperator Jacob Hiles**.

While discovery produced to date established that Mr. Hiles informed Officer Riley that he entered the U.S. Capitol by accident, Mr. Hiles has subsequently changed that story. He pleaded guilty before this Court and admitted that he traveled to Washington, D.C. to attend the "Stop the Steal" rally "to be there when history happen[ed]," to "participate in anarchy," "to smoke weed in government buildings," and — "the real reason — "to intimidate congress." *United States v. Hiles*, 21-cr-155 (ABJ) (Statement of Offense, D.E. 24, ¶ 10 n.1). Mr. Hiles also "brought goggles with him, and he wore them to protect himself from tear gas being deployed by law enforcement against the crowd." *Id.* ¶ 8. In addition, Mr. Hiles "demonstrated an intent to defeat law enforcement efforts to protect the Capitol from him and the rest of the dangerous crowd." *United States v. Jacob Hiles*, 21-cr-155-ABJ, Gov't Sent. Mem. at 4 (D.E. 36). Nowhere in Mr. Hiles' Statement of Offense in support of his guilty plea is there any mention of Officer Riley or any attempt by anyone to have Mr. Hiles take down part of a Facebook post.

In a meeting on November 23, 2021, at the U.S. Attorney's Office, counsel for Officer Riley inquired of the Government as to whether Mr. Hiles was a cooperator. The Government prosecutors responded that he was not. *See* Ex. 2 at 1. Surprisingly, in the Government's

11

subsequent sentencing memorandum for Mr. Hiles, the Government advocated for a sentence of probation based on Mr. Hiles' purported "exceptional cooperation." According to the Government, "[m]ore notably," "Mr. Hiles could not be more cooperative in assisting the U.S. Attorney's Office in prosecuting a case against a Capitol Police Officer." *See United States v. Jacob Hiles*, 21-cr-155-ABJ, Gov't Sent. Mem. at 8 (D.E. 36); *id.* at 5 ("By all accounts, Mr. Hiles' [] testimony was crucial in the government's case against Officer Riley.").

In his sentencing memorandum, Mr. Hiles asserted that he had "deep regret, fear, shame, and remorse" for his participation in the events of January 6, 2021. However, upon being sentenced to probation, and on the one-year anniversary of January 6, 2021, Mr. Hiles posted on Facebook:

> Today is a special anniversary to me. One year ago was a day that was unlike any other day in America's history. Tens of thousands of American Patriots descended upon the Capitol to stand up for their beliefs. . . . I was there because I believed then, and I still do to this day that the 2020 election was rigged and our democracy was stolen. The media would also tell you that everyone at the Capitol on January 6 2021 was a violent, destructive insurgent who attacked police and forced their way into the building. That does summarize a very small minority of the people there that day. I did nothing violent or destructive . . .



In responses to the favorable comments that he received for his Facebook post on the

anniversary of January 6, 2021, Mr. Hiles stated: "The problem is the media. The media is completely radicalized and spread nothing but propaganda. The government doesn't have to fear the media because it has weaponozed (sic) the media for their benefit."

Since its inception, Mr. Hiles' entire case has been public and relevant pleadings from the case have been made available on the DOJ's public website, in addition to their availability through the Court's PACER system. *See*, https://www.justice.gov/usao-dc/defendants/hiles-jacob, last visited January 10, 2022. Mr. Hiles' sentencing date was noted on the DOJ's public website (*id.*) and on the Court's public website. On December 1, 2021, counsel for Officer Riley inquired as to how copies of the sentencing memoranda could be obtained and Government counsel responded that they "are located on the CM/ECF docket for the case, *US v. Jacob Hiles,* 21-CR-155 (ABJ)." These public filings were the subject of an article by Politico, which detailed the Government's claim that Hiles provided "extensive cooperation." *See* Politico Article, https://www.politico.com/news/2021/11/30/capitol-riot-grand-jury-defendants-523511, last visited January 10, 2022 (quoting from the Government's sentencing memorandum: "Absent Hiles' forthrightness, both in preserving records of communications by him and Riley, and in addressing sensitive inquiries from law enforcement, prosecution of Riley — a now-former U.S. Capitol Police Officer — may not have been possible").

By the time of Mr. Hiles' sentencing proceeding, however, the Government sought to keep information about the sentencing from public view. The Government sentencing memoranda were no longer available on the public docket and Mr. Hiles' sentencing proceeding was sealed.[3]

---

[3] It is unclear why the sentencing memoranda in the *Hiles* matter were initially publicly available (for *Politico* to publish an article about them) and then eventually placed under seal only when undersigned counsel asked for a copy of them (and was told to obtain them from the public docket). It is also unclear why Mr. Hiles' sentencing was placed under seal when the Government initially claimed that Mr. Hiles was not a cooperator. *See* Ex. 2 at 1. DOJ's Manual provides strict

In discovery, undersigned counsel has requested: (i) documents identifying any benefits provided to Mr. Hiles in exchange for any testimony or future testimony against Officer Riley;[4] (ii) documents produced by the Government in discovery in *United States v. Jacob Hiles*, 21-cr-155-ABJ; (iii) downloads and reports arising from *all* the electronic devices and social media accounts seized and searched from Mr. Hiles; (iv) a copy of the transcript from Mr. Hiles' sentencing; and (v) a copy of Mr. Hiles' Judgment & Commitment Order.

To date, these materials have not been produced and are material to Officer Riley's defense at trial as Mr. Hiles is purportedly the chief witness against Officer Riley and his credibility has been thoroughly undermined by his numerous conflicting statements before, during, and after his prosecution.

### 3.      Evidence Refuting Any Possible Intent to Conceal and Impair Evidence.

Count One of the Indictment alleges that on January 7, 2021, Officer Riley:

> did knowingly corruptly persuade, and attempt to do so, with intent to cause any person to alter, destroy, mutilate, and conceal on object with intent to impair the object's integrity and availability for use in an official proceeding—that is, RILEY directed Person 1 to take down from Facebook records relating to his conduct at the U.S. Capitol on January 6, 2021, with the intent of making the records unavailable for use in the federal investigation resulting from the January 6 breach of the U.S. Capitol.

*See* Indictment, ¶ 20 (D.E. 1). After numerous requests, the Government refuses to provide any

---

requirements that the Government must adhere to prior to agreeing to seal a court proceeding. *See* DOJ Manual, 9-5.150, https://www.justice.gov/jm/jm-9-5000-issues-related-trials-and-other-court-proceedings#9-5.150, last visited January 10, 2022. Undersigned counsel has requested, but has not received, any documentation from the Government attesting to why Mr. Hiles' sentencing was under seal and the factual basis that would warrant this extraordinary remedy. *See id.*

[4] Officer Riley notes that unlike other defendants charged for offenses relating to January 6, 2021, the Government did not oppose Mr. Hiles' request to leave the country and travel to Guatemala after having pled guilty and while awaiting sentencing. *See United States v. Jacob Hiles*, 21-cr-155-ABJ, Sept. 9, 2021 Min. Order at 1. Officer Riley has not received any discovery explaining why the Government granted Mr. Hiles this benefit during the pendency of his case.

discovery as to preservation of evidence requests it sent to Facebook and other social media sites to confirm whether or not information on Mr. Hiles' Facebook page could be deleted and be beyond the reach of a grand jury subpoena at the time that Officer Riley allegedly intended to "impair" the Facebook posts' integrity and their availability for use in a subsequent grand jury proceeding.

Essential to this charge is the notion that the Government would not have been able to obtain Mr. Hiles' Facebook post relating to being inside the U.S. Capitol on January 6, 2021, even though he made numerous posts relating to the Stop the Steal event in Washington, D.C., and his participation therein, that were viewed, endorsed, and preserved by numerous Facebook users.

    4.    **<u>Evidence of Selective Prosecution.</u>**

Review of the discovery produced to date reveals that the investigation into Officer Riley was initiated by the U.S. Attorney's Office and not the FBI. The U.S. Attorney's Office subsequently requested that the FBI open an investigation into Officer Riley. FBI agents who interviewed Officer Riley advised him — while surreptitiously recording him — that he was being investigated relating to his comments concerning Mr. Hiles' Facebook posts because of his status as a United States Capitol Police Officer. The agents further stated words to the effect that had he been a "gardener," he would not have been investigated. Consistent with what appears to be a selective prosecution, the Defendant has requested documents attesting to individuals and social media platforms, such as Facebook, removing (or suggesting the removal) of information relating to the U.S. Capitol on January 6, 2021. The Government refuses to provide this requested discovery.

5.      **<u>Evidence Negating Any Intent to Obstruct Justice</u>**.

As set forth in its Indictment, the Government must prove at trial that Officer Riley knowingly and corruptly obstructed justice by interfering with evidence for a federal grand jury investigation relating to Mr. Hiles regarding the events of January 6, 2021. Completely inconsistent with that element of the charged offense — Officer Riley's actions on January 6, 2021 in investigating pipe bombs on the Capitol grounds and his performance of his duties as a Capitol Police Officer from January 6, 2021 until charged in this matter nine months later — demonstrate a deep regard for justice. Indeed, even though the Government was aware of the allegations underlying the Indictment for the vast majority of that period of time, the Government did not believe it was inappropriate for Officer Riley to continue performing his duty as a Capitol Police Officer in a number of sensitive security-related matters.

Consequently, material to Officer Riley's defense is all documentation reflecting actions performed by him since January 6, 2021, including what law enforcement officers worked with him and on what matters, which would highlight that Officer Riley had zero intent to obstruct anything or to undermine any United States Capitol Police investigation, let alone investigations related to the events of January 6, 2021. To date, the Government has not produced the requested discovery on this topic and actually asks for the assistance of Officer Riley in describing his actions on January 6, 2021 so that they can attempt to locate video capturing those events.

Again, this discovery, and the discovery referenced above, is material to Officer Riley's defense and undermines the elements of the offenses charged against him.

## CONCLUSION

For all these reasons, Officer Riley respectfully requests an Order compelling the Government to produce discovery material to the preparation of his defense.

Dated: January 13, 2022                           Respectfully submitted,

SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC

    /s/ Christopher Macchiaroli
Christopher Macchiaroli (D.C. Bar No. 491825)
1750 K Street, NW, Suite 810
Washington, D.C. 20006
Telephone: (202) 539-2444
Facsimile:  (410) 547-2432
Email: cmacchiaroli@silvermanthompson.com

Andrew C. White (Federal Bar No. 08821)
M. Evan Corcoran (D.C. Bar No. 440027)
201 N. Charles Street, 26th Floor
Baltimore, Maryland  21201
Telephone: (410) 385-2225
Facsimile:  (410) 547-2432
Email: awhite@silvermanthompson.com
Email: ecorcoran@silvermanthompson.com

*Counsel for Defendant*