```
                IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA


   United States of America,       ) Criminal Action
                                    ) No. 21-cr-628
               Plaintiff,           )
                                    ) VIDEO STATUS CONFERENCE
   vs.                              )
                                    ) Washington, DC
   Michael Angelo Riley,            ) January 14, 2022
                                    ) Time:  9:30 a.m.
               Defendant.           )
   _____

           TRANSCRIPT OF VIDEO STATUS CONFERENCE
                      HELD BEFORE
         THE HONORABLE JUDGE AMY BERMAN JACKSON
              UNITED STATES DISTRICT JUDGE
   _____

                    A P P E A R A N C E S

   For Plaintiff:    Molly Gaston
                     Mary Dohrmann
                     U.S. Attorney's Office for D.C.
                     555 4th Street, NW
                     Washington, DC  20530
                     Email:  Molly.gaston@usdoj.gov

   For Defendant:    Christopher Macchiaroli
                     Andrew C. White
                     Matthew Evan Corcoran
                     Silverman, Thompson, Slutkin & White
                     201 North Charles Street
                     Suite 2600
                     Baltimore, MD  21201
                     Email:  Cmacchiaroli@silvermanthompson.com
   _____

   Court Reporter:         Janice E. Dickman, RMR, CRR, CRC
                           Official Court Reporter
                           United States Courthouse, Room 6523
                           333 Constitution Avenue, NW
                           Washington, DC  20001
                           202-354-3267
```

1    THE COURTROOM DEPUTY:  Your Honor, this morning this
2    is a video status conference call.  We have criminal case
3    number 21-628, the *United States of America v. Michael Angelo*
4    *Riley.*
5         Will counsel for the government please identify
6    herself and her colleague for the record?
7         MS. GASTON:  Good morning, Your Honor.  Molly Gaston
8    for the United States.  And with me also is Mary Dohrmann for
9    the United States.
10        THE COURT:  Good morning.
11        THE COURTROOM DEPUTY:  Will counsel for the
12   government identify himself -- I'm sorry, counsel for the
13   defendant please identify himself and his colleagues for the
14   record.
15        MR. MACCHIAROLI:  Yes, Your Honor.  Good morning.
16   Christopher Macchiaroli, joined by my colleagues Andrew White
17   and Evan Corcoran, on behalf of Mr. Riley, who's present by
18   video, Your Honor.
19        THE COURTROOM DEPUTY:  Will Mr. Riley please state
20   his name for the record and verify that he is able to both see
21   and hear the judge and the attorneys.
22        THE DEFENDANT:  Yes, sir.  Michael Riley.  And I am
23   able to both see and hear.
24        THE COURT:  All right.  Good morning, everyone.
25        Mr. Macchiaroli, have you and your client discussed

1  the fact that even for a status conference, he has a right to
2  be here in person, and does he agree to proceed by video this
3  morning?
4          MR. MACCHIAROLI:  Your Honor, we have discussed it
5  and he consents to appearing by video today.
6          THE COURT:  And given the recent standing orders of
7  the Court, trying to deal with the uptick in positive COVID
8  cases, and the fact that it was moving through the courthouse
9  and through the U.S. Marshal Service, I think it's appropriate
10 to continue to proceed by video to protect the defendant and
11 the lawyers and everyone else.  And given his consent, we're
12 going to proceed by video this morning.
13         The last time we got together an enormous amount of
14 discovery had been provided.  The government was talking about
15 a trial date, the defense was not talking about a trial date.
16 And I know that the defendant recently filed a motion to which
17 the government has not had a full opportunity to respond.
18         So, other than the fact that there's a pending
19 motion, where are we now in terms of how you see this case
20 moving forward?
21         Ms. Gaston, I guess I'll start with you.
22         MS. GASTON:  Yes, Your Honor.  The government would
23 like a trial date.  We believe that discovery is substantially
24 complete, as we will set forth in our response -- we will
25 respond to the defense motion to compel filed yesterday, but we

1  don't think that that is a reason not to set a trial date and a
2  pretrial schedule.  The defendant has allowed the government's
3  plea offer to expire.  And this is not a particularly
4  complicated or voluminous matter.
5              THE COURT:  All right.  What's the defendant's point
6  of view about that?
7              MR. MACCHIAROLI:  Your Honor, we think it's very
8  premature to set a trial date at this point.  Last night, after
9  hours, the defense received the government's second largest
10 production of discovery, which had to be downloaded.  I've been
11 told I'm going to receive a thumb drive, I believe, via FedEx,
12 which I have not even received yet.  I'm supposed to go to --
13 in person to obtain a transcript that is confidential.  This
14 has been a very large production of discovery, which the
15 defense hasn't even reviewed yet.
16             We have the motion pending for additional discovery.
17 And we don't want to discuss this now, Your Honor.  We want to
18 give the government an opportunity to respond and to explain
19 why it's not relevant and material to the defense.  We want the
20 Court to have an opportunity to review the briefing, including
21 our reply to the government, potentially set a hearing, and at
22 that point, hopefully, get the discovery we believe that's
23 material to our defense.
24             We think it's premature, that we just got discovery,
25 we're still seeking discovery, and setting a trial date during

1  a pandemic, when my client, Mr. Riley, is willing to exclude
2  time under the Speedy Trial Act so that he can get all the
3  discovery he needs to adequately prepare his defense.
4             THE COURT:  All right.  Well, the Speedy Trial Act
5  does benefit both sides, but it is primarily a means of
6  effectuating the defendant's constitutional right to have a
7  speedy trial, which, if he is willing to defer, and given the
8  enormous challenges in terms of scheduling trials at this point
9  under the current protocols, I don't have a problem setting one
10 more status hearing.
11            I do think it's important, as we continue to move
12 forward and brief motions, there's -- there's a lot of
13 indignation in this motion.  And when you tell me that
14 discovery is being withheld that's necessary because the
15 defendant doesn't know what the evidence is that would show he
16 was aware of the pendency of an investigation when he posted --
17 when he sent a message that said, as you put it in your motion,
18 quote, Take down the part about being in the building, and then
19 there's a period with brackets around it.  But the brackets
20 were "Take down the part about being in the building.  They are
21 currently investigating and everyone who was in the building is
22 going to get charged."  And then, "They're arresting dozens of
23 people a day.  Everyone that was in that building, engaged in a
24 violent act, destruction of property, and they're all being
25 charged federally with felonies."

1    I'm not saying that you may not be entitled to some
2    of the information you're asking for in the motion, I haven't
3    dug through all of it, I haven't seen the opposition and I
4    haven't seen your reply.  But I think it's important to assume
5    that you're going to do better with a motion when you're
6    straightforward about what the record is, instead of trying to
7    get something past me with brackets.  I don't think that's the
8    best way to advance your position with me.
9    　　　　　　　MR. MACCHIAROLI:  And, Your Honor, if I may respond
10   to that.  You have to understand, Your Honor, this has been
11   very frustrating for the defense.  We've asked a very simple
12   question:  Was the official proceeding that Mr. Riley is
13   alleged to have obstructed even in existence on the day he
14   allegedly committed the conduct?  We have not even been told,
15   after three months, that it was in existence.  That's a very
16   simple fact and the government hasn't even been able to tell us
17   that.
18   　　　　　　　And while there are discussions and text messages
19   back and forth, the elements of the charges, he had to know
20   there was an official proceeding in existence at the time that
21   he allegedly committed the conduct, or was aware of it, and we
22   haven't --
23   　　　　　　　THE COURT:  I hear your position, I read it.  I don't
24   know what their position is.  I don't -- I'm not going to rule
25   on it and I didn't make the comment I just made to suggest that

1    I've made up my mind about the underlying issue.  I'm just
2    saying that if you present the underlying issue, it's important
3    to be upfront about what the evidence is, because that was just
4    a misleading sentence and that's not a good way to get my
5    attention.  It gets my attention, but it gets negative
6    attention.
7             But as I said, I have not begun to consider how I'm
8    going to rule on this motion.  I want it fully briefed.  I
9    realize that takes time.
10            Does the government need longer than the time
11   prescribed in the rules to respond to the motion?
12            MS. GASTON:  No, Your Honor.
13            THE COURT:  All right.  And then the defense will
14   have an opportunity to file a reply.  I may, at that point, be
15   prepared to rule.  I may, at that point, require a hearing.  I
16   haven't, generally, for discovery motions, needed a hearing,
17   but this may end up being sufficiently complicated that I do.
18   And it may be that some of the information, some of this gets
19   obviated because the government decides to produce it.
20            So, I think everybody needs to look closely at the
21   issues, and if the material -- Rule 16 is pretty broad.  *Brady*
22   is very broad.  You know what the elements of the offense are.
23   The court's discovery rules are very broad, and I know I read
24   the Due Process Protections Act at the beginning of this case.
25   So if there's material that arguably falls under any of those

1    categories, the defense is entitled to it.  We're not going to
2    hide the ball.  So I want everybody to keep all that in mind.
3            Given that, assuming that we need at least three
4    weeks to brief this -- Ms. Gaston, other than what was just
5    produced, is the discovery now complete?  Putting aside the
6    issues that are in dispute.
7            MS. GASTON:  Yes, Your Honor.
8            THE COURT:  And I know I've signed whatever orders
9    are necessary to make sure that information that relates to
10   another matter gets provided.
11           So, Mr. Macchiaroli, what do you think is the
12   appropriate time for the next status conference?  A month from
13   now?  Six weeks from now, so that the discovery motions are
14   likely be ruled upon by then?
15           MR. MACCHIAROLI:  Your Honor, I would err towards six
16   weeks, or even later, because we just received the government's
17   second largest production last night, after business hours.  I
18   haven't even looked through it yet.  So we don't know, in the
19   defense's perspective, if the government's production is
20   complete.  So I would err towards at least six weeks out.  We
21   would want to have an opportunity to, you know, file our reply
22   to the government's opposition.  So if it's -- if the Court is
23   amenable to having a status in six weeks, that would be our
24   preference.
25           THE COURT:  All right.  I guess I have one question,

1    which is:  What accounts for the volume that we're talking
2    about?  I know, in all of the January 6 cases where people were
3    present, there's an enormous amount of video that needs to be
4    provided and social media communications of the defendants
5    involved.  Here, we have social media communications between
6    two individuals, but what else?  What accounts for the volume
7    of material that we're talking about?
8               MS. GASTON:  Your Honor, the -- from the government's
9    perspective, there is not a large volume of material.  The
10   discovery in this case essentially consists of social media
11   conversations and some materials taken from the defendant and
12   another individual's cell phone.  Some of what the -- a large
13   amount of what the government produced yesterday was
14   duplicative of what was previously provided because we had
15   provided the bulk of the material from the social media returns
16   and from the phones, and yesterday was just completing the
17   scoping of those materials and then separately providing the
18   defendant his unscoped materials that the government is no
19   longer going to access under the terms of the warrants.
20              THE COURT:  All right.  Well, he's still allowed to
21   review it to determine whether it's duplicative or not, and
22   whether it's important to him or not.  So, why don't we set
23   this down -- how about a status conference on the 24th or 25th
24   of February?  I've got something at 9:30 in the morning on the
25   24th, but could do it at 10:30, or I could do it at 9:30 on the

1    25th.
2              MS. GASTON:  Either of those works for the
3    government, Your Honor.
4              MR. MACCHIAROLI:  And they will work for the defense,
5    Your Honor.
6              THE COURT:  All right.  So we'll set this down -- why
7    don't we do another video status conference on February 24th,
8    at 10:30.
9              Given the need to review the recently received
10   material and the defendant's request and waiver, I will exclude
11   the time from the speedy trial calculation between now and
12   February 24th.
13             By that time I also hope that we have a better handle
14   on what the court's procedures are going to be moving forward
15   and whether we're all free to start summoning jurors and
16   scheduling jury trials.  I will note, and I'm sure the
17   government is aware of this, that I have several incarcerated
18   defendants on my caseload and to the extent they are asserting
19   their speedy trial rights, those trials are going to go first.
20             So, that's something that even if everybody is ready
21   for trial, and everybody -- even people in the community have
22   speedy trial rights.  When we're trying to figure out how to
23   use our resources, we have to deal with the detained people
24   first.  So we'll take all that up on the 24th.
25             Is there anything else on behalf of the government

1     that I need to take up now?
2              MS. GASTON:  Not from the government, Your Honor.
3     Thank you.
4              THE COURT:  Okay.  Anything further for the
5     defendant?
6              MR. MACCHIAROLI:  No, Your Honor.
7              THE COURT:  Okay.  Thank you very much, everybody.
8                            *   *   *

CERTIFICATE OF OFFICIAL COURT REPORTER

I, JANICE DICKMAN, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete transcript of the proceedings to the best of my ability.

Dated this 18th day of January, 2022

_____

Janice E. Dickman, CRR, CMR, CCR
Official Court Reporter
Room 6523
333 Constitution Avenue, N.W.
Washington, D.C.  20001

This hearing was held telephonically in compliance with the COVID-19 pandemic stay-at-home orders and is, therefore, subject to the limitations associated with the use of current technology, including but not limited to video signal interference, static, signal interruptions, and other restrictions and limitations associated with remote court reporting via telephone, speakerphone, and/or videoconferencing.