**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | No. 21-cr-628-ABJ |
| | : | |
| v. | : | |
| | : | |
| MICHAEL ANGELO RILEY, | : | |
| | : | |
| *Defendant.* | : | |
| | : | |

**DEFENDANT'S OPPOSITION TO THE**
**GOVERNMENT'S OMNIBUS MOTION *IN LIMINE***

More than six weeks before trial and without Officer Riley having the benefit of the Government's witness or exhibit list, or anticipated additional discovery, the Government moves *in limine* to preclude the defense from presenting evidence or argument on more than a dozen separate subject matters. To begin, Officer Riley has no intention (and never did) of raising "religion," a "family hardship," or the fact of "potential incarceration" as defenses at trial. Additionally, rather than argue to the jury that it should *disregard* the facts or the law and reach a verdict based solely on "principles of democracy over the law," as the Government suggests in its motion (at 7), Officer Riley will explicitly and passionately ask the jury to follow the facts and the law in this case.

But, as discussed below, contained within the broad areas of evidence and argument the Government seeks to exclude are certain discrete subject matters that are relevant to Officer Riley's defense and go directly to the ultimate issue of whether he had the requisite intent to obstruct a specific grand jury proceeding relating to his communications with Jacob Hiles on January 7, 2021. As this Court will instruct the jury at trial, determining a person's "state of mind" requires an

examination of the "surrounding circumstances," from which a jury can draw upon any evidence presented to infer "intent and/or knowledge." Here, Officer Riley's experience and knowledge as a law enforcement officer goes directly to his actions and state of mind. Consistent with both his constitutional right to a "meaningful opportunity to present a complete defense" at trial and the low standard for evidence to be relevant (having a "tendency" to make a fact more or less probable), Officer Riley anticipates presenting evidence of the surrounding circumstances — before and after January 7, 2021 — that would have the tendency to undermine any claim that he intended to obstruct a specific grand jury proceeding.

## FACTUAL BACKGROUND

Michael Angelo Riley served the United States Capitol Police for 26 years before retiring on October 28, 2021. On January 6, 2021, Officer Riley responded to reports of explosives on U.S. Capitol grounds. Similar to the heroic acts of his fellow officers, he communicated the discovery of a destructive device and disseminated a photograph of the device to relevant personnel. Hours later, upon hearing radio traffic of a fellow officer down, Officer Riley, who is also a trained emergency medical technician, left his post and traveled to assist that officer until additional medical personnel arrived.

In this case, the Government has charged Officer Riley with two counts of felony obstruction of justice of an "official proceeding." The operative facts underlying these charges arose on January 7, 2021. On that date, Jacob Hiles, who Officer Riley knew from "fishing-related Facebook groups" (Indictment, ¶ 5 (D.E. 1)), provided a thorough description on his public Facebook account of how he was "pushed" into the U.S. Capitol on January 6, 2021, claiming that "if [he] didn't go with the flow, [he'd] be trampled." USA-002756-002757. This communication was publicly available and liked by numerous Facebook users. In subsequent communications,

Mr. Hiles explained that he "went inside the building" because he did not "know what choice [he] had in the matter" and "was being pushed forward by a crowd and was on steps outside the building." USA-002836. Mr. Hiles was allegedly "scared that the crowd would push [him] down and [he] would then be trampled." *Id.* According to Mr. Hiles, "[f]rom the moment [he] entered the building, [he] followed the directions of the officers inside" to "exit [] the building." *Id.* Mr. Hiles' statements to Officer Riley (and in his Facebook post describing his compelled conduct) were not true.

The Government alleges that Officer Riley instructed Mr. Hiles on January 7, 2021 to take down a Facebook record, with the intent of making the record unavailable for a federal investigation, based on his message to Mr. Hiles stating, "Take down the part about being in the building[.]" USA-002758. In response, Mr. Hiles stated, "Thank you. I was told to go into the building. . . . There were no police outside the door. When we entered the door, there was a female officer standing there asking if everyone was ok." *Id.* Again, Mr. Hiles' statements to Officer Riley were not true. Mr. Hiles never took down "any part" of his post about being in the U.S. Capitol or any portion of his *other* social media posts relating to January 6, 2021 (regarding which Officer Riley is not alleged to have made any instruction to Mr. Hiles).

The Government has also charged Officer Riley with a second felony obstruction charge for deleting his own Facebook communications with Mr. Hiles, even though Officer Riley did not delete any communications he had with other individuals discussing Mr. Hiles. As the Government is aware, Officer Riley informed Mr. Hiles that he would no longer be communicating with him and would be deleting Mr. Hiles' communications after seeing a video showing Mr. Hiles' conduct inside the U.S. Capitol. *See* USA-002819. Officer Riley expressed that Mr. Hiles' "story of getting pushed in the building with no other choice now seems not only false but is a complete lie." *Id.*

This is also exactly what Officer Riley told the FBI when they surreptitiously recorded him and there is absolutely no allegation that Officer Riley provided false information to law enforcement. *See* USA-003539-40. And, when Mr. Hiles informed Officer Riley that he spoke to the FBI, Officer Riley said words to the effect of, "That's fine."

As discussed in prior filings and consistent with existing precedent, the Government can only establish criminal liability in this case by establishing that Officer Riley obstructed a grand jury proceeding, not an investigation, and that in doing so, Officer Riley had the requisite intent to obstruct a *specific* grand jury proceeding that had a nexus to the alleged obstructive conduct (*i.e.*, the taking down of a partial Facebook post). *See* Def.'s Mot. at 10-15 (D.E. 34) (identifying extensive authority that an "official proceeding" cannot be an "investigation" and that the Supreme Court requires the presence of a "nexus" between the obstructive conduct and the specific "official proceeding" (*i.e.*, a grand jury proceeding)).

## ARGUMENT

The United States Constitution guarantees criminal defendants the right to a "meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). This limits a court's ability to impose "arbitrary" rules of evidence, including those that exclude "important defense evidence" without serving "any legitimate interests," or are otherwise "disproportionate to the purposes they are designed to serve." *Holmes*, 547 U.S. at 324-25 (punctuation and citation omitted).

"Evidence is relevant if: (a) it has any *tendency* to make a fact *more or less probable* than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401 (emphasis added). While relevant evidence may be generally admissible, it falls within a court's discretion to exclude relevant evidence whose probative value is *substantially*

4

outweighed by other negative factors, such as its prejudicial effect and potential to confuse or mislead the jury. *Holmes*, 547 U.S at 326; *see also id*. at 330 (noting that evidentiary rules seek to "focus the trial on the central issues by excluding evidence that has only a *very weak* logical connection to the central issues" (emphasis added)); Fed. R. Evid. 403 (outlining the standard for excluding otherwise relevant evidence).

Motions *in limine* are a "procedural mechanism" through which questions regarding the admissibility of "testimony or evidence in a particular area" may be resolved before trial. *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Such *in limine* rulings really are just preliminary, and the Court "may always change [its] mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).

At this moment, several weeks before trial, Officer Riley does not have the benefit of the Government's witness or exhibit lists or the additional discovery that the Government has indicated will be forthcoming. Notwithstanding, Officer Riley identifies certain matters regarding which he will not be presenting argument and evidence at trial, and certain matters that he absolutely will be presenting in his defense against the Government's two felony charges (each of which expose him to 20 years of incarceration). Moreover, rather than seeking to admit irrelevant or confusing evidence, Officer Riley intends to present any evidence that tends to make any fact of consequence more or less probable of having occurred.

### A.  Evidence and Argument Relating to Penalties.

At trial, Officer Riley has no intention of introducing any evidence or presenting any argument "regarding the potential penalties he faces upon conviction." *See* Mot. at 5.

### B.  Evidence and Argument That "Encourages Jury Nullification."

At trial, Officer Riley will request that the jurors follow the law and the facts (or absence

of facts) as to the specific obstruction offense charged, and he will make all applicable factual arguments in support of the legal doctrine of "reasonable doubt." Officer Riley will also argue to the jury (consistent with the Court's own jury instructions) that it is the jurors alone who determine the facts and the applicability of the facts to the law. Contrary to the Government's motion, Officer Riley will not argue that the jurors have the power to disregard the facts and law and acquit based on "liberty and democracy" or because of his "religious beliefs." *See* Mot. at 7.

Likewise, Officer Riley will not invoke the support of his wife and his two children as evidence for why he should be acquitted at trial. Of course, this does not mean that Officer Riley cannot present evidence of who he is to the jury. Relevant to his intent (or lack thereof) is his history as a law enforcement officer. The attendant knowledge puts into context the decisions that Officer Riley made and explains his intent, or lack thereof, regarding those decisions. Granting the Government's motion would leave the jury with a blank slate and invite speculation about the reason Officer Riley is no longer a U.S. Capitol Police Officer and/or what he was doing on January 6, 2021.

While Officer Riley will be asking the jury to follow the facts and the law, it is unclear what the Government is seeking to preclude when it references evidence and argument relating to "sympathy." Mot. at 6. In support of this request, the Government cites two cases from over 40 years ago, neither of which is applicable to this case. In *United States v. Bell*, the sympathy at issue was for the "victim," after the prosecutor made inappropriate statements during closing argument that were "wholly irrelevant" to the facts and issues of the case. 506 F.2d 207, 226 (D.C. Cir. 1974). In *United States v. White*, the district court excluded testimony from the defendant's mother as to the defendant having a peaceful nature when he was growing up in her home. 225 F. Supp. 514, 519 (D.D.C. 1963). Officer Riley will not be presenting his mother as a character witness at

trial or eliciting any such similar testimony regarding his peaceful nature. The jury may sympathize with Officer Riley after he presents relevant evidence in his defense, but that is a normal byproduct of an individual being prosecuted where the evidence does not support the specific charges (as is the circumstance in this case).

As for selective prosecution, the Court has already precluded discovery on that issue and, accordingly, Officer Riley is not in a position to argue that other individuals were not prosecuted similarly for obstruction of justice for allegedly encouraging persons to partially remove a Facebook post. Nevertheless, Officer Riley has every intention of challenging the Government's investigation; the reasons and statements made by law enforcement as to why he was interviewed and surreptitiously recorded; and the manner in which this case was referred to the FBI for investigation.[1]

### C.   Officer Riley's Law Enforcement Actions on January 6, 2022 and the Absence of Obstructive Conduct.

Officer Riley's actions on January 6, 2021 are not improper character evidence as the Government argues in its motion (at 8-10). Instead, those actions are directly relevant to whether his conduct on January 7, 2021 satisfies the elements of the charged offenses.

Consistent with the charged offenses, applicable jury instructions, and controlling Supreme

---

[1] As explained by agents in their recorded interview of Officer Riley, their concern was that Officer Riley was a capitol police officer who was speaking to someone who was at the Capitol on January 6, 2021. FBI reports reflect that the U.S. Attorney's Office initially tasked agents to investigate whether Officer Riley was part of a "conspiracy," which never occurred and there are no facts to support. Evidence about how an investigation was conducted is relevant to the jury's determination of whether the information obtained in that investigation is complete and reliable. *See*, *e.g.*, *United States v. Sager*, 227 F.3d 1138, 1145-46 (9th Cir. 2000) (holding that the district court erred when it instructed the jury not to consider defects in the government's investigation, noting that "[t]o tell the jury that it may assess the product of an investigation, but that it may not analyze the quality of the investigation that produced the product, illogically removes from the jury potentially relevant information").

Court precedent, the Government must establish at trial that Officer Riley obstructed a grand jury proceeding and not an investigation,[2] and when doing so, Officer Riley contemplated a particular, foreseeable grand jury proceeding connected to the alleged interference with the grand jury's ability to obtain Mr. Hiles' partial Facebook post. *See* Def.'s Mot. at 10-15 (D.E. 34).[3] The Government must also establish that Officer Riley "knew or should have known" that the specific grand jury proceeding "was pending or was likely to be instituted."[4]

Count One of the Indictment is brought pursuant to 18 U.S.C. § 1512(b)(2)(B), which makes it a felony offense for:

---

[2] *See United States v. Sandlin*, No. 21-cr-88-DLF, 2021 WL 5865006, at *3 (D.D.C. Dec. 10, 2021) ("[N]either FBI investigations, nor internal agency investigations qualify as 'official proceedings.'") (citations omitted); *United States v. Sutherland*, 921 F.3d 421, 425-26 (4th Cir. 2019) ("FBI investigations[] are not official proceedings."); *United States v. Ermoian*, 752 F.3d 1165, 1171 (9th Cir. 2013) (finding an FBI investigation not to be an official proceeding); *United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019) (same); *United States v. Simpson*, No. 3:09-cr-249, 2011 WL 2880885, at *25-28 (N.D. Tex. Jul. 15, 2011) (same); *United States v. Guertin*, No. 21-cr-262 (TNM), 2022 WL 203467, at *9 (D.D.C. Jan. 24, 2022) (citing *Ermoian*, 752 F.3d at 1171, as "holding a criminal investigation is not an 'official proceeding,' even though it might lead to an 'official proceeding' like a federal grand jury or criminal trial").

[3] *See, e.g.*, *Arthur Andersen L.L.P. v. United States*, 544 U.S. 696, 707-08 (2005) (concluding that to satisfy the elements of § 1512(b), the Government must prove beyond a reasonable doubt that the defendant "ha[d] in contemplation [a] particular official proceeding" when he or she attempted to interfere with the specific evidence or witness); *United States v. Vampire Nation*, 451 F.3d 189, 205-06 (3d Cir. 2006) ("the touchstone for the nexus requirement," "is an act taken that would have the natural and probable effect of interfering with a judicial or grand jury proceeding that constitutes the administration of justice; that is, the act must have a relationship in time, causation, or logic with the judicial proceedings" (quoting *United States v. Quattrone*, 441 F.3d 153, 171 (2d Cir. 2006))); *United States v. Lonich*, 23 F.4th 881, 905 (9th Cir. 2022) (requiring a "showing of nexus," namely that "(1) the obstructive conduct be connected to a specific official proceeding . . . that was (2) either pending or was reasonably foreseeable to [the defendant] when he engaged in the conduct" (citation and punctuation omitted)).

[4] *See, e.g.*, Third Circuit Model Criminal Jury Instruction, No. 6.18.1512B (February 2021) https://www.ca3.uscourts.gov/sites/ca3/files/2020%20Chap%206%20Obstruction%20revisions %20final.pdf, last visited August 15, 2022.

**(b)** Whoever knowingly uses intimidation, threatens, or ***corruptly*** persuades another person, or attempts to do so, or engages in misleading conduct toward another person, ***with intent*** to —

**(2)** cause or induce any person to —

**(B)** alter, destroy, mutilate, or conceal an object with intent to impair the object's integrity or availability for use in an official proceeding[.]

Indictment, ¶ 20 (emphasis added).

Count Two of the Indictment is brought pursuant to 18 U.S.C. § 1512(c)(1), which makes

it a felony offense for:

**(c)** Whoever ***corruptly*** —

**(1)** alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with ***the intent*** to impair the object's integrity or availability for use in an official proceeding[.]

*Id.* ¶ 22 (emphasis added).

Red Book Instruction 3.101 — *Proof of State of Mind* provides:

Someone's intent or knowledge ordinarily cannot be proved directly, because there is no way of knowing what a person is actually thinking, but you may infer someone's intent or knowledge from the surrounding circumstances. You may consider any statement made or acts done or omitted by the Defendant, and all other facts and circumstances received in evidence which indicate his intent and/or knowledge. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial. You should consider all the circumstances in evidence that you think are relevant in determining whether the government has proved beyond a reasonable doubt that the Defendant acted with the necessary state of mind.

Criminal Jury Instructions for the District of Columbia ("Red Book"), No. 3.101 (5th ed. 2021).

Officer Riley's extensive career as a law enforcement officer evinces his lack of intent to

obstruct a grand jury proceeding. In that experience, Officer Riley was aware of felony versus

misdemeanor conduct and the role of a grand jury investigation (and the necessity of an Indictment

for felony cases). Mr. Hiles' sanitized statements, first in his Facebook post and then in his

messages to Officer Riley, regarding his purportedly innocent conduct on January 6, 2021 did not establish conduct subject to a felony prosecution. Even after the true account of Mr. Hiles' actions was revealed, Mr. Hiles was not charged with a felony, nor was he ever the subject of a grand jury investigation. Moreover, his conduct was historically never prosecuted as a felony, nor was it after the events of January 6, 2021.

In addition, Officer Riley's actions did not result in evidence being unavailable to the grand jury. Mr. Hiles had a public Facebook account and hundreds of friends on Facebook. Given that Mr. Hiles' posts were stored on Facebook's server and reviewed, liked, and forwarded by numerous other Facebook users (and preserved because of preservation requests from the Government), there was no actual or contemplated impairment of the "integrity" of any Facebook post. The events at (and inside) the U.S. Capitol on January 6, 2021 were also the most videotaped event in the history of the United States, with surveillance cameras, of which Officer Riley was well aware, as well as, the cameras on cellphones of individuals present that day.

Finally, Officer Riley's contemporaneous posts condemning the attack on the U.S. Capitol, his noble law enforcement actions on January 6, 2021 and continuing until his retirement, his statement to Mr. Hiles that it was "fine" that Mr. Hiles talked to the FBI, and his truthful statements to law enforcement when he was surreptitiously recorded are all inconsistent with any intent to obstruct anything. This includes a future grand jury proceeding for conduct that did not constitute felony conduct, was not historically charged as such, and did not, in fact, result in felony charges for Mr. Hiles or a grand jury proceeding directed at his conduct.[5]

---

[5] As the referenced charges have an element of corrupt intent, Officer Riley's reputation for honesty is directly relevant to that ultimate issue before the jury. Officer Riley's subjective knowledge (from his years of experience) as to the consequences to his employment, his legacy as a Capitol Police officer, and his ability to provide for his family, if he obstructed justice, is relevant

In its motion (at 9), the Government analogizes Officer Riley to a bank robber, suggesting that his conduct prior to and on January 6, 2021 is as irrelevant to the alleged obstruction as "the fact that a person did not rob a bank on one day is . . . to determining whether he robbed a bank on another[.]" To the contrary, in the Government's analogy, the defense would be able to present evidence that Officer Riley spent the hours before the robbery protecting the bank and assisting its tellers as he had done for over twenty years; that he never misappropriated anything in his years at the bank; and that his knowledge and training at the bank, established his subjective belief that there was no robbery at all — all of which would have a "tendency" to undermine the Government's proof that Officer Riley allegedly committed a bank robbery.

The Government mistakenly relies on the D.C. Circuit's decision in *United States v. Washington*, 106 F.3d 983 (D.C. Cir. 1997), as authority for why Officer Riley should be precluded from presenting "instances of prior good conduct, including any actions taken in the course of his official duties on or before January 6, 2021." Mot. at 8-9 (D.E. 39). As a preliminary matter, in *Washington*, the D.C. Circuit noted that the Supreme Court permits a defendant to "introduce affirmative testimony that the general estimate of his character is so favorable that the jury may infer that he would not be likely to commit the offense charged" and such testimony "alone may be enough to raise a reasonable doubt of guilt." 106 F.3d at 999 (quoting *Michelson v. United States*, 335 U.S. 469, 476 (1948)); *see also United States v. Weber*, 21-cr-28-M-DLC, 2022 WL 2463039, at *3-4 (D. Mont. Jul. 6, 2022) ("[S]ubject-lawfulness or law-abidingness-is the sort of character trait generally admissible under Rule 404(a)(2)(A) and is "always relevant" (citing *United States v. Diaz*, 961 F.2d 1417, 1419 (9th Cir. 1992)); *United States v. Hewitt*, 634 F.2d 277,

_____

evidence in determining whether Officer Riley believed or desired to obstruct a grand jury proceeding on the dates alleged in the Indictment.

279 (5th Cir. 1981) (punctuation omitted)). Addressing the merits of the excluded evidence in *Washington*, the defendant, a police officer, sought to introduce into evidence "commendations" that he received to show his "dedication, aggressiveness and assertiveness in investigating drug dealing and carjacking." *Washington*, 106 F.3d at 999-1000. The D.C. Circuit found that the district court was within "its discretion" to exclude the commendations, based on the Government's "persuasive[] argue[ment]" that they were not "pertinent" to the defendant's "supposed lack of predisposition to engage in the corrupt criminal activity with which he was charged" and that, even if the district court erred, it was harmless. *Id. Washington* is far from persuasive precedent that any evidence of Officer Riley's prior conduct must be excluded.

When the defense provided detailed information regarding Officer Riley's actions on January 6, 2021, which included responding to reports of explosives and an injured officer, the Government initially refused to provide relevant video from that day. Officer Riley filed a motion to compel, and the Court Ordered the Government to make the video available (*see* May 1, 2022 Min. Order). The Government, however, claimed that it could not locate Officer Riley in any high-definition video, even after Officer Riley provided a detailed description of his actions. *See* May 19, 2022 Ltr. at 1-4 (D.E. 36-1) (providing extremely detailed description of events undertaken by Officer Riley on January 6, 2021). Officer Riley was forced to go to the FBI and identify himself and his vehicle at multiple locations on Capitol Grounds during the events that he previously described to the Government.

Consistent with his detailed letter (D.E. 36-1) and corroborated by video, on January 6, 2021, Officer Riley was performing his Capitol Police duties as required and continued to do so for nearly nine-months thereafter, with absolutely no concern by the Government that Officer Riley posed danger to anyone or had the ability or intent to obstruct anything (further demonstrated

by his assignment to sensitive security missions and confirmed by his exemplary service during that period). The Government now seeks to exclude this evidence from trial as irrelevant and prejudicial. It is not. This information has a tendency to undermine the Government's allegation that Officer Riley obstructed a federal grand jury proceeding, and accordingly, Officer Riley should be entitled to present this evidence as part of his constitutional right to a "meaningful opportunity to present a complete defense." *Holmes*, 547 U.S. at 324; *Crane*, 476 U.S. at 690.

In the end, it is the jury that determines guilt and innocence, and absent a substantial showing of prejudice or confusion, the jury should be entitled to have the full set of "facts" before it when it is evaluating the charges in this case.

## CONCLUSION

For all these reasons, Officer Riley respectfully requests an Order denying in part the Government's omnibus motion *in limine*.

Dated: August 15, 2022                          Respectfully submitted,

SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC

    /s/ Christopher Macchiaroli
Christopher Macchiaroli (D.C. Bar No. 491825)
1750 K Street, NW, Suite 810
Washington, D.C. 20006
Telephone: (202) 539-2444
Facsimile:  (410) 547-2432
Email: cmacchiaroli@silvermanthompson.com

*Counsel for Michael Angelo Riley*