```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                  EASTERN DISTRICT OF VIRGINIA
                      Alexandria Division

UNITED STATES OF AMERICA,         )
                                  )
                   Plaintiff,     )
                                  )
      v.                          )    CRIMINAL ACTION
                                  )
WILLIAM J. JEFFERSON,             )    1:07 CR 209
                                  )
                   Defendant.     )
_____ __ )
```

REPORTER'S TRANSCRIPT

JURY TRIAL

Thursday, July 30, 2009

---

BEFORE:        THE HONORABLE T.S. ELLIS, III
               Presiding

APPEARANCES:   OFFICE OF THE UNITED STATES ATTORNEY
               BY:  MARK LYTLE, AUSA
                    REBECCA BELLOWS, AUSA
                    CHARLES DUROSS, SAUSA

                  For the Government

               TROUT CACHERIS, PLLC
               BY:  ROBERT P. TROUT, ESQ.
                    AMY B. JACKSON, ESQ.
                    GLORIA B. SOLOMON, ESQ.

                  For the Defendant

                         ---

               MICHAEL A. RODRIQUEZ, RPR/CM/RMR
                    Official Court Reporter
               USDC, Eastern District of Virginia
                    Alexandria, Virginia



INDEX


PRELIMINARY MATTERS                                    3

JURY INSTRUCTIONS BY THE COURT                        15

          (Court recessed)


                              ---

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

Case 1:07-cr-00209-ABJ Document 181-1 Filed 09/13/22 Page 3 of 143

<u>PROCEEDINGS</u>

(Court called to order at 9:36 a.m.)

THE COURT: All right. Good morning. The record will reflect that this is United States against Jefferson, 07- 209, and that counsel and the defendant are present and prepared to proceed.

PRELIMINARY MATTERS

THE COURT: One matter before we proceed -- we are missing a juror anyway -- I will not, of course, recite the overt acts. I will simply tell them they will have the overt acts.

The parties have reviewed these. I won't review each of the monetary transactions. They will have those. Or the communicate for Counts 5 through 10.

Now, the racketeering acts, I don't plan to read, either. But I am a little puzzled by what has been submitted, because this will go back to the jury room. These are allegations, which I will make clear to them. But it only covers 1B, 2B, 3B, not a.

What's the rationale for that?

ATTORNEY LYTLE: There were two racketeering acts. Each racketeering act was broken into a and B. A was the bribery count, and B was the wire or mailing. So the a did not a wire or mailing associated with it, because it was

1    just bribery.

2         Your Honor, we could change that, and add --

3         THE COURT:  They need to find a pattern of

4    racketeering activity.

5         ATTORNEY LYTLE:  That's right.

6         THE COURT:  I don't want to read to them all

7    the allegations relating to racketeering activity.  But they

8    need to know what the government has alleged to be

9    racketeering activity, so they can decide whether it's

10   proven or not proven, as the jury verdict form indicates.

11        This doesn't describe it -- maybe the parties

12   thought I was going to read the racketeering acts to them,

13   but I don't plan to do that.

14        ATTORNEY LYTLE:  I thought the Court was -- in

15   the jury instructions were another table that listed each

16   one, A and B, and the Court was interested in just the wires

17   and mailings for --

18        THE COURT:  Just a moment.  I think I could

19   have easily given that impression.

20        But let me ask you, Mr. Trout -- let's see.

21   What page is that on?

22        ATTORNEY TROUT:  Your Honor, could I ask

23   Ms. Solomon to address this?

24        THE COURT:  Yes, of course.

25        ATTORNEY LYTLE:  If the Court please, we could

1     easily adjust that fairly quickly, your Honor.

2               THE COURT:  All right.  Let me be more

3     explicit.  Where is -- the chart is where now?

4               The chart is on --

5               ATTORNEY LYTLE:  I think it's on Court's 125.

6               THE COURT:  It's on 125.

7               Now, I had not planned to read this, but rather

8     to refer -- to tell them that the alleged racketeering acts

9     will be submitted to them; will give each of these a court

10     exhibit number, and they will have those.  They will have to

11     follow the Court's instructions.

12               Ms. Solomon, what's your view?

13               (Pause.)

14               THE COURT:  I take it you are not eager to have

15     me read all of them, either.

16               ATTORNEY SOLOMON:  No, your Honor, definitely

17     not.  Certainly not -- not with the way it's drafted

18     currently.  We had objected to the argumentative nature of

19     the heading.

20               THE COURT:  Well, that's the way the indictment

21     is framed.

22               Now, I will tell them that these are

23     allegations from the indictment.  But that's what they have.

24     That's what they have to prove.

25               What would you suggest, Ms. Solomon, about --

1    in other words, when I get to page 125 I will state that the

2    indictment alleges 12 acts of racketeering, and that these

3    will be set forth in a Court Exhibit Number -- whatever it

4    is -- 8 or 9 or 4 or 5, whatever it is; and that rather than

5    my reading to them these allegations that come from the

6    indictment, they are in these documents in this court

7    exhibit, and that's the description of the government's

8    allegations of racketeering acts; and then not read them,

9    but go on to give them instructions with respect to that.

10          ATTORNEY SOLOMON:  Yes, your Honor.  We would

11   maintain our objection to the chart going the way it is, but

12   with that objection, this -- what you propose you are going

13   to read to them --

14          THE COURT:  What chart going the way it is?

15          ATTORNEY SOLOMON:  The chart of the

16   racketeering acts, which recites in everything, "defendant's

17   solicitation of bribes from," "defendant's solicitation of

18   bribes from."

19          THE COURT:  All right.

20          Mr. Lytle, we can simply say those are the

21   allegations.

22          ATTORNEY LYTLE:  Yeah.  I think that's what we

23   have been over before, your Honor.

24          Your Honor, I could suggest, I can take this

25   chart and block and move the wires from right under 1B, 2 B,

1    and so forth.  That would make it easier.

2                    THE COURT:  Well, you've got Count 16.  It's

3    not complete, because it only has B, right?

4                    ATTORNEY LYTLE:  Correct, your Honor.

5                    THE COURT:  But what you can do is to say,

6    where it says "The government alleges that for the purpose

7    of executing a scheme and artifice to defraud" -- you see at

8    the beginning of each?

9                    ATTORNEY LYTLE:  Are you referring -- is the

10   Court referring to 125 or --

11                   THE COURT:  The one that's here.  I don't want

12   to read -- the one on 125 isn't adequate.

13                   ATTORNEY LYTLE:  All right.

14                   THE COURT:  So, in other words, do this --

15                   ATTORNEY LYTLE:  I just don't have a copy of

16   the submission with me right now.

17                   THE COURT:  All right.  I'm going to show it to

18   both of you.  And at the beginning of each one, where it

19   says "for the purpose," it will say, "The government alleges

20   that for the purpose..."

21                   ATTORNEY LYTLE:  All right.

22                   THE COURT:  And then you will have to stick in

23   a, too, and put, "The government alleges..."

24                   ATTORNEY SOLOMON:  Your Honor, my understanding

25   of that submission was that the government was providing a

1     list of the wires it understood it had to prove for each of

2     the honest services portion of each racketeering act.  I did

3     not understand that to be a summary of each of the

4     racketeering acts.

5            ATTORNEY LYTLE:  I think that's what our

6     understanding was, too.  But --

7            THE COURT:  All right.

8            ATTORNEY LYTLE:  -- your Honor, if that's the

9     only thing going back to the jury, then that ought to have

10    each act in it, so that it shows what they choose from.

11           THE COURT:  Well, it at least ought to say that

12    one of the racketeering acts on each of these is the alleged

13    bribery.

14           Shouldn't it, Ms. Solomon?

15           They have to consider whether the government

16    has proved the racketeering act.  And for each one, part of

17    it was bribery, the other part was honest services wire

18    fraud.

19           ATTORNEY SOLOMON:  Yes.  And it was my

20    impression that the Court was going to take care of that

21    through the instruction, rather than through --

22           THE COURT:  All right.  Tell me how you thought

23    I was going to do that, and I will be glad -- perhaps I can

24    do it that way.  It just means reading pages 125 and 126,

25    which seems to me to be tedious, but --

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    ATTORNEY LYTLE:  I'm just concerned that if the

2    one document that's going back to the jury just only has the

3    B's, and that's all they have, they might not recognize that

4    there is A's.  I think that makes sense, to have it

5    complete.  And it wouldn't that but a second to add those

6    in.

7    THE COURT:  Well, all it has to say would be

8    "the alleged bribery of a public official."

9    ATTORNEY LYTLE:  Yes, your Honor.

10   THE COURT:  For a on each one.

11   ATTORNEY LYTLE:  Yes.

12   THE COURT:  The other one would say, "The

13   government alleges that," and then I would tell the jury

14   that they essentially come from the indictment, which is

15   neither proof nor evidence, and the government, in

16   accordance with the instructions, has to prove those.

17   That would save me from reading essentially

18   that material, pointing out that they are allegations as I

19   read them.

20   Any problem with that, Ms. Solomon?

21   They have to have the racketeering acts if they

22   are required to prove them.  In most cases, the indictment

23   goes back to the jury.  I typically try not to do that, and

24   I granted your motion not to do that in this case.

25   But they have to have some of this material,

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    because that's -- it would be unfair to the government if

2    they had all these overt acts and these racketeering acts

3    and they are required to have them proven, and then the jury

4    gets back there and says, "Wait a minute.  What are all

5    these overt act and racketeering acts?"

6              ATTORNEY SOLOMON:  Your Honor, may I have one

7    minute to confer.

8              THE COURT:  Yes.

9              (Counsel conferring.)

10             THE COURT:  Do we have everybody, Mr. Wood?

11             THE MARSHAL:  Yes, sir.

12             THE COURT:  All right.

13             ATTORNEY SOLOMON:  Your Honor, our position

14   would be that the simplest thing would be for the jury to

15   get a list essentially like the chart that's on page 125,

16   without extensive descriptions of the bribery or the wire

17   fraud schemes alleged.

18             With the Court's instructions to the jury that

19   these are the allegations of the government and are not

20   proof, we would be satisfied with that, maintaining the

21   objection that we have to the language of the chart.

22             THE COURT:  Mr. Lytle, how about the list

23   that's on 125 and 126?

24             ATTORNEY LYTLE:  Yes, we would agree to that,

25   but we would ask that we could add the wire that's alleged.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

```
 1    I could add that underneath 1B or 2B of each one, and I
 2    think that would --
 3              THE COURT:  All right.  Do it that way.
 4              ATTORNEY LYTLE:  -- that would formalize it, so
 5    that the jury understands what they have to decide.
 6              THE COURT:  Right.
 7              ATTORNEY LYTLE:  One thing that I would ask --
 8              THE COURT:  Wait a minute.  Let's deal with
 9    this.
10              ATTORNEY LYTLE:  All right.
11              THE COURT:  All right.  I think -- I am either
12    going to read all of these or we will find so shorthand way
13    of doing it.  And right now, I think what's on page 125 and
14    126, if they add what the specific wire is for each of
15    these, that the government is otherwise -- is otherwise okay
16    with it, except at the top, Mr. Lytle, instead of
17    "racketeering act" put "alleged racketeering acts," "alleged
18    racketeering acts."  And I think that would be sufficient.
19              Any objection to that, Ms. Solomon?
20              ATTORNEY SOLOMON:  Your Honor, we would request
21    also the word "alleged" before the word "solicitation" in
22    each title.
23              THE COURT:  No, I don't -- it's all alleged.
24    And I am going to tell them it comes from the indictment,
25    which isn't proof or evidence of guilt of any kind
```

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    whatsoever.

2              Anything else?

3              ATTORNEY LYTLE:  Just to clarify, your Honor,

4    the way it's alleged in the indictment for each racketeering

5    act, it says, "for each racketeering act" -- one, for

6    instance, says, "any one of which alone constitutes the

7    commission of racketeering act 1."

8              So they could find a or B to satisfy one

9    racketeering act.  So I would ask that we reflect that in

10   the specific verdict form, just adjust that, so it says they

11   could find a or B to satisfy one racketeering act.

12             THE COURT:  And I can say that in the

13   instructions, as well.

14             ATTORNEY LYTLE:  That's, that's, that's the

15   only follow -up we would have.

16             THE COURT:  Mr. Trout?

17             ATTORNEY TROUT:  Your Honor, the only other

18   thing we would ask with respect to the list of overt acts, I

19   think the Court is aware of our concerns about that going

20   back to the jury, but we would ask that the Court instruct

21   them --

22             THE COURT:  You are already fortunate the whole

23   indictment isn't going back.

24             ATTORNEY TROUT:  I understand that, your Honor.

25             THE COURT:  The law permits that.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

| | |
|---|---|
| 1 | ATTORNEY TROUT:  I understand that, your Honor. |
| 2 | What I am asking for is that the jury be |
| 3 | instructed that they should only consult the list of overt |
| 4 | acts if they first find unanimously that there was a |
| 5 | conspiracy, and that they are not to consult the list as a |
| 6 | guide to the evidence -- |
| 7 | THE COURT:  No, they can consider all the |
| 8 | evidence. |
| 9 | ATTORNEY TROUT:  Well, I understand they can |
| 10 | consider all the evidence, but -- |
| 11 | THE COURT:  And I don't tell them in what step |
| 12 | they have to do it, what steps.  I don't tell them to do |
| 13 | this or that first.  I gave the parties an opportunity to |
| 14 | have a lengthy juror questionnaire, which would give them an |
| 15 | analytical path. |
| 16 | No, I won't do that.  Your objection is noted. |
| 17 | It's overruled. |
| 18 | ATTORNEY TROUT:  Would the Court instruct them |
| 19 | that the list of overt act is not evidence? |
| 20 | THE COURT:  Oh, yes.  I told you that ten |
| 21 | minutes ago. |
| 22 | ATTORNEY TROUT:  Thank you your Honor. |
| 23 | THE COURT:  All right. |
| 24 | Bring the jury in. |
| 25 | Oh, and the -- just a moment, Mr. Wood.  Just a |

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    moment.

2              Do I have all the redacted stipulations?

3              ATTORNEY LYTLE:  Yes, your Honor.  There

4    is [sic] five of them, I believe; one, and the supplemental

5    one, five and six and nine.  Those are the redacted ones.

6    The other ones required no redaction.

7              THE COURT:  All right.  So there are a total of

8    nine stipulations?

9              ATTORNEY LYTLE:  Yes, your Honor.

10             THE COURT:  All right.

11             And you all have seen those, Ms. Solomon?

12             ATTORNEY SOLOMON:  Yes, your Honor.

13             THE COURT:  All right.

14             Bring the jury in.

15             (Jury impaneled at 9:52 a.m.)

16             THE COURT:  Good morning, ladies and gentlemen.

17             All right.  We will begin, as always, with the

18   taking of the roll.

19             (Roll call, all jurors present.)

20             THE COURT:  Good morning again.

21             Let me once again confirm that you were all

22   successful in avoiding discussion or investigation of this

23   matter in any way.

24             (Jurors indicating.)

25             THE COURT:  Good.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1 Now, this morning I will give you instructions

2 and then permit you to retire and deliberate on your

3 verdict.  And you may deliberate as long or as little as you

4 like.

5 Now, these instructions will not be provided to

6 you in written form because they are simply not in a written

7 form that is decipherable.  But they will be tape recorded.

8 And I may make an effort later to do this -- they are quite

9 lengthy, and I think they will take me about an hour and a

10 half, perhaps a bit longer.  And they will be tape recorded,

11 and you will have the tape recordings with you, together

12 with all the exhibits and the jury verdict form.

13 JURY INSTRUCTIONS BY THE COURT

14 THE COURT:  Members of the jury, now that you

15 have heard the evidence and the arguments of counsel, it

16 becomes my duty to give you instructions as to the law

17 applicable to this case.

18 And all of the instructions of law given to you

19 by the Court -- those given to you at the beginning of the

20 trial, those given to you during the trial, and these final

21 instructions -- must guide and govern your deliberations.

22 It is your duty to follow the law as stated by

23 the Court and to apply the law to the facts as you find them

24 from the evidence in the case.

25 Now, as I told you yesterday, counsel have

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    quite properly referred to some of the governing rules of

2    law in their arguments.  However, if any difference appears

3    to you between the law as stated by counsel and that stated

4    by the Court in these instructions, of course you are to be

5    governed by the Court's instructions to you on the law.

6              Nothing I say in these instructions is to be

7    taken as an indication that I have any opinion about the

8    facts of the case, or what that opinion is.  It's not my

9    function to determine the facts; it's your function to do

10   that.

11             You are not to single out one instruction alone

12   as stating the law, but must consider the instructions as a

13   whole.  Neither are you to be concerned with the wisdom of

14   any rule of law stated in these instructions.

15             Regardless -- Neither are you to be concerned

16   with the wisdom of any rule of law stated by the Court.

17   Regardless of any opinion you may have as to what you think

18   the law ought to be, it would be a violation of your sworn

19   duty if you ignore the law as I give it to you and applies

20   some other law.

21             It would also be a violation of your sworn duty

22   as jurors of the facts to base a verdict upon anything but

23   the evidence in the case.

24             Now, you have been chosen as jurors for this

25   trial in order to evaluate all of the evidence received and

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1   to decide each of the factual questions presented by the

2   allegations brought by the government in the indictment and

3   the plea of not guilty by the defendant.

4        In deciding the issues presented to you for

5   decision in this trial, you must not be persuaded by bias,

6   prejudice or sympathy for or against either of the parties

7   in this case, or by any public opinion.  You should not be

8   influenced by any persons race, color, religion, national

9   ancestry or sex.

10        Justice through trial by jury must always

11   depend upon the willingness of each individual juror to seek

12   the truth as to the facts from the same evidence presented

13   to all the jurors, and to arrive at a verdict by applying

14   the same rules of law given to you by the Court.

15        Now, as I told you at the outset, the law

16   presumes a defendant to be innocent of crime.  Thus a

17   defendant, although accused, begins a trial with a clean

18   slate, with no evidence against him.  And the law permits

19   nothing but legal evidence presented before the jury to be

20   considered in support of the charge against the accused.

21        So the presumption of innocence alone is

22   sufficient to acquit a defendant -- the presumption of

23   innocence alone is sufficient to acquit a defendant, unless

24   the jurors are satisfied beyond a reasonable doubt of the

25   defendant's guilt after careful and impartial consideration

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1  of all the evidence in the case.

2  It is not required that the government prove

3  guilt beyond all possible doubt.  The test is one of

4  reasonable doubt.  And the jury will remember that a

5  defendant is never to be convicted on mere suspicion or

6  conjecture.

7  The burden is always on the prosecution to

8  prove guilt beyond a reasonable doubt.  And this burden

9  never shifts to a defendant, for the law never imposes on a

10  defendant a criminal case the burden or duty of calling any

11  witnesses or producing any evidence.

12  So if the jury, after careful and impartial

13  consideration of all the evidence in the case, has a

14  reasonable doubt that the defendant is guilty of a charge,

15  they must acquit as to that charge.

16  There is nothing particularly different in the

17  way that a juror should consider the evidence in a trial

18  from that in which any reasonable and careful person would

19  treat any very important question that must be resolved by

20  examining facts, opinions and evidence.  You are expected to

21  use your good sense in considering and evaluating the

22  evidence in the case, for only those purposes for which it

23  has been received, and to give such evidence a reasonable

24  and fairly construction in the light of your common

25  knowledge of the natural tendencies and inclinations of

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

Case 1:07-cr-00209-TSE Document 481-1 Filed 09/13/22 Page 19 of 143

1    human beings.

2           If a defendant be proved guilty beyond a

3    reasonable doubt, say so; if not proved guilty beyond a

4    reasonable doubt, say so.

5           Keep constantly in mind that it would be a

6    violation of your sworn duty to base a verdict upon anything

7    other than evidence received in the case and the

8    instructions by the Court.  And remember, as I just told you

9    a minute ago, that the law never imposes on a defendant in a

10    criminal case the burden or duty of calling any witnesses or

11    producing any evidence, because the burden of proving guilt

12    beyond a reasonable doubt is always with the government.

13           Now the evidence in this case consists of the

14    sworn testimony of the witnesses regardless of who may have

15    called them, all exhibits received in evidence regardless of

16    who may have produced them, all facts which may have been

17    agreed or stipulated to, and all facts and events which may

18    have been judicially noticed.

19           And you will recall that I did take judicial

20    notice of some facts relating to geography, as to whether

21    they were within the Eastern District of Virginia.  And you

22    will have all of the exhibits in the jury room, and you will

23    have -- all of the admitted exhibits, and you will have all

24    of the stipulations in the jury room.

25           Now, when the attorneys on both sides stipulate

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    or agree as to the existence of a fact, you may accept the

2    stipulation as evidence and regard the fact as proved.  You

3    are not required to do so, however, since you are the sole

4    judges of the facts of the case.

5              And the Court took judicial notice of certain

6    facts and events.  And when the Court declares that it has

7    taken judicial notice of some fact or event, you may accept

8    the Court's declaration as evidence and regard as proved the

9    fact or event which ha been judicially noticed.  You are not

10   required to do so, however, again, since you are the sole

11   judges of the facts.

12             Now, any proposed testimony or proposed exhibit

13   to which an objection was sustained by the Court, and any

14   testimony or exhibit ordered stricken by the Court, must be

15   entirely disregarded.

16             And anything you may have seen or heard outside

17   the courtroom, of course, is not proper evidence and must be

18   entirely disregarded.

19             Questions, objections, statements or arguments

20   of counsel are not evidence in the case.

21             And you are to base your verdict only on the

22   evidence received in the case.

23             Now, in your consideration of the evidence

24   received, however, you are not limited to the bald

25   statements of the witnesses or to the bald assertions in the

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    exhibits.  In other words, you are not limited solely to

2    what you see and hear as the witnesses testify or as the

3    exhibits are admitted.  You are permitted to draw, from the

4    facts that you find have been proved, such reasonable

5    inferences as you feel are justified in the light of your

6    experience and common sense.

7              There are two types of evidence, as I told you

8    at the outset, which are generally received or presented

9    during a trial.  There is direct evidence and circumstantial

10   evidence.

11             Now, direct evidence is the testimony of a

12   person who asserts or claims to have actual acknowledge of a

13   fact, such as an eyewitness.  Circumstantial evidence is

14   proof of a chain of facts and circumstances indicating the

15   existence of a fact.

16             The law makes no distinction between the weight

17   or value to be given to either direct or circumstantial

18   evidence, nor is a greater degree of certainty required of

19   circumstantial evidence than of direct evidence.

20             You should weigh all the evidence in the case,

21   and after weighing all the evidence, if you are not

22   convinced of the guilt of this defendant beyond a reasonable

23   doubt, you must find the defendant not guilty.

24             Now, inferences which you may draw are simply

25   deductions or conclusions which reason and common sense lead

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    the jury to draw from the evidence in the case.

2              Testimony and exhibits can be admitted into

3    evidence during a trial only if certain criteria or

4    standards are met.  It's the sworn duty of the attorney on

5    each side of the case to object when the other side offers

6    testimony or an exhibit which that attorney believes is not

7    properly admissible under the rules of law.

8              Only by raising an objection can a lawyer

9    request and obtain a ruling from the Court on the

10   admissibility of the evidence being offered by the other

11   side.

12             You should not be influenced against an

13   attorney or his or her client because an attorney has made

14   objections.

15             Do not attempt, moreover, to interpret my

16   rulings on objections as somehow indicating how I think you

17   should decide the case.  I am simply making a ruling on a

18   legal question.

19             By allowing testimony or other evidence to be

20   introduced over the objections of an attorney, the Court

21   does not, unless I expressly stated, indicate any opinion as

22   to the weight or effect of such evidence.

23             As stated before, you as jurors are the sole

24   judges of the credibility all of the witnesses and the

25   weight and effect of all the evidence.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1          On the other hand, where the Court has

2    sustained an objection to a question addressed to a witness,

3    jurors must disregard the statement entirely.  You may draw

4    no inference from the wording of the question or speculate

5    as to what the witness would have said had he or she been

6    permitted to answer the question.

7          Now, it's the duty of the Court to admonish an

8    attorney who, out of zeal for his or her cause, does

9    something which I feel is not in keeping with the rules of

10   evidence or procedure.  You are to draw absolutely no

11   inference against the side to whom an admonition of the

12   Court may have been addressed during the trial of this case.

13         And as I told you during the trial, I

14   occasionally asked questions of a witness.  Do not assume

15   that I hold any opinion on the matters to which my questions

16   may relate.  The Court may ask a question simply to clarify

17   a matter, not to help one side of the case or hurt the

18   other.

19         Remember at all times, you as jurors are the

20   sole judges of the facts of the case.

21         In certain instances, evidence may have been

22   admitted only for a particular purpose, and not generally

23   for all purposes.  For the limited purpose for which this

24   evidence has been received, you may give it such weight as

25   you may feel it deserves.  You may not, however, use this

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1   evidence for any other purpose or against any party not

2   specifically mentioned.

3           Now, recordings of conversations have been

4   received in evidence and have been played for you.

5   Typewritten transcripts of these recorded conversation have

6   been furnished to you.  And you'll have those in the jury

7   room, as well.  These typewritten transcripts of the

8   conversations are being given to you solely for your

9   convenience in assisting you in following the conversation

10  or in identifying the speakers.

11          The recordings themselves are evidence in the

12  case, and the typewritten transcripts are not evidence.

13  What you hear on the recordings is evidence.  What you read

14  on the transcript is not.

15          If you perceive any variation between the two,

16  you will be guided solely by the recordings and not by the

17  transcripts.

18          If you cannot, for example, determine from the

19  recordings that particular words were spoken, or if you

20  cannot determine from the recording who said a particular

21  word or words, you must disregard the transcripts insofar as

22  those words or what the speaker -- or that speaker are

23  concerned.

24          Now, the rules of evidence ordinarily do not

25  permit a witness -- or do not permit witnesses to testify as

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1   to their own opinions or their own conclusions about issues

2   in the case.

3        Now an exception to this rule exists as to

4   those witnesses who are described as expert witnesses.  An

5   expert witness is someone who, by education or by

6   experience, may have become knowledgeable in some technical,

7   scientific or very specialized area.  And if such

8   acknowledge or experience may be of assistance to you in

9   understanding some of the evidence or in determining a fact,

10  an expert witness in that area may state an opinion as to

11  the relevant and material matter in which he claims to be an

12  expert.

13       You should consider the expert opinion received

14  in evidence in this case and give it such weight as you may

15  think it deserves.  You should consider the testimony of the

16  expert witness just as you consider the other evidence in

17  the case.

18       If you should decide that the opinion of an

19  expert is not based on sufficient education or experience,

20  or if you conclude that the reasons given in support of the

21  opinion are not sound, or if you should conclude that the

22  opinion is outweighed by other evidence, you may disregard

23  the opinion in part or in its entirety.

24       And as I have said to you many times, you are

25  the sole judges of the facts in this case.

1    Now, charts and summaries, some were admitted

2    into evidence and some were not.  Charts or summaries have

3    been prepared, either by the defendant or the government,

4    and shown to you during the trial for purposes of explaining

5    facts that are allegedly contained in books, records or

6    other documents which are in evidence in the case.

7    Such charts or summaries are not evidence in

8    the case, or proof of any fact, if they haven't been

9    admitted.  Some were admitted some were not.  The ones that

10   were not admitted, they are not evidence.

11   If you find that these charts, the ones that

12   are not evidence, do not correctly reflect the facts or

13   figures shown by the evidence in the case, the jury should

14   disregard the charts or summaries.

15   In other words, such charts or summaries are

16   used only as a matter of convenience for you, and to the

17   extent that you find that they are not, in truth, summary of

18   facts and figures shown by the evidence in the case, you can

19   disregard them entirely.

20   Now, other charts and summaries were admitted

21   into evidence.  And charts or summaries have been prepared,

22   either by defendant or by the government, have been admitted

23   into evidence, and have been shown to you during the trial

24   for purpose of explaining facts that are already contained

25   in books, records or other documents which are evidence in

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

27

1   the case. You may consider the charts and summaries as you
2   would any other evidence admitted during the trial, and give
3   it such weight or importance, if any, as you feel it
4   deserves.
5            Now, as I also mentioned to you yesterday, if
6   any reference by the Court or by counsel to matters of
7   testimony or exhibits does not coincide with your own
8   recollection of that evidence, it is your recollection which
9   should control during your deliberations, and not the
10  statements of the Court or counsel. You are the sole judges
11  of the evidence received in this case.
12           Your decision on the facts of this case should
13  not be determined by the number of witnesses testifying for
14  or against the party. You should consider all the facts and
15  circumstances in evidence to determine which of the
16  witnesses you choose to believe or not believe.
17           You may find that the testimony of a smaller
18  number of witnesses by one side is more credible than the
19  testimony of a greater number of witnesses on the other.
20           And as I have told you before, the law never
21  imposes on a defendant in a criminal case the burden or duty
22  of calling any witnesses or producing any evidence.
23           Now you, as jurors, are the sole and exclusive
24  judges of the credibility of each of the witnesses called to
25  testify in this case, and only you determine the importance

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1     or the weight that their testimony deserves.  And after

2     making your assessment concerning the credibility of a

3     witness, you may decide to believe all of that witness'

4     testimony, only a portion of it, or none of it.

5          In making your assessment, you should carefully

6     scrutinize all of the testimony given, the circumstances

7     under which each witness has testified, and every matter in

8     evidence which tends to show a witness' intelligence, motive

9     to falsify, state of mind, and appearance and manner while

10    on the stand.

11         Consider the witness' ability to observe the

12    matters as to which he or she has testified, and consider

13    whether he or she impresses you as having an accurate memory

14    or recollection of these matters.

15         Consider also any relation a witness may bear

16    to either side of the case, the manner in which each witness

17    might be affected by your verdict, and the extent to which,

18    if at all, each witness is either supported or contradicted

19    by other evidence in the case.

20         Inconsistencies and discrepancies in the

21    testimony of a witness, or between the testimony of

22    different witnesses, may or may not cause you to disbelieve

23    or discredit such testimony.

24         Two or more persons witnessing an incident or

25    transaction may simply see or hear it differently.  Innocent

1    misrecollection, like failure of recollection, is not an

2    uncommon experience.

3          In weighing the effect of a discrepancy,

4    however, always consider whether it pertains to a matter of

5    importance or an insignificant detail, and consider whether

6    the discrepancy results from innocent error or from

7    intentional falsehood.

8          And after making your own judgment or

9    assessment concerning the believability of a witness, you

10   can then attach such importance or weight to that testimony,

11   if any, that you feel it deserves.  You will then be in a

12   position to decide whether the government has proven the

13   charges beyond a reasonable doubt.

14         Now, the testimony of a witness may be

15   discredited or, as we sometimes say, impeached by showing

16   that he or she previously made statements which are

17   different from or consistent with his or her testimony here

18   in court.

19         The earlier inconsistent or contradictory

20   statements are admissible only to discredit or impeach the

21   credibility of the witness, and not to establish the truth

22   of these earlier statements made somewhere other than here

23   during this trial.

24         It is the province of the jury to determine the

25   credibility, if any, to be given the testimony of a witness

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    who has made prior inconsistent or contradictory statements.

2          And as I mentioned to you, if a person is shown

3    to have knowingly testified falsely concerning any important

4    or material matter, you obviously have the right to distrust

5    the testimony of such individual concerning other matters.

6    You may reject all of the testimony of that witness, or give

7    it such weight or credibility as you may think it deserves.

8          Now the testimony of a witness may be

9    discredited or impeached by evidence showing that th witness

10   has been convicted of a felony, a crime for which a person

11   may receive a prison sentence of more than one year.  Prior

12   conviction of a crime that is a felony is one of the

13   circumstances which you may consider in determining the

14   credibility of that witness.  It's the sole and exclusive

15   right of the jury to determine the weight to be given to any

16   prior conviction as impeachment, and the weight to be given

17   to the testimony of anyone who has previously been convicted

18   of a felony.

19         Now, the testimony of certain witnesses must be

20   examined and weighed by the jury with greater care.  This

21   includes, for example, the testimony of an informant,

22   someone who provides evidence against someone else for money

23   or another benefit from the government, or to escape

24   punishment for his or her own misdeeds or crimes, or for

25   other personal reasons or advantage, as well as the

1   testimony of an immunized witness, someone who has been told

2   either that his or her crimes will go unpunished in return

3   for testimony, or that his or her testimony will not be used

4   against him or her in return for that cooperation.

5           You must also examine with greater care the

6   testimony of an alleged accomplice, someone who said he or

7   she participated with another person in the commission of a

8   crime, as well as the testimony of a witness who is

9   testifying pursuant to a plea agreement under which he or

10  she has agreed to cooperate with the government in the hope

11  of obtaining a sentence reduction.

12          The testimony of these particular witnesses

13  must be examined and weighed by the jury with greater care

14  than the testimony of witnesses who are not so motivated or

15  who are appearing in court without the need for such an

16  agreement with the government.

17          The jury must also determine whether the

18  particular witness' testimony has been affected by

19  self-interest or by the agreement he or she has with the

20  government, or by his or her own interest in the outcome of

21  the case, or by prejudice against the defendant.

22          The fact that a witness has entered into a plea

23  of guilty to an offense is not evidence of the guilt of any

24  other person, including the defendant.

25          The defendant in a criminal case has an

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1   absolute right under our Constitution not to testify.  The

2   fact that the defendant did not testify must not be

3   discussed or considered by the jury in any way when

4   deliberating in and arriving at your verdict.  No inference

5   of any kind may be drawn from the fact that the defendant

6   decided to exercise his privilege under the Constitution and

7   did not testify.

8           Now, statements knowingly and voluntarily made

9   by a defendant upon being informed that a crime has been

10  committed or upon being accused of a criminal charge may be

11  considered by a jury.

12          When a defendant voluntarily offers an

13  explanation or voluntarily makes some statement tending to

14  show his or her innocence, and it is later shown that the

15  defendant knew that the statement or explanation was false,

16  the jury may consider this as a showing of consciousness of

17  guilt on the part of the defendant, since it is reasonable

18  to infer that an innocent person does not usually find it

19  necessary to invent or fabricate an explanation or statement

20  tending to establish his innocence.

21          Whether or not evidence as to a defendant's

22  explanation or statement points to a consciousness of guilt

23  on his or her part, and the significant if any to be

24  attached to any such evidence, are matters exclusively

25  within the province of the jury as the sole judges of the

1   facts of this case.

2           In your evaluation of evidence of an

3   exculpatory statement shown to be false, you may consider

4   that there may be reasons fully consistent with innocence

5   that could cause a person to give a false statement showing

6   their innocence.  Fear of law enforcement, reluctance to

7   become involved, and simple mistake may cause a person who

8   has committed no crime to give such a statement or

9   explanation.

10          Now, the indictment which I described to you

11  earlier will not be in the jury room with you.  Portions of

12  it will, as I will describe to you in a moment.  But you

13  should always have in mind that the indictment is but a

14  formal method used by the government to accuse a defendant

15  of a crime.  It is not evidence of any kind against a

16  defendant.

17          The defendant is presumed to be innocent of the

18  crimes charged.  Even though the indictment has been

19  returned against the defendant, the defendant begins with

20  absolutely no evidence against him, and he has pled not

21  guilty to this indictment and therefore denies that he is

22  guilty of the charges.

23          The defendant is not on trial for any acts or

24  conduct not specifically charged in the indictment.  And you

25  are here to determine whether the government has proven the

1    guilt of the defendant for the charges in the indictment

2    beyond a reasonable doubt.  You are not called upon to

3    return a verdict as to the guilt or innocence of any other

4    person or persons.

5         So if the evidence in the case convinces you

6    beyond a reasonable doubt of the guilt of the defendant for

7    the crimes charged in the indictment, you should so find,

8    even though you may believe that one or more other

9    unindicted persons are also guilty.

10        But if any reasonable doubt remains in your

11   mind after an impartial consideration of all the evidence in

12   the case, it is your duty to find this defendant not guilty.

13        A separate crime is charged in each of the

14   counts of the indictment.  Each charge and the evidence

15   pertaining to it should be considered separately by the

16   jury.  The fact that you may find the defendant guilty or

17   not guilty as to one of the offenses charged should not

18   control your verdict as to the other offenses charged.

19        Now, when I describe the charges to you from

20   the indictment, it charges that the offense alleged were

21   committed on or about a certain date.

22        Although it is necessary for the government to

23   prove beyond a reasonable doubt that the offenses were

24   committed on a dated reasonably near the dates alleged in

25   the indictment, it is not necessary for the government to

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1  prove that the offenses were committed precisely on the date

2  charged.

3          The term "knowingly," as used in these

4  instructions to describe the alleged state of mine of the

5  defendant, means that he was conscious and aware of his

6  action or omission, realized what he was doing or what was

7  happening around him, and did not act or fail to act because

8  of ignorance, mistake or accident.

9          The word "willfully," as that term is

10  defined -- or used in the indictment, rather, or in these

11  instructions, means that the act was committed voluntarily

12  and purposely, with the specific intent to do something the

13  law forbids; that is, with a bad purpose, either to disobey

14  or disregard the law.

15          Now, the person need not be aware of the

16  specific law or rule that his conduct may be violating, but

17  he must act with the intent to do something the law forbids.

18          To act corruptly, as used in these

19  instructions, means to act knowingly and dishonestly for a

20  wrongful purpose.

21          Now, the intent of a person or the knowledge

22  that a person possesses at any given time may not ordinarily

23  be proved directly, because there is no way of directly

24  scrutinizing or fathoming the workings of the human mind.

25          So in determining the issue of what a person

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    knew or what a person intended at a particular time, you may

2    consider any statements made or acts done by that person,

3    and all other facts and circumstances received in evidence

4    which may aid you in your determine of that person's

5    knowledge or intent.

6           You may infer, but you are certainly not

7    required to infer, that a person intends the natural and

8    probable consequences of acts knowingly done or knowingly

9    omitted.  It's entirely up to you, however, to decide what

10   facts to find from the evidence received during the trial.

11          Now, intent and motive are different concepts

12   and should never be confused.  Motive is what prompts a

13   person to act or fail to act.  Intent refers only to the

14   state of mind with which the act is done or omitted.

15          Personal advancement, financial gain, for

16   example, are two well-recognized motives of human conduct.

17   These praiseworthy motives may, however, prompt one person

18   to voluntary acts of good, while prompting another person to

19   voluntary acts of crime.

20          Good motive alone is never a defense where the

21   act done or omitted is a crime.  The motive of the defendant

22   is, therefore, immaterial, except insofar as evidence of

23   motive may aid in the determination of the state of mind or

24   intent of the defendant.

25          There has been evidence presented in this trial

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    concerning certain ethical rules promulgated by the US House

2    of Representatives. You are instructed that should you find

3    that the defendant violated these ethical rules, such a

4    violation is not a crime; nor is it, standing alone,

5    evidence that the defendant committed the crimes charged.

6          You may, however, consider evidence of ethical

7    violations along with all the other evidence presented at

8    trial to determine whether the United States has proven the

9    element of intent required to prove the crimes with which

10    the defendant has been charged.

11          Now, at the outset I gave you a brief

12    description or summary of the indictment. You will not have

13    the indictment with you in the jury room, so I am going to

14    remind you of that.

15          There are 16 counts in the indictment. And the

16    government charges the defendant in the indictment with the

17    following crimes.

18          Count 1 is conspiracy to solicit bribes, to

19    deprive citizens of honest services by wire fraud, and to

20    violate the Foreign Corrupt Practices Act. So Count 1 has

21    those three objects. And I'll give you further instructions

22    in a few moments.

23          Count 2 is alleged conspiracy to solicit bribes

24    and to deprive citizens of honest services, wire fraud.

25          Counts 3 and 4 are the substantive counts of

1    solicitation of bribes by a public official.

2              Counts 5 through 10 are allegations of devising

3    a scheme to defraud citizens of honest services by wire

4    fraud.  That's 5 through 10.

5              Count 11 is an allegation that the defendant

6    violated the Foreign Corrupt Practices Act.

7              And Counts 12 through 14 are allegations that

8    the defendant committed violations of money laundering.

9              And Count 15 is an obstruction of justice

10   allegation.

11             And Count 16 is a count alleging racketeering

12   acts.

13             And I'll, I'll describe these to you in greater

14   detail.

15             The government's charges are based on events

16   that took place between August 2000 and August 2005.  And

17   the defendant has pled not guilty to all of those charges.

18             Now we start with Count 1.

19             Count 1 of the indictment charges that from in

20   or about January 2001, through in or about August 2005,

21   within the Eastern District of Virginia, and elsewhere, the

22   defendant did knowingly combine, conspire, confederate and

23   agree, together with Vernon Jackson, Brett Pfeffer and

24   others, known and unknown to the grand jury, to commit the

25   following three offense against the United States.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1     First, bribery; that is, it is alleged that as

2     a public official, the defendant conspired to corruptly

3     demand, seek, receive, accept or agree to receive and accept

4     something of value in return for being influenced in the

5     performance of an official act or acts, in violation of

6     Title 18 US Code, Section 201(b)(2)(A).

7     That's the first object of the conspiracy.

8     The second object of the conspiracy is honest

9     services wire fraud; that is, it is alleged that the

10    defendant conspired to devise a scheme and artifice to

11    defraud and deprive United States citizens and the House of

12    Representatives of their right to the defendant's honest

13    services, through wire fraud, in violation of Title 18,

14    Sections 1343 and 1346 of the US Code.

15    And the third object of the conspiracy charge

16    in Count 1 is an allegation of bribery of a foreign official

17    in violation of the Foreign Corrupt Practices Act, Title 15,

18    US Code, Section 78(dd)(2)(A).

19    Count 1 of the indictment also alleges that the

20    defendant or coconspirator performed an overt act in

21    furtherance of the conspiracy.  And I'll define "further"

22    and "overt act" later in these instructions.

23    Although you will not have the entire

24    indictment with you in the jury room, you will have the

25    portion of the indictment that sets out the overt act

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

40

1    alleged -- overt acts alleged to have been taken in

2    furtherance of the conspiracy in Count 1.

3         That will be marked as Court Exhibit 1.  And as

4    you will see, the overt acts allege that the following

5    persons or entities were involved in the conspiracy the

6    government charges the defendant as being part of in

7    Count 1:  Andrea Jefferson and ANJ, Vernon Jackson and

8    iGate, Dumebi Kachikwu and NDTV, Brett Pfeffer and W2-IBBS,

9    and IBBS, and Suleiman Yahyah and Rosecom, and Atiku

10   Abubakar and Jennifer Douglas Abubakar.

11        Now, the conspiracy that is alleged is a

12   conspiracy in violation of Section 3371 of Title 18, which

13   provides, in pertinent part that, if two or more persons

14   conspire to commit any offense against the United States,

15   and one or more such persons do any act to effect the object

16   of the conspiracy, then an offense against the United States

17   has been committed.

18        Now, Count 1 alleges that the defendant

19   conspired to commit three separate substantive crimes or

20   offenses.

21        Specifically, Count 1 alleges a conspiracy to

22   violate the bribery provisions under Title 18, Section 201,

23   and to violate -- that's number one; number two, to violate

24   the honest services provision under 18 USC, Sections 1343

25   and 1346; and the third object of the conspiracy is to

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    violate the Foreign Corrupt Practices Act under 15 USC,

2    Section 78(dd)(2)(A).

3            The elements of each of those crimes will be

4    discussed later in these instructions.

5            In this case, it is not necessary for the

6    government to prove that the defendant conspired to commit

7    all of the substantive crimes or offense.  Rather, with

8    regard to Count 1, it would be sufficient for the government

9    to prove beyond a reasonable doubt that the defendant

10   conspired with someone to commit one of the three offense.

11   But in that event, in order to return a verdict of guilty on

12   Count 1, you must unanimous agree upon which of the offenses

13   the defendant conspired for commit.

14           Now, in order to sustain its burden of proof

15   for the offense of conspiracy to commit bribery, honest

16   services wire fraud, and a Foreign Corrupt Practices Act

17   violation as charged in Count 1, the government must prove

18   the following three essential elements beyond a reasonable

19   doubt:

20           First, that the conspiracy, agreement, or

21   understanding to commit bribery as charged in the

22   indictment, honest services wire fraud as alleged in the

23   indictment, or Foreign Corrupt Practices Act violation as

24   alleged in the indictment, was formed or reached or entered

25   into by two or more persons.  That's the first element.


MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1          Second, that the -- that at some time during

2     the existence of or life of the conspiracy, agreement or

3     understanding, that the defendant knowingly and

4     intentionally joined the conspiracy;

5          And third, that at sometime during the

6     existence or life of the conspiracy, agreement or

7     understanding, a member, a member one -- a member of the

8     conspiracy did one of the overt acts described in Count 1 of

9     the indictment for the purpose of advancing, furthering or

10    helping the object or purpose of the conspiracy.

11         If the government fails to prove any of these

12    essential elements beyond a reasonable doubt, then you must

13    find the defendant not guilty of Count 1.

14         Now, under the law conspiracy to commit a crime

15    is an entirely separate and distinct charge from the actual

16    violation or substantive charge which may be the object of a

17    conspiracy.  All of the elements of bribery, honest services

18    wire fraud, or bribery of a foreign official, need not be

19    met in order for you to find that there was a conspiracy to

20    commit those acts; that is, the government not required to

21    prove that the parties to the alleged agreement were

22    successful in achieving any of the objects of the

23    conspiracy.

24         But you must find that the government has

25    proved beyond a reasonable doubt that there was an agreement

1    or conspiracy to violate the law, that the defendant

2    knowingly and intentionally participated in the conspiracy

3    to violate of law, and that an overt act was taken in

4    furtherance of the conspiracy.

5              Now, a criminal conspiracy is an agreement or a

6    mutual understanding, knowingly made or knowingly entered

7    into by at least two people, to violate the law by some

8    joint or common plan or course of action.  A conspiracy is,

9    in a very true sense, a partnership in crime.

10             A conspiracy or agreement to violate the law,

11   like any other kind of agreement or understanding, need not

12   be formal, written or even expressed directly in every

13   detail.

14             For Count 1, the government must prove that the

15   defendant and at least one other person, who was not a

16   government agent, knowingly and deliberately arrived at an

17   agreement or understanding that they, and perhaps others,

18   would violate the Bribery Statute, the Wire Fraud Statute,

19   or Foreign Corrupt Practices Act by means of some common

20   plan or course of action.

21             It is proof of this conscious understanding and

22   deliberate agreement by the alleged members that should be

23   central to your consideration of the charged conspiracy.

24             To prove the existence of a conspiracy or an

25   illegal agreement, the government is not required to produce

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    a written contract between the parties, or even produce

2    evidence of an express oral agreement spelling out all the

3    details of the understanding.

4              To prove that a conspiracy existed, moreover,

5    the government is not required to show that all of the

6    people named in the indictment as members of a conspiracy

7    were in fact parties to the agreement, or that all the

8    members of the alleged conspiracy were named or charged, or

9    that all of the people whom the evidence shows were actually

10   members of the conspiracy agreed to all of the conspiracy's

11   means or members.

12             Unless the government proves beyond a

13   reasonable doubt that a conspiracy as just explained

14   actually existed, then you must acquit the defendant.

15             Now, before the jury may find that the

16   defendant or any other person became a member of a

17   conspiracy as charged in Count 1 of the indictment, the

18   evidence in the case must show beyond a reasonable doubt

19   that the defendant knew the purpose or goal of the

20   agreement, understanding -- or understanding, and

21   deliberately entered into the agreement, intending in some

22   way to accomplish the goal or purpose by this common plan or

23   joint action.

24             And if the evidence establishes beyond a

25   reasonable doubt that the defendant knowingly and

1    deliberately entered into an agreement to commit the

2    offenses charged or alleged in Count 1, the fact that the

3    defendant did not join the agreement in its beginning, or

4    did not know all the details of the agreement, or did not

5    know all of his coconspirators, or did not participate in

6    each act of the agreement, or did not play a major role in

7    accomplishing the unlawful goal, or had only a slight

8    connection with the conspiracy, is not important to your

9    decision regarding membership in the conspiracy.

10           Merely associating with others and discussing

11   common goals, mere similarity of conduct between or among

12   such persons, merely being present at a place where a crime

13   takes place or is discussed, or even knowing about criminal

14   conduct, does not, of itself, make someone a member of the

15   conspiracy or a conspirator.

16           And you are further instructed that a defendant

17   cannot conspire with a government agent.  And for purposes

18   of this case, Lori Mody was a government agent.

19           Therefore, if you find that the defendant did

20   not have an agreement to violate the law as described in

21   Count 1 with anyone other than Ms. Mody, you must find him

22   not guilty on Count 1.

23           Evidence has been received in this case that

24   certain persons who are alleged in Count 1 of the indictment

25   to be coconspirators of the defendant have done or said

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1   things during the existence or life of the alleged

2   conspiracy charged in Count 1 in order to further or advance

3   its goals.

4              Such acts and statements of these other

5   individuals may be considered by you in determining whether

6   or not the government have proven the charges in Count 1 of

7   the indictment.

8              Since these acts may have been performed and

9   these statements may have been made outside the presence of

10  the defendant, and even done or said without defendant's

11  knowledge, these acts and statements should be examined with

12  particular care by you before considering them against the

13  defendant, who did do the particular act or make the

14  particular statement.

15             Now, in order to sustain its burden of proof

16  under Count 1 of the indictment, the government must prove

17  beyond a reasonable doubt that one of the members of the

18  alleged conspiracy or agreement knowingly performed at least

19  one overt act, and that this overt act was performed during

20  the existence or life of the conspiracy, and was done

21  somehow to further the goals of the conspiracy or agreement.

22             Now, the term "overt act" means some type of

23  outward, objective action performed by one of the parties

24  to, or one of the members of, the agreement or conspiracy

25  which evidences that agreement.


MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    Although you must unanimously agree that the

2    same overt act was committed, the government is not required

3    to prove more than one of the overt acts charged.  The overt

4    act may, but for the alleged illegal agreement, appear

5    totally innocent and legal.

6    Now, you will have with you in the jury room,

7    marked as Court Exhibit 1, a list of the overt acts that are

8    alleged in the indictment.  Now, remember, that list is not

9    evidence itself.  But it tells you what the alleged overt

10   acts are.

11   You need -- as I have just instructed you, the

12   government is only required to prove one of them, but you

13   must be unanimous as to which one you find has been proved.

14   And if you find that none of them have been proved, you must

15   acquit on that count.

16   Now, some of the people who may have been

17   involved in these events are not on trial.  This does not

18   matter.  There is no requirement that all members of a

19   conspiracy she charged and prosecuted or tried together in

20   one proceeding.

21   Nor is there any requirement that the names of

22   the other conspirators be known.  An indictment can charge a

23   defendant with a conspiracy involving people whose names are

24   not known, as long as the government can prove that the

25   defendant conspired with one or more of them.  Whether they

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    be named or not does not matter.

2              Now, some of the events that you have heard

3    about happened in other places.  There is no requirement

4    that the entire conspiracy take place here in the Eastern

5    District of Virginia.  But for you to return a verdict -- a

6    guilty verdict on the conspiracy charged in Count 1, the

7    government must convince you that either the alleged

8    agreement, or one of its overt acts in furtherance of the

9    agreement, took place here in the Eastern District of

10   Virginia.

11             But unlike all of the other elements that I

12   have described, this is a fact that the government has to

13   prove by a preponderance of the evidence.  This means that

14   the government only has to convince you that it is more

15   likely than not that part of the conspiracy took place here.

16   But if the government does not establish by a preponderance

17   of the evidence that the agreement or one of the overt acts

18   in furtherance of the agreement took place in the Eastern

19   District of Virginia, you must find the defendant not guilty

20   of Count 1.

21             Now we turn to Count 2.  Count 2 of the

22   indictment alleges a separate and distinct conspiracy from

23   the conspiracy alleged in Count 1.  Count 2 alleges that:

24   From on or about August 2002 to in or about March 2005,

25   within the Eastern District of Virginia and elsewhere, the

1    defendant did knowingly combine, conspire, confederate and

2    agree, together with others known and unknown to the grand

3    jury, to commit the following two offenses against the

4    United States:  First, bribery; that is, it is alleged that

5    as a public official the defendant conspired to corruptly

6    demand, seek, receive, accept or agree to receive and accept

7    something of value in return for being influenced in the

8    performance of an official act, in violation of Title 18, US

9    Code, Section 201(b)(2)(A); and secondly, honest services

10   wire fraud; that is, it is alleged that the defendant

11   conspired to devise a scheme and artifice to defraud,

12   deprive United States citizens and the House of

13   Representatives of their right to the defendant's honest

14   services to wire fraud, in violation of Title 18 US Code,

15   Sections 1343 and 1346.

16           Count 2 of the indictment also alleges that the

17   defendant or a coconspirator performed an overt act in

18   furtherance of the conspiracy.  And although you will not

19   have the indictment in the jury room with you, you will have

20   portions of the indictment that set out the overt acts

21   alleged to have been taken in furtherance of the conspiracy

22   charged in Count 2.  That will be Court Exhibit 2.

23           As you will see, the overt acts allege that the

24   following persons and entities were involved in a conspiracy

25   the government charges the defendant as being a part of in

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

 1   Count 2:  Mose Jefferson and BEP, George Knost, Bradley

 2   Kimbrough and Arkel, John Melton, Ramon Jarrell, and TDC-OL,

 3   and James Creaghan, Noreen Griffin, Wilson Griffin, and

 4   LETH --

 5              Counsel, what's that single word there?

 6              ATTORNEY LYTLE:  "Procura"?

 7              THE COURT:  Yes.

 8              ATTORNEY LYTLE:  That's another company.

 9              THE COURT:  -- Procura and LETH, and Philip

10   Jones and Global Energy and Environmental Services.

11              Now, in order to sustain its burden of proof

12   for the offense of conspiracy to commit bribery and honest

13   services wire fraud as charged in Count 2 of the indictment,

14   the government must prove the following three essential

15   elements beyond a reasonable doubt:

16              First, that the conspiracy, agreement or

17   understanding to commit bribery as charged in the indictment

18   or honest services wire fraud as charged in the indictment

19   was formed or reached or entered into by two or more

20   persons;

21              Second, that at sometime during the existence

22   or life of the conspiracy, agreement or understanding, the

23   government knowingly and intentionally joined the

24   conspiracy; and

25              Three, that at sometime during the existence or

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    life of the conspiracy, agreement or understanding, a member

2    of the conspiracy did one of the overt acts described in

3    Count 2 of the indictment for the purpose of advancing,

4    furthering or helping the object or purpose of the

5    conspiracy.

6            If the government fails to prove any of these

7    three essential elements beyond a reasonable doubt, then you

8    must find the defendant not guilty of Count 2.

9            You must use the instructions on what

10   constitutes the existence of an agreement, understanding or

11   conspiracy, what is required to show membership in an

12   agreement, what constitutes an overt act, and what must be

13   shown to prove venue, and the other conspiracy instructions

14   I gave you in connection with Count 1, to determine whether

15   the government has established each of these three elements

16   beyond a reasonable doubt for Count 2.

17           Now, while the government need not prove that

18   the defendant conspired to violate both the bribery

19   provisions under 18 USC 201(b)(2)(A) and honest services

20   wire fraud under 18 USC Sections 1343 and '46, you must

21   unanimously agree upon which of the offense the defendant

22   conspired to commit in order to return a verdict of guilty

23   on Count 2.

24           Now, I have already described Count 2 for you.

25           In order to sustain its burden of proof or the

1    charge in Count 2, the government must show that the single

2    overall conspiracy alleged in Count 2 of the indictment

3    existed.

4             Proof of separate or independent conspiracies

5    is not sufficient.  In determining whether or not a single

6    conspiracy has been shown by the evidence or -- in the case,

7    you must decide whether common, master, or overall goals or

8    objectives existed, which served as a focal point for the

9    efforts and actions of any members to the agreement.

10            And in arriving at this decision, you may

11   consider the length of time the alleged conspiracy existed,

12   mutual dependence or assistance between various persons

13   alleged to have been its members, and the complexity of the

14   goals or shown.

15            A single conspiracy may involve various people

16   at different levels and various different persons over time,

17   and may involve numerous transactions which are conducted

18   over some period of time and at various places.

19            In order to establish a single conspiracy,

20   however, the government need not prove that an alleged

21   coconspirator knew each of the other alleged members of the

22   conspiracy, nor need it establish that an alleged

23   coconspirator was aware of each of the transactions alleged

24   in the indictment.

25            Even if the evidence in the case shows that the

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    defendant was a member of some conspiracy, but that this

2    conspiracy is not the single conspiracy charged in the

3    indictment in Count 2, then you must acquit defendant of

4    this charge.

5          Unless the government proves the existence of a

6    single overall conspiracy described in Count 2 of the

7    indictment beyond a reasonable doubt, you must acquit

8    defendant of this charge.

9          However, if the government proves the existence

10   of the single overall conspiracy as alleged in Count 2 of

11   the indictment beyond a reasonable doubt, then you may find

12   defendant -- you may convict defendant of this charge, if

13   you also find that the government has proved the other

14   elements of the offense as I have described them to you in

15   these instructions.

16         Now, during the course of the trial you heard

17   evidence of acts of the defendant with respect to ePrime

18   Aerospace Corporation, which may be similar to those charged

19   in the indictment, but which he did on other occasion.

20         You must not consider any of this evidence in

21   deciding if Defendant Jefferson committed the acts in the

22   indictment.  However, you may consider this evidence for

23   other, very limited, purposes.

24         If you find beyond a reasonable doubt from

25   other evidence in the case that the defendant did commit

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    acts charged in the indictment, then you may consider

2    evidence of similar acts allegedly undertaken on other

3    occasions to determine whether Defendant Jefferson had the

4    state of mind or intent necessary to commit the crimes

5    charged in the indictment; whether defendant acted according

6    to a plan or in preparation for commission of a crime;

7    whether defendant committed the acts for which the defendant

8    is on trial by accident or mistake.

9              In other words -- let me make that clearer.  If

10   you find beyond a reasonable doubt from other evidence in

11   the case that the defendant did commit the acts charged in

12   the indictment, and in doing that you must not consider the

13   evidence of ePrime.

14             But if you find from other evidence that he did

15   commit the acts charged in the indictment, then you may

16   consider evidence of similar acts, ePrime, allegedly

17   undertaken, if you find those have been proven beyond a

18   reasonable doubt, to determine whether he had the state of

19   mind or intent necessary to commit the crimes charged in the

20   indictment, or whether he acted according to a plan or in

21   preparation or commission of the crime, or whether he

22   committed the crimes by accident or mistake.

23             Now, as I have told you, the conspiracy counts

24   just discussed, Counts 1 and 2, charge that one of the

25   objects of those conspiracies was to violate Section

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    201(b)(2)(A) of Title 18, which makes it a crime for a

2    public official to solicit or receive anything of value in

3    return for being influenced in the performance of an

4    official act.

5              Counts 3 and 4 charged substantive violations

6    of Counts -- I beg your pardon -- of that code section.  In

7    other words, Counts 1 and 2 charge a conspiracy to do that,

8    and I have instructed you on that.  Now Counts 3 and 4

9    charge substantive violations of the Bribery Statute.

10              Count 3 of the indictment charges that:

11   Beginning in or about January 2001, through in or about

12   August 2005, within the Eastern District of Virginia and

13   elsewhere, the defendant, then a public official, corruptly

14   demanded, sought or received things of value from Vernon

15   Jackson and iGate for ANJ, a Jefferson family-controlled

16   company, in return for being influenced in the performance

17   of official acts, to advance iGate's business ventures.

18              Count 4 of the indictment charges that:

19   Beginning in or about June 2004 through in or about August

20   2005, within the Eastern District of Virginia and elsewhere,

21   the defendant, then a public official, corruptly demanded,

22   sought or received things of value from Lori Mody and Lori

23   Mody's companies, W2-IBBS and IBBS, in return for being

24   influenced in the performance of official acts to advance

25   Lori Mody's business ventures.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1         Now, Section 201 of Title 18 provides, in

2     pertinent part, that:  Whoever, being a public official,

3     directly are indirectly, corruptly demands, seeks, receives,

4     accepts or agrees to receive or accept anything of value

5     personally or for any other person or entity, in return for

6     being influenced in the performance of any official act,

7     shall be guilty of an offense against the United States.

8         So in other words to sustain its burden of

9     proof for the crimes of demanding, seeking or receiving a

10    bribe by a public official as charged in Counts 3 and 4, the

11    government must prove the following three essential elements

12    beyond a reasonable doubt:

13        First, that the defendant directly or

14    indirectly demanded, sought, received or accepted, or agreed

15    to receive or accept, anything of value, personally or for

16    another person or entity;

17        Two, that defendant was at that time a public

18    official of the United States; and

19        Three, that the defendant demanded, sought,

20    received, accepted or agreed to receive or accept the item

21    of value corruptly in return for being influenced in the

22    performance of any official act.

23        If the government fails to prove any of these

24    essential elements beyond a reasonable doubt for either

25    Count 3 or Count 4, or both, then you must find the

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    defendant not guilty of that count or counts.

2              Now, with respect to the first essential

3    element, the phrase "anything of value" means any item,

4    whether tangible or intangible, that a person -- that the

5    person giving or offering or the person demanding or

6    receiving considers to be worth something.

7              The phrase "anything of value" includes a sum

8    of money, shares of shock, percentage of revenue,

9    commissions, favorable treatment, a job, or special

10   consideration.

11             Now, with regard to the second essential

12   element, the term "public official" includes a member of

13   Congress.

14             With respect to the third element, the term

15   "official act" means any decision or action on any question,

16   matter, cause, suit, proceeding or controversy which may at

17   any time be pending or which may by law be brought before

18   any public official in such official's official capacity or

19   such official's place of trust or profit.

20             In order to violate to Bribery Statute, the

21   defendant must have corruptly sought, received or agreed to

22   receive a thing of value in return for being influenced in

23   his own performance of an official act; that is, a decision

24   or action on any question, matter, cause, suit, proceeding

25   or controversy that may at any time be pending or which may

1    by law be brought before the defendant in his official

2    capacity.

3            An act may be official even if it was not taken

4    pursuant to responsibilities explicitly assigned by law.

5    Rather, official acts include those activities that have

6    been clearly established by settled practice as part a

7    public official's position.

8            Moreover, an act on a particular question or

9    matter may still be official even if the public official did

10   not have authority to make a final decision or take binding

11   action on the issue.

12           It is not a defense that the offer or promise

13   or demand or receipt of anything of value concerned an

14   official act that was actually lawful, desirable, or even

15   beneficial to the public.

16           The third essential element also requires that

17   the government prove beyond a reasonable doubt that the

18   defendant corruptly sought, received, or agreed to receive

19   an item of value in return for being influenced in the

20   performance of an official act.

21           And as I had have previously instructed you, to

22   act corruptly means to act knowingly and dishonestly for a

23   wrongful purpose.

24           The offense -- the offense of bribery requires

25   the intent to be influenced in the performance of an

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1     official act.  In other words, for bribery there must be a

2     quid pro quo, a specific intent to receive something of

3     value in exchange for being influenced in the performance of

4     an official act.

5                    Yet each individual payment need not be

6     correlated with a specific official act.  Rather, it is

7     sufficient to show that the defendant intended for each

8     payment to induce him to adopt a specific course of official

9     action.  In other words, the intended exchange in bribery

10    can be this for these, or these for these; not just this for

11    that.

12                    Further, it is necessary for the government to

13    prove that the defendant intended to perform a set number of

14    official -- I'm sorry.

15                    Further, it is not necessary for the government

16    to prove that the defendant intended to perform a set number

17    of official acts in return for payments.  The quid pro quo

18    requirement is satisfied if you find the evidence shows a

19    course of conduct of things of value flowing to the

20    defendant in exchange for a pattern of official actions

21    favorable to the donor.

22                    What must be shown is that the defendant

23    sought, received or agreed to receive payments with the

24    intention of providing a specific type of official action in

25    return.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    For example, the quid pro quo requirement is

2    satisfied if you find that the government has established

3    beyond a reasonable doubt that the defendant agreed to

4    accept things of value in exchange for performing official

5    acts on an as-needed basis, so that whatever the opportunity

6    presented itself, he would take specific action on the

7    payor's behalf.

8    Thus, you may convict defendant only if you

9    find that the govern- -- that he solicited or accepted

10    something of value in exchange for some specific official

11    act or course of action.

12    The government is not required to prove an

13    express intention or agreement to engage in a quid pro quo;

14    rather, such an intent may be established by circumstantial

15    evidence.

16    Now, in order for you to return a verdict of

17    guilty on the bribery charges in Counts 3 and 4, the

18    government must prove -- must convince you that the offense,

19    or any part of it, took place in the Eastern District of

20    Virginia.

21    Unlike all of the other elements I have

22    described, this is a fact the government only has to prove

23    by a preponderance of the evidence.  That means the

24    government only has to prove that it is more likely than not

25    that the crime or some part of the offense conduct took

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1   place here in the Eastern District of Virginia.

2          Now we turn to Counts 5 through 10.  As I

3   mentioned before, the conspiracy counts, Counts 1 and 2,

4   charge that the objects -- that one of the objects of those

5   conspiracies was to violate Title 18, Sections 1343 and

6   1346, which make it a federal crime for anyone to use

7   interstate wire communications facilities in carrying out a

8   scheme to fraudulently deprive another of the intangible

9   right to honest services.

10         Counts 5 through 10 charge violations of

11  Title 18, 1343 and 1346.

12         Specifically, Counts 5 through 10 of the

13  indictment charge that:  From in or about January 2001,

14  through in or about August 2005, within the Eastern District

15  of Virginia and elsewhere, the defendant knowingly devised a

16  scheme and artifice to defraud and deprive the citizens of

17  the United States and the United States House of

18  Representatives of their honest right or -- or of their

19  right to the honest services of the defendant, a member of

20  the US House of Representatives, performed free from deceit,

21  fraud, concealment, bias, conflict of interest,

22  self-enrichment and self-dealing, by knowingly and corruptly

23  demanding, seeking, receiving, accepting and agreeing to

24  receive and accept things of value from Vernon Jackson and

25  iGate, and -- number one; and number two, from Lori Mody and

1    W2-IBBS, in return for the defendant's performance of

2    official duties; and secondly, by intentionally failing to

3    disclose material conflicts of interest in connection with

4    the performance of his official acts.

5            Now, Counts 5 through 10 also charge that for

6    the purpose of executing this scheme to defraud, the

7    defendant knowingly transmitted, or caused to be

8    transmitted, wire communications.

9            Is this one of the exhibits that goes back?

10           It is, isn't it?

11           ATTORNEY LYTLE:  It is, your Honor.

12           THE COURT:  All right.

13           This will be Court Exhibit 3, states what the

14   government alleges to be those wire communications.  So I

15   will not read those for you here.

16           But going on, with respect to what must be

17   shown, Title 18 US Code, Sections 1343 and 1346 define the

18   crime of honest services wire fraud, and 1343 provides, in

19   pertinent part, that:  Whoever, having devised any scheme or

20   artifice to defraud by means of false or fraudulent

21   pretenses, representation or promises, transmits or causes

22   to be transmitted by means of wire communications in

23   interstate or foreign commerce, any writings, signs,

24   signals, pictures or sounds for the purpose of executing

25   such scheme or artifice, shall be guilty of an offense

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    against the United States.

2            And 1346, in turns, provides that the scheme or

3    artifice to defraud includes a scheme or artifice to deprive

4    another of the intangible right of honest services.

5            So in order to sustain its burden of proof for

6    the crimes alleged, of using wire communication in

7    interstate and foreign commerce to further a scheme or plan

8    to fraudulently deprive another of the intangible right of

9    honest services, the government has to prove the following

10    four essential elements beyond a reasonable doubt:

11            First, that the defendant knowingly devised or

12    knowingly participated in a scheme to defraud the citizens

13    of the United States and the United States House of

14    Representatives of their intangible right to his honest

15    services;

16            Two, that the scheme or artifice to defraud

17    involved a material misrepresentation or concealment of

18    material fact;

19            Three, that the defendant acted with intent to

20    defraud; and

21            Four, that in advancing or furthering or

22    carrying out this scheme to defraud, the defendant

23    transmitted or caused to be transmitted any writing, signal

24    or sound by means of a wire communication in interstate and

25    foreign commerce.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

 1          If the government fails to prove any of these

 2   essential elements beyond a reasonable doubt for any one of

 3   Counts 5 through 10, then you must find the defendant guilty

 4   of any such count.

 5          Now, a person causes a wire communication to be

 6   transmitted when he knows that the wire communication will

 7   be used in the ordinary course of business and when he can

 8   reasonably foresee such use.  It does not matter whether the

 9   wire communication was itself false or deceptive, so long as

10   the wire communication was incident to an essential part of

11   the scheme.

12          Nor does it matter whether the scheme or plan

13   was successful, or that any money or property was obtained.

14          It is not necessary that the government prove

15   all of the details alleged in the indictment concerning the

16   precise nature and purpose of the scheme, or that the

17   material transmitted by wire was itself false or fraudulent,

18   or that the alleged scheme actually succeeded in defrauding

19   anyone, or that the use of interstate wire communications

20   facilities was intended as the specific or exclusive means

21   of accomplishing the fraud -- the alleged fraud, or that the

22   defendant personally used the wire communication facility.

23          What must be proved beyond a reasonable doubt

24   is that the defendant, with the intently to defraud,

25   knowingly and willfully devised, intended to devise or

1    participated in a scheme to defraud substantially the same

2    as the one alleged in the indictment, and that the use of

3    the interstate wire communications facilities was closely

4    related to the scheme because the defendant either used or

5    caused to be used wire communications facilities in

6    interstate commerce in an attempt to execute or carry out

7    the scheme.

8              Each separate use of the interstate wire

9    communications facilities in furtherance of a scheme to

10   defraud constitutes a separate offense.

11             Now, Counts 5 through 10 of the indictment

12   charge the defendant with knowingly devising a scheme to

13   defraud -- I beg your pardon -- to deprive the citizens of

14   the United States and the US House of Representatives of

15   their intangible right to honest services in two separate

16   ways.  In other words, these counts allege two theories of

17   honest services wire fraud.

18             The first theory is that the defendant devised

19   a scheme to defraud citizens of the United States and the US

20   House of Representatives of their intangible right to his

21   honest services through bribery, that is, by corruptly

22   demanding, seeking, receiving, accepting or agreeing to

23   receive or accept, something of value in return for being

24   influenced in the performance of an official act.

25             Honest services wire fraud may be based on

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    bribery because the public official who solicits or receives

2    bribes deprives the public of his or her honest services.

3    Thus, the government may show the first element of honest

4    services wire fraud, that the defendant devised a scheme to

5    defraud or deprive the public of its intangible right to

6    honest services, by showing that the defendant devised a

7    scheme to solicit or receive bribes.

8              To determine whether the government has done

9    so, you must consider the bribery instructions that I have

10   previously provided to you with respect to Counts 3 and 4,

11   including the instructions regarding the meaning of the term

12   "official act," the meaning of "corruptly," and the quid pro

13   quo requirement.

14             Now, the second theory the government has

15   charged is that the defendant committed honest services wire

16   fraud by intentionally failing to disclose material

17   conflicts of interest in connection with his performance of

18   official acts.

19             It is sufficient that the public official

20   performed official acts -- It is sufficient that the public

21   official performed official acts without disclosing his

22   conflict of interest, and with the intent to defraud.

23             The government is not required to prove that

24   the public official's influence or vote was decisive on the

25   issue.  A conflict of interest may exist at any time a

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    public official acts in his capacity as a public official,

2    which may include not only voting on official matters, but

3    also influencing or lobbying other public officials

4    regarding official matters.

5            Thus, the government may show the first element

6    of honest services wire fraud, that the defendant devised a

7    scheme to defraud or deprive the public of its intangible

8    right to honest services, by proving beyond a reasonable

9    doubt that the defendant had a direct and material interest

10   in iGate, W2-IBBS and IBBS; two, that as a public official

11   he passed on or made decisions regarding matters affecting

12   iGate, W2-IBBS and IBBS; three, that he received personal

13   gain as a result; and four, that he intentionally, with the

14   intent to defraud, failed to disclose his direct interest in

15   iGate, W2-IBBS and IBBS, in connection with the performance

16   of official acts.

17           To determine whether the government has done

18   so, you must consider the instructions I have given you

19   regarding the meaning of "official acts."

20           Now, as I have instructed you, Counts 5 through

21   10 charge two theories of how defendant committed honest

22   services wire fraud.  The government is not required to

23   prove for each count that the defendant violated the Wire

24   Fraud Statute by a scheme to defraud involving both bribery

25   and the intentional failure to disclose material conflicts

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1　of interest in connection with the performance of an

2　official act.

3　　　　However, each juror must agree with all of the

4　other jurors -- in other words, you must be unanimous --

5　that the crime was committed in the same ways.

6　　　　In other words, in order to convict on any wire

7　fraud count, you must unanimously agree upon at least one

8　means or method by which the defendant committed honest

9　services wire fraud.

10　　　　Furthermore, with regard to the bribery theory

11　of honest services wire fraud, each of the jurors must agree

12　with each of the other juror that the same conduct

13　constituting bribery was knowingly and corruptly engaged in

14　by the defendant.

15　　　　With regard to the conflict of interest theory,

16　each of the jurors must agree with each of the other jurors

17　that the same conduct constituting intentional failure to

18　disclose a material conflict of interest in connection with

19　official acts was engaged in by the defendant with the

20　intent to deceive and defraud.

21　　　　In addition, Counts 5 through 10 allege a

22　separate wire communication transmitted for the purpose

23　of -- that each allege a separate wire communication

24　transmitted for the purpose of advancing or furthering or

25　carrying out a scheme to defraud.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1          In order to convict on any of these counts, the

2    jury must unanimously agree that the particular wire

3    communication was used to advance, further or carry out the

4    scheme to defraud on which the jury unanimously agrees.

5          Now, the phrase "any scheme or artifice to

6    defraud" means any deliberate plan of action or course of

7    conduct by which someone intends to deceive or cheat

8    another, or by which someone intends to deprive another of

9    something of value by mean of deceit.

10         A scheme or artifice to defraud includes a

11   scheme to deprive another person of intangible property

12   rights, including the right to honest services.  Public

13   officials owe a duty to the public to perform the

14   responsibilities of their office free from deceit, fraud,

15   concealment, bias, conflict of interest, self-enrichment and

16   self-dealing.

17         The focus of honest services wire fraud is on

18   the fraudulent and deceptive conduct of the public official

19   who abuses the position of trust.  It is not necessary for

20   the government to prove that the scheme actually succeeded.

21         Also, the offense of honest services fraud is

22   not concerned with the wisdom or results of the public

23   official's decisions, but rather with the manner in which

24   the public official makes his decisions.  Thus, the

25   decision-making process may be corrupted and the public is

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1  deprive of honest services, even though the public official

2  comes to a good decision for the wrong reason.

3         Now, as part of its burden of proof on Counts 5

4  through 10, the government must prove beyond a reasonable

5  doubt that the scheme or artifice to defraud involved a

6  material misrepresentation or a concealment of a material

7  fact that the defendant was under a duty to disclose.

8         A statement or representation is material if it

9  has a natural tendency to influence or is capable of

10 influencing a decision or action of the person or entity to

11 which it is addressed.  And a public official's duty to

12 disclose material information need not be expressly imposed

13 by statute or code.  Rather, a public official has a

14 fiduciary duty to his employer, the public, to disclose

15 material information.

16        A member of Congress has no legal duty to

17 disclose information to foreign government officials.

18        To act with intent to defraud means to act

19 knowingly and with the specific intent to cheat -- deceive

20 or cheat, ordinarily for the purpose of causing some

21 deprivation or loss to another of money, property, or the

22 right to an employee's honest services.

23        The intent of a person or knowledge that a

24 person possesses at any given time is not ordinarily proven

25 directly, because there is no way of directly scrutinizing

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1   the workings of the human mind.

2           In determining the issue of what a person knew

3   or what a person intended at a specific time, as I told you

4   before, you may consider any statements made or omitted or

5   acts done or omitted by this person, together with all other

6   acts and circumstances received into evidence which may aid

7   you in your determination of that person's knowledge or

8   intent.

9           Additionally, the government must prove beyond

10  a reasonable doubt that defendant had a specific intent to

11  deprive the public of his honest services.

12          You may infer, but you are certainly not

13  required to infer, that a person intends the natural and

14  probable consequences of acts knowingly done or knowingly

15  omitted.  It is entirely up to you, however, to decide what

16  facts to find from the evidence received during the trial.

17          Now, a public official does not commit honest

18  services fraud if his intent was limited to the cultivation

19  of a business or political friendship.  If, instead or in

20  addition there is an intent on the part of the public

21  official to be improperly influenced in his official duties,

22  then you may find a violation of the law prohibiting honest

23  services fraud.

24          If there is both the intent to cultivate

25  business or political relationship and the intent to be

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    improperly influenced in official duties, then in that case

2    you may find a violation of the law prohibiting honest

3    services fraud.

4              In other words, you may find the defendant

5    guilty of honest services fraud if you find beyond a

6    reasonable doubt that he had dual intent; that is, that he

7    intended both the lawful and an unlawful purpose to some

8    degree.

9              But if you do not find that the government has

10    proven beyond a reasonable doubt that the defendant had the

11    requisite specific intent to defraud, you must acquit the

12    defendant.

13              Now the phrase, transmits by means of wire

14    communications in interstate or foreign commerce "means to

15    send from one state to another, or from one country to the

16    United States, or from the United States to another country,

17    by means of telephone, telegraph lines -- and this includes,

18    among other things, faxes, use of credit cards, electronic

19    transfer of funds, telephone calls, as long as the

20    communication is between states or between the United States

21    and a foreign country.

22              And it is not necessary that the government

23    prove that the information transmitted by means of wire

24    communications in interstate or foreign commerce was itself

25    false or fraudulent, nor does it mean -- nor does the United

1    States have to prove that the defendant actually used the

2    wire communication in interstate or foreign commerce, or

3    that the defendant intended that anything be transmitted in

4    interstate or foreign commerce by means of a wire transfer.

5            Instead, the government must prove beyond a

6    reasonable doubt that a wire communication in interstate and

7    foreign commerce was, in fact, used in some manner to

8    further or to advance or to carry out that scheme to defraud

9    or deprive, and that the defendant knew of this and could

10   reasonably foresee the use of the wire communication -- of

11   the wire communication in interstate or foreign commerce

12   would follow in the ordinary course of business or events.

13           Each separate use of wire communications in

14   interstate commerce in furtherance of a scheme to defraud or

15   deprive constitutes a separate offense.

16           Now, you will have in the jury room a list of

17   the specific wires that the government alleges were part of

18   the scheme and artifice to defraud.  That will be Court

19   Exhibit 3.

20           And remember, those are allegation by the

21   government, and you may not consider that list as proof.

22   You have to consider the evidence, to see whether it proves

23   that it was a wire fraud used in connection with the alleged

24   scheme.

25           The crime of honest services wire fraud

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1  addresses the manner in which officials make their

2  decisions, not the wisdom of the official action.

3  Therefore, if the decision-making process has been

4  corrupted, it does not matter whether a public official's

5  actions actually benefited the government agency or the

6  public at large.  In other words, it's not a defense to

7  honest services wire fraud that a public official would have

8  performed the same official action absent any payments he is

9  shown to have received.

10       Now, the good faith of the Defendant Jefferson

11  is a complete defense of the charges of wire fraud contained

12  in Counts 5 through 10 of the indictment, because good faith

13  on the part of the defendant is simply inconsistent with the

14  intent to defraud alleged in those charges.

15       A person who acts or causes another person to

16  act on belief or opinion honestly held is not punishable

17  under the Wire Fraud Statute merely because the belief or

18  opinion turns out to be inaccurate, incorrect or wrong.  And

19  honest mistake in action or an error in management does not

20  rise to the level of intent to defraud.

21       A defendant does not act in good faith if, even

22  though he honestly holds a certain opinion or belief, that

23  defendant also knowingly makes false, fraudulent or -- false

24  or fraudulently pretenses, representations or promises to

25  others.

1       The Wire Fraud Statute is written to subject to

2  criminal punishment only those people who knowingly defraud

3  or attempt to defraud.

4       While the term "good faith" has no precise

5  definition, it means, among other things, a belief or

6  opinion honestly held, an absence of malice or ill will, and

7  an intention to avoid taking unfair advantage of another.

8       In determining whether or not the government

9  has proven that the defendant acted with intent to defraud

10  or whether the defendant acted in good faith, the jury must

11  consider all the evidence in the case bearing on the

12  defendant's state of mind.

13       The burden of proving good faith does not rest

14  with the defendant, because the defendant does not have any

15  obligation to prove anything in this case; it's the

16  government's burden to prove to you beyond a reasonable

17  doubt that the defendant acted with the intent to defraud.

18       If the evidence in the case leaves the jury

19  with a reasonable doubt as to whether defendant acted with

20  the intent to defraud or in good faith, the jury must acquit

21  defendant of these counts.

22       Now, Count 1 of the indictment, as you will

23  recall, charges that one of the objects of the conspiracy

24  was to violate Title 15 of the US Code, Section 78, the

25  Foreign Corrupt Practices Act, which makes it a federal

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    crime to offer to pay, to pay, to promise to pay, or to

2    authorize the payment of money or anything of value to a

3    foreign official for the purpose of influencing any act or

4    decision of such foreign official in his official capacity

5    or securing any improper value -- improper advantage.

6              Count 11 -- and that's where we are up to

7    now -- charges a substantive violation of the Foreign

8    Corrupt Practices Act as described below.

9              Count 11 charges that:  From in or about

10   April 2005, through on or about August 3rd, 2005, in the

11   Eastern District of Virginia, the defendant willfully used

12   or caused to be used the mails and means and

13   instrumentalities of interstate commerce corruptly, in

14   furtherance of an offer to pay, promise to pay, or

15   authorization of the payment of money, or anything of value,

16   namely:  One, an up-front monetary payment, including an

17   immediate payment of $100,000 in cash; and two, a later

18   payment that would consist of a share of the Nigerian joint

19   venture's profits, both to the then-vice-president of

20   Nigeria, Atiku Abubakar, to influence the Vice-President

21   Abubakar's acts and decisions in his official capacity, and

22   to secure an improper advantage, among other things.

23             In so -- excuse me.  In so doing, Count 11

24   alleges that on or about July 30th, 2005, Defendant

25   Jefferson drove his car with $100,000 in cash from

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    Arlington, Virginia, in the Eastern District of Virginia, to

2    Washington, DC, and on the same day drove his car from

3    Alexandria, Virginia, in the Eastern District of Virginia,

4    to the Rayburn Office -- House Office Building in

5    Washington, DC, to prepare a package to be delivered to the

6    then-Vice-President Abubakar.

7           Now, Section 78(dd)(2)(A) of Title 15, which

8    codifies the Foreign Corrupt Practices violation, prohibits

9    payments to any foreign official for purposes of influencing

10   any act or decision of such foreign official in his official

11   capacity, number one; number two, inducing such foreign

12   official for do or omit to do any act in violation of the

13   lawful duty of such official, or -- it's in the

14   disjunctive -- or securing any proper advantage; or B,

15   inducing such foreign official to use his influence with a

16   foreign government or instrumentality thereof to effect or

17   influence any act or decision of such government or

18   instrumentality in order to assist the person or company

19   making the payment or obtaining business for or with, or

20   directing business to any person.

21          So in order to sustain its burden of proof for

22   this offense, that is, the offense of violating the Foreign

23   Corrupt Practices Act as charged in the indictment, the

24   government has to prove the following seven elements beyond

25   a reasonable doubt:

1  First, the government has to prove that the

2  defendant is a domestic concern; that is, or an officer,

3  director, employee or agent of a domestic concern, or a

4  stockholder thereof, acting on behalf of such domestic

5  concern -- all of these comments -- or concepts I'll define

6  for you shortly;

7  Second, that the defendant acted corruptly and

8  willfully, as I have previously defined these terms for you;

9  Third, that the defendant made use of the mails

10 or any means or instrumentality of interstate commerce in

11 furtherance of an unlawful act under this statute;

12 Fourth, that the defendant offered, paid,

13 promises to pay or authorized the payment of money or

14 anything of value;

15 Five, that the payment or gift was to a foreign

16 official or any person while knowing that all or a portion

17 of the payment or gift would be offered, given, promised,

18 directly or indirectly, to a foreign public official -- let

19 me read that one again.

20 That the payment or gift was to a foreign

21 public official, or to any person, while knowing that all or

22 a portion of the payment or gift would be offered, given or

23 promised, directly or indirectly, to a foreign official --

24 foreign public official;

25 Six, that the payment was for one of four

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1 purposes:  To influence any act or decision of the foreign

2 public official in his official capacity; second, to

3 influence the foreign public official to do any act in

4 violation of that official's public duty; or three, to

5 induce that foreign public -- that foreign official to use

6 his influence with a foreign government or instrumentality

7 thereof to effect or influence any act or decision of such

8 government or instrumentality, or to secure any improper

9 advantage.

10 The seventh element that the government must

11 prove beyond a reasonable doubt is that the payment was made

12 to assist the defendant in obtaining or retaining business

13 for or with or directing business to any person.

14 If the government fails to prove any of these

15 essential elements beyond a reasonable doubt, then you must

16 find the defendant not guilty of Count 11.

17 Now, for purposes of the Foreign Corrupt

18 Practices Act, a domestic concern is any individual who is a

19 citizen or national resident of the United States, and any

20 corporation, partnership, association, joint stock company,

21 business, trust, unincorporated organization sole

22 proprietorship which has its principal place of business in

23 the United States or which is organized under the laws of a

24 state of the United States or a territory, possession or

25 commonwealth of the United States.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1              Now, in this case the indictment charges that

2    the Defendant Jefferson was both a domestic concern and an

3    agent of the domestic concern, because he is alleged to have

4    been a citizen of the United States and an agent of the ANJ

5    Group, LLC, Global Energy and Environmental Services, LLC,

6    and the Multimedia Broadband Services, Inc., which are each

7    further alleged to be domestic concerns.

8              The indictment also charges that Jennifer

9    Douglas Abubakar, wife of the then-Nigerian vice-president,

10    Atiku Abubakar, was a domestic concern because she is

11    alleged to have been a citizen of the United States.

12              The term "interstate commerce" means trade or

13    conducting business or travel between one state in the

14    United States and another state, or the District of

15    Columbia, or between any foreign country and a state or the

16    District of Columbia.  And such term includes the intrastate

17    use of a telephone or other interstate means of

18    communication or, B, any other interstate instrumentality.

19              If such mechanisms as trade, transportation or

20    communications are utilized by a person and goods passing

21    between various states, they are instrumentalities of

22    interstate commerce.

23              I instruct you as a matter of law, the driving

24    of an automobile or traveling in such an automobile from the

25    District of Columbia to the Commonwealth of Virginia, or

1    vice versa, constitutes the use of a means or

2    instrumentality of interstate commerce.

3           So if you find those things occurred, you may

4    find that this element have been proved.

5           Now, as I previously told you, one of the

6    elements that the government must prove beyond a reasonable

7    doubt for you to convict the defendant of violating the

8    Foreign Corrupt Practices Act is if the defendant offered,

9    paid, promise to pay or authorized the payment of money or

10   of anything of value.

11          It is not required that the payment actually be

12   made.  A promise to pay and the authorization of payment by

13   a domestic concern are each also prohibited by the Foreign

14   Corrupt Practices Act.

15          Indeed, a domestic concern or an officer or

16   director or shareholder of a domestic concern that engages

17   in bribery of a foreign official, indirectly through any

18   other person or entity, is liable under the Foreign Corrupt

19   Practices Act just as if the person had engaged in the

20   bribery directly.

21          Thus, if you find that the defendant is a

22   domestic concern, that is, a US citizen, or that he was an

23   officer, director, employee, agent or shareholder of a

24   domestic concern, and that he authorized another person to

25   pay a bribe, that authorization alone is sufficient for you

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    to find this element has been proven.

2            To repeat, it is not necessary that the payment

3    actually take place.  Instead, it is the offer or the

4    authorization that completes the crime.

5            You may find this element is satisfied if you

6    find that the defendant promised or authorized an unlawful

7    payment, even if you believe that the payment as not

8    actually made.  It is sufficient to satisfy this element if

9    Defendant Jefferson believed that the bribe would be paid,

10   and that he promised or authorized the bribe to be paid.

11           Provided all the other elements are present, an

12   offer to pay, payment, promise to pay, or authorization of

13   payment is unlawful under the Foreign Corrupt Practices Act

14   if it is made to any person, knowing that all or any portion

15   of such money or thing of value will be offered, given or

16   promised, directly or indirectly, to any foreign official.

17           For the purpose of this section, a person's

18   state of mind is knowing with respect to conduct, a

19   circumstance, or a result of, if such person is aware that

20   the recipient of the payment or gift is engaging in such

21   conduct; that is, the unlawful offering, giving, promise or

22   payment; that such circumstance exists; or that the result

23   is substantially certain to occur; or if such person has a

24   firm belief that such circumstance exists; or that such

25   result will substantially -- is substantially certain to

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    occur.

2         A person is deemed to have such knowledge if

3    the evidence shows that he was aware of a high probability

4    of the existence of such circumstance, unless he actually

5    believes that such circumstance does not exist.

6         The element of knowledge may be satisfied by

7    inferences that you may draw if you find that the defendant

8    deliberately closed his eyes what would -- to what otherwise

9    would have been obvious to him, when knowledge of the

10   existence of a particular fact is an element of the offense.

11        I'm sorry.  Let me begin again.

12        The element of knowledge may be satisfied by

13   inferences you may draw if you find that the defendant

14   deliberately closed his eyes to what otherwise would have

15   been obvious to him.  When knowledge of the existence of a

16   particular fact is an element of the offense, such as --

17   such knowledge may be established if a person is aware of a

18   high probability of its existence, and then fails to take

19   action to determine whether it is true or not.

20        If the evidence shows you that the defendant

21   actually believed the transaction was legal, he cannot be

22   convicted, nor can he be convicted of being stupid or

23   negligent or mistaken.  More is required than that.  But if

24   a defendant's knowledge of a fact may be inferred from

25   willful necessary -- I'm sorry.  But a defendant's knowledge

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    of a fact may be inferred from willful blindness to the

2    knowledge or information indicating that there was a high

3    probability that there was something forbidden or illegal

4    about the contemplated transaction and payment.

5            It's the jury's function to determine whether

6    or not the defendant deliberately closed his eyes to

7    inferences and conclusions that may be drawn from the

8    evidence with respect to this charge.

9            Now the term "foreign official" means any

10   officer or employee of a foreign government, or any

11   department, agency, or instrumentality thereof, or any

12   person acting in an official capacity for or on behalf of

13   any such government or department, agency, or

14   instrumentality.

15           In this case the indictment charges that the

16   then-vice-president of Nigeria, Atiku Abubakar, was a

17   foreign official.

18           An instrumentality of a foreign government

19   includes a government-owned or government-controlled

20   company, such as commercial carriers, airlines, railroads,

21   utilities, and telecommunications companies:

22   Internet/telephone/television.

23           The indictment in this case charges that the

24   Nigerian Telecommunications, Limited, also known as Nitel,

25   was a Nigerian government-controlled company.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1          The Foreign Corrupt Practices Act offers --

2    prohibit offers, payments, promises to pay or authorization

3    of payments made by a domestic concern in order to assist

4    such domestic concern in obtaining or retaining business for

5    or with, or directing business to any person or company.

6          It is therefore not necessary for the

7    government to prove that the domestic concern itself

8    obtained or retained any business whatsoever as a result of

9    the unlawful offer, payment, or -- unlawful offer, payment,

10    promise or gift.

11          Moreover, the act's prohibition of corrupt

12    payments to assist in obtaining or retaining business is not

13    limited to the obtaining or renewal of contracts or other

14    businesses, but also includes a prohibition against corrupt

15    payments related to the execution or performance of

16    contracts, or the carrying out of existing business, such as

17    payment to a foreign official for the purpose of obtaining

18    more favorable tax treatment.

19          In order to sustain its burden of proof for the

20    crime of violating the Foreign Corrupt Practices Act as

21    charged in Count 11 of the indictment, the government must

22    prove that the defendant made use of a means or

23    instrumentality interstate commerce corruptly, in

24    furtherance of an offer, payment, promise to pay or

25    authorization of the payment of money or something of value

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

 1      to a foreign official.

 2              And you are instructed that is an action is in

 3      furtherance of something if it will assist in accomplishing

 4      that objective or is intended to promote that objective.

 5              Now, in Count 11, the indictment charges the

 6      defendant with using the means of interstate commerce

 7      corruptly in furtherance of an offer, payment, or promise to

 8      pay something of value to Atiku Abubakar, then the Nigerian

 9      vice-president, in two ways:  First, on July 30th, 2005,

10      when the defendant drove his car with $100,000 in cash from

11      Arlington, Virginia, to the District of Columbia; and

12      second, on July 30th, when he traveled from Alexandria,

13      Virginia, to his Washington, DC, office to prepare a package

14      to be delivered to the Nigerian vice-president.

15              The government is not required to prove that

16      the defendant violated the Foreign Corrupt Practices Act in

17      both ways that are alleged.  But each juror must agree with

18      all the other jurors that the crime was committed in the

19      same way.

20              That is, if you unanimously find that the

21      government has proved beyond a reasonable doubt either that

22      the government [sic] used the means of interstate commerce

23      corruptly in furtherance of an offer, payment or promise to

24      pay something of value to Atiku Abubakar by driving his car

25      with $100,000 in cash from Arlington, Virginia, to the

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    District of Columbia on July 30th, 2005, or that the

2    defendant used the means of interstate commerce corruptly in

3    furtherance of an offer to pay -- offer, payment, or promise

4    to pay something of value to Atiku Abubakar by traveling

5    from Alexandria to his office in Washington, DC, to prepare

6    a package to be delivered to the Nigerian vice-president on

7    July 30th, then you may find the defendant guilty of

8    Count 11.

9              On the other hand, if you find that the

10   defendant -- if you find that the government has not proved

11   beyond a reasonable doubt that either the defendant's

12   driving of his car with $100,000 in cash from Arlington to

13   the District on July 30th, or his travel from Alexandria to

14   his Washington office on that date to prepare a package to

15   be delivered to the Nigerian vice-president was in

16   furtherance of an offer to pay, or payment, or something of

17   value -- or payment of something of value to that foreign

18   official, then you must find the defendant not guilty of

19   Count 11.

20             Now, Counts 12 through 14 charge that:  On the

21   dates mentioned -- and I'll come to those -- that the

22   Defendant Jefferson knowingly participated in the transfer

23   of proceeds -- of the proceeds of a specified unlawful

24   activity he had received in violation of Title 18, Section

25   201, from the Eastern District of Virginia to the Eastern

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    District of Louisiana, and then and there did knowingly

2    engage or cause another to engage in monetary transactions

3    in criminally derived property that was in value greater

4    than 10,000, and was derived from bribe money that affected

5    interstate commerce on these dates:  On June 24th, the

6    transfer of check 1121 for $25,015, written from ANJ's

7    account at the Dryades Savings Bank, payable to the

8    Jefferson Committee, which was deposited on the same day

9    into the Jefferson Committee account at Liberty Bank and

10   Trust -- that's Count 12; second, on June 27th, 2005, a wire

11   transfer for $25,000 from ANJ's account at Dryades Savings

12   Bank to iGate's account at Bank America -- that's Count 13;

13   and on July 26th, the transfer of check number 1122 for

14   $25,000, written from ANJ's account at Dryades Savings Bank,

15   payable to Andrea Jefferson, which was deposited on July

16   26th, 2005, in the Dryades Savings Bank account held in the

17   name of Defendant Jefferson and Andrea Jefferson -- that's

18   Count 14.

19           Now, Title 18, Section 1957 is part of the

20   Federal Money Laundering Statute.  This statute reads, in

21   pertinent part:  Whoever, in any of the circumstances set

22   forth in Subsection (d), knowingly engages or attempts to

23   engage in a monetary transaction in criminally deprived --

24   derived property of a value greater than $10,000, and is

25   derived from specified unlawful activity, shall be guilty of

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    an offense.  That's (a).

2              (c) says that:  In prosecution for such an

3    offense under this section, the government is not required

4    to prove the defendant knew that the offense from which

5    he -- the criminally deprived [sic] property was derived --

6    was specified unlawful activity.

7              And (d) states that:  The circumstances

8    referred to in Subsection (a) are:  One, that the offense

9    under this section takes place in the United States or in

10   the special maritime or territorial jurisdiction of the

11   United States; or that the offense under this section takes

12   place outside the United States and such special

13   jurisdiction, but the defendant's United States -- but that

14   defendant is a United States person, but excluding the class

15   described in paragraph (2)(d).

16             And I'll give you instructions on this in just

17   a moment.

18             Pursuant to Title 18, 1956 -- Section 1956,

19   Subsection (c), the term "specified unlawful activity"

20   includes, among other things, bribery of a public official.

21             So in order to sustain its burden of proof of

22   the crime of money laundering, the government must prove the

23   following five essential elements beyond a reasonable doubt:

24             First, that the defendant knowingly engaged or

25   attempted to engage in a monetary transaction in or

1     affecting interstate commerce;

2                    Second, that the defendant knew the transaction

3     involved criminally deprived -- I'm sorry -- criminally

4     derived property.  That means coming from;

5                    Third, that the property had a value of greater

6     than $10,000;

7                    Fourth, that the property was, in fact, derived

8     from bribery; and

9                    Fifth, that the transaction occurred in the

10    United States.

11                   Although the government must prove that at

12    least $10,000 of the property at issue is criminally derived

13    property, the government does not have to prove that all of

14    the property at issue was criminally derived.

15                   If the government fails to prove any of these

16    essential element beyond a reasonable for any of the Counts

17    12, 13, and 14, then you must find the defendant not guilty

18    of such count.

19                   The term "monetary transaction" means a

20    deposit, withdrawal, transfer, exchange, in or affecting

21    interstate commerce, of funds or monetary instrument by or

22    through or to a financial institution.

23                   And "a financial institution" means, among

24    other things, an insured bank, commerce -- a commercial

25    bank, a trust company, a credit union, and a thrift

1    institution.

2            The term "interstate or foreign commerce" means

3    commerce between any combination of states, territories or

4    possessions of the United States, or between the United

5    States and a foreign country.

6            Now, the first element requires that the

7    transaction affected interstate commerce in some way,

8    however minimal.  This effect on interstate commerce can be

9    established in several ways.

10           First, any monetary transaction with a

11   financial institution insured by FDIC affects interstate

12   commerce.  So if you find that the Dryades Savings Bank was

13   insured by FDIC, that's enough to establish that the

14   transactions affected interstate commerce.

15           Second, if you find that the sources of the

16   funds used in the transaction affected interstate commerce,

17   that is sufficient, as well.

18           And third, if you find that the transaction

19   itself involved an interstate transfer of funds, that would

20   also be sufficient.

21           The second element of the money laundering

22   offense charged in Counts 12 through 14 is that the

23   defendant knew the transaction involved criminally derived

24   property.

25           The term "criminally derived property" means

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    any property constituting or derived from proceeds from a

2    criminal offense.

3          Funds are criminally derived if they are

4    derived from an already-completed offense or a completed --

5    or a completed phase of an ongoing offense.

6          The government must prove not only that the

7    defendant knew that the property involved in the monetary

8    transaction constituted or was derived from proceeds

9    obtained by some criminal offense; the government -- I'm

10   sorry, let me -- the government must prove only that the

11   defendant knew that the property involved in the monetary

12   transaction constituted or was derived from proceeds

13   obtained by some criminal offense.

14         The government does not have to prove that the

15   defendant knew the precise nature of the criminal offense,

16   or that the defendant knew the property involved in the

17   transaction represented the proceeds of bribery.

18         Further, the government is not required to

19   prove that all of the property involved in the monetary

20   transaction was criminally derived property.  If you find

21   that the proceeds derived from a criminal offense in the

22   amount of $10,000 or more were combined or commingled with

23   other funds from a lawful activity, for example, in a single

24   bank account, proof of a later transaction involving more

25   than $10,000 will satisfy the second element.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1      Thus, to find the defendant guilty of unlawful

2  money -- monetary transaction alleged in Count 12, you must

3  find that the government has proved beyond a reasonable

4  doubt that $25,000 of the funds in the ANJ bank account at

5  Dryades Savings Bank on June 25th which were transferred to

6  the Jefferson Committee bank account were, in fact, proceeds

7  already realized from the crime of bribery at the time they

8  were transferred.

9      To find the defendant guilty of unlawful

10  monetary transaction alleged in Count 13, you must find that

11  the government has proved beyond a reasonable doubt that

12  $25,000 of the funds in the ANJ bank account at Dryades

13  Savings Bank on June 27, 2005, which were transferred to

14  iGate's bank account on that date, were in fact proceeds

15  already realized from the crime of bribery at the time they

16  were transferred.

17      And to find the defendant guilty of unlawful

18  monetary transaction as alleged in Count 14, you must find

19  that the government has proved beyond a reasonable doubt

20  that $25,000 of the ANJ bank account of the Dryades Savings

21  Bank on July 6th, 2005, which were transferred to Andrea

22  Jefferson's bank account on that day, were, in fact,

23  proceeds already realized from the crime of bribery at the

24  time they were transferred.

25      The third element of engaging in a monetary

1  transaction as charged in Counts 12, 13 and 14 of the

2  indictment is property derived from a specified unlawful

3  activity.  This element requires a proof beyond a reasonable

4  doubt that the transaction involved in each count involved

5  profits derived from a specified unlawful activity under

6  United States law.

7        The lawful activity alleged in Counts 12, 13,

8  and 14 is bribery of a public official.  So you are

9  instructed that bribery, if proved, is a specified unlawful

10  activity under federal law.  The government must prove,

11  though, that the funds involved in the monetary transactions

12  were the proceeds from a completed offense of bribery.

13        The fourth element of the crime of engaging in

14  an unlawful monetary transaction as charged in Counts 12

15  through 14 is knowledge.  This element requires proof that

16  the defendant knew that the transaction involved the

17  proceeds of a criminal offense.

18        This means the government must prove that the

19  defendant knew that the alleged transactions involved the

20  profits derived from some form of unlawful activity

21  constituting a felony under state or federal law.  Proof

22  that the defendant knew the property involved in the

23  monetary transactions represented the proceeds of the

24  particular offense of bribery is not required.

25        The fifth element of the crime of engaging in

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1   an unlawful monetary transaction charged in Counts 12

2   through 14 is that the government must prove beyond a

3   reasonable doubt that the transaction took place in the

4   United States.

5            Counts 12, 13, and 14 allege that the defendant

6   conducted the monetary transactions between the ANJ bank

7   account at the Dryades Savings Bank in Louisiana and the

8   Jefferson Committee bank account at Liberty Bank and Trust

9   in Louisiana, the iGate bank account in Bank of America in

10  Kentucky, and the Jefferson bank account at the Dryades

11  Savings Bank in Louisiana.

12           The government has a burden of establishing by

13  a preponderance of the evidence that the offenses alleged in

14  Counts 12, 13 and 14 are property charged here; that is,

15  that venue is appropriate.

16           You are instructed that for the particular

17  crime of money laundering, a prosecution for an offense may

18  be brought in any district in which the financial or

19  monetary transaction is conducted, or in any district where

20  the prosecution for the underlying unlawful activity could

21  be brought if the defendant participated in the transfer of

22  the proceeds of the unlawful activity from that district to

23  the district where the financial monetary transaction is

24  conducted.

25           In other words, in order to convict defendant,

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    you must find that the government has established by a

2    preponderance of the evidence that when Lori Mody

3    transferred $59,000 from McLean, Virginia, to the ANJ

4    Dryades Savings Bank account on June 24th, Defendant

5    Jefferson was participating in the transfer of proceeds from

6    the completed offense of bribery or proceeds from a

7    completed phase of the offense of bribery from the Eastern

8    District of Virginia to Louisiana.

9             Now, in addition to bribery, honest services

10   wire fraud, violating the Foreign Corrupt Practices Act, and

11   money laundering, the defendant is also charged with aiding

12   and abetting others in the commission of these crimes.

13            Aiding and abetting liabilities reflects the

14   principle that a person may violate the law, even though he

15   or she does not personally do each and every act

16   constituting the offense, if that person aided and abetted

17   the commission of the offense.

18            Section 2(a) of Title 18 provides that:

19   Whoever commits an offense against the United States, or

20   aids, abets, counsels, commands, induces or procures its

21   commission, is punishable as a principal.

22            Now, before a defendant may be held responsible

23   for aiding and abetting others in the commission of the

24   crime, it is necessary that the government prove beyond a

25   reasonable doubt that the defendant knowingly and

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1   deliberately associated himself in some way with the crime

2   charged, and participated in it with the intent to commit

3   the crime.

4           In order to be found guilty of aiding and

5   abetting the commission of the crimes charged in Counts 3

6   through 15, the government must prove beyond a reasonable

7   doubt that the defendant knew that the crime charged was to

8   be committed or was being committed; second, knowing -- that

9   the defendant knowingly did some act for the purpose of

10  aiding the commission of the crime; and third, that the

11  defendant acted with the intention of causing the crime

12  charged to be committed.

13          Before the defendant may be found guilty as an

14  aider and abettor to the crime, the government must also

15  prove beyond a reasonable doubt that someone committed each

16  of the essential elements of the offense charged.

17          Merely being present at the scene of the crime,

18  or merely knowing that a crime was being committed or was

19  about to be committed, is not sufficient conduct for the

20  jury to find that defendant aided and abetted the commission

21  of that crime.  The govern must prove that he defendant

22  knowingly and intentionally associated himself with the

23  crime in some way as a participant, that is, someone who

24  wanted the crime to be committed, not as a mere spectator.

25          Count 15, the final count -- is that right?

1      JURORS:  No.

2      THE COURT:  No.  Second-to-last.

3      Count 15 charges that on or about August 3rd,

4  2005, in the -- New Orleans, the defendant knowingly and

5  corruptly attempted to conceal from law enforcement agents,

6  during a court-approved search of the defendant's New

7  Orleans residence, an August 3rd facsimile addressed to

8  defendant, with intent to impair the document's availability

9  for use in official proceedings, namely an investigation

10  being conducted by the FBI in the Eastern District of

11  Virginia and elsewhere, and the present criminal prosecution

12  through the indictment in court proceeding.

13      Title 18, Section 1512(c)(1) provides, in

14  pertinent part, that:  Whoever corruptly alters, destroys,

15  mutilates or conceals a record, document or other object, or

16  attempts to do so, with the aim to impair the object's

17  integrity or availability for use in an official proceeding,

18  shall be guilty of an offense.

19      In some cases, it is a crime for anyone to

20  attempt the commission of a crime, even though the attempt

21  fails, and the intended offense is not actually carried out

22  or fully committed.

23      In this instance, the defendant is charged with

24  attempting to obstruct justice through the concealment of a

25  document, to make that document unavailable for use in an

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

official proceeding.

In order to sustain its burden of proof of the crime of attempting to obstruct justice, the government must prove the following three essential elements beyond a reasonable doubt:

One, that the defendant knowingly and corruptly attempted to conceal a record or document;

Two, that the defendant did so with the intent to impair the record or the document's availability for use in an official proceeding; and

Three, that the defendant did an act constituting a substantial step toward the commission of that crime.

If the government fails to prove any of these essential elements beyond a reasonable doubt, you must find the defendant not guilty of Count 15.

Now, as the term is used in these instructions, the term "official proceeding" means any proceeding before a judge or court of the United States, official -- a United States magistrate judge, a federal grand jury, or a federal government agency.

And in establishing the offense of obstruction of justice, the government need not prove that the official proceeding was pending or was about to be instituted at the time of the offense.

1         The government also does not need to prove that

2    the defendant knew that the official proceeding was or would

3    be before a judge or a court of the United States or a

4    United States magistrate, a federal grand jury or a federal

5    government agency.

6         But in order to show that the government [sic]

7    had the requisite intent to impair the document's

8    availability for use at an official proceeding, the

9    government must prove beyond a reasonable doubt that the

10   official proceeding was foreseen or contemplated by the

11   defendant, and that the defendant believed that his acts

12   would be likely to affect that foreseeable proceeding.

13        In other words, the defendant's conduct must

14   have a relationship in time, causation or logic with the

15   official proceeding, and his action must have the natural

16   and probable effect of interfering with the due

17   administration of justice.

18        The government does not have to prove, however,

19   that the record or document was admissible in evidence or

20   free from a claimed privilege.

21        The government must prove beyond a reasonable

22   doubt that the defendant corruptly attempted to conceal the

23   record or document.  And in this context, "corruptly" means

24   to act with dishonest, wrongful or immoral intent to

25   influence, obstruct, or interfere improperly with the

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    administration of justice.

2             "A substantial step" means some important

3    action leading to the commission of a crime, as

4    distinguished from some inconsequential or unimportant act.

5    It must be something beyond mere preparation.  It must be an

6    act unless -- which, unless frustrated by some condition or

7    event, would have resulted, in the ordinary and likely

8    course of things, in the commission of the crime being at

9    tempted.

10            Because prosecutions under this section have an

11   extraterritorial jurisdiction, the conduct that is the

12   subject of this charge need not have occurred in the Eastern

13   District of Virginia.  Instead, a prosecution under this

14   section may be brought either in the district in which the

15   official proceeding, whether or not pending or about to be

16   instituted, was intended to be effected, or in the district

17   in which the conduct constituting the alleged offense

18   occurred.

19            Now, we come to the final count.

20            Count 16 charges that:  From in or about August

21   2000, through in or about August 2005, within the Eastern

22   District of Virginia and elsewhere, the defendant did

23   knowingly and unlawfully conduct and participate, directly

24   and indirectly, in the conduct of the affairs of an

25   enterprise, the Office of Congressman William J. Jefferson,

1   through a pattern of racketeering activity, consisting of

2   racketeering acts 1 through 12, and that the enterprise

3   engaged in, and it activities affected, interstate and

4   foreign commerce, all in violation of 1962(c) of Title 18,

5   which provides, in permanent -- in pertinent part, that:  It

6   shall be unlawful for any person, employed by or associated

7   with any enterprise engaged in, or the activities of which

8   affect, interstate or foreign commerce, to conduct or

9   participate, directly or indirectly, in the conduct of such

10  enterprise's affairs through a pattern of racketeering

11  activity.

12          So, in order to sustain its burden of proof for

13  the crime of participating in the affairs of an -- of an

14  interstate enterprise through a pattern of racketeering

15  activity as charged in Count 16, the government must prove

16  the following five elements beyond a reasonable doubt:

17          First, an enterprise as described in the

18  indictment -- that an enterprise described in the indictment

19  existed on or about the time alleged in the indictment;

20          Second, that the enterprise engaged in or its

21  activity affected interstate or foreign commerce;

22          Third, that the defendant was employed by or

23  was associated with the enterprise;

24          Fourth, that the defendant participated, either

25  directly or indirectly, in the conduct of the affairs of

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    enterprise; and

2                   Fifth, that the defendant knowingly

3    participated in the conduct of the affairs of the enterprise

4    through a pattern of racketeering activity as described in

5    the indictment, that is, through the commission of at lease

6    two of the charged racketeering acts within ten years of

7    each other, or through causing or aiding and abetting the

8    commission of two such racketeering acts.

9                   If the government fails to prove any of these

10   essential elements beyond a reasonable doubt, then you must

11   find the defendant not guilty of this charge.

12                  Now, as used in these instructions, the term

13   "enterprise" includes any individual partnership,

14   corporation, or other legal entity, and any union or group

15   of individuals associated in fact, although not a legal

16   entity.  The term "enterprise" can include a government

17   office.

18                  The term "enterprise," as used in these

19   instructions, may include a group of people associated in

20   fact, even though this association is not recognized as a

21   legal entity.  A group or association of people can be an

22   enterprise if these individuals have joined together for a

23   purpose of engaging in a common course of conduct.

24                  Such an association of persons may be

25   established by evidence showing an ongoing association,

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    formal or informal, and by evidence that the people making

2    up the association functioned as a continuing unit.

3         Therefore, in order to establish the existence

4    of such an enterprise, the government must prove that there

5    is an ongoing organization with some sort of framework for

6    making and carrying out decision, that the various members

7    and associates of the association function as a continuing

8    unit to achieve a common purpose, and that the enterprise is

9    separate and apart from the pattern of racketeering activity

10   in which it engages; in other words, that it has a separate

11   existence from the pattern of racketeering acts.

12        Regarding organization, it's not necessary that

13   the enterprise have any particular formal structure.  But it

14   must be sufficient -- must have sufficient organization that

15   its members functioned and operated in a coordinated manner

16   in order to carry out the alleged common purposes of the

17   enterprise.

18        Continuing membership would exist even where a

19   membership changes by adding or losing individuals during

20   the course of its existence.

21        Therefore, such an association of individuals

22   may retain its status as an enterprise, even though the

23   membership of the association changes by adding or losing

24   individuals during the course of its existence.

25        And the "separate existence" means that the

1     enterprise has an existence beyond that which is necessary

2     merely to commit each of the charged racketeering acts; that

3     is, that the organization continue to exist in the intervals

4     between the alleged racketeering activities.

5          It is not necessary, however, to find that the

6     enterprise had some function wholly unrelated to the

7     racketeering activity.  Common sense dictates that the

8     existence of an association -- in fact, enterprise is

9     oftentimes more readily proven by what it does than by an

10    abstract analysis of its structure.

11         Moreover, you may consider proof of the

12    racketeering acts to determine whether the evidence

13    establishes the existence of the charged enterprise.

14         Thus, evidence of the function of overseeing

15    and coordinating the commission of several different

16    predicate racketeering acts and other activities on an

17    ongoing basis may satisfy the separate existence of the

18    enterprise requirement.

19         The term "enterprise" includes both legitimate

20    and illegitimate enterprises.

21         There is no requirement that the enterprise

22    benefit from the racketeering activity.  The enterprise,

23    whether legitimate or illegitimate, may be used as a vehicle

24    through which the unlawfully activity is committed, or may

25    be a victim of such unlawful activity.

1          The government is not required to prove each

2     and every allegation about the enterprise or the manner in

3     which the enterprise operated.

4          Now, as I previously -- we are nearing the end.

5     Thank you for your patience.

6          As I stated previously, the government must

7     prove beyond a reasonable doubt that the enterprise engaged

8     in, or it's activities affected, interstate or foreign

9     commerce.

10          "Interstate or foreign commerce" means trade or

11     conducting business or travel between one state and another

12     state or the District of Columbia.

13          And "foreign commerce" means foreign trade,

14     business or travel between the United States and another

15     country.

16          Therefore, interstate and foreign commerce may

17     include the movement of money, goods, services or persons

18     from one state to another state or the District of Columbia,

19     or between the United States from another country.

20          This may include, among other matters, the

21     purchase or sale of goods or supplies outside the United

22     States, or the state in which the enterprise was located, or

23     the use of interstate or international mail or wire

24     facilities, or the causing of any of those things.

25          An enterprise is generally engaged in commerce

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    when it is itself directly engaged in the production or

2    distribution or acquisition of goods or services in

3    interstate commerce.

4              If you find that the evidence is sufficient to

5    prove that the enterprise engaged in interstate or foreign

6    commerce, the required nexus to interstate or foreign

7    commerce is established, and therefore the government is not

8    required to prove the alternative, that the activities of

9    the enterprise affected interstate or foreign commerce.

10              Regarding the alternative method of satisfying

11   this element, to establish the requisite effect of -- effect

12   on interstate or foreign commerce, the government is not

13   required to prove a significant or substantial effect on

14   foreign commerce; rather, a minimal effect on interstate or

15   foreign commerce is sufficient.

16              And it is not necessary for the government to

17   prove that the individual racketeering acts themselves

18   affected interstate or foreign commerce; rather, it is the

19   enterprise and its activities considered in its entirety

20   that must be shown to have that effect.

21              On the other hand, this effect on interstate or

22   foreign commerce may be established through the effect

23   caused by the individual racketeering acts.

24              Moreover, it is not necessary for the

25   government to prove that the defendant knew the enterprise

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1   would affect interstate or foreign commerce, or that the

2   defendant intended to affect interstate or foreign commerce,

3   or that each defendant -- I'm sorry -- or that the defendant

4   engaged in or his activities affected interstate or foreign

5   commerce.

6          The government is not required to prove all of

7   the circumstances outlined above.  To satisfy this element,

8   the government need only prove beyond a reasonable doubt

9   either that the activities of the enterprise considered in

10  their entirety had some minimal effect on interstate or

11  foreign commerce, or that the enterprise was engaged in

12  interstate or foreign commerce.

13         And the government must also prove beyond a

14  reasonable doubt that the defendant was employed by or

15  associated with the enterprise about which I have already

16  instruct you.

17         The government need not prove both.  Either one

18  is sufficient to establish this element.

19         The term "employed by" should be given its

20  common, plain meaning.  Thus, a person is employed by an

21  enterprise when, for example, he is on the payroll of the

22  enterprise and performs services for the enterprise, holds a

23  position in the enterprise, or has an ownership interest in

24  the enterprise.

25         And "associated with" should also be given its

1   own plain meaning.  As Webster's Dictionary notes, associate

2   means to join, often in a loose association, as a partner,

3   fellow worker, colleague, friend, companion, ally, et

4   cetera.

5            Therefore, a person is a -- or ally, to join or

6   connect with one another.

7            Therefore, a person is associated with an

8   enterprise when, for example, he joins with other members of

9   the enterprise and he knowingly aids or furthers the

10  activities of the enterprise, or he conducts business with

11  or through the enterprise.

12           It is not required that the defendant have been

13  employed by or associated with the enterprise for the entire

14  time that the enterprise existed.

15           The government is also not required to prove

16  that the defendant had a formal position in the enterprise,

17  or participated in all the activities of the enterprise, or

18  had full knowledge of all the activities of the enterprise,

19  or knew about the participation of all the other members in

20  the enterprise.

21           Rather, it is sufficient that the government

22  prove beyond a reasonable doubt that at some time during the

23  existence of the enterprise as alleged in the indictment,

24  the defendant was employed by or associated with the

25  enterprise within the meaning of those terms as I have just

1    explained them, and that he knew of the general nature of

2    the enterprise, and that the enterprise extended beyond his

3    own role in the enterprise.

4            The government must prove beyond a reasonable

5    doubt that the defendant conducted or participated, directly

6    or indirectly, in the conduct of the affairs of the

7    enterprise.  Such proof may include evidence that the

8    defendant intentionally performed acts, functions or duties

9    which are necessary to or helpful in the operation of the

10   enterprise.

11           Thus, the government must prove that the

12   defendant participated in the operation or management of the

13   enterprise itself, or that he had some part in directing the

14   enterprise's affairs.

15           However, the government need not prove that the

16   defendant exercised significant control over or within the

17   enterprise, or that he had a formal position in the

18   enterprise, or that he had primary responsibility for the

19   enterprise's affairs.

20           Rather, an enterprise is operated not just by

21   upper management, but also by lower-rung participants in the

22   enterprise who are under the direction of upper management

23   or carry out upper management's orders.

24           Therefore, you may find -- I don't think that

25   next sentence has any application.  I am going to omit it.

1          Any objection?

2          ATTORNEY LYTLE:  Not from the government, your

3     Honor.

4          ATTORNEY SOLOMON:  No, your Honor.

5          THE COURT:  So the government must prove beyond

6     a reasonable doubt -- one of the elements I gave you on this

7     one is that it must prove a pattern of racketeering

8     activity.

9          As I have already stated, the indictment

10    alleges that defendant and his alleged coconspirators

11    committed 12 racketeering acts, including bribery,

12    deprivation of honest services through wire fraud, and money

13    laundering.

14         Now, you won't -- I am not going to describe

15    those 12, but you will have with you, marked as a Court

16    exhibit, a description of those racketeering acts.  Those

17    are allegations in the indictment.  They are not themselves

18    proof or evidence of any kind.  But they are there for your

19    use.

20         And what the government must prove beyond a

21    reasonable doubt, three essential elements:

22         First, that the defendant intentionally

23    committed or caused or aided and abetted the commission of

24    two or more of the racketeering acts alleged in the

25    indictment.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1      These two or more racketeering acts must have

2   been committed within ten years of each other.  And your

3   verdict must be unanimous as to which specific racketeering

4   acts you find that the defendant committed or caused to

5   be -- or caused to be committed or aided and abetted.

6      In a moment I will instruct you on the elements

7   regarding each of the charged -- well, I have already

8   instructed on that.  You'll have a list.

9      Remember, there are 12 of them, or more, if

10  there are subsections.  The government doesn't have to prove

11  all of them.  You must find at least two.  But you must

12  be -- before you can convict -- if you don't find two, you

13  must acquit.  If you find two, you must be unanimous as to

14  those two.  If you are not unanimous as to those two, you

15  must acquit.

16     Now, as to the racketeering acts, there must

17  have been a nexus to the enterprise, and the racketeering

18  acts must be related.

19     A racketeering act has a nexus to the

20  enterprise if it has a meaningful connection to the

21  enterprise.  To be related, the racketeering acts must have

22  the same or similar purposes, results, participants, victims

23  or methods of commission, or otherwise be interrelated by

24  distinguishing characteristics, and not be merely isolated

25  events.

1          Two racketeering acts may be related, even

2    though they are dissimilar --

3               (Noise interruption.)

4               THE CLERK:  Excuse me, Judge.

5               THE COURT:  Two racketeering acts may be

6    related, even though they are dissimilar or not directly

7    elated to each other, provided that the racketeering acts

8    are related to the same enterprise.

9               For example, for both nexus and relatedness

10   purposes, the requisite relationship between the enterprise

11   and a predicate racketeering act may be established by

12   evidence that the defendant was enabled to commit the

13   racketeering act solely by virtue of his position in the

14   enterprise, or involvement in or control over its affairs,

15   or by evidence that the defendant's position in the

16   enterprise facilitated its commission of the racketeering

17   acts, or by evidence that the racketeering act benefited the

18   enterprise, or by evidence that the racketeering act was

19   authorized by the enterprise, or by evidence that the

20   racketeering act promoted or furthered the purposes of the

21   enterprise.

22              And third, the racketeering acts must

23   themselves either extend over a substantial period of time,

24   or they pose a threat of continued criminal activity.

25              The government need not prove that such a

1     thread of continuity by any mathematical formula or by any

2     particular method of proof, but rather may prove it in a

3     variety of ways.

4             For example, the thread of a continued

5     unlawfully activity may be established when the evidence

6     shows that the racketeering acts are part of a long-term

7     association that exists for criminal purposes when the

8     racketeering acts are shown to be the regular way of

9     conducting the affairs of the enterprise.

10            Moreover, in determining whether the government

11    have proven the tread of continued unlawful activity, you

12    are not limited to consideration of the specific

13    racketeering acts charged against the defendant.  Rather, in

14    addition to considering such acts, you may also consider the

15    nature of the enterprise and other unlawful activities of

16    the enterprise and its members, viewed in their entirety,

17    including both charged and uncharged unlawful activities.

18            Remember now, you will have a list of the

19    alleged racketeering acts.

20            And the racketeering acts of bribery of a

21    public official and the deprivation of honest services by

22    wire fraud, as alleged in these racketeering acts, contain

23    several essential elements.  In order to find that the

24    defendant committed these racketeering acts, the government

25    must prove certain essential elements beyond a reasonable

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    doubt.

2              For each act of racketeering involving bribery

3    or solicitation of bribes by a public official and the

4    deprivation of honest services by wire fraud, the elements

5    of the offense and any appropriate definitions that I have

6    previously given you in those instructions, you need to

7    follow those.

8              Similarly, the racketeering act of money

9    laundering, as alleged in Counts 12 through 16, also contain

10   several essential elements that must be proven by the

11   government beyond a reasonable doubt.  You also have been

12   instructed previously concerning these essential elements of

13   money laundering, and I won't take -- instruct you again at

14   this time on the elements of the offenses that you have

15   already received instructions on.

16             The only exception is the racketeering act

17   concerning the deprivation of honest services by mail fraud.

18             In order to find that the defendant committed

19   this racketeering act, the government must prove the

20   following three [sic] essential elements beyond a reasonable

21   doubt.  This is -- relates to a different code section, 1341

22   and 1346.

23             First -- the government must prove beyond a

24   reasonable doubt these three [sic]:

25             First, that the defendant knowingly devised or

1  knowingly participated in a scheme to defraud or deprive the

2  citizens of the United States or the House of

3  Representatives of their intangible right to honest

4  services;

5  　　　　　　Second, that the scheme or artifice to defraud

6  involved a material misrepresentation or concealment of

7  material fact;

8  　　　　　　Third, that Jefferson did so willfully and with

9  the intent to defraud; and

10  　　　　　　Fourth, that in advancing or furthering or

11  carrying out this scheme to defraud, that the defendant used

12  the mails or caused the mails to be used.

13  　　　　　　Use of the mails is an essential element of the

14  offense of mail fraud as charged in the racketeering act,

15  one of the racketeering acts in Count 16.  And you'll see

16  that listed in the Court exhibit.

17  　　　　　　And the use of the mails is an essential

18  element of that racketeering act, whether by mailing or

19  causing to be mailed with the US Postal Service, or a

20  private or commercial interstate carrier, or by depositing

21  or causing to be deposited with such a carrier.

22  　　　　　　A private or commercial interstate carrier

23  includes any business -- any business engaged in the

24  transmission, transportation or delivery of messages or

25  other articles in interstate commerce; that is, from any

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    place in one state to any place in another state.

2              If a message or other article is deposited with

3    such a carrier, it need not be proved that the message or

4    material thereafter moved in interstate from one state to

5    another.

6              The government is not required to prove that

7    the defendant actually mailed anything, or that the

8    defendant even intended that the mails would be used to

9    further or to advance or carry out the scheme or plan to

10   defraud or to deprive another -- to carry out the alleged

11   scheme, plan, or plan to defraud or to deprive another of

12   the intangible right to honest services.

13             The government must prove beyond a reasonable

14   doubt, however, that the mails were in fact used in some

15   manner to further or to advance or to carry out the scheme

16   to defraud or deprive another of the intangible right to

17   honest services.

18             The government must also prove that the use of

19   the mails would follow the ordinary course of business or

20   events, or that the use of mails by someone was reasonably

21   foreseeable.  It's not necessary that the government prove

22   that the item itself was -- that the item itself mailed was

23   false or fraudulent or contained false or fraudulent

24   representation or promise, or contained any request for

25   money or thing of value.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1          The government must prove beyond a reasonable

2     doubt, however, that the use of mails further or advanced or

3     carried out in some way the scheme or plan to defraud or

4     deprive another of the intangible right to honest services.

5          The terms "scheme to defraud or deprive," "to

6     deprive another of intangible right to honest services,"

7     "duty to disclose," "conflict of interest," "scheme,"

8     "materiality," "intent to defraud," and "dual intent" have

9     already been defined for you as a part these instructions

10    concerning deprivation of honest services by wire fraud, and

11    I will not repeat them here.

12         Now, we are very close to the end.

13         Reports about this trial have and will continue

14    to appear in the newspapers, on radio and on television and

15    on the Internet.

16         The person who writes or reports a news story

17    may not have the opportunity to listen to all of the

18    testimony that you have heard, may not see all of the

19    evidence that you have seen, and may be receiving

20    information or opinions from people who have not seen here

21    in court -- or who have not been -- I'm sorry -- from people

22    whom you have not seen here in court under oath and subject

23    to cross-examination.

24         A report in the media may emphasize an

25    unimportant point, or it may simply be wrong.


MICHAEL A. RODRIQUEZ, RPR/CM/RMR

 1          As I have told you previously, you must not

 2    read any news story or accounts or blogs about the case, or

 3    anyone involved in the case in print or in the -- or on the

 4    Internet.  And you must not listen to any radio or

 5    television report about the case, or anyone involved in the

 6    case.

 7          The case must be decided by you solely and

 8    exclusively on the evidence that was received here in open

 9    court.

10          Now, as I have told you several times, you must

11    not base your verdict in any way on sympathy, bias,

12    guesswork or speculation.  Your verdict must be based solely

13    on the evidence and the Court's instruction.

14          The verdict must represent your considered

15    judgment; that is, the considered judgment of each juror.

16          In order to return a verdict, it is necessary

17    that each juror agree thereto.  In other words, your verdict

18    must be unanimous.

19          It is your duty as jurors to consult with one

20    another and to deliberate with a view to reaching an

21    agreement, if you can do so without violence to your

22    individual judgment.

23          You must each decide the case for yourself, but

24    do so only after an impartial consideration of all the

25    evidence in the case with your fellow jurors.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1            And in the course of your deliberations, do not

2 hesitate to reexamine your own views and to change your

3 opinion if convinced it is erroneous. But do not surrender

4 your honest conviction as to the weight or effect of the

5 evidence solely because of the opinion of your fellow jurors

6 or for the mere purpose of returning a verdict.

7            Remember at all times, you are not partisans,

8 you are judges, judges of the facts, and your sole interest

9 is to seek the truth from the evidence in the case.

10            Now, the punishment provided by law for the

11 offenses charged in the indictment is exclusively within the

12 province of the Court and should never be considered by the

13 jury in any way in arriving at an impartial verdict as to

14 the offense charged.

15            Now, when you retire to the jury room you will

16 select one of your number to serve as your foreperson. And

17 the foreperson will preside over your deliberations and will

18 be your spokesperson here in open court.

19            A form of the verdict has been prepared for

20 your convenience.

21            May I see it?

22            In essence, this is a -- we are going to have

23 to prepare a renumbered one, Counsel.

24            But it is a four-page document. It has the

25 style of the case at the top, and then it has "Verdict."

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1   And underneath that it will have, "We, the

2   jury, find," and then it will have -- it will go down for

3   each count.  And you can note for each count whether you

4   find guilty or not guilty, as you may find.

5   Now, for Count 16, we also have listed here the

6   various, 12 racketeering acts.  Remember, you have to find

7   at least two, and you have to be unanimous as to those two.

8   And they are listed here.  You may find some proven and some

9   not proven.  Or you may find them all not proven, or you may

10  find them all proven.

11  Then, at the end of the jury verdict form is a

12  place for the foreperson's signature and name.

13  You will take this form of the verdict to the

14  jury room, and when you reach your unanimous agreement as to

15  your verdict, you will have your foreperson fill the verdict

16  form in, date it and sign it, and then return to the

17  courtroom with the verdict on which you unanimously agree.

18  Now, it's proper to add the caution that

19  nothing said in these instructions, and nothing in any form

20  of the verdict prepared for your convenience, is meant to

21  suggest or to convey in any way or in any manner any

22  intimation as to what verdict I think you should find.  What

23  your verdict is, is your sole and exclusive duty and

24  responsibility.

25  Now, if it becomes necessary during your

1    deliberations to communicate with the Court, you may send a

2    note by Mr. Wood, the court security officer, signed by the

3    foreperson or by one or more members of the jury.

4           But no member of the jury should ever attempt

5    to communicate with the Court by any means other than by a

6    signed writing.  And the Court will not communicate with any

7    member of the jury on any subject touching the merits of the

8    cares, other than an open writing or orally -- other than in

9    writing or orally here in open Court.

10          Now, I will communicate with you on several

11   occasions on administrative matters, through Mr. Wood.  And

12   I give you will an example.

13          Are the sandwiches here?

14          THE MARSHAL:  I will check.

15          THE COURT:  Let's make sure that we get the

16   sandwiches up here.

17          And I will ask him to communicate some things

18   to you of an administrative nature; but nothing touching the

19   merits of the case.  I will do that only here in open court

20   or in writing.

21          Now, you will note from the oath about to be

22   taken by Mr. Wood that he, too, as well as all other

23   persons, are forbidden to communicate in way or manner with

24   any member of the jury on any subject touching the merits of

25   the case.

         1          Obviously, he will communicate some other

         2   administrative matters to you.

         3          And bear in mind that you are never to reveal

         4   to any person, not even to the Court, how the jury stands,

         5   numerically or otherwise, on the question before you until

         6   after you have reached your unanimous verdict.

         7          All right.  You may administer the oath to

         8   Mr. Wood.

         9          (Court security officer sworn.)

        10          THE COURT:  All right.  I have one other task

        11   to accomplish here at the bench.

        12          Counsel, come to the bench.

        13          And within the next five minutes, you will be

        14   released to go to lunch.

        15          (Sidebar conference held as follows:)

        16          THE COURT:  All right.  Did I misread one?

        17          ATTORNEY LYTLE:  Yes, your Honor.  I just had

        18   one or two items to raise to the Court's attention.

        19          THE COURT:  All right.

        20          ATTORNEY LYTLE:  With regard to instruction 79,

        21   defining -- or noting the statutory language for the Foreign

        22   Corrupt Practices Act --

        23          THE COURT:  All right.

        24          ATTORNEY LYTLE:  -- the Court said "proper

        25   advantage" instead of "improper advantage."

 1                    THE COURT:  Did you all hear the same thing?

 2                    ATTORNEY SOLOMON:  I don't recall, your Honor.

 3                    THE COURT:  All right.  Any objection to my

 4       just telling them that if they heard "proper," it was

 5       "improper"?  And I will refer to that.

 6                    What else do you have?

 7                    ATTORNEY LYTLE:  Then, your Honor, with regard

 8       to Counts 12 through 14, monetary transactions, the money

 9       laundering, I don't believe the Court referenced that they

10       would be getting a chart --

11                    THE COURT:  I will.

12                    ATTORNEY LYTLE:  -- for those transactions.

13                    THE COURT:  I will.

14                    ATTORNEY LYTLE:  Finally, your Honor, with

15       regard to racketeering acts, each of the 1 through 11 are

16       broken down with a and B, and the indictment charges that

17       they could find either a or B to find the racketeering act.

18       In other words, 1 could be satisfied by finding 1A or 1B.

19                    THE COURT:  I understand that.

20                    ATTORNEY LYTLE:  And then 12, racketeering act

21       12 is broken down by six different money laundering

22       transactions, and they can found one of the six to satisfy

23       the 12 racketeering act.  It's the way the indictment is set

24       forth.

25                    We would --

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

 1          THE COURT:  Tell me about 12 again.

 2          ATTORNEY LYTLE:  Count -- racketeering act 12

 3  is actually broken down into, I believe, six monetary

 4  transactions, money laundering transactions.  And so the way

 5  the indictment charges is that the jury could find just one

 6  of those to satisfy the 12 racketeering act.

 7          THE COURT:  All right.

 8          Any objection to my telling the jury that?

 9          As long as I tell them:  Now, remember,

10  these -- this is not evidence of proof of guilt.  These are

11  the allegations in the indictment.  But you, in accordance

12  with the instructions, you need to look at them to see

13  whether or not the government has borne its burden of proof.

14          All right.  Anything else?

15          ATTORNEY LYTLE:  I would have to look at the

16  indictment, 12 a through a certain letter.  I just don't

17  have that in front of me, the number.

18          THE COURT:  All right.  Well, I am not going to

19  be that -- I'll be fairly specific.

20          What page was the Foreign Corrupt Practices Act

21  on?

22          ATTORNEY LYTLE:  Page 79, your Honor.

23          THE COURT:  All right.

24          Now, does the defendant have any of those?

25          ATTORNEY SOLOMON:  Your Honor, I apologize.  I

1   left my copy of the instructions at the table.  May I get

2   it?  There was one paragraph that I thought was omitted.

3               THE COURT:  All right.

4               ATTORNEY SOLOMON:  Thank you.

5               (Pause.)

6               ATTORNEY LYTLE:  Your Honor, does the Court

7   propose that we draft the alternate verdict form with regard

8   to racketeering acts?

9               THE COURT:  You need to get rid of this

10  (indicating).  You need to get rid of these page numbers.

11              ATTORNEY LYTLE:  All right.

12              THE COURT:  And then you need to fix it, show

13  it to Mr. Trout, Ms. Jackson, before I give it to them.  It

14  has got to be done very quickly.

15              What was omitted?

16              ATTORNEY SOLOMON:  Your Honor, on the venue

17  instruction, I did not hear the Court read the last

18  paragraph.  You talked about venue being a preponderance

19  standard, then said, remember all the elements --

20              THE COURT:  All right.  I may have omitted

21  that.  Is there any doubt -- I am not even sure "proper"

22  warrants it, but the racketeering acts does.

23              I think I will simply say:  Remember, venue has

24  to be served by a preponderance -- or has to be proved by a

25  preponderance, but everything else has to be beyond a

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    reasonable doubt.

2              ATTORNEY SOLOMON:  And the one other thing,

3    your Honor, is --

4              THE COURT:  Go ahead.

5              ATTORNEY SOLOMON:  -- when the Court, the Court

6    referenced the list of wires that would be provided to the

7    jury in connection with the wire fraud counts, I did not

8    hear the caution that that list is allegations.

9              THE COURT:  Oh.  All right.  I think I did.  I

10   will cover it by a general one.

11             ATTORNEY SOLOMON:  Thank you, your Honor.

12             ATTORNEY LYTLE:  Your Honor, I am reminded that

13   although the Court may have misspoken just for that one

14   word, that the Court covered the elements correctly, which

15   includes the improper advantage.  So maybe it is not

16   necessary to do that one.

17             THE COURT:  All right.  So we don't need to do

18   it.

19             So, let's recapitulate what I am going to do.

20             I am going to do the racketeering acts.  And

21   I'll do -- and he mail fraud -- no.  I'm sorry.  And the

22   wire fraud.  I didn't list those.

23             ATTORNEY LYTLE:  The monetary transactions.

24             THE COURT:  I'm sorry, the monetary

25   transactions for the racketeering acts, I will make clear

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    that those are allegations.

2                    And what was --

3                    ATTORNEY SOLOMON:  It was after talking about

4    venue being a preponderance --

5                    THE COURT:  Oh, I just say, "remember" -- okay.

6    Those three things, right?

7                    ATTORNEY SOLOMON:  Yes, your Honor.

8                    THE COURT:  All right.

9                    Now, apart from that, was the jury -- and apart

10   from the objections that you, that you made in the course of

11   the instructions conference, has the jury otherwise been

12   fully and fairly instructed?

13                   ATTORNEY LYTLE:  We believe so, your Honor.

14                   ATTORNEY SOLOMON:  Yes your Honor.

15                   THE COURT:  All right.

16                   Now, I'm going to -- after I do all of that, I

17   am going to excuse the three alternates.  They will be

18   instructed not to discuss the matter with anyone; they may

19   still be needed.

20                   And then I have them retire and deliberate; but

21   it will take time.

22                   I need to have the verdict form as promptly as

23   possible, and these exhibits; that is, the Court Exhibit

24   Number 1, which is overt acts -- oh, here we have it.

25                   No, it doesn't have, "We, the jury, find..."

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

```
 1              ATTORNEY LYTLE:  We still have to adjust the
 2    racketeering acts.
 3              THE COURT:  And they will still have to adjust
 4    it.
 5              So put at the beginning, "We, the jury, find,"
 6    and so forth.
 7              All right, now, I will excuse these three, and
 8    then I will permit them to deliberate.
 9              Now, you all need to get that to me, because I
10    am going to allow them to deliberate without having the
11    verdict form and without having all of these exhibits,
12    because you need to look at them.  But I will tell them we
13    will get that to them as soon as possible.
14              ATTORNEY BELLOWS:  We are almost done.
15              THE COURT:  All right.
16              Let's proceed.
17              ATTORNEY SOLOMON:  Excuse me, your Honor.  We
18    need to raise the exhibit binder.
19              THE COURT:  Yes, the exhibit binders.  Are you
20    all ready with those?
21              ATTORNEY SOLOMON:  There were some issues that
22    the government was dealing with.  I'm not exactly sure where
23    they are on theirs.
24              ATTORNEY BELLOWS:  Yes.  There were a few
25    changes.  We will have them by the end of lunch.
```

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1          THE COURT:  Bird speed, they need those.

2          All right.  Let's proceed.

3          Now, I am going to rely -- once those exhibits

4    are given to Ms. McConnell and to Mr. Wood by you all,

5    that's it.

6          He will take them into the jury room.  So you

7    are responsible for insuring that nothing inappropriate goes

8    in or is omitted.  And I will rely on counsel for that.

9          All right.  Let's proceed.

10          (End of sidebar conference, open court as

11    follows:)

12          THE COURT:  All right.  Ladies and gentlemen,

13    remember when I instructed you as to venue, the government

14    only has to prove venue by a preponderance of the evidence,

15    but it has to prove all the other matters, the elements of

16    the other offenses, beyond a reasonable doubt.  That's a

17    distinction I wanted to be clear about.

18          Now, with respect to Count 16, you will have a

19    Court exhibit that lists the racketeering activities.  There

20    are 12 alleged racketeering activities.  These are all

21    alleged.  It comes from the indictment, which, as I have

22    told you, is not proof or evidence itself.  But you have to

23    have them so that you can decide whether the government has

24    proved that beyond a reasonable doubt.

25          And so it will identify them, and it will

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    identify them as 1A, 1B, 2A, 2B, all the way up to 11A and

2    -B.  And as I told you in the instructions, the government

3    has to prove at least two racketeering activities, and you

4    must be unanimous as to which two.  And you may find that it

5    hasn't proved any.  That's entirely up to you.

6           And so it can be either A or B.  In other

7    words, it doesn't, it doesn't have to be 1A and 1B to be a

8    proof of one racketeering activity.  It could be either 1A

9    or 1B.  You might find both or your might find none.

10          Now when you get to 12, 12 has six parts to it,

11   not two.  And there, the government has to prove, in order

12   to prove that racketeering act, one of those six.  But

13   again, you have to be unanimous on that, if there is just

14   one of the six.

15          Is that right?

16          ATTORNEY LYTLE:  Your Honor, I just reviewed

17   the indictment.  There are actually nine.

18          THE COURT:  Nine.  All right.

19          But you have to be unanimous as to which of the

20   nine, just as you have to be unanimous as to whether it's A

21   or B.

22          Now, I believe I have covered everything,

23   Counsel, have I not?

24          ATTORNEY LYTLE:  Yes, your Honor.

25          THE COURT:  Mr. Trout, have I covered

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

```
1    everything?

2              ATTORNEY TROUT:  Yes, your Honor.

3              THE COURT:  All right.

4              Now, I am sure all of you know how many jurors

5    typically deliberate in a criminal case in Federal Court.

6    The number, of course, is 12.  That means three of you are

7    alternates.

8              Now, we could not have proceeded without your

9    participation.  You were vital to this trial.  And although

10   I am going to excuse the three that I will name now, I am

11   going to direct that you not discuss the matter with anyone

12   until we -- until the case is all over.  Because there may

13   be circumstances that could arise where we would need your

14   continued participation.

15             So do not discuss the matter with anyone.  Do

16   not undertake any investigation.  Don't look up anything on

17   the Internet or anything of that sort.  In other words,

18   remain pristine about this, just as you have been for these

19   weeks.

20             And just as soon as we can, once the case is

21   over, we will call and advise you.  And at that point you

22   are free to read or look at anything you wish.

23             The three are 108 -- who is 108?

24             THE JUROR:  (Indicating)

25             THE COURT:  Am I looking at the wrong thing?
```

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

```
 1              Oh, 167, 63, 81.

 2              All right.  Now, it is, as I said, very

 3    important that you refrain from discussing the matter.  And

 4    I will have the deputy clerk communicate with you as soon as

 5    we are able to do so.  And that communication could say,

 6    "Return as quickly as you can."

 7                   So, remember to adhere to that instruction.

 8              All right.  You may depart at this time, and

 9    you may take your sandwich with you.  But from now on, we

10    are going to have the 12 separate.  So you take your

11    sandwich with you, or your baked Alaska, or whatever it was.

12                   (Alternate jurors excused.)

13              THE COURT:  Now, as I told you at the outset,

14    the moment of deliberation is a precise one.  It's now near

15    at hand.  It hasn't quite arrived yet.

16              I am going to excuse you now, and you won't

17    hear the familiar litany, because I won't tell you not to

18    discuss the matter among yourselves, because now the time

19    has arrived when you must do precisely that.

20              But you are going to have a sandwich first.

21    Mr. Wood will bring in the exhibit books.  There will be a

22    set of exhibit books for the government and an exhibit book

23    for the defendant, with an index in the front of each, that

24    will help you reference those.

25                   There will be the Court's exhibits that I have
```

1    told you about, and there will be the stipulations.  I think

2    there are nine or thereabouts.

3              ATTORNEY LYTLE:  Yes Your Honor.

4              THE COURT:  Nine stipulations.

5         So you will have all of that, and the verdict

6    form, and the tape recorder with the tapes.

7              Now, once all that is in the room, and the door

8    is closed -- Mr. Wood can't be in there, either.  Once he

9    has left the room and the door is closed, you may then begin

10   your deliberations.

11             Now, if one of you needs to use the facilities,

12   you must cease your deliberation, because you all twelve

13   have to be there to engage in deliberations.

14             You are free to take a break whenever you wish.

15   I won't reconvene you until the end of the day.  You may

16   deliberate as long or as little as you like.  You are the

17   sole judges of this case.  What you do in the jury room is

18   entirely up to you.

19             And you will hear me say at the end of this

20   case that, ordinarily, you are not under any constraints

21   about -- when this case is all over and you have finished, I

22   will tell you that you may speak to whomever you wish about

23   the case.

24             But I will also tell you at that time that

25   whenever I see on the media a juror discussing what went on

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

 1    in the course of deliberations, I think that does an injury

 2    to the deliberative process, because jurors might not feel

 3    free to give a full and complete expression of their views

 4    if they know everything they say is going to grist for the

 5    media mill.

 6           So I'm going to suggest to you at the end that

 7    you have an obligation to your fellow jurors to maintain as

 8    confidential what went on in the jury room.  But that's a

 9    choice you make.  It's not an order of the Court.  That's

10    entirely up to you.  But I merely make that suggestion, and

11    I will make it again when you are all done.

12           All right.  You may keep your books now.

13           Are the sandwiches here, Mr. Wood?

14           THE MARSHAL:  Yes, sir.

15           THE COURT:  And we need to get the -- while you

16    are eating the sandwiches, Mr. Wood and Ms. McConnell and

17    counsel will work hard on getting the exhibits and all the

18    matters in there.

19           Now, they will eat their lunch in the other

20    room; is that right?

21           THE MARSHAL:  Yes, sir.

22           THE COURT:  When you finish your lunch, I think

23    we will have most everything back there.  You may begin your

24    deliberations even if we don't have it all back there.  But

25    we will get it to you just as quickly as we can.

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    And as I say, you may deliberate as long or as

2    little as you like.

3    All right.  You may follow Mr. Wood into the

4    jury room.

5    (Jury excused to deliberate at 12:45 p.m.)

6    THE COURT:  All right.  You may be seated.

7    By the way, should we need an alternate, I did

8    not read them in the order in which they were selected.

9    For your information, the order in which they

10   were selected were -- Number 1 has already been excused.

11   The second alternate was Number 81.  The third was

12   Number 167.  And the fourth was 63.

13   All right.  Anything else -- now, I want

14   counsel to get to work on the exhibits and all of those --

15   are they all done?

16   ATTORNEY LYTLE:  There is some work going on

17   right now, and we will go back and check on that, your

18   Honor.

19   THE COURT:  All right.  Well, you all can delay

20   your lunch and everything else, because we need to proceed

21   pretty promptly.

22   Now, there are a couple of other things -- when

23   you do the verdict form, leave out the month at the end.

24   In addition, where you see on Count 16, do you

25   have that in front of you?  Count 16 has the various

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1   racketeering acts?

2                   ATTORNEY DUROSS:  Yes, your Honor.

3                   THE COURT:  They only have to go to the

4   racketeering -- they only have to indicate on the

5   racketeering acts if they find the defendant guilty of it.

6   If they find the defendant not guilty of Count 16, they

7   don't have to fill out anything on the racketeering acts.

8                   ATTORNEY LYTLE:  Don't the racketeering acts

9   have to be determined first, before they find guilty, your

10  Honor?

11                  THE COURT:  Well, then you don't have it set up

12  the right way.

13                  ATTORNEY LYTLE:  Yes, your Honor.

14                  THE COURT:  You and counsel work that out.

15  Show it to me.  They don't have to have the jury verdict

16  form when they start.  But you all get together on that.

17                  The point is, typically, they don't have to

18  fill in the part about racketeering acts if they find the

19  defendant not guilty.

20                  And they could conceivably find all the

21  requisite racketeering acts and not find the defendant

22  guilty, if they don't find the other element of the offense.

23                  ATTORNEY LYTLE:  Yes, your Honor.  We'll make

24  sure --

25                  THE COURT:  So it's hard to figure out exactly

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1   how to say it, because it's also true that they can consider

2   the racketeering acts in determining whether or not there is

3   an enterprise, and so forth. So it's a little hard to know

4   precisely what to say. Maybe what's said there is

5   sufficient, because we don't want to confuse them.

6           Anything further, Mr. Lytle?

7           ATTORNEY LYTLE: Not from the government, your

8   Honor?

9           THE COURT: Mr. Trout?

10          ATTORNEY TROUT: When would we be expected

11  back, assuming there is a note or anything like that?

12          THE COURT: Well, I want the exhibits.

13          ATTORNEY TROUT: Oh, I understand. I'm talking

14  about at the end of the day.

15          THE COURT: Oh, I see. 5:30, 6:00 o'clock.

16  I'll probably, when it gets close to that time, tell

17  Mr. Wood to inquire of them whether they wish to continue

18  deliberating. I will accommodate them into the evening if

19  they wish to do so.

20          If they don't, I will send them home and have

21  them come back in the morning.

22          But you should be here -- and you should also

23  be close by, in case there is a question. So if you leave

24  the building, make sure that -- and remain close by, an make

25  sure the deputy clerk has a number that you can be reached

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    by.

2              ATTORNEY TROUT:  Yes, your Honor.  We have

3    already provided those numbers.

4              THE COURT:  All right.  That would be fine.

5              The major effort now is to have the exhibits

6    prepared and those court exhibits, and they should be

7    numbered sequentially, overt acts 1 and 2, so it should be

8    overt acts for Count 1 is Court 1, Court 2 for Count 2, and

9    whatever is next, sequentially.

10             All right.  And I have those and the

11   stipulations here.  The parties needed to look at that,

12   because I want the parties to be clear about it before they

13   go to Ms. McConnell or Mr. Wood.

14             If there is a dispute, I will reconvene and

15   deal with it.  But I can't imagine there would be a dispute

16   after all this time.

17             All right.  Court stands in recess.

18             (Court recessed at 12:50 p.m.)

19             (Court called to order at 5:27 p.m.)

20             (Jury not present.)

21             THE COURT:  All right.  This is United States

22   against Jefferson.

23             I am going to convene the jury and allow them

24   to go home, and reconvene them in the morning.  I will give

25   them an opportunity to come earlier in the morning, if they

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1   wish, and proceed.

2            All right.  You may bring the jury in.

3            (Jury impaneled at 5:28 p.m.)

4            THE COURT:  All right.  You may be seated.

5            All right, ladies and gentlemen, I am now going

6   to release you for the evening.  You may give your books to

7   Mr. Wood.  He will put them in the room.  They are not going

8   to go anywhere and.  That lock will be locked.  Everything

9   will remain as it is.

10           I will reconvene you at 9:30, or at 9:00, if

11  you prefer, or at 8:30 or 6:15.

12           (Laughter.)

13           (Chorus of responses.)

14           THE COURT: Nine-thirty?

15           (Jurors indicating.)

16           THE COURT: Nine-thirty tomorrow.

17           Now this evening, again, put this matter out of

18  your mine to one side.  Don't investigate or read or listen

19  to anything on the case.  And I will see you tomorrow

20  morning at 9:30.

21           Now when you arrive tomorrow, there will be

22  other matters going on in the courtroom.  But once Mr. Wood

23  advises me that all of you are here, then I will stop what I

24  am doing in here and convene you and we will proceed.

25           All right.  You may follow Mr. Wood out, and I

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1    look forward to seeing you in the morning.

2               (Jury excused at 5:29 p.m.)

3          THE COURT:  Now, What I often do in these

4    matters is I leave it to you -- and I leave it to you to

5    decide whether you wish to do it this way -- in some

6    instances I convene the jury without anybody, any lawyers or

7    parties present, and just allow them -- because all we will

8    do is just call the roll, and once they are here they are

9    gone into the jury room and I continue with the docket.

10          But either you are all here -- not necessarily

11   all -- in other words, all three lawyers for both sides

12   don't have to appear.  And of course, the defendant can

13   waive.  You may do as you wish.

14          But what I won't do is have one lawyer from one

15   side here, and nobody here from the other side.  In that

16   event, nobody will be here.

17          Do you have a preference, Mr. Lytle or

18   Mr. Trout?

19          You don't have to agree on how many of you are

20   here, but you do have to agree whether any of you are going

21   to be here.

22          ATTORNEY LYTLE:  Your Honor, we agree that the

23   jury can get going without the lawyers here.

24          THE COURT:  All right.  Mr. Trout, what's your

25   view?

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1          ATTORNEY TROUT:  Well, my view before I

2     consulted with my client was that I would dispense with

3     presence, but I think Mr. Jefferson would like to be here.

4          THE COURT:  All right.  That's fine.  Everyone

5     can be here, then, tomorrow at 9:30.

6          All right.  I thank counsel.  I see you

7     tomorrow at 9:30.

8          (Court recessed at 5:32 p.m.)

9

10                           ---

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MICHAEL A. RODRIQUEZ, RPR/CM/RMR

1

2                                CERTIFICATE

3

4               I, MICHAEL A. RODRIQUEZ, an Official Court

5    Reporter for the United States District Court, in the

6    Eastern District of Virginia, Alexandria Division, do hereby

7    certify that I reported by machine shorthand, in my official

8    capacity, the proceedings had and evidence adduced upon the

9    jury trial in the case of UNITED STATES OF AMERICA v.

10   WILLIAM J. JEFFERSON.

11

12              I further certify that I was authorized and did

13   report by stenotype the proceedings in said jury trial, and

14   that the foregoing pages, numbered 1 to 143, inclusive,

15   constitute the official transcript of said proceedings, as

16   taken from my machine shorthand notes.

17

18              IN WITNESS WHEREOF, I have hereto subscribed my

19   name this ___22nd___ day of _____June_____, 2010.

20

21

22              _____/S/_____
                Michael A. Rodriquez, RPR/CM/RMR
23                   Official Court Reporter

24

25

MICHAEL A. RODRIQUEZ, RPR/CM/RMR