UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-CR-628 (ABJ) |
| | : | |
| MICHAEL ANGELO RILEY, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S RESPONSE TO THE COURT'S SEPTEMBER 13
MINUTE ORDER REQUIRING BRIEFING AND RELATED MOTION IN
LIMINE TO PRECLUDE TESTIMONY OF PROPOSED DEFENSE WITNESSES**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby responds to the Court's September 13 Minute Order requiring briefing on a party's ability to cross-examine its own witness, and also moves *in limine* to preclude the Defendant both from calling certain witnesses in its case-in-chief, and from eliciting improper impeachment testimony at trial.

During the September 12 pretrial conference, the Defendant represented that he intends to call Jacob Hiles and Federal Bureau of Investigation Special Agents Brandon Merriman and Charles Neilsen during his case-in-chief. In making such representations, defense counsel relied on Fed. R. Evid. 607. However, while Fed. R. Evid. 607 allows any party to attack a witness's credibility, the rule is not without limitation. For the reasons set forth below, as well as those raised during the pretrial conference, the Government respectfully requests that the Court preclude such testimony.[1]

---

[1] In the alternative, the Government respectfully requests that the Court require an advance proffer of the intended testimony, outside the presence of the jury, to elicit what permissible basis, if any, Defendant claims as a rationale for calling such witnesses.

I.      APPLICABLE LEGAL PRINCIPLES

Under Fed. R. Evid. 607, any party, including the party that called the witness, may attack the witness's credibility. Despite Rule 607's broad language, courts, including the District of Columbia Circuit, have limited a party's ability to impeach its own witness by establishing that a party cannot call a witness solely to impeach them. For example, in *United States v. Johnson*, the District of Columbia Circuit found that the prosecution had acted improperly in calling a witness for the sole purpose of bringing about admission of a post-arrest statement that was not independently admissible, noting that "[i]mpeachment evidence is to be used solely for the purpose of impeachment, and it may not be 'employed as a mere subterfuge to get before the jury evidence not otherwise admissible.'" *United States v. Johnson*, 802 F.2d 1459, 1466 (D.C. Cir. 1986) (quoting *United States v. Morlang*, 531 F.2d 183, 190 (4th Cir. 1975)).

Relying on *Johnson* for the premise that a witness cannot be called for the primary purpose of impeaching that witness, the District of Columbia Circuit later issued a similar ruling in *United States v. Libby* when it upheld the trial court's decision to grant the government's motion in limine to preclude the defendant from calling a witness for the primary purpose of impeaching her. *United States v. Libby*, 475 F. Supp. 2d 73, 83-84 (D.D.C. 2007).  As the court explained in *Libby*, "[i]n assessing whether a party is simply calling a witness solely to impeach the witness, many courts attempt to discern the primary purpose for the witness's testimony" *Id.*  As the District of Columbia Circuit explained in *Libby*,"[w]hile this Court strived to afford the defendant every opportunity to present his defense, and to challenge the credibility of the government's witnesses, the law simply did not support the introduction of Mitchell's October 2003 statement when the sole purpose of the defendant calling Mitchell as a witness was for impeachment." *Id.*  Mitchell's testimony only added value to the defense if the jury could consider her October 2003 statement for its truth in

order to make the desired inference.  Because Mitchell's prior inconsistent statement could not be used by the jury for that purpose and given the distinct possibility that the jury would have inappropriately used the October 2003 statement for its truth, the Court ruled that Mitchell could not be called as a witness by the defendant pursuant to the teaching in Johnson. And employing the balancing test of Rule 403 led to the same conclusion because the impeachment of Mitchell with her prior statement alone had no probative value, whereas the risk of the jury misusing the statement was significant, and such misuse would have been unduly prejudicial to the government. *Id.*

Other courts have also held similarly.  For example, *United States v. Douglas* was a prosecution for two counts of distributing crack cocaine to a government informant where at trial the government did not call the informant as a witness. *United States v. Douglas*, 408 F.3d 922, 926- 927 (7th Cir. 2005).  The Seventh Circuit held in *Douglas* that the trial judge did not err by refusing to allow defense counsel to call the informant as a witness for the sole purpose of impeachment because, although Rule 607 allows a party to impeach its own witness, the informant's credibility was not in issue and therefore any evidence offered to impeach his credibility was irrelevant and inadmissible; and "[a] party is not free to impeach the credibility of a witness simply for the sake of doing so." *Id*.  Likewise, in *United States v. Glossar*, the district court excluded an attempt by defense counsel to call a witness who cooperated with the Government but was not essential to the Government's case, for the purpose of impeaching them. *United States v. Glosser*, No. 07-20042, 2007 WL 2909354, at *4 (C.D. Ill. Oct. 4, 2007).  Specifically, the court in *Glosser* granted the government's motion in limine to exclude impeachment evidence of the confidential informant when the government represented that the

3

informant would not testify, and that the evidence at trial would be audio, video, and law enforcement testimony of controlled purchases of narcotics.

Courts have also upheld rulings precluding defendants from calling as a witness someone who the Government ultimately chose not to call at trial. In *United States v. Giles*, the Seventh Circuit affirmed the district court's decision to preclude the defendant from calling as a witness an individual who was slated to testify for the Government but whom the Government chose not to call at trial, and concluding that the defendant's "true defense reason … for wanting to put [this witness] on the stand was to expose his warts to the jury and float the inference that the [Government] should not play footsie with a sleaze-ball." *United States v. Giles,* 246 F.3d 966 (7th Cir.2001). Likewise, in *United States v. Kielar* the Seventh Circuit found that the "district court properly prevented defendant from calling a witness who had originally been on government's witness list, after determining from defense counsel's proffer that the only reason to call the person as a defense witness was to impeach him and to ask him, 'the government told you that they were going to call you as a witness and then sometime during the trial you were—on a certain date you were interviewed and the government told you that they were not going to call you as a witness.'" *United States v. Kielar*, 791 F.3d 733, 744-45 (7th Cir. 2015).

II.     **ARGUMENT**

    A.     **Jacob Hiles**

The Government does not intend to call Jacob Hiles during its case-in-chief, nor will it rely on him to prove either charge. However, the Defendant seeks to call Hiles during his case, in order to "cross examine him," and paint him as a biased government witness. This is impermissible and must be precluded. As the Court noted during the September 12 hearing, because it would be the Defendant rather than the Government calling Hiles, the Defendant has no basis to interrogate

Hiles' bias toward the Government. Moreover, when asked why he intended to call Hiles, the Defendant was unable to proffer a rationale other than to repeatedly and incorrectly state that he had a "right to cross-examine the witness." Given the facts, he does not. Because the Government does not intend to call Hiles in its case-in-chief, and it can prove every element of its case without his testimony, Hiles' credibility is not at issue. *See, e.g., Douglas*, 408 F.3d at 926-927 (refusing to allow defense counsel to call informant as a witness for the sole purpose of impeachment because informant's credibility was not in issue); *Glosser*, 2007 WL 2909354, at *4 (excluding impeachment evidence of the confidential informant when the government represented that the informant would not testify).

As he forecasted during the September 12 hearing, the Defendant seeks to call Jacob Hiles in his case in order to distract from his own illegal conduct and invite the jury to infer, incorrectly, that the Government's case is somehow contingent on Hiles' credibility. This too is improper, and the Defendant should be precluded from doing so. *See, e,g., Giles,* 246 F.3d at 966; *Kielar*, 791 F.3d at 744-45. The introducing party carries the burden to establish both relevancy and admissibility under the evidentiary rules. *United States v. Oseguera Gonzalez*, 507 F. Supp. 3d 137, 147 (D.D.C. 2020). The proposed testimony that the Defendant intends to elicit from Hiles is not relevant, and the Defendant has failed to identify for the Court any legitimate basis for calling Hiles. Given this, he must be precluded from calling him.

### B.    Testimony of Law Enforcement Officers

During the September 12 hearing, the Defendant also informed the Court that he intended to call FBI agents Brandon Merriman and Charles Neilsen, neither of whom the Government intends to call in its case-in-chief. As the Government informed the Court, it does not intend to call either agent, nor does it intend to bring in through Special Agent Steve Hart's direct examination testimony or evidence about law enforcement interviewing the Defendant.

5

Accordingly, since the cross examination is limited by the scope of direct, the Defendant will be precluded from eliciting testimony from Special Agent Hart about the Defendant's out of court statements, or the FBI's recording of their interview with the Defendant, or even the fact that the Defendant was interviewed at all. Given that Special Agent Merriman's primary involvement in the investigation was that interview of the Defendant, the defense should be precluded from calling him to testify, as the Defendant has failed to identify any permissible testimony he would provide at trial. The Defendant may not ask either Hart or Merriman whether the FBI secretly recorded his client or even interviewed him, as this would only confuse the jury and invite improper considerations in deliberations.

Likewise, since Special Agent Neilsen's primary involvement in the investigation was his interview of Jacob Hiles, who will not be testifying for the Government, there would be no legitimate reason for the Defendant to call Neilsen as a witness at trial. Any back door attempt to impeach Hiles' credibility through Neilsen would be improper and should be precluded. Moreover, the relevant portion of the interview was recorded and the recording was provided to the Defendant. Assuming the recording could be properly offered by the defense, the Government would stipulate to its authenticity. Thus, even if such impeachment were necessary or appropriate, Neilsen's testimony would not be because of the existence of a recording.

### III.   CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court preclude the Defendant from calling witnesses Jacob Hiles, Brandon Merriman and Charles Neilsen during its case-in-chief, and from eliciting improper impeachment testimony at trial.

Respectfully submitted,

MATTHEW M. GRAVES

United States Attorney
D.C. Bar Number 481052

*/s/ Mary L. Dohrmann*
MARY L. DOHRMANN
Assistant United States Attorney
NY Bar No. 5443874
601 D Street N.W.
Washington, DC 20530
Mary.Dohrmann@usdoj.gov
(202) 252-7035

*/s/ Anne P. McNamara*
ANNE P. MCNAMARA
Assistant United States Attorney
DC Bar No. 1006550
601 D. Street N.W.
Washington, DC 20530
Anne.McNamara2@usdoj.gov
(202) 809-3502

Case 1:21-cr-00628-ABJ   Document 50   Filed 09/22/22   Page 7 of 7