**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|                               |   |                      |
|-------------------------------|---|----------------------|
| UNITED STATES OF AMERICA      | : | No. 21-cr-628-ABJ    |
|                               | : |                      |
|                               | : |                      |
| v.                            | : |                      |
|                               | : |                      |
| MICHAEL ANGELO RILEY,         | : |                      |
|                               | : |                      |
| *Defendant*.                  | : |                      |
|                               | : |                      |
|                               | : |                      |

**DEFENDANT'S PRETRIAL MEMORANDUM**

Defendant, Michael Angelo Riley, through his undersigned counsel, raises pretrial legal matters with the Court in advance of the trial that is presently scheduled for October 17, 2022 to ensure that Officer Riley presents only appropriate evidence and arguments at trial and that he be afforded every opportunity to present a complete defense to the Government's charges in this case.

**ARGUMENT**

1.  **Possible Impeachment of Party's Own Witness.**

At the pretrial conference, the Government sought to prohibit Officer Riley from calling as a witness at trial Jacob Hiles. Mr. Hiles was identified by the Government as a witness who the jury will hear about during the trial, and for good reason. The Government's entire case arises from Officer Riley's communications with Mr. Hiles. The Government seeks to move into evidence these communications, as well as videos taken by Mr. Hiles while at the United States Capitol on January 6, 2021. Notwithstanding the extent to which the Government intends for the jury to hear *about* Mr. Hiles, the Government seeks to prevent the jury from hearing *from* Mr. Hiles.

Precluding the defense from calling Mr. Hiles as a witness is, however, unprecedented and

would completely curtail Officer Riley from the broad latitude offered to those charged with a crime to present a complete defense. *See*, *e.g.*, *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). The Government seeks to preclude Mr. Hiles from testifying based admittedly on "speculation" that Officer Riley is calling Mr. Hiles solely to discredit him and to undermine his reliability in the Government's case. That is not true, and Officer Riley said as much during the pretrial conference. Officer Riley intends to elicit — with non-leading questions — information from Mr. Hiles that may tend to create doubt as to facts at issue in this case or contradict the Government's theory of the case. Notwithstanding, at trial, Officer Riley may have to impeach witnesses (including Mr. Hiles), whether called by the defense or not. The Federal Rules of Evidence and existing case law afford Officer Riley that right and the Government cannot force the defense, weeks before trial, to proffer every subject matter that it will cover when examining witnesses in response to requests for the blanket exclusion of witnesses.

Specifically, Federal Rule of Evidence 607 states that "[a]ny party, including the party that called the witness, may attack the witness's credibility." Fed. R. Evid. 607. When adopted, Rule Evidence 607 reversed the traditional common-law prohibition against impeaching one's own witness. *See* Advisory Committee's Note to Fed. R. Evid. 607 ("The traditional rule against impeaching one's own witness is abandoned as based on false premises. A party does not hold out his witnesses as worthy of belief, since he rarely has a free choice in selecting them. Denial of the right leaves the party at the mercy of the witness and the adversary."). Existing case law interprets the Rule in the same manner as Officer Riley did at the pretrial conference. *See*, *e.g.*, *United States v. Slatten*, 395 F. Supp. 3d 45, 81 (D.D.C. 2019) ("In 1975, Rule 607 abandoned the long-standing prohibition on a litigant impeaching its own evidence to instead allow '[a]ny party, including the party that called the witness, [to] attack the witness's credibility'" (citation and punctuation

omitted)); *id.* ("Slatten identifies two problems with this approach. First, Slatten argues the government should not have been able to call Watson just to impeach him, citing *United States v. Johnson*, 802 F.2d 1459 (D.C. Cir. 1986). But *Johnson* held no such thing—and even if it did, Slatten's argument remains procedurally improper and substantively unpersuasive."); *United States v. Simpson*, No. 3:14-cr-2, 2014 WL 3362947, at *3 n.4 (E.D. Tenn. July 8, 2014) ("The Court recognizes that the credibility of a witness may be attacked by any party, 'including the party that called the witness [.]' Thus, the Government could choose to impeach a witness that it calls in its case-in-chief" (citations omitted)).

Procedurally, a party may attack the credibility of its own witnesses, and may use extrinsic evidence of prior inconsistent statements to do so. *See* Fed. R. Evid. 607; 613(b). "But before extrinsic evidence may be used, the witness must first testify in a manner inconsistent with his prior statements, and then must be afforded an opportunity to explain or deny the prior inconsistent statement." *United States v. Embry*, 452 F. App'x 826, 834 (10th Cir. 2011) (citing Fed. R. Evid. 613(b)). Officer Riley intends to proceed at trial in the manner and within the scope that the Federal Rules of Evidence allow him to when presenting a complete defense to the Government's charges.

### 2.    <u>Character Evidence by Reputation.</u>

While Officer Riley has ordered a copy of the transcript from the parties' pretrial conference, it appears that the Court ruled that Officer Riley cannot present character evidence in the form of reputation testimony at trial in his defense. Federal Rule of Evidence 404(a)(2) permits a defendant in a criminal case to offer evidence of a pertinent trait. Moreover, courts have routinely held that "[e]vidence on the specific character traits for truthfulness and honesty" are admissible "both when the defendant testifies at trial and the prosecution attacks the defendant's credibility,

and when the defendant is charged with an offense in which fraud or falsehood is one of its statutory elements." *In re Sealed Case*, 352 F.3d 409, 411 (D.C. Cir. 2003).

Officer Riley submits the following additional legal authority supporting his right to present character evidence at trial. *See*, *e.g.*, *United States v. Brown*, 503 F. Supp. 2d 239, 241-42 (D.D.C. 2007) ("[T]he Court notes that Defendants have been charged with obstruction of justice and making false statements. The Court concludes that such charges implicate the truthfulness and veracity of Defendants, and accordingly Defendants may offer character evidence with respect to these character traits."); *United States v. Yarbrough*, 527 F.3d 1092, 1101-03 (10th Cir. 2008) (finding it reversible error for the district court to refuse to permit the defense to present character witnesses as to the defendant police officer's "law-abiding nature" when it "was directly relevant to the charges at issue, which alleged he corruptly impeded and conspired to corruptly impede an investigation, as well as unlawfully and willfully provided notice of the existence of a search and seizure warrant to prevent the execution of such warrant"); *In re Sealed Case*, 352 F.3d at 411 (recognizing that "[c]ourts have held that the general character trait of law-abidingness is pertinent to almost all criminal offenses"); United *States v. Angelini*, 678 F.2d 380, 381 (1st Cir. 1982) ("Evidence that [the defendant] was a law-abiding person would tend to make it less likely that he would knowingly break the law."); 1 *McCormick on Evidence* § 191 (Kenneth S. Broun, ed., 6th ed. 2006) ("A few general traits, like being law-abiding, seem relevant to almost any accusation."); Federal Trial Handbook Criminal § 70:2(a) ("Evidence of the defendant's character as a law-abiding citizen is always relevant . . . .").

Officer Riley is charged with violations of 18 U.S.C. § 1512(b)(2)(B), (c)(1). *See* Indictment, ¶¶ 20, 22 (D.E. 1). In *Hunt v. County of Orange*, 07-cv-705, 2009 WL 10702539, at *17-18 (C.D. Cal. Oct. 7, 2009), the district court had to assess whether a conviction for 18 U.S.C.

4

§ 1512(b)(2) was an impeachable conviction involving dishonesty. *Id.* ("The issue is whether

Carona's witness tampering conviction is sufficiently probative of his character for truthfulness or

untruthfulness."). The district court found that the charge directly involved dishonesty based on

the Supreme Court's decision in *Arthur Andersen*:

> Carona was convicted of witness tampering under 18 U.S.C. § 1512(b)(2).
> The Supreme Court recently considered the import of this provision and whether
> it necessarily involved dishonesty in *Arthur Andersen LLP v. United States*, 544 U.S.
> 696 (2005). Jury instructions regarding the § 1512(b)(2) charge interpreted the
> statutory requirement that the defendant must 'knowingly [have] . . . corruptly
> persuade' another person to withhold documents as satisfied if the defendant
> knowingly 'intended to 'subvert, undermine, or impede' the integrity of a
> proceeding. In giving this instruction, the district court removed the word
> 'dishonestly' from a Fifth Circuit pattern jury instruction. The Supreme Court
> unanimously held that this was error because dishonesty was 'necessary to a finding
> of guilt.' *Id.* at 706-07.

*Hunt*, 2009 WL 10702539, at *17; *Arthur Anderson*, 544 U.S. at 706 ("These changes were

significant. No longer was any type of 'dishonest[y]' necessary to a finding of guilt, and it was

enough for petitioner to have simply 'impede[d]' the Government's factfinding ability"). *See also*

*United States v. William Jefferson*, 1:07-cr-209, Jul. 30, 2009 (Jury Instructions) Tr. at 35:18-20

(filed in this matter at D.E. 48-1) ("To act corruptly, as used in these instructions, means to act

knowingly and dishonestly for a wrongful purpose"); *United States v. Friske*, 640 F.3d 1288, 1291

(11th Cir. 2011) (defining "corruptly" under section 1512(c) to mean "with an improper purpose

and to engage in conduct knowingly and dishonestly with the specific intent to subvert, impede or

obstruct the [official proceeding]" (punctuation omitted)); *United States v. Edlind*, 887 F.3d 166,

173 n.3 (4th Cir. 2018) (noting in prosecution under section 1512(c)(1) that the trial court had

instructed the jury that "it could convict only if [the defendant] 'acted knowingly and dishonestly,

with the specific intent to subvert or undermine the due administration of justice,' and was

'conscious of wrongdoing'"); Fifth Circuit Jury Instructions (2019 Edition), Instruction No. 2.64,

*available at* https://www.lb5.uscourts.gov/viewer/?/juryinstructions/Fifth/crim2019.pdf (last visited Sept. 22, 2022) (stating that: "An act is done 'corruptly' if the defendant acted knowingly and dishonestly with the specific intent to subvert or undermine the due administration of justice").

The nature of the charged offenses in this case, in addition to the fact that Officer Riley will testify in this matter (and no doubt have his credibility challenged by the Government on cross-examination) warrants Officer Riley being permitted to introduce character witnesses who could testify as to his reputation for being a law-abiding, honest, and truthful person.[1]

**3.** **Special Agent Stephen Hart's Narration Without Personal Knowledge.**

At the pretrial conference, the Government notified the Court that it plans to call its case agent, FBI Special Agent ("SA") Stephen Hart,[2] to narrate and describe the contents of videos from January 6, 2021 that the Government plans to introduce into evidence. Officer Riley objects to such testimony. Pursuant to Federal Rule of Evidence 602, a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal

---

[1] While Officer Riley specifically requested that the Redbook jury instruction for character evidence (No. 2.213) be included in the proposed Jury Instructions filed with the Court as an instruction to be given if applicable, it was inadvertently omitted in the version filed with the Court.

[2] Officer Riley objects to SA Hart sitting at Government counsel's table throughout the trial. Federal Rule of Evidence 615 provides that, at the request of a party, the Court must order witnesses excluded so that they cannot hear the testimony of other witnesses. Fed. R. Evid. 615(b). "The sequestration rule serves two primary purposes: to prevent a witness from tailoring his testimony in light of the testimony of other witnesses, and to permit the discovery of false testimony and other problems relating to credibility." *Minebea Co., Ltd. v. Papst*, 374 F. Supp. 2d 231, 233 (D.D.C. 2005). The "sequestration process involves three parts: preventing prospective witnesses from consulting each other; preventing witnesses from hearing other witnesses testify; and preventing prospective witnesses from consulting witnesses who have already testified." *United States v. Sepulveda*, 15 F.3d 1161, 1176 (1st Cir. 1993). For its two-witness case, the Government apparently plans to have SA Hart sit at Government counsel's table. Officer Riley objects to this unnecessary exception to Rule 615. This is not a multi-week, multi-defendant, complex conspiracy case. And, Officer Riley has identified SA Hart as a defense witness, so he should not be permitted to hear the defense opening or the examination of defense witnesses when he himself is a potential witness for the defense.

knowledge of the matter." Fed. R. Evid. 602. Here, the videos speak for themselves, and SA Hart was not present when the events contained therein occurred and therefore lacks personal knowledge of the actions taken by the individuals depicted in the videos. *See*, *e.g.*, *Callaham v. United States*, 268 A.3d 833, 847-48 (D.C. 2022) (on the potential of officers, during retrial, "narrat[ing] the contents of the video[-]recordings despite not having witnessed the events depicted in the videos in real time," the Court "reaffirm[ed] the requirement that lay witness testimony generally must be based on personal knowledge, whether it is proffered as fact or opinion" and "reject[ed] the government's argument that the detectives 'witnessed' the events in question—and thereby obtained personal knowledge of them—solely by watching recorded surveillance footage"); *see id.* at 848 n.21 (citing *Boyd v. Commonwealth*, 439 S.W.3d 126, 131-32 (Ky. 2014) (concluding witnesses lacked personal knowledge of events captured in video when they "did not perceive [the events] in real time"); *United States v. Shabazz*, 564 F.3d 280, 287 (3rd Cir. 2009) (affirming conviction where trial court expressly limited witness' narration of surveillance video to the portions showing events to which he was an eyewitness)).

As Officer Riley will stipulate that the videos submitted to the Court depict the events of January 6, 2021 at the United States Capitol, SA Hart need not narrate what is depicted therein when he was not present during the events at issue and therefore lacks personal knowledge of the actions contained therein.

4.    **Evidence Negating the Foreseeability of a Grand Jury Proceeding Directly Related to the Alleged Obstructive Conduct.**

As discussed in Officer Riley's court filings and proposed jury instructions, the Governmnet must prove beyond a reasonable doubt that Officer Riley "contemplated a particular 'official proceeding' that was foreseeable when he [] engaged in the proscribed conduct." *United States v. Shavers*, 693 F.3d 363, 378 (3d Cir. 2012). This is the mandated nexus requirement

imposed by the Supreme Court in *Arthur Anderson*. 544 U.S. at 708 (requiring a "nexus" between the obstructive act and the proceeding and instructing that, if the "defendant lacks knowledge that his actions are likely to affect the judicial proceeding," "he lacks the requisite intent to obstruct"); *United States v. Vampire Nation*, 451 F.3d 189, 205-06 (3d Cir. 2006) ("[T]ouchstone for the nexus requirement," "is an act taken that would have the natural and probable effect of interfering with a judicial or grand jury proceeding that constitutes the administration of justice; that is, the act must have a relationship in time, causation, or logic with the judicial proceedings") (quoting *United States v. Quattrone*, 441 F.3d 153, 171 (2d Cir. 2006)); *see* Def.'s Mot. at 13-15 (D.E. 34) (identifying extensive authority regarding the presence of a "nexus" between the obstructive conduct and the specific "official proceeding").

On January 7, 2022, Jacob Hiles posted the following message on his public Facebook profile that was viewed, liked, and commented on by dozens of individuals:

> This was the craziest, most violent part of what I witnessed earlier at the capitol building. I arrived there early, and was able to get a spot in the front row way off the side by the capitol building, perched on a 3 foot tall brick wall with several cameramen who were also documenting events. The police there were using the people standing on that wall as a shield. There was no metal barrier there and the wall and the couple people filming and myself offered the police a little bit of cover. So several times I saw police try to throw flashbang and smoke grenades into the crowd only to come over to where I was to take a minute to recover. The far side of the building from where I was seemed much more crazy and I was glad it was there and not where I was. At this point, the line had already been broken and thousands of people were making their way into the capital building. There were just too many people pushing towards the building. The police werent really prepared, not because of the crowd being overwhelming, but because they were literally not prepared. Many of the officers didnt have masks and goggles. The police gassed a bunch of other police officers. Too many of them had tear gas in their eyes and they had to fall back. After a while of seeing the things people were saying to the officers, and seeing these police in pain from the tear gas, I started feeling bad for some of them. Some of the officers were jerks and were seeming to incite people. I didnt get it on video but the officer at the 3 minute mark in the white shirt with all the orange on his shirt, that orange on his shirt is pepper spray. He shot a guy in the face with it so bad that the pepper spray seemed to bounce back off the guy he was spraying and went back into his own face- and he didnt have his

mask down so all that pepper spray got into his eyes. I saw a female officer try to hit a guy with a plexiglass shield. The guy wasn't even doing anything to get hit with a shield, but the woman raised that thing up and went to swing it at him and the guy grabbed it and threw it like a frisbee. I saw a bunch of people that got sprayed in the face with pepper spray- like shooting a water hose of pepper spray, instantly start barfing. Most people I saw get sprayed deserved it. Several got sprayed real bad and didnt deserve it. I was indirectly gassed and sprayed so much that several times my googles were blurred by pepper spray. You can hear me choking and gagging in the video. Once I was there, there was no going back. The crowd was so tightly packed that when they moved, if you didn't go with the flow, you'd be trampled. I saw some people outside who should have been arrested for trying to tear down the barriers, throwing things at the cops, climbing literally anything, and assaulting the cops. There were crazy people trying to fight police and it was like a war zone for a few minutes. I also saw some cops who were using unnecessary and excessive force. I didnt want to be a part of any of that. It all happened fast, and it was too late to go back. When the police fell back, THOUSANDS of people pushed towards the building. Myself and the media who were there recording were pushed off the wall and forced to the steps in front of us. Rather than having a potentially much more dangerous situation where thousands of people were pushing forward on steps, the police funneled everyone through the building. I saw nothing of the sort but apparently some of the people went into the inside of the congress chambers and vandalized the building. Those people, I believe many of them to be professional "paid" protesters, and I hope they are found by law enforcement. I didn't see anyone breaking windows or destroying property with my own two eyes, but I heard it happened. I, like hundreds or thousands of other people, very simply made my way through the building and came out the other side of the building, and when I saw the blood trail and heard a woman had been shot, I was totally disheartened and disgusted by the events I had seen in that hour. I wanted to go home so I walked back to the train and came home. I sincerely hope and pray for the best for this country. This is a scary time. Seeing people act so crazy was frightening. I saw police officers telling each other they "didnt sign up for this". Nothing good came from this day.

Mr. Hiles claimed that he was pushed into the Capitol, but immediately left at the direction of law enforcement, and took no part in any violent attack on anyone, neither destroyed nor stole any property, and was "totally disheartened and disgusted by the events." From this Facebook post, the Government must establish beyond a reasonable doubt that it was foreseeable to Officer Riley that a grand jury proceeding would be conveyed specifically as to this Facebook post, which did not describe Mr. Hiles engaging in any conduct that would come close to touching upon a grand jury indicted felony offense.

The Government's sole allegation of an obstructive act relating to this Facebook post, in support of Count One of the Indictment, is Officer Riley's response to the post, which was as follows:

> Hey Jake, im a capitol police officer who agrees with your political stance. Take down the part about being in the building they are currently investigating and everyone who was in the building is going to charged. Just looking out![3]

The Government does not allege, nor does its evidence establish, that Officer Riley said anything or did anything else to obstruct justice in support of Count One of the Indictment, whether in other communications with Mr. Hiles or with any other witnesses or through any other overt acts. Count Two of the Indictment alleges that Officer Riley deleted *his own* communications with Mr. Hiles two weeks later to avoid *their* alleged *potential use* in a grand jury proceeding.

Consistent with the alleged offenses and facts in this case, Officer Riley requests that the jury be instructed that: "A individual has the right to an indictment by a grand jury in the District of Columbia for all felony offenses." At trial, the defense does not seek to qualify Officer Riley as an expert in the law. The Government has the burden to prove foreseeability and Officer Riley has a constitutional right to elicit any fact that undermines the Government's evidence or charges in this case. The defense plans to argue that there were no facts to support *any* foreseeability that Mr. Hiles' January 7, 2021 post would be the subject of a federal grand jury proceeding.

Additionally, Mr. Hiles is a defense witness. The Court at the pretrial conference ruled that the defense could not elicit the fact that Mr. Hiles was charged only with a misdemeanor offense.

---

[3] At the pretrial conference, the Government directed the Court's focus to a video accompanying Jacob Hiles' post, which does not depict Mr. Hiles as engaging in any conduct, but instead as being in a position to view and record the conduct of others. Apparently, the Government anticipates arguing to the jury that Officer Riley intended to obstruct a grand jury proceeding solely by his statement to take down a *part* of a Facebook post, and not the entire post that depicted all of Mr. Hiles' actions at the Capitol on January 6, 2021 or the purported video taken by Mr. Hiles at the Capitol on January 6, 2021.

In support of its ruling, the Court cited the nature of Mr. Hiles' cooperation and the considerations of prosecutorial discretion. Officer Riley respectfully states that Mr. Hiles was fully investigated and charged based on video surveillance and Facebook posts before he was even considered to be someone with information relevant to the Government (as it pertained to Officer Riley). Moreover, notwithstanding its sentencing memorandum, the Government took the position that Mr. Hiles was not a cooperator and that his testimony before the grand jury as to Officer Riley (which post-dated the Government's charges) had no relevance to the Government's charging decisions. In that same regard, there is no felony charge applicable to Mr. Hiles' conduct, and in the 800+ prosecutions relating to January 6, 2021, undersigned counsel is not aware of a single case where the Government charged a felony offense for conduct similar to what was described by Mr. Hiles in his post (or what became known during a review of surveillance video). Even then, the focus is on the information in the initial post of Jacob Hiles that did not describe felony conduct subject to a grand jury proceeding.

Mr. Hiles' statement in his Facebook post goes directly to the alleged foreseeability to Officer Riley of a grand jury proceeding, and Officer Riley's purported intent (or lack thereof) to obstruct a grand jury proceeding. Accordingly, Officer Riley should be entitled to present any and all facts that refute the Government's evidence and to advance any argument that tends to create reasonable doubt as to the charges in this case.

**CONCLUSION**

Officer Riley requests that the Court adopt the legal arguments raised herein and allow him to present a complete defense at trial to the charges in this case.

Dated: September 22, 2022                    Respectfully submitted,

SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC

  /s/ Christopher Macchiaroli
Christopher Macchiaroli (D.C. Bar No. 491825)
1750 K Street, NW, Suite 810
Washington, D.C. 20006
Telephone: (202) 539-2444
Facsimile:  (410) 547-2432
Email: cmacchiaroli@silvermanthompson.com

*Counsel for Defendant Michael Angelo Riley*