UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

* * * * * * * * * * * * * * * *

UNITED STATES OF AMERICA,      ) Criminal Action
                                ) No. 21-628
vs.                               )
                               )
MICHAEL ANGELO RILEY,      ) September 12, 2022
                               ) 2:05 p.m.
             Defendant.     ) Washington, D.C.
                               )

* * * * * * * * * * * * * * * *


**TRANSCRIPT OF PRETRIAL CONFERENCE**
**BEFORE THE HONORABLE AMY BERMAN-JACKSON,**
**UNITED STATES DISTRICT COURT JUDGE**


<u>**APPEARANCES**</u>**:**

FOR THE GOVERNMENT: MARY LYLE DOHRMANN
                     ANN McNAMARA
                     U.S. Attorney's Office
                     For the District of Columbia
                     555 4th St, NW
                     Washington, DC 20530
                     (202) 252-7035
                     Email: mary.dohrmann@usdoj.gov


FOR THE DEFENDANT:  CHRISTOPHER MACCHIAROLI
                     Silverman, Thompson, Slutkin & White
                     1750 K Street, NW, Suite 810
                     Washington, DC 20006
                     (202) 539-2444
                     Email: cmacchiaroli@silvermanthompson.com


ALSO PRESENT:       STEPHEN HART, Special Agent, FBI
                     ANDRADE MARIELA ANDRADE, Paralegal, USAO


Court Reporter:     Elizabeth Saint-Loth, RPR, FCRR
                     Official Court Reporter


Proceedings reported by machine shorthand.
Transcript produced by computer-aided transcription.

1                    **P R O C E E D I N G S**

2              THE COURTROOM DEPUTY:  Good afternoon, Your Honor.

3              This afternoon, this is scheduled as a pretrial

4    conference.  We have Criminal Case No. 21-628, United States

5    of America v Michael Angelo Riley.  Mr. Riley is present and

6    in the courtroom, Your Honor.

7              Would counsel for the government, and then counsel

8    for the defendant, open their microphones, speak into it,

9    and identify themselves and colleagues for the record.

10             MS. DOHRMANN:  Good afternoon, Your Honor.

11   Mary Dohrmann and Ann McNamara on behalf of the

12   United States.  And also at counsel table is Paralegal

13   Mariela Andrade and Case Agent Stephen Hart.

14             THE COURT:  All right.  Good afternoon.

15             MR. MACCHIAROLI:  Good afternoon, Your Honor.

16   Christopher Macchiaroli on behalf of Mr. Riley, who is

17   sitting next to me.

18             THE COURT:  All right.  Welcome everybody.  It's

19   very exciting to have lawyers in person in the courtroom.

20   I am glad everyone's here.

21             I think I will let you remain at counsel table

22   when I'm asking you questions; number one, just so you don't

23   have to share the microphone but, also, just to keep us not

24   to spend time walking back and forth and back and forth.

25             I am going to try to go through everything that we

1   have to deal with before trial next week; but I can tell you

2   that I am not going to get into the wordsmithing of the jury

3   instructions today.  I have read what the parties have

4   submitted.

5        I am gathering my own instructions -- instructions

6   that I have previously been given on the element of

7   "corruptly," and that have been given in all of the other

8   January 6th cases to date on that element; and I have

9   everything that everybody has given me.

10       But I think, clearly, there will be a jury

11  instruction conference prior to trial; and we may have

12  another conference prior to -- I mean, prior to the jury

13  instructions we will have a jury instruction conference.

14  And we may be able to get together prior to the trial and

15  talk about them again as well.  But I don't think we are

16  going to have time to get to them.  I certainly haven't had

17  time to go through them and create what I think the jury

18  instructions would be; though, I don't think, actually,

19  there are that many disagreements about what they consist

20  of.

21       I want to talk first about the -- I am going to

22  give preliminary instructions to the jury about how the voir

23  dire is going to work; I will circulate those shortly.

24       I tend to use, as I told you I would, the index

25  card methodology.  And we are going to bring all the

1    jurors -- I think, if they are masked, we can fit them in

2    here if we use the jury box, all the benches; and we might

3    even need the bench inside the well just for this purpose.

4           While I read them all the voir dire questions,

5    they will each have an index card; they will write down the

6    number of any questions to which their answer is yes.  Then

7    we will take them out of here and bring them back

8    individually for the follow-up.  Which is why -- I told you

9    I was going to do that.  I told you the questions should be

10   yes-or-no questions; you didn't actually listen to me, and

11   provided your follow-up questions in your proposed voir

12   dire.  They have all been omitted because I am not going to

13   ask them to the group as a whole.

14          The one thing that struck me is -- I have your

15   statement of the case to read to the jury as part of the

16   initial instructions; but you did not put in there -- you

17   didn't raise it until late in the actual voir dire questions

18   that the defendant was actually a Capitol Police officer.

19          You say:  The defendant is Michael Riley, and he's

20   charged with X.  And then early on we say:  Has anybody

21   heard about this case?  Now, I think, if anybody has heard

22   about this case -- and they may not have given the number of

23   January 6th people they have had the opportunity to read

24   about in the media -- the fact that might trigger whether

25   they had read anything about the case would be the fact that

1    he is a Capitol Police officer who is charged with this

2    particular offense.  So I think asking people -- just based

3    on his name and what we have said so far, if anybody thinks

4    they have heard about the case, that we are going to miss

5    the people that those questions being asked for.

6           So the government is nodding at me, so I take it

7    you have no objection to my bringing that out during the

8    preliminary instructions?

9           MS. DOHRMANN:  No, Your Honor.  Thank you.

10          THE COURT:  And what about you, Mr. Macchiaroli?

11          MR. MACCHIAROLI:  No objection, Your Honor.

12          THE COURT:  Okay.  So I will circulate, probably

13   later today or tomorrow, in the instructions I am going to

14   read to the entire panel that mainly just talk about how the

15   process works and what the index cards are for.  And, also,

16   I tell them right then that they can't talk about the case

17   among themselves or with anyone else because I have actually

18   lost an entire jury because during this process.  Waiting to

19   come in and conduct the voir dire, one of the jurors decided

20   to explain the law that was involved in the case to all of

21   the others.  One of them finally told me, and so we had to

22   excuse them and start over.  So I warn them from the get-go.

23   So that's the voir dire instructions.

24          The voir dire questions, I had to tinker with

25   somewhat because of the format.  And there was actually even

1     one question where the answer that was important to which

2     you would have followed up -- the way the question was

3     formulated, they would have said no.  And, obviously, then

4     they wouldn't have checked "yes" on their index card, and

5     they wouldn't have indicated that we needed to talk to them.

6     I think it was:  Have you -- you know, have you not formed

7     an opinion as opposed to:  Have you formed an opinion?

8               But, anyway, I have revised them.  I will give

9     them out when I send you the voir dire instructions.  I am

10    going to send you the voir dire.

11              I did want to tell you, I am not going to ask the

12    question:  Have you seen any video of January 6th?

13              I think we just assume that every single human

14    being has seen any video of January 6th.  And there is no

15    reason to have every single juror to check off yes and come

16    up.  But we do ask for whether they have such strong

17    opinions about January 6th that could affect their ability

18    to be fair and impartial in this case; and I think that's

19    extremely important.  But I do think it's important to ask

20    that question in a way that indicates this case doesn't

21    involve any allegation of participation in the wrongdoing on

22    January 6th, just conversations with someone who did after

23    January 6th, because I don't think we need to get everybody

24    coming up whose concerns are about one and not the other.

25    We are going to describe what the case is about, so I am

1    going to rephrase the question somewhat to make it more fit

2    what this case is actually about.

3              But I do think it's important to find out if

4    anybody is following the congressional hearings closely, if

5    anybody has such strong feelings about the events of

6    January 6th, either positive or negative, that they feel

7    like they can't judge this defendant fairly just on the law

8    and the evidence, et cetera.

9              So you are going to get my voir dire questions

10   shortly as well, and there may be some questions that one or

11   the other of you have proposed.  But I think everything the

12   defense wanted about the burden of proof and the presumption

13   of innocence, and everything else, is folded into the

14   questions; and everything both sides are looking for is

15   covered, there are just fewer questions now.

16             So I think, before we get to exhibits, the main

17   thing we need to talk about is the government's omnibus

18   motion in limine.  And I want to talk about that before we

19   talk about the availability of witnesses because it may bear

20   on the question of whether witnesses that you think you

21   might need are going to be testifying or not.

22             The government filed Docket 39, its motion in

23   limine; it was opposed at Docket 42, and there was a reply

24   at 43.  There are several categories of evidence and

25   argument the government decided to talk about.  Some are

1    obvious and objectionable.

2            As the government put in its own motion:  It is

3    well settled that argument and evidence about potential

4    punishment, the collateral consequences of a felony

5    conviction would be improper and inadmissible.  And, indeed,

6    we are going to specifically instruct the jury not to think

7    about it.

8            So that evidence will be excluded, although

9    defendant claimed he didn't oppose that in any event.

10           The government also talked about evidence or

11   argument that encourages jury nullification; and it

12   identified as examples evidence or argument that the

13   defendant has been unfairly singled out for some sort of

14   selective prosecution-type argument.  I already found that

15   there was no showing of that and, therefore, that sort of

16   evidence would be excluded.

17           Government asked to exclude evidence or argument

18   trying to gin up sympathy for the defendant since the jury

19   will be instructed it shouldn't base its verdict on sympathy

20   for or bias against either side.  I am not sure what the

21   government had in mind.  But no, for example, the defendant

22   couldn't say:  My wife and children depend on me for

23   financial support, or I have this or that health condition.

24   That's closely related to the government's request that I

25   exclude defendant's work life or any family hardship or the

1    defendant's religious beliefs, or the suggestion that the

2    jury should apply community standards and principles of

3    democracy over law.

4          Again, the government may have jumped the gun on

5    this one since no nullification instruction was even

6    proposed, but there won't be one; and no argument to that

7    end would be proper in any event.

8          And the defendant -- the government also seeks to

9    exclude prior good acts of the defendant including his

10   official actions on January 6th.

11         The defendant filed an opposition.

12         When I describe it I want to note first, as an

13   aside, that the defendant also persists in mischaracterizing

14   the law in it by saying, quote:  The government can only

15   establish criminal liability in this case by establishing

16   that Officer Riley obstructed a grand jury proceeding, not

17   an investigation.

18         And we have been over that repeatedly, and no one

19   was saying that he is charged with obstructing an

20   investigation.  But then the defense goes on in saying:  And

21   that, in doing so, Officer Riley had the requisite intent to

22   obstruct a specific grand jury proceeding that had a nexus

23   to the alleged obstructive conduct.  When the statute

24   doesn't require actual obstruction, an attempt qualifies,

25   and the official proceeding need not be pending or about to

1    be instituted at the time of the offense.

2           That's what the statute says.

3           I am not going to instruct -- address that issue

4    further because it doesn't bear on what I have to decide.

5    But I wonder why the defense insists on saying that in every

6    single pleading in this case, notwithstanding the number of

7    times I have ruled on it.

8           The defendant did respond more directly to the

9    motion by saying:  Of course we have no intention of raising

10   religion, family hardship, or the fact of potential

11   incarceration as defenses; and we do not intend to argue

12   that the jury should reach a verdict based solely on

13   principles of democracy.

14          So that's great.

15          Therefore, as the defense specifically agrees and

16   concedes:  References to possible punishment or collateral

17   consequences of any form, not just incarcerated, will be

18   excluded.  And the defendant may not introduce religion or

19   family hardship or encourage the jury to nullify based on

20   its own understanding of the law and other principles.  And,

21   therefore, the motion in limine is granted with respect to

22   those issues.

23          But that means the defendant cannot, as he

24   proposed in Footnote 5, testify to Officer Riley's

25   subjective knowledge from his years of experience as to the

1    consequences to his employment, his legacy as a Capitol

2    Police officer, and his ability to provide for his family if

3    he obstructed justice.  You simply cannot bring in through

4    the back door what you just told me you knew perfectly well

5    you couldn't bring in through the front door.

6           And I wrote that even before I read the reply

7    which uses the "back door" metaphor appropriately,

8    frequently.

9           Because the entire opposition, frankly, was the

10   defense speaking out of both sides of its mouth.

11          After claiming to agree with the government on all

12   those issues, the defense has a big "but" with respect to

13   character evidence.  He correctly points out that the

14   government has the burden to prove the defendant acted with

15   knowledge and intent; and he notes that the jury

16   instructions regarding consideration of those issues permit

17   the jury to infer consent -- infer intent from the

18   "surrounding circumstances."

19          So, according to the defendant, that includes his

20   experience and knowledge as a law enforcement officer.  But

21   then, the submission jumps right into the specific things he

22   did in his role as an officer on January 6, which the

23   defendant describes as "heroic."

24          The submission also says:  Officer Riley will not

25   invoke the support of his wife and his two children as

1    evidence for why he should be acquitted at trial.  Of

2    course, this does not mean that Officer Riley cannot present

3    evidence of who he is to the jury.  Relevant to his intent,

4    or lack thereof, is his history as a law enforcement

5    officer.  This attendant knowledge puts into context the

6    decisions that Officer Riley made and explains his intent,

7    or lack thereof, regarding those decisions.  Granting the

8    government's motion would leave the jury with a blank slate

9    and invite speculation about the reason Officer Riley is no

10   longer a U.S. Capitol Police officer or what he was doing on

11   January 6, 2021.

12          And to that I say, well, yes and no.

13          What the defendant is telling me is that he has a

14   clear intention of maintaining a "who me?" posture every

15   time the government says this is not admissible and that's

16   not admissible.  And he's like:  Oh, I am not going to do

17   that.  And then, at the same time, he turns around and

18   pushes the envelope with respect to every single issue the

19   government raised, and it isn't going to be permitted.

20          My ruling is that the standard for admissibility

21   of all evidence is going to be the Federal Rules of

22   Evidence.

23          And, yes, the defendant can tell the jury his

24   basic biography:  Who he is, if he testifies, as every

25   witness is permitted to do.  It's not unusual and it's not

1    improper for the defense to humanize the defendant.  He can

2    say he went to college, for example, that he's married, that

3    he has kids.  Those are facts, and they are permissible, but

4    not what the impact on them would be if he were to be

5    convicted.

6            He can say:  I have been a law enforcement officer

7    for 25 years or from X date to Y date, and including:  On

8    January 6th I was working for the Capitol Police.  He can

9    say, if he chooses, that he's retired from the Capitol

10   Police now, be he doesn't have to.  So the jury doesn't need

11   to have it explained unless he puts it in evidence because

12   otherwise it's not coming in evidence.

13           But I do agree that it's part of the surrounding

14   circumstances that on that date he was an officer of the

15   Capitol Police, and on that date he was on duty.

16           But the law is clear that:  Just as you can't

17   convict a defendant because of prior bad acts, you can't

18   defend on the basis of prior good acts.  So we aren't

19   getting into his specific instances of heroism on that day

20   or any other.

21           The D.C. Circuit has ruled in this specific

22   context of a case against a police officer, *United States

23   vs. Washington*, 106 F.3d 983, at 999 to 1000, from the

24   Circuit in 1997.  Which is an interesting case because, if

25   anything, it presented a stronger case for the admission of

1    prior good conduct because the government had already

2    introduced evidence under Rule 404(b), prior bad acts, to

3    show that defendant's disposition to refute the defendant's

4    entrapment defense.  And the defendant wanted to counter

5    that bad-acts evidence with prior good acts, in particular,

6    commendations for his work on the police force.

7         The trial court excluded it and was upheld on

8    appeal.  The Circuit found that given Rules 404 and 405, the

9    court acted well within in its discretion in excluding the

10   evidence and said:  The commendations were not admissible

11   under either rule because Appellant's dedication,

12   aggressiveness, and assertiveness in investigating drug

13   dealing and carjacking is neither pertinent to nor an

14   essential element of his supposed lack of predisposition to

15   engage in the corrupt criminal activity with which he was

16   charged.

17        And it cited a First Circuit case, *United States*

18   *vs. Nazarro*, 889 F.2d 1158, which also excluded evidence of

19   a police officer's prior commendations because:  The traits

20   which they purport to show -- bravery, attention to duty,

21   community spirit -- were not pertinent to the crimes.

22        The rules are clear about when character evidence

23   can be admitted and in what manner, and they will govern

24   here as well.

25        Rule 404(a) governs the admission of character

1    evidence.  It says, under Rule 404(a)(1):  Evidence of a

2    person's character or character trait is not admissible to

3    prove that on a particular occasion the person acted in

4    accordance with the character or trait.

5           However, it is true that, in Rule 404(a)(2), there

6    is an exception for a defendant in a criminal case.  And it

7    says:  A defendant may offer evidence of the defendant's

8    pertinent trait, and if the evidence is admitted, the

9    prosecutor may offer evidence to rebut it.

10          So he can present evidence of a pertinent

11   character trait; but Rule 405 tells us how:  Methods of

12   proving character.  And this is how you do it, under Rule

13   405(a):  When evidence of a person's character or character

14   trait is admissible, it may be proved by testimony about the

15   person's reputation or by testimony in the form of an

16   opinion.  On cross-examination of the character witness, the

17   court may allow an inquiry into relevant-specific instances

18   of the person's conduct.

19          Specific instances under Rule 405(b) only come in

20   if the character trait is an essential element of a charge,

21   claim, or defense.

22          And I don't believe that just because the

23   defendant was supposed to have acted knowingly and

24   intelligently and incorruptly that that makes a character

25   trait an essential element of a claim or defense.

1            The defendant may put on a character witness who

2     can testify to his reputation for a relevant trait or their

3     opinion about that trait.  He may not introduce specific

4     instances of being a good person or even a good police

5     officer.

6            Finally, while disavowing any intention to get

7     into selective prosecution, the defendant posits:

8     Nevertheless, Officer Riley has every intention of

9     challenging the government's investigation, the reasons and

10     statements made by law enforcement as to why he was

11     interviewed and surreptitiously recorded, and the manner in

12     which this case was referred to the FBI for investigation.

13            To which I say:  Not so fast.

14            You have to persuade me of the relevance of the

15     decisions underlying the investigation before we embark on

16     any of that.  It seems to be the whole purpose is to raise

17     the specter of selective prosecution.

18            Cases in which a defense is permitted to attack

19     the investigation generally relate to a failure to pursue

20     leads that would have pointed elsewhere, someone else who

21     committed the crime the defendant committed -- you didn't

22     look into fingerprints, you didn't examine that hair

23     evidence -- not what would point to the fact that other

24     people did the same thing and weren't charged with it.

25            Here the thrust seems to be:  They should have

1    never investigated me, or they did it improperly,

2    unlawfully, and that's not a jury issue that goes to guilt

3    or innocence.

4           I am also not at all sure it would be appropriate

5    for the defendant to teach the jury the difference between a

6    felony and a misdemeanor and to offer his expert

7    determination that at the time he thought that what

8    Mr. Hiles had described in his posts was a misdemeanor and a

9    misdemeanor only and, therefore, he, the defendant, couldn't

10   possibly have intended to obstruct a grand jury

11   investigation because there never would have been one of

12   Mr. Hiles.

13          I believe that strays well into expert testimony,

14   it treats law as if it were fact.  And I am not going to

15   have someone from the witness stand, someone other than me,

16   telling the jury what the law is.

17          Moreover, finally -- and we'll talk about this

18   more when we go through the exhibits -- but when the

19   defendant tries to get into his own statements to law

20   enforcement and his interview by the law enforcement

21   officers, we're going to have to talk about the hearsay

22   rules because otherwise I really have no idea how it's going

23   to come in evidence.

24          So for all those reasons, and with all those

25   caveats and explanations, the government's motion in limine

1     is granted.

2              Which brings us to the question of specific

3     exhibits that are --

4              MR. MACCHIAROLI:  Your Honor --

5              THE COURT:  Yes.

6              MR. MACCHIAROLI:  -- may I just briefly stop for

7     one second and just ask some follow-up questions of the

8     Court's ruling?

9              THE COURT:  Sure.

10             MR. MACCHIAROLI:  Just as a preliminary matter, we

11    haven't even gotten into exhibits yet.  And I was going to

12    proffer for the Court that, in preparing the defenses

13    exhibits, I took careful attention to make sure if there was

14    any exhibits that could possibly be used to refresh

15    recollection, to impeach, to potentially be referenced so

16    that the government would have copies, the deputy clerk

17    would have copies if we needed to bring it up to the screen.

18    Not every single exhibit on the defense's exhibit [sic] is

19    trying to be moved into evidence for the truth of the matter

20    asserted; but we'll get to that.  I just wanted to kind of

21    preview that for the Court.

22             THE COURT:  I appreciate that.  And that may be

23    the case with some of the government's exhibits as well; but

24    they're listed and they're objected to you.  So, when we get

25    to them, you can tell me you are not actually seeking to

1    move it in your case in chief, and then we can move on to

2    something else.

3              MR. MACCHIAROLI:  Okay.  Your Honor, just for

4    clarification, is the Court prohibiting Officer Riley from

5    presenting evidence of what he was doing on January 6th?

6              THE COURT:  I think he can say he was working on

7    January 6th; he was on duty.  I don't think there is any

8    suggestion in this case that he has not been -- no one is

9    suggesting that he was fired, no one is suggesting that he

10   was a bad officer.

11             They're saying that he did something in this case

12   that is unlawful; and so I don't see whether the fact that

13   he was sent to diffuse something or he went to help another

14   officer, or another officer -- I think he can say he was

15   there and he worked.  But we are not getting into he was a

16   hero, or trying to say he is not -- lead to the argument

17   that he's not guilty of what he is charged with because he

18   is such a good guy.  That's not how it goes because he --

19             MR. MACCHIAROLI:  Nobody is going to be arguing

20   that, Your Honor.  I think it's just appropriate in context

21   to say what Officer Riley was doing that day.  He was not

22   sitting in an office while his fellow comrades were

23   defending the Capitol.

24             He was responding to a bomb, which is a

25   significant responsibility.  He also assisted fellow

1    officers.  Well, nobody is going to be arguing, based on

2    those facts in closing or in opening, these are heroic acts,

3    and that Officer Riley should be acquitted of the charges.

4           THE COURT:  All right.  Well, that's what you put

5    in your pleading:  He wants to testify to the fact that he

6    did heroic acts; I mean, that's your word.  I would never

7    have come up with that.  So if --

8           MR. MACCHIAROLI:  Well, Your Honor --

9           THE COURT:  So if he can be factual I am going to

10   give you a little leeway to put him on the witness stand, if

11   that's what you choose to do.  He is a human being; he's a

12   former officer; he's a decent person.  He went to work that

13   day; there is no suggestion that he didn't.

14          What did you do that day?

15          I was sent to diffuse suspected explosives, and

16   then later I was sent to respond to an injured officer.

17   Okay.  Fine.

18          But the elaboration and the idea that they are

19   supposed to draw something from that, I think you have to be

20   careful.

21          MR. MACCHIAROLI:  No, Your Honor.  Absolutely.

22          And, you know, a lot of the arguments that the

23   government is raising is before we have even opening

24   statement, before we put on witnesses.  And my apologies if

25   the Court interpreted me as, you know, going to be eliciting

1    he was heroic or anything like that, or any kind of

2    argument.  I would literally be putting context to what he

3    did on January 6th.

4              THE COURT:  All right.  Well, just about

5    everything they said they were afraid you were going to do,

6    you disavowed any intent to do it, and then you told me you

7    were -- nonetheless, you were going to do it.  So I am just

8    letting you know, you aren't.

9              MR. MACCHIAROLI:  I understand, Your Honor.

10             THE COURT:  Okay.

11             MR. MACCHIAROLI:  I respectfully disagree with

12   that contention on some of the points that were raised in

13   the opposition.

14             And just for -- and the reason why I made that

15   point is that the government was presenting evidence that --

16   in its list of exhibits, that my client was diffusing bombs

17   on January 6th.  So I think it's appropriate, if they're

18   going to present evidence of what he was doing on

19   January 6th, I can provide the full evidence of what he was

20   doing on January 6th.  That's the only reason why I raised

21   that clarification with the Court.

22             Also, Your Honor, I just, again, want to raise,

23   you know, my concerns as to the ability to defend my client

24   in this case.  My client has to subjectively believe that he

25   was obstructing an official proceeding, which the government

1    has identified and the Court, in its decision, has

2    identified was a grand jury proceeding.

3            Based on his experience, training, and knowledge,

4    there was nothing to indicate to him that -- in that

5    specific proceeding relating to Mr. Hiles and Mr. Hiles'

6    description of his conduct, that that would lead to a grand

7    jury proceeding.  I think it is essential the defense be

8    able to explain Mr. Riley's subjective belief on that issue.

9    And --

10           THE COURT:  You are not -- he is not -- I mean, I

11   saw the exhibit you gave me about misdemeanors and felonies

12   that the Capitol Police -- half of the ones that are being

13   used in these January 6th cases aren't even listed there.

14           He is not going to get to tell the jury that he --

15   based on his experience, as a matter of law, what Mr. Hiles

16   was doing was only a misdemeanor; I don't think that's

17   appropriate.

18           MR. MACCHIAROLI:  And, Your Honor, he will not be

19   saying that he has an expert opinion; he will not be saying

20   this is the law.  In fact, I submitted to government counsel

21   earlier today a redacted version of that exhibit that

22   removed discussions of law and things of that nature, and

23   listed misdemeanor and examples.

24           And, again, the Court can instruct that this

25   opinion of Mr. Riley is solely as to his subjective belief;

1    he is not an expert.  It's not being offered for the truth

2    of the matter.  It is being offered as to what he was

3    trained and his knowledge -- his subjective belief, his

4    state of mind -- in why he did what he did, which I think is

5    essential to his defense, knowledge and intent.

6            And I think the Court can have very strong cure --

7    instructions both to counsel -- because I am not going to

8    proffer Mr. Riley as any expert whatsoever; I am not going

9    to say that he was trained in the law.  But I am at least

10   going to give him the opportunity to explain why he believed

11   that he was not obstructing a grand jury proceeding, which

12   is specifically what is charged in this case.

13           THE COURT:  It's one thing to say:  I wasn't

14   really thinking about obstructing a grand jury

15   investigation; it wasn't my goal.  I was just -- like, he

16   told officers -- just friends; I was telling him to take it

17   down.

18           But what you are saying, which is a whole lot more

19   sophisticated in detail than what he said in the statement

20   that you are seeking to admit in the first place, is that he

21   actually went through some mental calculus about:  Oh, he is

22   just a misdemeanant, so it's okay for me to tell him to take

23   the evidence down.

24           And I don't know how that is going to work out if

25   he gets on the stand and tries to say that.  But I think you

 1    are treading very, very close to having things come out of

 2    his mouth that are supposed to go to his state of mind based

 3    on his knowledge as a police officer that go much further

 4    than he should be able to go and that you should be able to

 5    go.  Because then you are raising -- they're going to stand

 6    up and they are going to try to cross-examine him.

 7           Well, you don't know everything that he did while

 8    he was in there.  Other stuff that he did while he was in

 9    there could have been a felony, couldn't it?  Or if there

10    was a big -- and we're going to be cross-examining in front

11    of a bunch of lay people about what the law is governing

12    Jacob Hiles?  I don't see how that's the right way for this

13    trial to go.

14           MR. MACCHIAROLI:  No.  I think, Your Honor, him

15    knowing his knowledge of whether there was going to be a

16    grand jury, whether an offense had been committed where

17    somebody was violating the law, when his initial response --

18    what is specifically identified the indictment is a response

19    to an individual saying that he was pushed in to get inside

20    the Capitol, and that he would be trampled if he did not go

21    in.  And then immediately upon entering he followed the

22    instructions of law enforcement to exit.

23           In seeing that communication, Mr. Riley stated,

24    you know -- and that is the alleged obstruction -- to have

25    Mr. Riley explain why he did not think that he was

1    obstructing a grand jury proceeding which -- that he did not

2    even see this conduct as felonious -- not as an expert, but

3    just subjectively is very narrow.

4          And, Your Honor, the reason I am providing, you

5    know, what he was trained on -- because it goes directly to

6    his state of mind on this issue, an essential issue.  I am

7    willing to have any redactions that the Court feels

8    appropriate.  But it further just corroborates what his

9    knowledge was at that time; again, corroborated by the

10   fact -- not coming from Mr. Riley on the stand, but from the

11   evidence that Mr. Hiles was never charged with a felony in

12   this case after that initial communication was shown to be

13   completely inaccurate.

14         THE COURT:  That was after a full investigation,

15   looking at all of the CCTV and everything else, as in every

16   other case.

17         Some people got charged with misdemeanors; some

18   people got charged with felonies, but it wasn't just based

19   on what they said on Facebook.  So I don't know why what he

20   got charged with eventually bears on it at all.

21         But, Ms. Dohrmann, I will let you respond to this,

22   because Mr. Macchiaroli and I have been doing all of the

23   talking so far.

24         MS. DOHRMANN:  Thank you, Your Honor.

25         The government absolutely agrees with Your Honor

1    that the misdemeanor versus felony distinction is very

2    confusing and would be misleading to the jury, and is

3    irrelevant here.

4           First of all, of course, a grand jury can

5    investigate and cannot charge anyone at all, so the

6    misdemeanor/felony distinction just has very limited

7    relevance.

8           The government would also note that the government

9    has provided to defense counsel and brought to their

10   attention an arrest in which the defendant was involved

11   where there was a misdemeanor CPWL arrest -- that's carrying

12   a pistol without a license in superior court terminology --

13   and it was investigated by a grand jury, and indicted as a

14   felony.  And the government would be entitled to cross the

15   defendant about that.  But all of that, for the reasons Your

16   Honor has already described, would be misleading and

17   confusing.

18          THE COURT:  I really don't think that -- I think

19   you are trying to have this gentleman tell a jury what the

20   law is, and I am very, very reluctant to permit you do that.

21   I'm reluctant to have you do it, but I'm really reluctant to

22   have him do it.

23          MR. MACCHIAROLI:  And, Your Honor, I think he has

24   every right, consistent with the evidence in the record, to

25   establish why he did not believe he obstructed an official

1    proceeding, a grand jury proceeding, as to Jacob Hiles when

2    the alleged obstruction concerned --

3             THE COURT:  But see, that's it -- you want him to

4    testify as to why he doesn't believe legally that he

5    committed this offense.  And he can testify to facts and you

6    can argue the facts; and you, in your closing argument, can

7    apply the law to the facts.  But you are trying to get him

8    to tell them:  This is why I don't think I committed

9    obstruction of justice.

10             He can say what he did and why he did what he did,

11    but that is totally different from why that doesn't add up

12    as a matter of law to obstructing an official proceeding.

13    Do you understand what I'm saying about the difference?

14             MR. MACCHIAROLI:  I understand what you're saying

15    about the difference, Your Honor, but I think it goes

16    directly to issues of knowing and intent to obstruct an

17    official proceeding.

18             How could the government establish he intended to

19    obstruct a grand jury proceeding as to Jacob Hiles?  They'd

20    have to establish, right -- and we should be able to exploit

21    that in the defense of Mr. Riley -- that there is -- there

22    was no grand jury proceeding as to Mr. Hiles; that Mr. Riley

23    had no belief there was ever going to be a grand jury when

24    he made that statement to Mr. Hiles the date of the alleged

25    obstruction.

1          The defense is prepared to cross-examine that

2     about some gun case that Officer Riley -- we welcome that

3     cross-examination.  They have anticipated it; they have

4     expected that this would be admissible.

5          And the Court can, when this evidence gets

6     presented, clearly say:  Mr. Macchiaroli, I have heard

7     enough; no more questions on the subject.

8          But I think at a minimum --

9          THE COURT:  The point of this is to try to give

10     you some guidance so that I don't have to say "enough" in

11     front of the jury, and so that you're prepared and they're

12     prepared.  If I have to, I will; but I am trying to give

13     everybody some ground rules here.

14          And I think there is a significant difference

15     between:  This is what I was thinking, and this is what I

16     did, or this is what I didn't do; and this is why what I

17     did, in my opinion, looking back now, does not constitute

18     the offense with which I am charged.

19          As you know, there doesn't have to have been a

20     grand jury even constituted at the time, it just has to --

21     you know that, we've talked about that a thousand times.  I

22     don't believe -- I don't have the indictment in front of

23     me -- that it says:  A grand jury investigation into

24     Mr. Hiles.  It says a grand jury investigation.

25          There was -- and, certainly, from his own

1    statement, he anticipated a major federal investigation into

2    January 6th; he was in favor of it.  He told the officers:

3    That's what I want.

4         Well, just sitting around and having FBI agents

5    chat about it isn't going to get anybody charged.  There is

6    only one way to charge people, and that's to have a grand

7    jury investigation; and he knows that.

8         MR. MACCHIAROLI:  Yeah.  And, Your Honor, I would

9    respectfully disagree on a number of those points.

10        Number one is:  The grand jury proceeding has to

11   be foreseeable; and it has to be, as the Supreme Court has

12   said in *Arthur Andersen*, a nexus between the specific

13   obstruction and the particular official proceeding.

14        We have been raising this point from the initial

15   status.  And we are not just raising because we would like

16   this instruction or we think this is the law, this is what

17   the Supreme Court has said.  And it is difficult because, I

18   agree, it's not an element of the statute, but yet you have

19   Supreme Court precedent directly saying this is what the

20   government needs to establish.

21        And this goes to the other issue, Your Honor,

22   which --

23        THE COURT:  Well, being able to establish the

24   connection, the nexus, is still different from the

25   "corruptly" element.  Corruptly is a state of -- you know,

1     evil state of mind, wrongful state of mind; and it's been

2     defined like that before and after *Arthur Andersen*.  I think

3     you are really talking about kind of what "obstruct" means

4     or what "attempt" means and where it goes.

5              But I do think there is a significant difference

6     between what you are saying you want to do and how far he

7     gets to go, I don't think he should be drawing legal

8     distinctions --

9              MR. MACCHIAROLI:  And, Your Honor, we are not --

10             THE COURT:  -- for the jury.

11             MR. MACCHIAROLI:  I am sorry to interrupt.

12             We are not looking to draw legal distinctions.  We

13    are not trying to classify him as an expert.

14             And while this is unusual for me to kind of

15    proffer to the Court in advance of what specific questions I

16    would ask of the defendant without even hearing the

17    government's case -- I will do that so that there is an

18    adequate record so the Court knows exactly what I am --

19    where I am going.  If the Court wants to rule that

20    inadmissible, that's fine.  But I want the Court to be very

21    clear that I am not making him as a legal expert.

22             THE COURT:  All right.  Well, every time you said

23    "In his experience as a law enforcement officer," I don't

24    know what you are doing besides trying to make him some sort

25    of an expert in the jury's eyes.

1           MR. MACCHIAROLI:  Right.  And that --

2           THE COURT:  And, you know, arresting officers do a

3    lot of arresting; but ultimately charging decisions are made

4    by the prosecutor.

5           MR. MACCHIAROLI:  Right.  And I apologize for any

6    inartful way -- and, I agree, I can be very inartful at

7    times in my filings; I concede that.

8           But I think when I say him, in his law enforcement

9    experience -- he didn't wake up on January 6th or

10   January 7th with no knowledge of anything, it came from the

11   knowledge that he developed in his life.  He's asked to make

12   decisions about whether to arrest people or to not arrest

13   people, whether they are felonies in his mind or whether

14   they are misdemeanors or not.

15          To him, to get information from somebody who said

16   they fell into the Capitol and to believe -- and to him not

17   to be able to explain why he didn't think that a grand jury

18   was going to investigate that information, I think we should

19   at least -- he should at least be able to provide his

20   explanation which would negate his intent and his actions on

21   that issue.

22          And if I may, Your Honor -- and I know we have a

23   lot of issues to cover, but I think it's very important --

24   it's always been the defense's perspective in this case that

25   the government has always believed that obstruction of a law

1   enforcement investigation, Special Agent Hart's

2   investigation, was obstruction under the statute.

3           THE COURT:  Okay.  Well, they don't -- they

4   haven't -- they have disavowed it a thousand times.  That

5   you never have to say again, okay?

6           We are done with that.

7           MR. MACCHIAROLI:  Right.  And so that --

8           THE COURT:  I understand what you are trying to do

9   with respect to what he is charged with, but we all know

10  what he is not charged with.  We have dealt with that,

11  really, a thousand times.  And we are never going to finish

12  today, and we'll never finish this trial.

13          And now that I have read this statement, I think I

14  understand what you are doing.  He used the word

15  "investigation" about ten times.  And I think you are trying

16  to dance on the head of that pin that he knew there was

17  going to be an investigation, but he didn't say "grand jury

18  investigation," he just said "investigation"; but I don't

19  know that you want to rest on the head of that pin in front

20  of the jury.

21          I also don't think that thing is coming in

22  evidence, so it may not matter.  But I hear what you are

23  saying about -- when they get into, What was he thinking

24  when he emailed Mr. Hiles -- or messaged him -- what was he

25  thinking when he said those words?  What was the intent

1    behind those words?  He is allowed to say what his intent

2    was behind those words.

3              And if he is on the stand, he is allowed some

4    leeway to say what his intent was not behind those words,

5    and then they're going to cross-examine him about that.

6              But I think you just have to tread very carefully

7    to not suggest that he can testify to the fact that, as a

8    matter of law, that couldn't be obstructing a grand jury

9    investigation because Mr. Hiles was a misdemeanant; I am not

10   going to let you do that.

11             MR. MACCHIAROLI:  Oh, I am --

12             THE COURT:  I am the only one who is going to tell

13   the jury what the law is in this room.

14             MR. MACCHIAROLI:  Understandable.  I am not going

15   to elicit that from Mr. Riley if he takes the stand.

16             Moreover, Your Honor, I am not saying that Officer

17   Riley is going to be telling what the law is, or anything

18   like that, it goes directly to his what belief was.  He can

19   be completely wrong on the law, completely.  But what --

20   what he was thinking when somebody wrote that he fell into

21   the Capitol which, in and of itself, entering at that moment

22   doesn't even seem like a crime for -- for anybody, for a

23   layperson, a trained officer -- for the statement that

24   Officer Riley made in response to that and to not have

25   Officer Riley explain -- grand jury -- of course not, I

1    didn't think this was a grand jury.

2          THE COURT:  All right.  Well, the government is

3    going to argue what it argues after it cross-examines him

4    about what other possible motivation you might have to tell

5    somebody to take their stuff off the internet as an officer

6    who understands exactly what's happening.  So everybody is

7    going to argue -- you can present facts, and then you are

8    going to argue facts.  And I just want to make sure that you

9    are not going to argue the law.

10         Can we go on to the government's exhibit list,

11   please.

12         MS. DOHRMANN:  Your Honor.

13         THE COURT:  Yes.

14         MS. DOHRMANN:  I'm sorry.  Can we just address one

15   matter raised by some of the arguments made by the defense

16   with respect to the conversation the Court just had, which

17   is this repeated insistence on trying to redefine, in legal

18   terms, the grand jury investigation charged by the

19   government.

20         In the motion to dismiss the indictment, the

21   phrase used was an umbrella, "grand jury investigation."

22   Respectfully, the defense does not get to define the grand

23   jury investigation charged by the government in this case.

24   And we are concerned that they will persist in attempting to

25   tell the jury that the grand jury investigation has to be

1    with respect to Mr. Hiles in some phrasing -- framing that

2    the defense has concocted.

3         THE COURT:  All right.  Well, one thing I don't

4    like to do is provide juries with indictments.  But I think

5    we ought to be clear what he's charged with -- and you don't

6    get to rewrite what he's charged with, you only get to talk

7    about what he is charged with.

8         He is charged with obstructing an official

9    proceeding, that is, a grand jury investigation, correct?

10        I mean, there is a point where your language was a

11   little inexact as well; but I think we have been through

12   that in the motion to dismiss and everywhere else.

13        What are you going to tell the jury he is charged

14   with obstructing?

15        MS. DOHRMANN:  The federal investigation,

16   including a grand jury investigation, resulting from the

17   January 6th breach of the U.S. Capitol.

18        THE COURT:  All right.  But you have told me over

19   and over again that you are focused on the grand jury part

20   given the section of the statute that he's been indicted

21   under.

22        MS. DOHRMANN:  Yes, Your Honor.

23        THE COURT:  All right.  So I am not sure that you

24   can, on the one hand, say, We're not talking about the FBI

25   investigation; and say, A federal investigation including a

1    grand jury investigation, whence you have hung your hat on

2    the fact that you are talking about the grand jury

3    investigation.  Isn't that what he's charged with?

4              MS. DOHRMANN:  Yes, Your Honor.

5              We do think that we are entitled to reference the

6    larger federal investigation as conducted by FBI agents,

7    et cetera.  The state of mind can be as to sort of two

8    overlapping entities; and certainly the government will

9    never contend that the grand jury investigation is -- or, I

10   should say, the federal investigation does not include a

11   grand jury investigation.

12             THE COURT:  I understand that the federal

13   investigation includes a grand jury investigation.

14             But you have told me over and over and over again

15   that you have charged with him under the specific section of

16   the statute with obstructing a proceeding, which is the

17   grand jury investigation.

18             MS. DOHRMANN:  Yes, Your Honor.

19             And all of our jury instructions reflect that.  We

20   simply need to state --

21             THE COURT:  All right.  Well, then your argument

22   and your opening does too.  Everything -- if they have to

23   stick with what the charges are; you have to stick with what

24   the charges are.

25             MS. DOHRMANN:  Yes, Your Honor.

1          THE COURT:  All right.

2          MR. MACCHIAROLI:  Your Honor.

3          THE COURT:  Yes.

4          MR. MACCHIAROLI:  And I apologize if I'm taking

5   time on these points, but I think it's essential to the

6   defense.

7          And I would just preview for the Court, to the --

8   there are so many issues that we are resolving here today

9   that are so important to witnesses and exhibits and the law

10  that governs this case.  I apologize if it's going to take

11  too much time, but I am doing this not to delay the

12  proceedings but to effectively represent my client.

13         I would just note -- I don't want to, you know,

14  harp on this, but the colloquy you just had with the

15  government is the exact concern that the defense has had

16  throughout this entire case that's been flowing back and

17  forth between federal investigation, grand jury

18  proceeding -- it's all kind of linked.  And I appreciate the

19  Court saying it's grand jury proceeding, that's it.

20         I just want to focus one additional point that the

21  government made, was -- again, the defense is not concocting

22  this nexus requirement; it's following what the Supreme

23  Court says has to be established by the government in the

24  case.

25         Of course -- of course I'm doing my job.  I'm

1    going to argue from the opening during -- elicit any facts

2    that assist us, and all the way in closing that it must be a

3    nexus between the specific official grand jury proceeding

4    and the alleged obstruction.  Of course, I am going to; I am

5    not apologizing.  That's the Supreme Court precedence, and

6    it's not a concoction; it's the law.

7              THE COURT:  All right.  Exhibit 1, which is the

8    defendant's oath that he took to become a Capitol Police

9    officer; why is that relevant?

10             MS. McNAMARA:  Your Honor, the government would

11   seeking to enter it into evidence to show that he was, in

12   fact, a sworn Capitol Police officer and had been on the

13   force since that date.

14             THE COURT:  All right.  Well, why is it

15   prejudicial, Mr. Macchiaroli?

16             MR. MACCHIAROLI:  Your Honor, we don't need to go

17   through what the requirements of his oath was, that is not

18   relevant to the specific charge in this case.  And we would

19   stipulate that he was a police officer on January 6th.

20             THE COURT:  All right.  If you want to stipulate

21   to the fact that he was a Capitol Police officer on that

22   date or that he had been a Capitol Police officer since

23   April 8, 1996, which is part of what you want to show

24   anyway, which is how long he served -- once we have that

25   stipulation, then I don't think we need where he takes the

1     oath to support and defend the Constitution against all

2     enemies foreign and domestic in evidence.  So assuming that

3     stipulation exists, then I would exclude Exhibit 1.

4               I don't think I understand why we're putting in

5     his schedule for Count 2 for that day, I guess; but the

6     defendant's objection is under 106.  So what, in fairness,

7     are you saying is left out out of Government's Exhibit 2?

8               MR. MACCHIAROLI:  Your Honor, it just says that he

9     was a K-9 unit that day; it doesn't explain what he was

10    actually doing in responding to pipe bombs and assisting

11    another officer.  Plus, looking at that exhibit, it's a

12    schematic.  I don't know what is drawn from it; I don't know

13    any witness that's going to authenticate it.

14              I would simply just, again, stipulate that he was

15    a K-9 officer, you know, at the time of January 6th.  And,

16    you know, we, obviously, can put on bare-bones evidence of

17    what he was doing on January 6th:  Responding to pipe bombs,

18    responding to a fellow officer -- not claiming he is a hero,

19    but at least complete what he was actually doing that day.

20              THE COURT:  All right.  Well, what he puts on is

21    another matter.  We're now in the government's case and, you

22    know, I think the point of the joint pretrial statement was

23    to talk about stipulations before we walked in here today.

24              But, once again, if you are prepared to stipulate

25    that, on January 6th, he was on duty, he was a K-9 officer,

1    and he was dispatched to deal with explosive devices, then I

2    don't know why we need all of this.

3         Why does the government want to admit it?  Just to

4    show that he was on duty that day?

5         MS. McNAMARA:  Yes, Your Honor.

6         It was for the limited purpose of giving the jury

7    some sense of what he was doing on the 6th without going

8    overboard.

9         THE COURT:  All right.  Well, it was pretty hard

10   to get any sense out of it, to tell you the truth.  It's

11   related to a lot of other people other than him.  So it

12   sounds like the parties will craft a perfectly workable

13   stipulation that says when he was sworn onto the force, that

14   he was working on January 6th, as of January 6th he was

15   assigned to the SOD K-9 section, and what he was doing that

16   day.

17        So I think that comes in; but I agree that the

18   document seems to really just be a little bit of overkill.

19        Speaking of which -- all right.  There doesn't

20   seem to be an objection to Government's Exhibit 3, but what

21   is going on with this exhibit?

22        MS. DOHRMANN:  Your Honor, this exhibit is called:

23   Detailed Records for the Defendant's Cell Phone, reflecting

24   the calls between him and Jacob Hiles.

25        THE COURT:  Okay.  So will there be an excerpted

 1    version that just shows the calls between the two of them?

 2    These aren't all calls between the two of them, are they?

 3             MS. DOHRMANN:  No, they are not, Your Honor.

 4             Yes.  We can -- we can work out an excerpted

 5    version of that.

 6             THE COURT:  All right.  Now, unless the -- the

 7    defense didn't object to this.  But it seems to me to be a

 8    massive piece of largely irrelevant information.  And if you

 9    can agree to a version that excerpts any of the

10    conversations between the two men as a substitute that would

11    be through 3A, and there is no objection -- would you object

12    to a redacted version that just has the parts that are

13    relevant?

14             MR. MACCHIAROLI:  I would have no objection.  I

15    think that's appropriate, Judge.

16             THE COURT:  All right.

17             MS. DOHRMANN:  And, Your Honor, I apologize.  It

18    was an oversight providing this entire mass of information.

19             I am looking at our exhibit list itself, and it

20    just lists two Bates numbers, two pages from all of this.

21    So I apologize for that.

22             THE COURT:  All right.  Well, that's why I have

23    such a big binder --

24             MS. DOHRMANN:  I was wondering --

25             THE COURT:  -- I have to take it out.

1          I think I have, actually, a rule on size of

2     binders that this violates, but I will let you off the hook.

3          MS. DOHRMANN:  Thank you, Your Honor.

4          THE COURT:  All right.  Explain to me 4.1, the

5     Facebook certificate of authenticity, which the defense

6     objects to on hearsay grounds, which it most certainly is.

7     I agree that it's relevant.

8          But if no one's objecting to the authenticity --

9     if the defense is objecting to the authenticity of the

10    material harvested from Facebook that's being introduced in

11    this case, then you are going to need a human being to

12    authenticate it and not a piece of paper.

13         So are you objecting or are you stipulating to the

14    authenticity of the Facebook information that this purports

15    to authenticate?

16         MR. MACCHIAROLI:  Your Honor, we are stipulating

17    to the records -- and that's our point.  If we have

18    stipulated to the records, they come into evidence.

19         Why are we looking at a certificate talking about

20    how the records were kept?  And it's not necessary.

21         THE COURT:  All right.  I agree with that.

22         MS. DOHRMANN:  Your Honor, the defense has

23    objected to the authenticity of 10.1 to, I believe, 10.6 --

24    10.6, which are videos from Facebook.

25         THE COURT:  All right.  So what's the basis of

1    your objection to those?

2           MR. MACCHIAROLI:  Well, Facebook may keep records

3    of communications, but it can't authenticate video inside,

4    that this is the video of the Capitol, and things of that

5    nature --

6           THE COURT:  All they're putting it on for is the

7    fact that he put them on Facebook.

8           Is that correct?

9           MS. DOHRMANN:  Your Honor, these are videos that

10    were sent to the defendant by Jacob Hiles.  They can also --

11    so they will be authenticated --

12           THE COURT:  You are putting them in evidence for

13    that purpose, not to show what was happening inside the

14    Capitol or that they fairly and accurately depict -- you're

15    sending them for the fact they were transferred?

16           MS. DOHRMANN:  Your Honor, the government does

17    believe it is entitled to play those videos, which would

18    have been what the defendant was looking at and receiving

19    from Mr. Hiles.

20           We do believe that Special Agent Hart can testify

21    to -- he can identify certain officers in the videos and

22    otherwise establish where and when they took place with a

23    reasonable likelihood.  But the bottom-line --

24           THE COURT:  I guess the point is, you're

25    introducing them and establishing their authenticity as

 1     material transmitted from Mr. Hiles to this defendant.

 2               MS. DOHRMANN:  Correct, Your Honor.

 3               THE COURT:  You are not seeking to admit them and

 4     establish their authenticity as a record of the events on

 5     January 6th involving Mr. Hiles?

 6               MS. DOHRMANN:  That's right, Your Honor.

 7               THE COURT:  All right.  So do you object to the

 8     fact that these videos are, in fact, the videos transmitted

 9     from Mr. Hiles to the defendant?

10               MR. MACCHIAROLI:  I have no objection of that,

11     Your Honor, that those were transmitted.

12               But if the government is going to play those

13     videos into evidence, that's my objection.

14               THE COURT:  Well, if he transmitted them and he

15     received them, that's part of this whole set of

16     communications that underlies the offense.

17               They can play them.  They are going to say:  This

18     is what Mr. Hiles sent him; they talked on the phone this

19     many times; there were communications via Facebook this many

20     times; and he sent him these videos, and here they are.

21               MR. MACCHIAROLI:  Right.

22               THE COURT:  Just for the fact that they were sent,

23     I don't see how that's inadmissible.

24               MR. MACCHIAROLI:  Well, one would be, Your Honor,

25     the issue of whether they were actually viewed by Officer

1    Riley as opposed to received.  If Officer Riley played every

2    single video and watched every video -- I haven't heard any

3    of that proffer.

4            And my other basis is 403 in this case, where

5    we're talking about obstruction of official proceeding

6    regarding Mr. Hiles' conduct showing videos of officers, you

7    know, allegedly being assaulted or things of that nature --

8    based on FBI Agent Hart's testimony, who wasn't even there

9    that day.  So, again, that's -- 403 is primarily my, you

10   know, grounds for challenging its admissibility.

11           As to 901, I have no problem that these videos

12   were transmitted -- and the government can easily argue that

13   Mr. Riley had these in his possession and he should have

14   reviewed them before he took any action or didn't -- or

15   should have taken action.  But, A, playing these videos and

16   describing what occurred in there -- it's highly prejudicial

17   for this specific case.  And I haven't seen any foundation

18   that each and every video was actually observed and viewed

19   by Officer Riley, you know, 18 months ago.

20           THE COURT:  All right.  I think the fact that he

21   sent them makes them relevant.

22           I am not sure -- how long --

23           MR. MACCHIAROLI:  But that's Jacob Hiles.

24           THE COURT:  -- are they things that Mr. Hiles

25   recorded when he was in there?  Do you know?  Or --

1          MS. DOHRMANN:  I do, Your Honor.

2          They are recordings made by Mr. Hiles.  We aren't

3     going to prove that up through -- we weren't planning to

4     prove that up through some separate proof of them -- that

5     they were also, for example, in his phone, et cetera.  But

6     simply that they were --

7          THE COURT:  But he sent them?

8          MS. DOHRMANN:  They were sent, and that the

9     defendant -- you know, as told by Jake Hiles, watched those

10    three videos; and about five minutes later, the defendant

11    responds:  I get it, it was a total shit show.

12         THE COURT:  All right.  So why would your agent be

13    discussing what's depicting in them?  I mean, you -- who are

14    these coming in through, Mr. Hiles or your agent?

15         MS. DOHRMANN:  The agent, Your Honor.

16         We are not calling Jacob Hiles.

17         THE COURT:  All right.  But I don't see why --

18    since this defendant isn't charged with doing anything in

19    there --

20         MS. DOHRMANN:  Your Honor, it is relevant to the

21    type of investigation that would be anticipated -- relevant

22    absolutely to his understanding of the events that Mr. Hiles

23    is purportedly relaying to him in the Facebook posts at the

24    time.  All of this takes place on the date of the

25    obstruction alleged, on January 7th.

1          THE COURT:  So he gets all of the videos, and at

2     some point in that comm- -- is when he tells him to take

3     them down?

4          MS. DOHRMANN:  He -- that is -- the initial

5     message is to take everything down.  And there is, then,

6     this continued exchange afterwards, continuing to inform --

7          MR. MACCHIAROLI:  Your Honor, I object to -- I

8     object to that classification of what actually occurred; it

9     doesn't match the indictment at all.

10          Specifically, as I described, it was a post

11     relating to allegedly innocuous, innocent conduct inside the

12     Capitol -- not discussing outside; that he fell in, he was

13     pushed, he was trampled.  I put it in the brief submitted to

14     this Court multiple times because I think it's very

15     valuable, that's when the alleged obstruction occurred.

16          The obstruction act -- turned down records.  The

17     obstruction in the indictment is:  Take down that part about

18     being inside the Capitol; not delete files, not delete

19     videos.  Subsequent to that -- same day, subsequent to that,

20     yes, videos are sent.  And as --

21          THE COURT:  And there is another later text that

22     tells him to take -- basically, take the stuff down, right?

23          MR. MACCHIAROLI:  No.  No.

24          MS. DOHRMANN:  Your Honor, however, there is a

25     subsequent obstruction on January 20th.

 1              THE COURT:  Right.

 2              MS. DOHRMANN:  In between January 7th and

 3      January 20th there are numerous interactions and

 4      conversations and exchange of information between the

 5      defendant and Mr. Hiles.

 6              The government is entitled to prove his state of

 7      mind on January 7th when the initial message is sent with

 8      the continued interactions, the continuing and deepening and

 9      widening knowledge and, of course, to prove his motive for

10      the obstructive act on January 20th.

11              MR. MACCHIAROLI:  So the answer to your question

12      was no, there was no instruction:  Take down those

13      additional videos, whatsoever.

14              What the government is talking about is the second

15      alleged obstruction, take -- the reason why he allegedly

16      took down his own messages.  Nothing --

17              MS. DOHRMANN:  Your Honor, just to -- sorry to

18      interrupt.

19              But just to be clear, the -- one of the videos,

20      one of the six videos was a part of post -- the initial post

21      by Hiles that -- well, it isn't really the initial post, but

22      the initial -- the post that the defendant responds to.

23              THE COURT:  All right.  I think the fact that any

24      of them were posted, that they were sent to the defendant --

25      I mean, what you have told me over and over is that we need

1    to know what the defendant knew to have some idea what his

2    thought process was or could have been, and they have the

3    burden to prove it.

4           So you are saying, when we get around to his case,

5    he gets to get on the stand and tell them, Well, let me tell

6    you:  What he did, it's a misdemeanor; it never would have

7    prompted a grand jury investigation.  But they don't get to

8    put in the stuff that Mr. Hiles provided him to show him

9    what he saw and did that day.

10          I think that's all part of the circumstances that

11   goes to his state of mind, so I don't see why they can't put

12   these in.

13          But I also -- going back to what we were talking

14   about, which is the Facebook certificate of authenticity,

15   since the defense does not seem to be challenging their

16   authenticity as things that were transmitted to Mr. Riley by

17   Mr. Hiles, then I don't think we need the certificate of

18   authenticity.

19          But I think that the -- you have to be very

20   careful about the travel log from your agent.  I mean, it

21   has to be -- this is Exhibit 9 and, you know, he can say,

22   This is the crypt, or This is inside the Capitol.  This is

23   inside the Capitol.  But I don't think he can get into some

24   detailed description of what's being shown because then that

25   also starts to stray into this witness trying to teach the

1   jury about what might be felonious conduct, what might be

2   misdemeanor conduct.  So I think it has to be limited to:

3   That's still inside the Capitol.  That's not, that's

4   outside -- or whatever.

5          MS. DOHRMANN:  Understood, Your Honor.  Thank you.

6          MR. MACCHIAROLI:  Your Honor, I just would like

7   just a brief understanding from the government because I

8   just want to make sure I did not -- I am not trying to be

9   fast and loose, I am just trying to make sure I understand

10  the facts.

11         Is the government alleging that prior to the

12  alleged obstructive message that a video was sent to Officer

13  Riley by Mr. Hiles that depicted his conduct?

14         MS. DOHRMANN:  So this is all in the exhibit; it

15  is a part of the Facebook records.  This is not something

16  that we're -- you know, have some secret, separate

17  information about.

18         If you look at the Facebook records, it is clear

19  that one of the three videos sent was posted accompanying

20  the post that the defendant responds to.

21         THE COURT:  And which one was that, just in case

22  there is some lack of clarity about that?

23         MS. DOHRMANN:  So just to be clear, the post

24  starts:  This was the craziest, most violent part of what I

25  witnessed earlier at the Capitol Building.

1          And the video is a little bit difficult to -- Your

2    Honor, I can tell you that if you watch the videos, it is --

3    they are, first of all, listed in the way that they were

4    provided to defense counsel, with the correct Facebook IDs

5    for each one.  And when you watch them, you can tell that

6    they are the same; they are actually separated.  But I am

7    not able, with what I am looking at right here, to say for

8    certain which of the two are --

9          THE COURT:  All right.  You need to let the

10   defendant know so that I know you let the defendant know --

11   you can do it in a notice to me -- identifying exactly which

12   exhibit was part of the original Facebook post.

13         And the other videos that you say were transmitted

14   to him, were they transmitted to him personally or are they

15   also just posted on Facebook and he had access to them?

16         MS. DOHRMANN:  The others were transmitted

17   directly.

18         THE COURT:  Okay.  And --

19         MS. DOHRMANN:  And to and through --

20         THE COURT:  -- they were transmitted through what

21   medium?

22         MS. DOHRMANN:  Through Facebook Messenger, direct

23   messenger.

24         THE COURT:  Okay.  And it's clear with each

25   message which video is attached?

1          I mean, you could list:  Date, time, message.

2    This was attached:  Date, time, message -- that was

3    attached.  So I think that would be useful, to indicate

4    which was part of the original post.  And then just with

5    respect to any of these -- I guess, it's 10.1 through

6    10.6 -- marry them up with the exhibit -- with the

7    message --

8          MS. DOHRMANN:  Yes, Your Honor.  Thank you.

9          THE COURT:  -- and then we will know when they

10   went; and then we will presumably be able to know the

11   difference -- or whatever timing between the receipt of them

12   and whether that came before or after the message to him,

13   from Mr. Riley to Mr. Hiles.

14          All right.  Numbers 6 and 7.  There are, again,

15   authenticity objections to cell phone records of some sort.

16   Can you say what they are and where they came from, and what

17   the basis of the objection is?

18          MS. McNAMARA:  Your Honor, these are the cell

19   phone call logs for Jacob Hiles.  And Special Agent Hart

20   will testify to the effect that the FBI uploaded the phone

21   to the system and reviewed it.  Any objection here --

22   obviously, authenticity is an exceptionally low bar.  It

23   goes to weight, not admissibility here.

24          THE COURT:  All right.  So someone is going to

25   testify that these were -- that a contact for Mike Riley and

1    these two calls were found in a search of Mr. Hiles' phone;

2    is that correct?

3              MS. McNAMARA:  Correct, Your Honor.

4              THE COURT:  All right.  And your objection to

5    their authenticity is what?

6              MR. MACCHIAROLI:  Your Honor, I just would be --

7    Your Honor, the records are in evidence, so why do we need

8    to establish how the records were -- we had the call logs --

9              THE COURT:  Nothing is in evidence until we finish

10   this hearing and I say, These exhibits are in evidence.

11             So are you saying you don't object to their being

12   admitted in evidence?

13             MR. MACCHIAROLI:  No.  I'm -- my -- again, my

14   objection is, Your Honor, the underlying evidence is in

15   evidence.  Why are we hearing from --

16             THE COURT:  There is nothing in evidence.  We are

17   having a conversation about what's in evidence.

18             MR. MACCHIAROLI:  Yes, Your Honor.  I think the

19   government -- the defense --

20             THE COURT:  I just want to know if you object to

21   the admission of 6 and 7.

22             MR. MACCHIAROLI:  Yes.

23             THE COURT:  And, if so, on what basis?

24             MR. MACCHIAROLI:  I don't understand their

25   relevance if the defense is not objecting to the

1    admissibility of the underlying records that is submitted

2    regarding Jacob Hiles.

3            THE COURT:  All right.  What do you mean "the

4    underlying records"?

5            MR. MACCHIAROLI:  The actual communications.

6            THE COURT:  Okay.  Well, you didn't object on

7    relevance grounds; you objected on authenticity grounds.

8            So assuming that there is testimony that these are

9    what they purport to be, I think their authenticity will be

10   established and they will be admitted.

11           We have already gone through 10.1 through 10.6,

12   and they are relevant.  But you're going to provide them

13   with additional information so they understand what it is

14   that they purport to be and so that I do.

15           And so Exhibit 11, Mr. Hiles' Facebook records,

16   there's a hearsay objection and authenticity objection.  So

17   that one is -- well, it's called "Facebook Business Record,"

18   so I presume that you think it's a business record.

19           What is it?  And why are you seeking to put it in

20   evidence?

21           MS. McNAMARA:  Your Honor, so this -- the purpose

22   of putting these Facebook records in would be to show that

23   Jacob Hiles and Vinny Legambi, the V.L. reference there in

24   the exhibit list, are friends, and to give some background

25   to the jury and context so they understand why Riley and

1    Vinny Legambi are talking about Jacob Hiles.

2            We are happy to call this down or pull it entirely

3    if the defense stipulates that they would not object to

4    Special Agent Hart simply testifying that Legambi and Hiles

5    and Riley were all Facebook friends.  If that would

6    streamline things for the Court, the government is happy to

7    do that.

8            THE COURT:  All right.  So you are planning to

9    move in evidence communications between Mr. Riley and

10   Legambi in addition to communications between Mr. Riley and

11   Mr. Hiles?

12           MS. McNAMARA:  They're technically communications

13   between Mr. Hiles and Mr. Legambi -- I apologize -- my

14   better half will clarify this.

15           THE COURT:  I just have not heard this name

16   before.  Obviously, I don't know the evidence in this case

17   until you give me this binders.  So I don't know who we are

18   talking about or what you are talking about at this moment.

19           MS. DOHRMANN:  Yes, Your Honor.

20           This will be clearer when we get to Exhibit 15,

21   which are cell phone records from the defendant's phone

22   between him and Vinny Legambi, who is a fellow United States

23   Capitol Police officer.  Legambi also knows Hiles, they are

24   Facebook friends.

25           So the government proffered 11 in order to prove

1   why, all of a sudden, in these cell phone records between

2   Riley and Legambi they're talking about Hiles.  The jury

3   might wonder, How do they -- how does Legambi fit into all

4   of this?  They're Facebook friends; they have some Facebook

5   interests in common.

6          We can simply have Special Agent Hart testify that

7   he's reviewed records and that, according to business

8   records from Facebook, they are Facebook friends.  And --

9          THE COURT:  So this is, basically, the data from

10  Facebook that shows you who all of Hiles' friends are?

11         MS. DOHRMANN:  Correct, Your Honor.  And so it's

12  not really a statement by a declarant, it's a business

13  record.

14         THE COURT:  All right.  With that understanding,

15  if the parties are comfortable crafting something that

16  covers that factual issue without having to put in all of

17  his other Facebook friends that don't have much to do with

18  this case --

19         MS. MCNAMARA:  Yes, Your Honor.

20         THE COURT:  -- then I think that would be good.

21         But if he doesn't want to stipulate that they are

22  Facebook friends, then he doesn't have to stipulate that

23  this is a business record, and someone would have to testify

24  that this was -- provide the -- you can't just call it a

25  "business record" and have it move in evidence under the

1    business records exception.

2              So what is your position with respect to

3    Exhibit 11 at this point?

4              MR. MACCHIAROLI:  Your Honor, the defense plans on

5    calling Mr. Legambi as a witness for the defense as well as

6    Jacob Hiles.  Now, obviously, the government has every

7    ability -- I think it's going to be very clear, since we

8    haven't objected to the communications with Mr. Legambi and

9    Officer Riley, that they could easily, you know, elicit from

10   Mr. Legambi who will be present --

11             THE COURT:  During your case.

12             MR. MACCHIAROLI:  During my case, or they could

13   call him himself.

14             THE COURT:  Okay.  All I'm saying is -- well, if

15   they want to put in the fact that they are Facebook

16   friends -- they have to figure out how to establish that

17   fact, if you don't want to stipulate to it.

18             MR. MACCHIAROLI:  And that's not a problem.  We'll

19   stipulate that they're all Facebook friends.  Not a problem.

20             THE COURT:  Okay.  Well, then -- once we have

21   that, then we don't need Exhibit 11.

22             All right.  And you've objected to the

23   authenticity of Exhibit 14, someone else's Facebook video.

24   So tell me about what that is, and then you can tell me why

25   it's not authentic.

1          MS. McNAMARA:  Your Honor, this is a Facebook

2     video that was taken using a phone of Facebook Livestream.

3     This will be put in through the witness Ben Shepherd, who

4     the government intends to call.  He will authenticate it,

5     noting, in fact, that his inbox is open, as captured in the

6     bottom of the cell phone recording of the video live stream,

7     and he will be able to authenticate it that way.

8          THE COURT:  All right.  So you are going to have a

9     witness authenticate it?

10         MS. McNAMARA:  Correct.

11         THE COURT:  So assuming that happens, then that

12    will take care of the objection.

13         All right.  With that, I think we have gone over

14    all of the government's exhibits.

15         MR. MACCHIAROLI:  Your Honor, there is No. 17.

16         THE COURT:  No objection.  There's no objection to

17    No. 17.

18         MR. MACCHIAROLI:  Your Honor, I think it's 401,

19    403, 801, 901.

20         THE COURT:  Not on my version.

21         Have you subsequently -- have you exchanged

22    another version of this, other than the one I've got?

23         MR. MACCHIAROLI:  This is Docket 45-3, at page 4.

24         THE COURT:  All right.  Well, I just have the one

25    that was in the binder.

1          Should there be an objection to No. 17?

2          Maybe you put an older version in the binder.

3          MS. McNAMARA:  Your Honor, what the government --

4    while we put in -- intended to put in is a fairly short

5    document showing that the defendant was, in fact -- yes.

6    It's a two-page document showing that the defendant was, in

7    fact, on leave on January 7th, specifically he had -- he was

8    on COVID admin leave on that date.

9          Again, it goes to the government's ability to

10   present the narrative, the timeline, the story of what

11   happened on January 7th when the defendant committed the

12   acts alleged in the indictment.

13         THE COURT:  All right.

14         MR. MACCHIAROLI:  Your Honor.

15         THE COURT:  Yes.

16         MR. MACCHIAROLI:  I would --

17         THE COURT:  I don't know that all of these time

18   sheets are relevant, but now that you understand the purpose

19   for the introduction of the evidence.

20         MR. MACCHIAROLI:  Your Honor, I don't understand

21   the relevance of it.

22         If the defense is stipulating that Officer Riley

23   was a Capitol Police officer for 25 years that included

24   through January 6th, January 7th, I don't understand the

25   time sheets -- whether he had COVID at the time or any -- or

1    was on leave is relevant to anything in light of that

2    stipulation.

3            THE COURT:  Well, I think if they want to

4    introduce the fact that he was on leave on January 7th, it

5    has some marginal relevance; it's not prejudicial.  I don't

6    see why it can't come in.

7            The only question is whether -- if that's not

8    stipulated to, they need to put in some piece of paper to

9    prove it; but the piece of paper is not going to walk in

10   evidence by itself.  And it looks like there is a lot more

11   there than you need to simply establish that one fact, that

12   he was on leave the next day.

13           MS. McNAMARA:  Your Honor, if the Court and

14   defense would be so inclined, the government is happy to

15   redact out a portion of this.  The part that would be most

16   relevant to establish that fact would be on page 2,

17   Bates-labeled 004361; and that would be January the --

18   January 7th through the 11th.

19           Since the defendant is willing to stipulate that

20   he was working on the 6th, that would eliminate the need for

21   the one on the bottom of page 1 and the start of page 2, on

22   the 6th.  We're going to the 7th.  So we could redact out

23   the remainder so as to not have extraneous -- or less

24   directly relevant --

25           THE COURT:  All right.  Well, Ms. Dohrmann said

1    she wanted the 7th.  Now you are saying you want the 7th

2    through 11th that he was on leave?

3              MS. McNAMARA:  Most relevant would be the 7th.

4              THE COURT:  All right.  Well, if it's not

5    stipulated to then, hopefully, there is some redacted

6    version of this that they don't object to the authenticity

7    of; but, if not, then some witness would have to testify to

8    that.

9              I don't think you have to tell me right now

10   everything that you are willing to stipulate to or not

11   stipulate to.  But it seems like there's a lot of things you

12   are willing to stipulate to, and hopefully that will resolve

13   a lot of this.

14             MR. MACCHIAROLI:  Yes, Your Honor.

15             I mean, I just received these time sheets last

16   week.

17             THE COURT:  Okay.  All right.

18             MR. MACCHIAROLI:  I haven't had an opportunity to

19   review them.  And my client has indicated that a lot of

20   admin leave was canceled in light of -- as expected,

21   January 6th.

22             THE COURT:  All right.  Well, if he was there, if

23   he wasn't there, we can figure that out.  He can probably

24   figure that out.

25             And so that, I believe, is all of the government's

1    exhibits I have been provided with.

2          Defendant's exhibits have prompted many

3    objections.  I think we need to talk about them because I

4    don't know if there is still an issue -- well, maybe you

5    should just tell me.

6          Is there still an issue about the availability of

7    potential defense witnesses on the currently scheduled trial

8    date?

9          MR. MACCHIAROLI:  Your Honor, again, I was

10   responding to your inquiry through your deputy clerk on

11   Friday of any potential issues.  So on Friday I had notified

12   the Court that, you know, the government had taken -- let me

13   just back up.

14         The government has taken the position that any law

15   enforcement personnel, any government employee is not part

16   of the prosecution team, would not be automatically

17   guaranteed to be available to the defense.  The defense is

18   going to have to secure these witnesses.

19         I have independently tried to reach out to as many

20   witnesses as possible; notwithstanding, I still have to

21   comply with two regulations.  I have notified Capitol

22   Police.

23         As of Friday, when I notified the Court, there

24   were three witnesses of which I had not yet received

25   confirmation of two things:  One, their availability; and,

1    two, whether there was any objection to the notice provided

2    to them.

3            The defense takes the position that we shouldn't

4    even have to be complying with the notice; it's very clear

5    the relevance of these witnesses.  The prosecutors were cc'd

6    on these correspondence; this is a criminal case.

7            That being said, two of those three witnesses I

8    have contacted over the weekend, okay, and they have

9    identified that they are available during the trial week of

10   this case, and they have agreed to appear.  I have even

11   emailed them the subpoena.  Technically, whether that's

12   enforceable or not -- because I haven't heard authorization

13   from the Capitol Police -- frankly, I don't care at this

14   point.  We have a trial date; the Court wants to move this

15   along.  I am trying to move this along.

16           One witness has not responded yet.  It's very

17   possible that witness, understandable, is trying to comply

18   with protocol for Capitol Police rather than responding

19   individually.  I have not gotten assurances from that

20   witness that that witness is available for trial.

21           THE COURT:  Was the third individual someone that

22   had also been listed as a potential government witness?

23           MR. MACCHIAROLI:  No.  That one was the one who is

24   not.

25           THE COURT:  Okay.  And when did you send the

1    request to the general counsel of the U.S. Capitol Police?

2            MR. MACCHIAROLI:  So I contacted that witness on

3    August -- August 30th.  And then on September --

4    independently, on my own, August 30, which -- I provided my

5    contact information; I told them they would need to be a

6    witness.

7            On September 7th, I believe, I sent to the

8    government counsel and the general counsel at Capitol

9    Police, who had been responding to certain inquiries from

10   the government during this case who was familiar with this

11   case, a copy of all three subpoenas, a copy of the letter.

12           Again, this was two weeks from when I thought that

13   they would be needed as defense witnesses.  Frankly, Your

14   Honor, I'm kind of surprised I haven't gotten a response.

15   That's why independently I wanted to contact these witnesses

16   on my own.

17           THE COURT:  All right.  Do you know who the third

18   of the three is?  Do you know who he's talking about?

19           MS. McNAMARA:  Yes, Your Honor.  I am familiar

20   with all three.

21           THE COURT:  And is the third person that he hasn't

22   heard from yet going to be available that week or not?

23           MS. McNAMARA:  My understanding is -- and, again,

24   we would couch this -- the first we heard of any request for

25   these three was the evening of September 7th, when we were

1    cc'd on this -- this is different than other requests -- is

2    that they will be.  I know from Capitol Police that they

3    have received the letter, and they are not going to have an

4    objection with the *TUI* process; there should be no issue

5    there.

6           They have also communicated to me that they're

7    happy to receive the subpoena should the three people prefer

8    that the Capitol Police receive it rather than them.

9           However, the first we heard of this request was

10   September 7th.  It's different than the FBI agents for which

11   defense has asked us to seek their availability for.  Those

12   agents are available and able to testify should defense wish

13   to call them, though, obviously we object to whether or

14   not --

15          THE COURT:  All right.  Putting aside the

16   relevance of any of this, at this point you are telling me

17   that -- assuming we can tie up the legal niceties which, as

18   I understand it, you are saying that U.S. Capitol Police,

19   general counsel, accept a subpoena for any of these three

20   people -- you are not saying that No. 3 is unavailable, you

21   know, having a baby, leaving the country next week?

22          MS. McNAMARA:  Your Honor, I cannot represent that

23   to the Court because I have not been involved in the

24   communication.

25          THE COURT:  All right.  So all you know is that

1     the Capitol Police are not challenging the legitimacy of the

2     request?

3               MS. McNAMARA:  Correct.

4               THE COURT:  We don't know yet whether the person

5     is available?

6               MS. McNAMARA:  Correct.

7               THE COURT:  All right.  Well, we need to know.

8     And I guess some of the blame for the fact that we don't

9     know at this moment has to do with the timing.

10              But I guess what I'm trying to get at is, at this

11    point, I don't hear a motion to continue this trial for any

12    particular reason; am I correct about that?

13              MR. MACCHIAROLI:  Your Honor, I know you asked a

14    direct question, I want to give you a direct answer.  If I

15    could just back up --

16              THE COURT:  That's a yes-or-no question, then you

17    can explain.

18              MR. MACCHIAROLI:  I understand but -- can I

19    explain?

20              THE COURT:  After the yes or no.

21              MR. MACCHIAROLI:  Okay.  Your Honor, I would --

22    assuming these witnesses are available, okay, obviously I

23    can proceed.

24              Understanding the -- the government is now calling

25    two witnesses, the witnesses that -- their cooperator, the

1     two witnesses that magistrate ordered that my client could

2     not communicate at all during the course of trial are now

3     defense witnesses.  I am dealing with the logistics of

4     multiple witnesses, including one of the witnesses I

5     contacted on my own volition who said he is on leave but he

6     is willing to move this along.  There is a lot of logistical

7     issues that I am -- the defense is trying to balance.

8              Respectfully, Your Honor, there has been a lot of

9     rulings today that affects government exhibits, that affects

10    government's -- I'm sorry, old habits -- defense exhibits,

11    defense witnesses.  And respectfully, Your Honor, I would

12    still ask for a continuance of this trial.  And I will

13    explain why.

14             We have resolved a lot of issues today; the

15    defense doesn't agree with all of them, but the Court has

16    provided a lot of clarity on issues, admissibility, and

17    stuff like that.

18             I am juggling a number of witnesses.  I haven't

19    even spoken to the third witness we just talked about, about

20    his or her -- his availability.  I would ask for a

21    continuance that would allow for streamlining of exhibits,

22    streamlining of witnesses.  You know, I heard the Court rule

23    on, you know, potential character evidence, I have follow-up

24    questions to that which may negate some witnesses.

25             I would respectfully -- in light of everything

1      that we have resolved today, what still needs to be

2      resolved, the number of defense witnesses including, you

3      know, Mr. Hiles coming in from Virginia, other people who

4      are coming in off leave -- ask for a continuance in light of

5      everything that's happened in this case within the week.

6              I would note -- I would note, I initially -- I

7      initially asked the government -- because I was hoping this

8      would be the case -- any government witnesses we want that

9      are relevant to this case, you will produce?  The answer was

10     no; only the prosecution team, okay.

11             I put the witness list out on behalf of the

12     defense.  I listed the witnesses.  They knew, when we were

13     doing drafts, what those witnesses would be.  Eventually, I

14     tried to contact these people on my own, which I did; I

15     provided just statutory notice, just in the off chance that

16     the Capitol Police could say:  You didn't comply, we're

17     striking the subpoenas.  Defense has done everything it has,

18     but it's balancing a number of witnesses.

19             Your Honor, let me give you another example.

20             The government has said its case in chief is three

21     days in its pretrial statement.  It has two witnesses.  Are

22     they trying to say that Agent Hart is going to be on the

23     stand for two and a half days?  I don't believe that's

24     possible.  What does that mean?  I now have to justify and

25     move witnesses around about when I anticipated them being

 1    called, and things of that nature.

 2            There's a lot of moving parts here, including the

 3    Court's ruling, including the jury instructions.  There is

 4    still a debate which is relevant to how we present our case,

 5    how we open, how we close.  I still would ask for, in light

 6    of all of this, Your Honor, a continuance.

 7            I think we made a lot of headway today as to what

 8    this trial is ultimately going to be like when it actually

 9    occurs.  But given the number of moving parts, the defense

10    would respectfully ask for a continuance so that I can line

11    up these witnesses, know what testimony is going to be

12    elicited, and streamline this process.

13            THE COURT:  All right.  And the government

14    strenuously objects.  They have a right to a speedy trial,

15    too, they're ready to go.

16            Is that a fair summary?

17            MS. DOHRMANN:  Yes, Your Honor.

18            THE COURT:  Okay.  I am going to take that all

19    under advisement.  I think it might be helpful, in this

20    continuing discussion, to go through the defendant's exhibit

21    list.

22            And then, I guess I want to have some sense of

23    what you are talking about in terms of timing.  Because I

24    think if we said, oh, okay, we'll do this in March of 2023,

25    there would be no pressure on anybody to do anything to

1    complete all of the work that you just talked about.  But if

2    we say October, well, then maybe you will have a few weeks;

3    you will be able to get everything together, and we're not

4    extending things very far, and we get it done.

5         So if I grant your request -- and I have to

6    say you weren't exactly enthusiastic about the setting of

7    the September trial date in the first place, but the

8    government was pushing for a trial date; and I set it.  So

9    this is technically your first request to put it off.  His

10   speedy trial rights, I think, outweigh, a little bit, the

11   government's.  He is on bond; I am not worried about

12   somebody incarcerated putting a trial off.

13        I am inclined to be reasonable with respect to

14   what the defense needs to be ready to try this case, but

15   only reasonable for a little period of time.  But I haven't

16   ruled yet on that.

17        So let's just talk about your exhibits.

18        U.S. Capitol Police legal refresher.  No, I don't

19   think it's relevant.  I think it's -- it's got a lot of

20   information in there that has nothing to do with this case

21   whatsoever.  It does identify some misdemeanors, but it

22   doesn't even begin to have all of the potential January 6th

23   offenses.  I think it's misleading.  I think it's -- we've

24   talked about his intent, but I don't see how this comes in.

25             MR. MACCHIAROLI:  Your Honor, if I may tender to

1      the deputy clerk the redacted version that I sent to the

2      government, just so it's in the record.

3                THE COURT:  All right.  Well, I haven't seen that,

4      so -- okay.  You can hand it to Mr. Haley.

5                MR. MACCHIAROLI:  So, again, Your Honor, we are

6      not trying to call Officer Riley as an expert on anything.

7      We are trying to put forth evidence to support his

8      subjective belief as to his conduct at issue regarding the

9      specific charge, whether he obstructed a grand jury

10     proceeding.

11               THE COURT:  All right.  This -- he doesn't have to

12     know -- he has to know what he is doing.  I don't think he

13     has to know that he has violated a particular provision of

14     the U.S. Code.

15               MR. MACCHIAROLI:  No.  We're not --

16               THE COURT:  That either he or Mr. Hiles has

17     violated any particular provision in the U.S. Code.

18               I don't think this solves the problem that I have

19     with this exhibit.  I told you what I think about this whole

20     line of testimony; and this just pushes it more in the

21     direction of what I think makes it improper.  So even the

22     redaction -- while it cuts out a lot of the irrelevant

23     material, it still has the other problem that I see.  And so

24     I am giving you some leeway with respect to testimony, but

25     Exhibit 1 is not going to be admitted.

1              Exhibit 2 is Jacob Hiles' Facebook post.  Is that

2      one of the ones that is already part of the case?

3              MS. DOHRMANN:  No, Your Honor.  This is from 2022.

4              THE COURT:  Oh, the anniversary.  All right.

5              Why is that relevant?

6              MR. MACCHIAROLI:  So, Your Honor, again, trying to

7      not get into, you know, the -- to disappoint the Court at

8      being unprepared.  We are calling Jacob Hiles as a defense

9      witness.  He is under subpoena; I have confirmed he has

10     every intention of attending.

11             I cannot at this point anticipate the nature of

12     his testimony, whether I am going to need to impeach him, if

13     I am going to need to cross-examine him about any of his

14     statements -- his statements to law enforcement, his

15     statements to this Court, anything that goes to his

16     credibility.

17             I have identified potential exhibits that I would

18     be using for potential cross-examination, some of which the

19     government may not have, of which I have given them so that

20     they have them in advance.  I am not seeking to move them in

21     through Jacob Hiles or --

22             THE COURT:  Okay.  No. 2 you are not seeking to

23     move in your case in chief.  I don't have to take up, at

24     this point, whether it's appropriate for cross-examination

25     or whether anything he said -- by 2022 is admissible in the

1    case; I am just ruling on the exhibit.  And what you are

2    saying is I don't have to rule on it because you are not

3    proffering it for your case in chief?

4            MR. MACCHIAROLI:  Correct.

5            THE COURT:  Okay.  Same with the complaint and the

6    information and the statement of offense and the plea

7    agreement?

8            MS. DOHRMANN:  Your Honor, the actual information

9    in the complaint would go directly to the issue that he was

10   charged with a misdemeanor in his -- in his case, which

11   further corroborates Officer Riley's subjective belief that

12   there was never going to be a grand jury investigation as to

13   Jacob Hiles because there was never a grand jury proceeding

14   as to Jacob Hiles.

15           I mean, this -- this is one of the key defenses in

16   this case, is that there was never -- right, the grand jury

17   proceeding where there was a review of Jacob Hiles'

18   communications, you know, on Facebook.  He was never subject

19   to a grand jury proceeding.  There were no felony charges

20   that were applicable to him at the time -- any time, at the

21   initial post when the videos showing his conduct revealed --

22           THE COURT:  Is it your point of view that we had a

23   whole bunch of grand jury proceedings, there was Defendant A

24   grand jury proceeding, Defendant B grand jury proceeding,

25   Defendant C grand jury proceeding as opposed to the

1    January 6th grand jury?

2         MR. MACCHIAROLI:  Your Honor, my position would

3    be, on this issue, right, is that the law requires a nexus

4    between the specific obstructive conduct and in grand jury

5    proceedings -- almost a cause and effect; that somebody

6    would think, when you are doing that conduct, it's going to

7    affect the grand jury proceeding related -- it doesn't

8    matter what happened in reality, it just -- this is what the

9    law actually requires.

10         And to answer your question, the answer is yes,

11   Your Honor.  There are grand juries for Oath Keepers-related

12   offenses; there are grand juries for, you know, Proud Boys.

13   There was no grand jury investigation proceeding,

14   testimony related to --

15         THE COURT:  Now, there's indictments for Oath

16   Keepers, and indictments for the Proud Boys.

17         Are you saying that every single one of the

18   hundreds of people who were indicted in connection with

19   this -- now, there are a lot of misdemeanants, so I don't

20   know what number of the 800 are misdemeanants and which of

21   them are felonies.

22         But for all the felony charges is it your view

23   that those are separate grand jury proceedings or that there

24   was a grand jury that was hearing January 6th, after

25   January 6th, after January 6th -- a grand jury writ large?

1          MR. MACCHIAROLI:  There were multiple grand

2     juries, we know that.

3          THE COURT:  Okay.

4          MR. MACCHIAROLI:  But for this analysis -- this is

5     all kind of my perspective a little theoretical because the

6     issue is:  What was Officer Riley's foreseeability?  Is this

7     going to be the subject of a grand jury --

8          THE COURT:  Okay.  So why is what he was thinking

9     was foreseeable -- if you are telling me:  I am not trying

10    to get into, as a matter of law, whether this was a

11    misdemeanor or a felony; I am just getting into what he was

12    thinking.  Why does what happened later affect what he was

13    thinking that day?

14          Why is it relevant to show what he was thinking,

15    what happened later?

16          MR. MACCHIAROLI:  Well, I mean, I am actually

17    talking -- I think you're absolutely correct.  I'm focused

18    on the exact moment when he reads the post of Jacob Hiles

19    that talks about falling into the Capitol as --

20          THE COURT:  Right.  So why does the complaint and

21    the information that he was charged with later tell you

22    anything about what this gentleman was thinking that day?

23          MR. MACCHIAROLI:  Because, number one, it further

24    corroborates that --

25          THE COURT:  What he was thinking?

1          MR. MACCHIAROLI:  No.  That Officer Riley's

2     belief as to --

3          THE COURT:  Now you're saying that he made the

4     correct legal analysis, but that was a prosecutorial

5     analysis based on a number of facts including, I think, by

6     that point his cooperation; is that correct?  Or he wasn't

7     cooperating at that point?

8          MS. DOHRMANN:  Your Honor, he, at that point, had

9     identified his cousin as someone who had entered in the

10     building --

11          THE COURT:  I don't think it's fair to put in what

12     happened later to prove your point about what he was

13     thinking.  Just as you said you wanted to prove that he was

14     right when he made this legal determination; but it's not a

15     legal determination, it's an exercise of prosecutorial

16     discretion.  So I don't think you can put in what he was

17     ultimately charged with to prove the defendant's state of

18     mind prior, on January 7th.  I don't think you can, so I am

19     not going to let you do that.

20          To the extent that his plea agreement and the

21     sentencing memorandum go to -- well, you are planning to put

22     him on the witness stand.  So if they are not, why does all

23     of that come in?

24          Doesn't that relate to, presumably, his bias,

25     testifying in favor of the government because they gave him

1      credit for cooperating?  But they're not calling him, you

2      are calling him.  So is this all just grist for potential --

3      I don't know what -- refreshing his recollection?  You are

4      not going to get to cross him, he is your witness.

5              MR. MACCHIAROLI:  Your Honor, I can always

6      challenge the credibility of my -- of a witness.  He may be

7      my witness, the government is not calling their cooperator.

8      I can call the government's cooperator to elicit facts that

9      help my client.  I can also elicit bias, you know, of that

10     witness to -- especially when he's assisting law enforcement

11     or testifying law enforcement, which is, quote/unquote, the

12     essential witness against my client.

13             THE COURT:  But he is not.

14             MR. MACCHIAROLI:  How so?

15             THE COURT:  He is not going to be here for them.

16     They're not calling him.

17             MR. MACCHIAROLI:  They chose --

18             THE COURT:  So why do you get to establish that

19     he's bias- -- you're going to get to cross-examine him while

20     you have got him on the stand?

21             Are you calling him as an adverse witness?  Do you

22     have any reason to believe he is adverse at this point?

23             MR. MACCHIAROLI:  I am not going to be

24     cross-examining him.  I am going to be limited to direct

25     examination.

 1                THE COURT:  Okay.

 2                MR. MACCHIAROLI:  So that governs the rules of how

 3     I can question him.

 4                THE COURT:  Okay.

 5                MR. MACCHIAROLI:  At this time I don't know

 6     what -- how he is going to be on the stand, what he is going

 7     to say, what he is going to -- the communications he had --

 8                THE COURT:  All right.  Let me ask you a more

 9     direct question in the interest of time and justice.

10                Exhibits 3, 4 -- well, I have already dealt with

11     3, and 4.

12                Exhibits 5, 6, 7, 8, 9 -- the statement of

13     offense, plea agreement, judgment and commitment order, the

14     government's sentencing memorandum, and the defendant's

15     sentencing memorandum in Mr. Hiles' prosecution -- are you

16     seeking to move them in your case in chief, or did you just

17     mark them in case you decided you need them, at which point

18     we will discuss whether you can use them?

19                MR. MACCHIAROLI:  Absolutely, Your Honor.

20                THE COURT:  Okay.  So we don't need to say

21     anything further about 5 through 9.

22                All right.  10 is another subsequent Facebook post

23     which, I guess, is the same as 2, that you are not seeking

24     to move in at this time, you just are marking it in case you

25     try to use it later for some other purpose?

1          MR. MACCHIAROLI:  Correct, Your Honor.

2          THE COURT:  Okay.  So I don't need to rule on

3     that.

4          MS. DOHRMANN:  Your Honor?

5          THE COURT:  Yes.

6          MS. DOHRMANN:  If we could at this time -- and we

7     can table this discussion for later.  But based on this

8     conversation here in court today, as well as previous

9     conversations we have had in preparation for trial, the

10    government is concerned that the defense is attempting to

11    violate the well-established rule that you cannot call a

12    witness solely to impeach them.  The wisdom of that rule, of

13    course, is that it is distracting, misleading, and a side

14    show to simply focus on another witness's conduct by

15    harassing them on the witness stand instead of asking them

16    questions that are actually relevant to guilt or innocence

17    in this case.

18         So the government would request a proffer from the

19    defense at this point as to actual admissible and not

20    improper and harassing testimony sought from Mr. Hiles.

21         THE COURT:  Why are you calling Jacob Hiles as

22    your witness?

23         MR. MACCHIAROLI:  I think we're calling Jacob

24    Hiles, Your Honor, because he would -- I am allowed to

25    cross-examine all of the communications that the government

1    wants to move into evidence that show, you know, that my

2    client allegedly tried to obstruct justice and try to have

3    him conceal, you know, evidence or records, it was some part

4    of -- some conspiracy here.  And I have every right --

5              THE COURT:  He's not charged with conspiracy.

6              MR. MACCHIAROLI:  He's charged with obstruction of

7    justice over a period of time of which they're alleging

8    various facts go to that direct point.

9              I have every right to allege, you know, the

10   statements that Jacob Hiles made about the reaction to the

11   communications from Officer Riley, his conversations with

12   Officer Riley that Officer Riley never told him -- which

13   would be consistent with somebody obstructing justice -- to

14   get rid of his phone, to leave the jurisdiction, anything

15   along those lines.

16             This is the government's cooperating witness.  To

17   say that the defense cannot call this witness to elicit

18   facts that actually undermine the government's case -- this

19   is another reason why I think a continuance is appropriate

20   if I now have to proffer in advance every question I'm going

21   to ask.

22             THE COURT:  I am not asking you to proffer in

23   advance of every question you are going to ask.

24             I want to know -- I thought it was a reasonable

25   question.  I don't see why he can't get into the subject

1    matter of their communications with each other, what he said

2    to him, what he didn't say to him.

3              MS. DOHRMANN:  Your Honor, it's in black and white

4    in the Facebook records --

5              THE COURT:  Well, you're also saying they talked

6    on the phone a bunch of times, yes?  And that's part of your

7    case, that they spoke on the phone?

8              MS. DOHRMANN:  Your Honor, there are two phone

9    calls between them, correct.

10             THE COURT:  Okay.

11             MS. DOHRMANN:  And Mr. Hiles has previously

12   testified under oath that he, I believe, did not recall

13   specifics of the conversation.

14             THE COURT:  All right.  I think you understand

15   that you can't put him on, and cross-examine him.  You can

16   ask him independent questions -- and not just to set up

17   cross-examination and to move in out-of-court statements.

18             I can't say that there is no relevant purpose

19   whatsoever to calling him and to asking him questions about

20   what they talked about during the relevant period of time.

21   I am not going to just say right now he can't call him for

22   any purpose whatsoever, period.

23             MS. DOHRMANN:  Thank you, Your Honor.

24             The government would simply -- does anticipate

25   objecting, of course, to any improper efforts by the defense

1    to impeach him.

2              THE COURT:  All right.  Well, we'll see how it

3    goes.

4              At this point, it's clear that they're not

5    planning to move in a number of the exhibits that were

6    concerning -- in their case in chief.  And I think we're

7    going to have to see how this goes.

8              I am not going to say he can't put on his own

9    client, he can't put on Mr. Hiles, the two participants in

10   the communications that you allege are criminal.

11             MS. DOHRMANN:  Understood, Your Honor.  Thank you.

12             Just -- sorry.  One more thing.

13             With respect to 8 and 9, those documents are

14   sealed by order of the Court.

15             We under -- I believe, in our conversations with

16   defense counsel, he said he would only use them for

17   impeachment; so we assume that he intends to ask Mr. Hiles

18   questions about what they contain, specifically with respect

19   to the government's sentencing memoranda.

20             Again, without a proffer -- we're speculating

21   here -- but the government believes that he is likely to try

22   to say, for example:  You are the government's cooperator,

23   and the government said this about you and the government

24   said that about you; is that right?  And --

25             THE COURT:  Well, I don't see how you get to put

1    him on and start complaining that he is a biased government

2    witness after you put him on; so that's not happening.

3            To the extent these were sealed, they were sealed,

4    I think, to protect him from being publicly identified as

5    someone who cooperated.

6            Now, if he was testifying against Mr. Riley,

7    Mr. Riley would be absolutely entitled to bring out the

8    government's promise to raise that before me, the fact that

9    the government did raise it before me, the fact that he got

10   credit for it at the time of sentencing, et cetera.  So all

11   of that would be fair grist for cross-examination if he were

12   your witness.

13           I don't quite see how any of that comes in if you

14   are calling him and trying to elicit facts -- that how you

15   get to then turn around and say:  Well, aren't you their

16   guy?

17           And if we get to those -- if he says something for

18   which you think it's appropriate to cross-examine him with

19   the sealed material, we can talk about it.  But, again, a

20   memoranda themselves wouldn't go sailing into evidence as

21   they are.

22           MR. MACCHIAROLI:  Agreed, Your Honor.

23           I would like to brief the issue of when you call a

24   witness on behalf of the defense.  Obviously, you can't just

25   be calling them to, you know, impeach their credibility

1    alone, but that does not mean you can't impeach a witness

2    that's called by the defense.  I would like to be able to

3    brief that issue.

4         As to the issue of the sentencing memorandum,

5    absolutely; I have proffered this to the government, I

6    wanted to, you know, remove any concern of the Court.  I am

7    not trying to move these directly into evidence.  These

8    obviously could be -- these are lengthy documents about the

9    facts and circumstances of the case; they are also about

10   what actually occurred in the case.  They could be used

11   to refresh recollection of the witness, if the witness --

12   and they also can be used for impeachment if the defendant

13   takes -- if Mr. Hiles takes a position of a fact

14   inconsistent with his own sentencing memorandum.

15        THE COURT:  All right.  Well, you certainly can't

16   use the government's sentencing memorandum to refresh his

17   recollection, and you can't use the sentencing memorandum to

18   refresh his recollection unless there is some fact in there

19   that he says the sentencing memorandum would refresh his

20   recollection to.

21        I think we all need to be very, very careful to

22   remember the difference between refreshing recollection and

23   impeachment, which often runs aground in this courtroom on a

24   daily basis, where people say -- you know, they set up a

25   question on cross but -- do you remember this? -- and then

1    they start walking around with documents claiming that

2    they're refreshing his recollection.

3         I also think, yes, there are times when people get

4    to cross-examine witnesses they call, but I believe they

5    have to be shown to be adverse first.  I could be wrong; I

6    could be relying on all of the evidence-class stuff.  So you

7    are welcome to brief it.

8         I think it would be helpful if both sides brief

9    what happens if Mr. Riley calls him as a defense witness --

10   that he has already said he's calling him as a fact witness,

11   he is not seeking to call him as an adverse witness; then,

12   whether he gets to turn around and cross-examine him on the

13   question of whether he has basis because he is a cooperator?

14   That would be very helpful, for everybody to do that.

15        MR. MACCHIAROLI:  And if I may, Your Honor -- not

16   jumping the gun -- but I think the Court's recollection is

17   correct; there was a change in the law on that issue, and I

18   would welcome the opportunity to brief that.

19        THE COURT:  All right.  And I need to know what

20   the law is in this jurisdiction on it; that's fine.

21        But I am still -- what I am hearing is that you

22   are now saying something very different from what you said

23   before, which is:  Oh, no, I am not calling him to attack

24   his credibility as a cooperator.  I am calling him --

25   initially, you said, because I really need to get into the

1    substance of the communication between the two men.  Okay.

2          And now you are saying:  No.  Actually, what I

3    really need to do is get up there and show how he is just a,

4    you know, biased tool of the government.  I guess I am not

5    sure I understand how that advances your case in chief if

6    you are the one who called him in the first place.

7          MR. MACCHIAROLI:  No, Your Honor.

8          We are trying to elicit facts.  What I am

9    responding to is the government basically telling me:  There

10   is no way you can cross-examine him under any circumstance

11   on bias.

12          Remember, I am at the pretrial conference here.  I

13   am not clear of exactly what question I am going to ask of

14   every single witness who is going -- nor should I believe I

15   have to --

16          THE COURT:  I am not asking you to be.

17          I am really just trying to figure out what

18   exhibits are in evidence or not.  I keep desperately trying

19   to get back to that conversation.

20          But, as I understand it, none of these are being

21   moved in evidence.  You are saying that you might

22   potentially need them to cross-examine the witnesses.  And

23   the parties are going to give me some more in writing about

24   how and why -- how that could come up, and what the rules

25   are that govern that; and that would be helpful.

1    And we have already said that Exhibit 10 is like

2    Exhibit 2, you are not seeking to introduce it in your case

3    in chief; but you are flagging it in the event there is

4    something about it that becomes relevant in

5    cross-examining -- that shows you the problem right there --

6    in examining your witness, Jacob Hiles.

7    I tend to believe that anything he may have said

8    about January 6th that much after is probably not relevant

9    because this case is about Mr. Riley's state of mind in

10   January of 2021.  So whatever Mr. Hiles may have said or

11   done in 2022 doesn't bear on that.

12   MR. MACCHIAROLI:  Your Honor, I would just note

13   that, again, waiting to see what -- how the direct

14   examination goes, and reserving all rights to cross-examine

15   or to the extent necessary.

16   THE COURT:  You want to see how your direct

17   examination goes to reserve your right to then cross-examine

18   the guy you just put on on direct?

19   I just want to make sure that's the direct and

20   cross that we're talking about; yours, and their of

21   Mr. Hiles?

22   MR. MACCHIAROLI:  Your Honor, I am going to be

23   calling law enforcement witnesses.  I am going to be calling

24   witnesses that were instructed they -- my client could not

25   contact because they were essential to the defense's

 1    investigation; I am calling the defense's cooperator.

 2            I don't -- I do not know, when I call those

 3    witnesses, are they going to give me every detail that I

 4    want, and that they're going to be, quote/unquote, defense

 5    witnesses in the sense of they're favorable to the defense,

 6    they're trying to help the defense and undermine the

 7    government's case? -- or if they're going to say something

 8    which is not true -- and which I have the right, whether I

 9    call them or not -- to potentially impeach them.

10            I have been very clear, Your Honor --

11            THE COURT:  Is there some other witness, other

12    than Jacob Hiles, that you might impeach with Jacob Hiles'

13    May 22nd Facebook post?

14            MR. MACCHIAROLI:  No.

15            THE COURT:  That's all I was talking about.

16            MR. MACCHIAROLI:  Okay.  I'm just -- I just want

17    to make clear --

18            THE COURT:  And I don't want to hear in front of

19    the jury about witnesses that you weren't allowed to

20    contact, okay?  If there is something going on that's been

21    improper in terms of how you were treated in developing your

22    defense in this case, then you bring it up with me; but you

23    don't start arguing that in front of the jury.

24            MR. MACCHIAROLI:  Nobody is arguing that, Your

25    Honor.

1          THE COURT:  Okay.  Well, I just want to make sure.

2     You have slipped it into this conversation, so I just want

3     to make sure that doesn't come up because --

4          MR. MACCHIAROLI:  The reason why I am saying that,

5     Your Honor, is that these witnesses that I am calling, a lot

6     of them traditionally were government witnesses.  So the

7     understanding that I can -- I cannot potentially undermine

8     witnesses as for the government, is -- I just -- I do not

9     accept as accurate; and that's why I'm just preserving the

10    issue.

11         I cannot guarantee that I may not have to

12    cross-examine -- or, I should say, try to impeach the

13    credibility of any witness that the defense calls.

14         THE COURT:  Right.  But I guess we're still trying

15    to establish -- I understand that if they go awry and you

16    have material that shows that their in-court testimony that

17    you anticipated would go this way, went that way, and you

18    want to be able to impeach them with it; that's one thing.

19         But another thing is if you're putting them on to

20    use that stuff to make them look bad because they were

21    somehow named in the government's case as opposed to

22    testifying; that's a different story.

23         So I am fine to have you explain to me:  If you

24    call someone as an affirmative witness to testify as to X

25    fact, and they start arguing with you or they give you

1    trouble, or they vary from what you know the facts are to

2    be, that there is case law that says you get to

3    cross-examine them; I want to hear that.

4         But if you are telling me:  I get to call them to

5    set it up so that I can cross-examine them, then I think

6    that's the law that she was saying you can't do.  So if

7    that's what you want to do, you need to address that too.

8         MR. MACCHIAROLI:  That's not my intention, Your

9    Honor.

10        THE COURT:  Good.  All right.

11        Let's go on to Exhibit 11, which is:

12   "Congratulations upon your retirement," and a very nice

13   commendation about how well he served the public.

14        In the meantime, why is that relevant?

15        MR. MACCHIAROLI:  Your Honor, that would negate

16   the government's theory that Officer Riley, during the

17   course of his service to the Capitol Police, obstructed

18   justice in regard to an investigation.

19        THE COURT:  Okay.  So you are seeking to put in

20   his good character to establish that he didn't act in

21   conformity with that -- that he did, even on January 7th.

22        This is exactly what the case law says you can't

23   do.  So this letter is not coming in.

24        I don't have a problem in just trying to tell the

25   jury who he is just as background, humanize him as part of

1    his testimony; to put in 12, to put in 13, that recognition

2    of 25 years of service, recognition of 25 years of

3    outstanding service -- that's fine.  He is a decorated,

4    descent officer who did his job, did his job for 25 years.

5    You put him on; I am going to give you a little leeway to

6    show that.

7            But Exhibit A goes too far and is irrelevant.  I

8    am not sure you need the box, Exhibit 14, that his

9    commendation came in.

10            But 12 and 13 will be admitted.

11            And now we get to the thing that I really want to

12    talk about, which is the inter- --

13            MS. McNAMARA:  Your Honor?

14            THE COURT:  Yes.

15            MS. McNAMARA:  I apologize.  But just to make sure

16    we're clear, to the extent that the December 2 letter that

17    was just --

18            THE COURT:  You can't argue that that's

19    inconsistent with the elements of the offense.  You can just

20    say this is who he is as part of his background; that's it.

21    But he can't say that because they said, You gave

22    outstanding service for 25 years, that that means that on

23    January 7th he did not commit the offense.

24            MS. McNAMARA:  Understood.

25            And the government just wants to raise that:

1    Should the defendant reference by testimony that letter -- I

2    understand the letter has been out -- the government would

3    note that the Capitol Police put out a subsequent bulletin

4    or made it publicly known that the letter was sent

5    accidentally, and they were looking into it; and they didn't

6    mean to send it.  That is why we had the 106 objection

7    there.

8              THE COURT:  All right.  So I am not letting -- oh.

9    You mean the career service award and the 25-year

10   certificate, they revoked them?

11             MS. DOHRMANN:  Your Honor, with respect to 11 -- I

12   am looking at it -- it does not have a 106 objection; it

13   should.

14             The Capitol Police Board -- when it raised that,

15   after being indicted, the defendant received a letter of

16   this sort -- put out a statement saying that the letter was

17   automatically issued, and that it was in error.

18             And so in fairness, under Rule 106, that

19   information in writing should be considered in conjunction

20   with the writing of the letter.

21             THE COURT:  All right.  Well, I am not going to

22   let the letter in at all.

23             MS. McNAMARA:  Okay.

24             THE COURT:  Yeah.  I don't think that should come

25   in because that just gets into all of the collateral

1   consequences.  He's presumed to be innocent.  We are not

2   going to get the Capitol Police saying:  We're taking back

3   our nice letter because he got charged.

4          So nothing -- not the letter, not the revocation

5   of the letter -- is going to come in.

6          I think his 25-year certificate, has that been

7   revoked?

8          MR. MACCHIAROLI:  No, Your Honor, that has not

9   been revoked.

10          In fact, when the Capitol Police sent out this

11   bulletin regarding the initial letter on December 2nd, it

12   says it was an automatically-issued letter, nobody had

13   signed it.  We actually have the letter; it has the actual

14   ink of the people who signed it.  That's separate and apart

15   from the issue.

16          After they retracted that letter, they ultimately

17   sent him his career service award and his 25-year --

18          THE COURT:  All right.  12 and 13 -- he can

19   testify to:  I got this, I got this.

20          There's sufficiently -- there's sufficient

21   evidence of the fact that he did, indeed, serve for a long

22   time; and that's part of who he is, and it's part of what he

23   is allowed to say if he takes the stand in this case.

24          11 is excluded.

25          14 is irrelevant.

1                    MS. DOHRMANN:  Your Honor, with respect to 12 and

2        13 -- sorry.

3                    Returning back to 12 and 13 -- and this is also

4        part of the Court's ruling on the motion in limine, but the

5        government just wants to clarify this.  In the defendant's

6        opposition to the government's motion in limine, there were

7        several statements made that the defendant should be

8        entitled to prove through evidence that, quote -- I am

9        actually not quoting -- but the quote is:  The government

10       had absolutely no concerns about the defendant continuing in

11       his position.

12                    The government --

13                    THE COURT:  Can't use it for any of that.

14                    This just shows, you know, who are you?

15                    I'm Michael Riley.

16                    Where did you work on January 6?

17                    I was a U.S. Capitol Police officer.

18                    How long were you a U.S. Capitol Police officer?

19                    This many years.

20                    What's Exhibit 12?

21                    I got something that shows I was there for 25

22       years -- that's it.  Just kind of who he is as a human

23       being.  It does not go to -- this establishes his character,

24       because he is generally a good officer -- that he could not

25       have committed the offense on January 7th because it falls

1    within the period that they said he was a good officer.

2              I don't think you have to leave out the fact that

3    he has a career -- that he had a career, that he has a

4    family; you just don't get to pull it together the way you

5    were trying to in the memo.  I am trying to give you a

6    little leeway here.  And I am going to let him put those in

7    for that limited purpose:  I got this, I got this; that's

8    who I am.

9              MS. DOHRMANN:  Thank you, Your Honor.

10             THE COURT:  I am a 25-year man with the U.S.

11   Capitol Police; I think that's fair.

12             Exhibits 15, 16, and 17, please tell me under what

13   possible theory you get to put in your client's out-of-court

14   statement.

15             MR. MACCHIAROLI:  Nobody is asking -- nobody is

16   submitting these as actual exhibits that are going to be

17   moved into evidence.

18             THE COURT:  Okay.  Well, let me just tell you, if

19   you ever try a case in front of me, then you might as well

20   just put an asterisk next to the exhibit and say:  Not

21   moving it in in our case and chief, and you would have saved

22   everybody a lot of time.

23             So 15, 16, and 17 are not coming in.

24             MR. MACCHIAROLI:  Correct.

25             THE COURT:  Okay.  And you don't get to call Riley

1    or Merriman [sic] to testify to the fact that he said those

2    things either.  That's you putting in his out-of-court

3    statement through a -- you can't do it, okay.

4             MR. MACCHIAROLI:  So --

5             THE COURT:  If he takes the stand and he says

6    something inconsistent with his statement to those officers,

7    they can cross-examine him with those prior inconsistent

8    statements; but you can't put on his out-of-court

9    statements.  And frankly, having read them, I am not sure

10   they advance your theory.  But that's your decision; you

11   know the case and your defense better than I do.  But I am

12   not sure why you would want the jury to know everything he

13   said that day.

14            MR. MACCHIAROLI:  Your Honor, I am not moving them

15   into evidence.

16            THE COURT:  Okay.

17            MR. MACCHIAROLI:  I am identifying them for

18   identification purposes --

19            THE COURT:  All right.  So --

20            MR. MACCHIAROLI:  -- as defense exhibits.

21            I plan to call Officer Riley.  I plan to call both

22   FBI agents.  I can, obviously, inquire as to what they did

23   in their investigation in this case, including interviewing

24   my client.  And to the extent that they test- --

25            THE COURT:  Did you interview my client?

1              Yes.

2              Thank you.

3              That's the end?

4              MR. MACCHIAROLI:  Yes.

5              THE COURT:  You do not get to ask him:  What did

6      he say?

7              You don't.

8              And are you going to get in:  Did you

9      surreptitiously record him?

10             Is that what you want to ask him?  Because you are

11     getting into trying the investigation, which I already

12     granted the motion in limine.

13             Tell me what legitimate purpose you could

14     absolutely have for calling anybody whose only involvement

15     in the case was the interview.

16             MR. MACCHIAROLI:  Your Honor, your initial ruling

17     was that -- consistent with the government's specific motion

18     in limine in advance of trial, was that the defense could

19     not present forward a theory that Officer Riley was singled

20     out because he was a police officer as part of selective

21     prosecution; that was my understanding of the Court's

22     ruling.

23             THE COURT:  They also had a section in the motion

24     in limine about trying the investigation; and I had a ruling

25     in my ruling about trying the investigation.

1        The investigation is not on trial.  There are

2    limited exceptions.  If there is something -- you know, they

3    didn't dust for fingerprints, and that could have shown it

4    was somebody else who there was there instead of me, that's

5    legitimate cross of the agents.

6        You are going to call the agents to say what?  You

7    talked to him, and he still got charged?  You can't do that.

8        MR. MACCHIAROLI:  That's not my intention, Your

9    Honor.

10        THE COURT:  Okay.  So Special Agent Merriman,

11    please identify yourself for the jury.

12        I am a special agent with the FBI.

13        Were you on duty on whatever date it was that the

14    interview was taken?

15        Yes, I was.

16        Then what?

17        MR. MACCHIAROLI:  Your Honor, I will submit to the

18    Court in advance of trial the exact scope of what I

19    envision, potentially this exhibit being used to either

20    refresh recollection or to --

21        THE COURT:  Whose?

22        MR. MACCHIAROLI:  Of --

23        THE COURT:  Mr. Riley's?  Because you can't ask

24    him what he told the officers.

25        MR. MACCHIAROLI:  Of the law enforcement officers

1      in this case, when I had not even heard Officer Hart's

2      direct examination for the government's case.

3              This Court can easily prevent me from

4      cross-examining on this issue at trial.  But I would at

5      least like to, prior to the Court ruling, proffer to the

6      Court every potential basis of which I can inquire.

7              THE COURT:  I am just letting you know that unless

8      Officer Hart testifies to statements made to him by the

9      defendant, which he -- if you are planning to call him for

10     that reason, then you can cross-examine him until the cows

11     come home about Mr. Riley's statement to Officer Hart.

12             But I don't think you are planning to put that in;

13     are you, or are you --

14             MS. DOHRMANN:  No, Your Honor.

15             THE COURT:  All right.  So the cross-examination

16     is limited by the scope of the direct.

17             So we have these marked.  But whether they went to

18     his house, whether they talked to him, whether they

19     surreptitiously recorded him -- there was something illegal

20     or improper about that recording, you need to bring it to my

21     attention and get a legal ruling before you try to suggest

22     to the jury there was something wrong with it.

23             But the fact that they spoke to him and he made

24     some exculpatory statements and some inculpatory statements

25     and some that are neither, depending on how you look at

1    it -- what he said, the subject matter of his statements --

2    can't come in, can't be introduced by the defendant; that's

3    just the definition of hearsay.

4              MR. MACCHIAROLI:  Understood, Your Honor.

5              I understand the definition of hearsay.  And I

6    will preview for the Court if there is any examination of

7    either the government's witnesses or the government's

8    witnesses that the defense are calling on this scope so that

9    the Court can make a ruling on this since this is only a

10   motion in limine.

11             THE COURT:  All right.  And Riley Facebook

12   communications with Hiles, are there any in here that aren't

13   already marked as government exhibits?

14             18.  The government says they're cumulative.

15   Obviously, if they are already in evidence you can refer to

16   them; but you can also move them in if you want to move them

17   as part of your case in chief.  But I just want to make sure

18   there are no pieces that aren't the same that I need to look

19   at for some reason.

20             MR. MACCHIAROLI:  This exhibit is actually a

21   statement and response.  So it's a specific back and forth

22   that is a communication between Riley and Hiles, which is

23   part of a larger group of exhibits.

24             THE COURT:  All right.  So what is your objection

25   to 18?

1          MS. DOHRMANN:  Your Honor, if proffered by the

2     defense it's also hearsay.

3          This -- unless I am missing something,

4     Mr. Macchiaroli's response was -- I believe that these are

5     already contained in another -- in the government exhibit,

6     9 -- not 9, perhaps -- oh, no.  Yes, in 9.

7          THE COURT:  But even you are putting them in --

8     you are not putting them in for the truth of the matter

9     asserted.  You are just putting them in for the fact that

10     they were set, that these two exchanged -- this series of

11     Facebook communications, correct?

12          I guess I just want to know if there is anything

13     in 18 that isn't already marked by you.

14          MS. DOHRMANN:  Right.  Your Honor, that is your

15     understanding, is that it is already marked by us.

16          THE COURT:  All right.  And so if you are putting

17     in -- let's say you decide:  I only want these two

18     exchanges, wouldn't he -- just in terms of completeness --

19     be able to get the rest of the exchange?

20          I don't mean something three months before or

21     three months after, but everything that happened in that

22     period of time that you are saying is when he obstructed

23     justice; isn't he entitled to use those as well?

24          MS. DOHRMANN:  Yes, Your Honor.  That's correct.

25          I think the point is just to the extent it's

1    confusing that it's the same evidence but pared down and

2    sliced differently, when it could simply be referred to in a

3    government exhibit.

4         THE COURT:  All right.  Well, I think how he

5    throws it up on the screen -- I mean, he may just highlight

6    it when your witness is testifying, when your agent is

7    testifying; we don't know.  But I don't see why he is

8    prohibited from utilizing as exhibits the same Facebook

9    communications that you are utilizing as exhibits.

10        And I guess I don't know -- we're just waiting

11   what the composite video of Michael Riley on January 6th is?

12   Is that to show me all of the good things he did that day?

13        MR. MACCHIAROLI:  No, Your Honor.  I --

14        THE COURT:  What is it?

15        MR. MACCHIAROLI:  That's -- basically, I received

16   on, I believe, last Thursday, the actual video, so I wasn't

17   able to provide that to the Court.

18        That is, as the Court has allowed the defense to

19   put in, what he was actually doing on January 6th; what his

20   duties and responsibilities were, including responding to a

21   pipe bomb, including responding to a downed officer.

22        THE COURT:  And how long is this video?

23        MR. MACCHIAROLI:  I can make the excerpts to be

24   very narrow.  I have not spliced them yet since I got them,

25   you know, on Thursday.  I can make it probably as short as

1      two or three minutes.  I can give it to the government to

2      see if they have any objections to it.

3              THE COURT:  All right.  I mean, the fact that he

4      was there and the fact that he did stuff I've said you can

5      do.  I think, you know, an attempt to make an elaborate day

6      in the life of the hero is not happening.  But since we

7      don't know what it is, they haven't seen it, I can't rule on

8      it one way or the other.

9              MR. MACCHIAROLI:  Your Honor, they produced it to

10     us.  It's their video.

11             THE COURT:  Well, but until it exists, I am not

12     even going to discuss it further.  You will look at it, and

13     you will tell me what you think.

14             What is 20?  Is that his body-worn camera?

15             MR. MACCHIAROLI:  That is a -- that is other

16     video.  It's separate from the video that was produced on

17     Thursday that captures what Officer Riley was doing that

18     day.

19             THE COURT:  Okay.  I think you are trying very

20     hard to do exactly what I was saying you were trying very

21     hard to do, which is push the envelope into:  Because he did

22     such good things on the 6th, could not, would not have

23     committed a crime on the 7th; the evidence cannot come in

24     for that purpose.

25             I think the fact that he was on duty and he was

1    working, I have said, is part of the context that you can

2    get to.  But you can't -- we can't -- the jury -- what he

3    did, video of him in his body-worn camera video on the

4    downed officer, and all of that, just isn't relevant to what

5    he did.  You are trying to, I think, do too much.

6              So how long is this video?

7              MR. MACCHIAROLI:  This video, I think, is

8    something along two minutes -- and I can check.  Oh, it's

9    9:11 to 10:22, which is a minute and 11 seconds.

10             Your Honor, we are going to be presenting what he

11   did that day.  Video of him doing that I don't think is

12   improper, isn't prejudicial.  And if I stray in any way and

13   argue before the jury or during the examination that because

14   he did this he is innocent of the charge, obviously you

15   could, you know, strongly reprimand me in front of the jury;

16   but I am telling you right now, that is not what I am going

17   to be arguing.

18             THE COURT:  So what's the difference between 20

19   and 19?

20             MR. MACCHIAROLI:  One video came from various

21   different surveillance cameras in the government's

22   investigation, one came from MPD; all produced by the

23   government in this case.  So two different --

24             THE COURT:  I'm not suggesting that they're not

25   authentic.  No one is suggesting they're not authentic and

1       it didn't happen.

2              I'm just trying to figure out why we need two.  If

3       I've said, Okay, he went to work that day; he was on duty

4       that day -- no suggestion that he did not perform his duties

5       as a Capitol Police officer that day, why do we need

6       multiple videos?

7              MR. MACCHIAROLI:  We don't need multiple videos.

8       One shows X, the other shows Y.  I can put them together in

9       one composite that shows X and Y; everybody seems to be

10      happy with that.

11             THE COURT:  All right.  Well, we'll see what it

12      is, and then we'll rule on it.

13             MS. DOHRMANN:  Your Honor.

14             THE COURT:  Yes.

15             MS. DOHRMANN:  Just with respect to, I think, the

16      "why," and what isn't being said, the video -- the body-worn

17      camera video is sensitive video of a downed officer that

18      day; that is so prejudicial and inflammatory, it has nothing

19      to do with this case.

20             All of this extrinsic evidence of what he did --

21      Your Honor, the Facebook messages -- he describes in his own

22      terms to Jacob Hiles what he says he did that day in the

23      Facebook messages.  This extrinsic evidence of videos, which

24      the government produced pursuant to Your Honor's motion to

25      compel any -- or to make available any video showing the

1    defendant, we -- I think at the time you ruled, Your Honor,

2    you said:  Not that any of this is relevant, but the

3    government can make that available.  This is what that video

4    is; and it is extrinsic evidence of purported good acts that

5    Your Honor has already ruled are inadmissible.  And besides

6    the fact that it violates Rule 404, it also violates

7    Rule 403.

8            THE COURT:  All right.  I appreciate all of that.

9            Since it's still in flux -- exactly what it is --

10   I am going to see it before I rule on it.  But I think you

11   have to be conscious of all those things because I have

12   already said with respect to the motion in limine that

13   they're right about all of that.

14           What is 21?  And why on earth would a letter --

15   what is that about?  A letter from Hiles' counsel to the

16   government -- an email from Hiles' counsel to the

17   government?  That goes to Mr. Hiles's bias again?

18           MR. MACCHIAROLI:  Yes, Your Honor.  And,

19   obviously, that, I guess, we can reserve until I provide

20   supplemental briefing on the ability to cross-examine or

21   elicit bias from any witness that the defense calls or any

22   party calls.

23           THE COURT:  All right.  I am going to get into

24   that.  But we don't have to reserve -- you are not saying

25   you are seeking to use it in your case in chief as an

1     exhibit anyway --

2                    MR. MACCHIAROLI:  No.

3                    THE COURT:  -- you are talking about if you use

4     it, it's for cross-examination?

5                    MR. MACCHIAROLI:  Yes, absolutely.

6                    THE COURT:  All right.  Well, then I don't have to

7     rule on it at all, but I will read your submission.

8                    Now, there's one more thing before we talk about

9     the trial date, and the briefing schedule for everything

10    that is going to be briefed.  Then we need to talk about --

11    in any criminal case at this point, it's important for me to

12    find out if a plea offer was communicated to the defendant,

13    to his lawyer, and if his lawyer communicated it to him.

14                   So has there been any discussion of a disposition

15    in this case, Ms. Dohrmann?

16                   MS. DOHRMANN:  Yes, Your Honor.

17                   THE COURT:  All right.  Can you tell me what the

18    offer was that was conveyed, and what the -- what that has

19    to do with the sentencing guidelines calculation or the

20    sentence he would be facing?

21                   MS. DOHRMANN:  Thank you, Your Honor.

22                   If I could just have one moment.  I am so sorry, I

23    was not prepared to answer that question.

24                   THE COURT:  All right.  Well, I generally do it at

25    the pretrial conference.

1          MS. DOHRMANN:  Your Honor, I am trying to pull it

2    up just for the sake of being as completely accurate and

3    complete as possible; but it's, unfortunately, still

4    loading.

5          THE COURT:  All right.  So is my calendar.

6          MS. DOHRMANN:  We did offer, Your Honor, I can

7    tell you, that he can plead to Count 1 with certain

8    accompanying admissions, and in exchange for which we would

9    dismiss Count 2.  And he would receive, in addition to the

10   two points for acceptance, the additional third point for

11   his substantial assistance to the government.

12         THE COURT:  All right.  So how would that affect

13   the guidelines calculation?  What are they with respect to

14   Count 1?  And what would the three points do to them?

15         MS. DOHRMANN:  Your Honor, that is the part that I

16   am trying to pull up.

17         I do recall that the ultimate range was 15 to 21

18   months, but I am just trying to unsuccessfully get those

19   exact calculations.

20         Your Honor, we are still trying to get that

21   information.  I am so sorry.  We will absolutely --

22         THE COURT:  All right.  Well, Mr. Macchiaroli, can

23   you tell me anything you communicated to your client

24   about -- without the advice, the fact of any plea offer that

25   was extended in this case.  I am not interested --

 1          And, Mr. Riley, I am going to ask you to tell me

 2   if he told you that.  But I do not want you to tell me

 3   whether:  We got a good case, no -- or maybe you should take

 4   it.  I don't want to hear anything about his advice.  I just

 5   want to know whether, in fact, it was conveyed to you.

 6          Okay.  Counsel.

 7          MR. MACCHIAROLI:  Yes, Your Honor.

 8          I conveyed to Mr. Riley that the government's plea

 9   offer was to plead guilty to Count 1, dismiss Count 2;

10   Count 1 being a felony of which his guidelines would be the

11   range identified.

12          THE COURT:  All right.  And that he would get the

13   credit for acceptance of responsibility if he pled, that he

14   would not if he went to trial.

15          All right.  Mr. Riley, can you confirm to me that

16   your lawyer conveyed that information to you?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  All right.  And based on discussions

19   that I don't intend to ask you about and are none of my

20   business, that you have made the decision to not accept the

21   plea offer; is that correct?

22          THE DEFENDANT:  Yes, Your Honor.

23          THE COURT:  All right.  I do feel like there are a

24   lot of balls in the air, that it would be nice to get them

25   in order and try this case in a more efficient manner; but I

 1   am curious about the parties' availability before we start

 2   putting this off.

 3            So one question is:  Could you try the case on

 4   October 17th?

 5            MS. DOHRMANN:  Thank you, Your Honor.

 6            Yes.  The representatives for the government at

 7   counsel table could.  We would need to check with your

 8   civilian witness.

 9            THE COURT:  All right.  And leaving that open for

10   a second, are you available that week, and is your client

11   available that week?

12            MR. MACCHIAROLI:  One moment, Your Honor.

13            Your Honor, I am generally available the week of

14   October 17th, and so is my client.

15            THE COURT:  All right.

16            MR. MACCHIAROLI:  In this instance, I actually

17   have more -- much more witnesses than the government does.

18            Also, Your Honor -- and I know that your trial

19   schedule is extremely limited given the number of cases.  I

20   think just a little bit more time.  I am not looking for a

21   new year, just a little bit more time, if there is anything

22   available in November.

23            I just had a trial vacated by Judge Nichols at the

24   request of the government, so I am now wide open from

25   October 31st through what I anticipate to be November 17th.

 1           THE COURT:  All right.  Well, I have a January 6th

 2     trial beginning on October 31st; that defendant is not

 3     incarcerated either, so it's not that one of you would have

 4     precedence over the other, but that date is set.  So I don't

 5     think I can -- while I was fine doubling up under other

 6     circumstances, and if that case -- when is the pretrial

 7     conference in that case? -- oh, it's the pretrial on 31, not

 8     the trial.  So when is the trial?

 9           THE COURTROOM DEPUTY:  7th.

10           THE COURT:  The trial is the 7th.  Okay.

11           I don't really think that there is that much more

12     to do, and November would put you right on top of her.  And

13     then I do have some gentlemen who are locked up who are

14     trying desperately to get to trial in December.

15           MS. DOHRMANN:  And, Your Honor, if I may, I am not

16     available to start a trial on the 31st of October.

17           THE COURT:  All right.  Well, everybody can check

18     with their witnesses.

19           Now, I actually think that, to move things along,

20     it would be efficient to try to get the government's

21     assistance with the Capitol Police, the general counsel, to

22     just make sure that subpoenas get delivered and dates are

23     established so that we don't end up in a situation where we

24     don't know if the witnesses that Mr. Macchiaroli wants to

25     call are going to be available or not because they don't

1    really want to talk to him.

2            So I am going to set this down provisionally,

3    right now, for October 17th.  We can get together on

4    October 13th to talk about jury instructions so that

5    everybody knows what the legal framework would be that is

6    going to govern this case.  And if the 13th doesn't work,

7    there may be another day that week that we can do it.

8            Since we're not going to be in trial next week, it

9    shouldn't take you very long to prepare the legal

10   submissions that you have asked for permission to submit;

11   they're going to be due on the 22nd.  And it's not going to

12   be a motion and a response, it's just going to be

13   simultaneous submissions on the issues that have come up

14   today, which I think is largely the ability to cross-examine

15   government employees, and the government's cooperator with

16   biased information if the defense calls them.

17           Is that the question that you want to brief for

18   me?

19           MR. MACCHIAROLI:  Yes, Your Honor.  And I think

20   that may be a subset of a general -- if a party calls a

21   witness, they have the ability to impeach that witness for

22   credibility issues.

23           THE COURT:  All right.  That's fine.  But what

24   triggers that is important in whether you can just go there

25   or put them on for that purpose, I think, is part of what we

1    need to talk about.  So those submissions will be due on the

2    22nd.

3              Can we set a jury instructions conference in the

4    morning on the 13th, at about 10:00 a.m.?

5              MS. DOHRMANN:  Yes, Your Honor.  Thank you.

6              THE COURT:  All right.  And to the extent the

7    parties have talked about stipulations -- and I am going to

8    need to make rulings about exhibits that we have yet to

9    see -- I want the final version of those exhibits and any

10   stipulations that indicate which exhibits are now

11   essentially being withdrawn because they are unnecessary by

12   the 29th of September.

13             So the trial is off for the 12th.  Legal memoranda

14   related to the issues we've discussed due the 22nd.

15   Basically, revised exhibit lists and any exhibits that I

16   haven't seen are due on the 29th, along with copies of

17   stipulations you want for me to give the jury.

18             We'll get together and talk about jury

19   instructions on October 13th.  And barring some conflict

20   that you-all let me know about -- what is today?  Tuesday --

21             THE COURTROOM DEPUTY:  Today is Monday, Your

22   Honor.

23             THE COURT:  Today is Monday.  It's only Monday.

24   Oh, my God.

25             THE COURTROOM DEPUTY:  It just feels like Tuesday.

1          THE COURT:  It does.

2               I think we need to know whether this date is going

3     to hold sooner rather than later.  I want to know by Friday,

4     this Friday, if anybody has any conflicts or a notice that

5     you don't.

6               MR. MACCHIAROLI:  Your Honor, if I could ask

7     through the Court -- given the number of witnesses the

8     government currently has is two, do they still anticipate it

9     being three days of their government's case?  That will

10    effect witness availability if -- we may have to have

11    witnesses on the afternoon of the second day of testimony.

12         THE COURT:  Okay.  Well, we have to pick a jury

13    the first day, and you have to open.

14         MR. MACCHIAROLI:  Correct.

15         THE COURT:  So I think it's probably unlikely

16    these witnesses are going to testify on Tuesday.  But at

17    that point I think that you have to anticipate that it could

18    be Wednesday or Thursday or Friday, right?

19         MR. MACCHIAROLI:  Right.  I am just thinking if

20    the government doesn't believe it's going to be three days

21    for its case in chef, which I don't think it's possible --

22    if they think it's going to be two, that would be helpful.

23         THE COURT:  All right.  Do you have thoughts about

24    that at this point?

25         MS. McNAMARA:  Your Honor, the government thinks

1    the Court summarized it well with the jury selection, the

2    opening, and then the two witnesses.  That's why we, in an

3    abundance of caution, stated three days.

4         THE COURT:  All right.  So that gives you some

5    idea when your witnesses might have to testify.

6         MR. MACCHIAROLI:  Okay.  Your Honor.

7         THE COURT:  All right.

8         MS. DOHRMANN:  Your Honor, the government would

9    request, if -- if we could make the deadline for that date

10   Wednesday, we just -- since the dates are coming up soon,

11   we'd like to know sooner rather than later what -- and be

12   able to come in before Your Honor -- you know, before the

13   end of the week if we need to work on the dates a little

14   bit.

15        THE COURT:  All right.  Well, I don't think

16   anybody is going to have a lot of time to reach out and talk

17   to witnesses tomorrow -- I mean, today.  And you have -- I

18   guess you need to shore up your witnesses also.

19        To the extent Mr. Macchiaroli's witnesses are

20   Capitol Police officers or FBI agents, maybe this would be a

21   lot faster if you can ask them.  So that would be helpful.

22   I think he needs to deal with Mr. Hiles and any other

23   civilians he is planning to call.

24        MR. MACCHIAROLI:  Your Honor, I would just ask for

25   Friday; I think it's a reasonable deadline.  The Court

1      proposed it.  There should be no -- I am spending the

2      majority of my morning Thursday with you, Your Honor, in

3      another proceeding.

4                THE COURT:  That is true.

5                MS. DOHRMANN:  That's fine, Your Honor.  Thank

6      you.

7                THE COURT:  All right.  And to the extent Friday

8      could mean, oh, I don't know, Friday, as opposed to 11:30

9      Friday night -- let's aim for 2 p.m. on Friday.  Then I can

10     get it and I can send you guys an email and say:  Okay.  We

11     are good to go or we're not good to go.  That would be

12     helpful.

13               All right.  I ask this with great reluctance.

14               Is there anything further I need to do at this

15     point from the government's perspective?

16               MS. DOHRMANN:  No, Your Honor.

17               THE COURT:  Anything further for you,

18     Mr. Macchiaroli?

19               MR. MACCHIAROLI:  Not at this time, Your Honor.

20               THE COURT:  All right.

21               MS. DOHRMANN:  Your Honor, I'm sorry.  I changed

22     my mind.

23               If we can just address speedy trial -- I am sure

24     Your Honor was already prepared to do that.

25               THE COURT:  All right.  Given the fact the

1    defendant is requesting this, Mr. -- what is the defendant's

2    position with respect to -- I think he's already waived it

3    in writing in a couple of motions to me; but with respect to

4    the time between September 12 and October 17th?

5           MR. MACCHIAROLI:  We would exclude time under the

6    Speedy Trial Act, Your Honor.

7           THE COURT:  All right.  Given the fact that the

8    defense has requested this extension and waived his speedy

9    trial with respect to it, I find it is in the interest of

10   justice to exclude the time from the speedy trial

11   calculation between now and then.

12          I think we're done.

13          THE COURTROOM DEPUTY:  I'm sorry.  I missed

14   time --

15          THE COURT:  From the 12th, which is when the trial

16   was supposed to be, to October 17, which is when the trial

17   is going to be --

18          THE COURTROOM DEPUTY:  Did you say the jury

19   instruction conference on October 13, at 10:00 a.m.?

20          THE COURT:  10:00 a.m.

21          All right.  I do think all of these issues are

22   important, I do think they're worth our time.  But I also do

23   think it's really important for people to -- once they get a

24   ruling, to understand that that's the ruling, and that's

25   where we're going.

1          I actually think I have been pretty clear all

2     along about what's happening and what's not happening.  And

3     I do expect zealous advocacy from both sides of this

4     courtroom at every moment during this trial that doesn't

5     include exceeding the scope of orders that I have issued in

6     this case.

7          All right.  Thank you.

8          (Whereupon, the proceeding concludes, 4:44 p.m.)

9                         *  *  *  *  *

10                      **CERTIFICATE**

11

12          I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby

13     certify that the foregoing constitutes a true and accurate

14     transcript of my stenographic notes, and is a full, true,

15     and complete transcript of the proceedings to the best of my

16     ability.

17

18          This certificate shall be considered null and void

19     if the transcript is disassembled and/or photocopied in any

20     manner by any party without authorization of the signatory

21     below.

22

23          Dated this 9th day of October, 2022

24     /s/ Elizabeth Saint-Loth, RPR, FCRR
       Official Court Reporter

25

## /

**/s** [1] - 118:24

## 0

**004361** [1] - 60:17

## 1

**1** [8] - 38:7, 39:3, 60:21, 71:25, 108:7, 108:14, 109:9, 109:10
**10** [2] - 78:22, 87:1
**10.1** [3] - 42:23, 52:5, 54:11
**10.6** [4] - 42:23, 42:24, 52:6, 54:11
**1000** [1] - 13:23
**106** [5] - 13:23, 39:6, 92:6, 92:12, 92:18
**10:00** [3] - 113:4, 117:19, 117:20
**10:22** [1] - 104:9
**11** [8] - 54:15, 55:25, 57:3, 57:21, 90:11, 92:11, 93:24, 104:9
**1158** [1] - 14:18
**11:30** [1] - 116:8
**11th** [2] - 60:18, 61:2
**12** [8] - 1:5, 91:1, 91:10, 93:18, 94:1, 94:3, 94:20, 117:4
**12th** [2] - 113:13, 117:15
**13** [6] - 91:1, 91:10, 93:18, 94:2, 94:3, 117:19
**13th** [4] - 112:4, 112:6, 113:4, 113:19
**14** [3] - 57:23, 91:8, 93:25
**15** [4] - 55:20, 95:12, 95:23, 108:17
**16** [2] - 95:12, 95:23
**17** [6] - 58:15, 58:17, 59:1, 95:12, 95:23, 117:16
**1750** [1] - 1:17
**17th** [5] - 110:4, 110:14, 110:25, 112:3, 117:4
**18** [4] - 45:19, 100:14, 100:25, 101:13
**19** [1] - 104:19
**1996** [1] - 38:23
**1997** [1] - 13:24

## 2

**2** [12] - 39:5, 39:7, 60:16, 60:21, 72:1, 72:22, 78:23, 87:2, 91:16, 108:9, 109:9, 116:9
**20** [2] - 103:14, 104:18
**20006** [1] - 1:18
**202** [2] - 1:14, 1:18
**2021** [2] - 12:11, 87:10
**2022** [5] - 1:5, 72:3, 72:25, 87:11, 118:23
**2023** [1] - 69:24
**20530** [1] - 1:14
**20th** [3] - 47:25, 48:3, 48:10
**21** [2] - 106:14, 108:17
**21-628** [2] - 1:3, 2:4
**22nd** [4] - 88:13, 112:11, 113:2, 113:14
**25** [7] - 13:7, 59:23, 91:2, 91:4, 91:22, 94:21
**25-year** [4] - 92:9, 93:6, 93:17, 95:10
**252-7035** [1] - 1:14
**29th** [2] - 113:12, 113:16
**2:05** [1] - 1:5
**2nd** [1] - 93:11

## 3

**3** [4] - 40:20, 65:20, 78:10, 78:11
**30** [1] - 64:4
**30th** [1] - 64:3
**31** [1] - 111:7
**31st** [3] - 110:25, 111:2, 111:16
**39** [1] - 7:22
**3A** [1] - 41:11

## 4

**4** [3] - 58:23, 78:10, 78:11
**4.1** [1] - 42:4
**401** [1] - 58:18
**403** [4] - 45:4, 45:9, 58:19, 106:7
**404** [2] - 14:8, 106:6
**404a** [1] - 14:25
**404(a)(1** [1] - 15:1
**404(a)(2** [1] - 15:5

**404(b** [1] - 14:2
**405** [2] - 14:8, 15:11
**405(a** [1] - 15:13
**405(b** [1] - 15:19
**42** [1] - 7:23
**43** [1] - 7:24
**45-3** [1] - 58:23
**4:44** [1] - 118:8
**4th** [1] - 1:13

## 5

**5** [3] - 10:24, 78:12, 78:21
**539-2444** [1] - 1:18
**555** [1] - 1:13

## 6

**6** [6] - 11:22, 12:11, 52:14, 53:21, 78:12, 94:16
**6th** [42] - 3:8, 4:23, 6:12, 6:14, 6:17, 6:22, 6:23, 7:6, 9:10, 13:8, 19:5, 19:7, 21:3, 21:17, 21:19, 21:20, 22:13, 29:2, 31:9, 35:17, 38:19, 39:15, 39:17, 39:25, 40:7, 40:14, 44:5, 59:24, 60:20, 60:22, 61:21, 70:22, 74:1, 74:24, 74:25, 87:8, 102:11, 102:19, 103:22, 111:1

## 7

**7** [3] - 52:14, 53:21, 78:12
**7th** [23] - 31:10, 46:25, 48:2, 48:7, 59:7, 59:11, 59:24, 60:4, 60:18, 60:22, 61:1, 61:3, 64:7, 64:25, 65:10, 76:18, 90:21, 91:23, 94:25, 103:23, 111:9, 111:10

## 8

**8** [3] - 38:23, 78:12, 82:13
**800** [1] - 74:20
**801** [1] - 58:19

**810** [1] - 1:17
**889** [1] - 14:18

## 9

**9** [7] - 49:21, 78:12, 78:21, 82:13, 101:6
**901** [2] - 45:11, 58:19
**983** [1] - 13:23
**999** [1] - 13:23
**9:11** [1] - 104:9
**9th** [1] - 118:23

## A

**a.m** [3] - 113:4, 117:19, 117:20
**ability** [9] - 6:17, 11:2, 21:23, 57:7, 59:9, 106:20, 112:14, 112:21, 118:16
**able** [18] - 3:14, 22:8, 24:4, 27:20, 29:23, 31:17, 31:19, 51:7, 52:10, 58:7, 65:12, 70:3, 84:2, 89:18, 101:19, 102:17, 115:12
**absolutely** [11] - 20:21, 25:25, 46:22, 75:17, 78:19, 83:7, 84:5, 94:10, 97:14, 107:5, 108:21
**abundance** [1] - 115:3
**accept** [2] - 65:19, 89:9, 109:20
**acceptance** [2] - 108:10, 109:13
**access** [1] - 51:15
**accidentally** [1] - 92:5
**accompanying** [2] - 50:19, 108:8
**accordance** [1] - 15:4
**according** [2] - 11:19, 56:7
**accurate** [3] - 89:9, 108:2, 118:13
**accurately** [1] - 43:14
**acquitted** [2] - 12:1, 20:3
**act** [3] - 47:16, 48:10, 90:20
**Act** [1] - 117:6
**acted** [4] - 11:14, 14:9, 15:3, 15:23
**Action** [1] - 1:3
**action** [2] - 45:14, 45:15

**actions** [2] - 9:10, 31:20
**activity** [1] - 14:15
**acts** [10] - 9:9, 13:17, 13:18, 14:2, 14:5, 20:2, 20:6, 59:12, 106:4
**actual** [8] - 4:17, 9:24, 54:5, 73:8, 79:19, 93:13, 95:16, 102:16
**add** [1] - 27:11
**addition** [2] - 55:10, 108:9
**additional** [4] - 37:20, 48:13, 54:13, 108:10
**address** [4] - 10:3, 34:14, 90:7, 116:23
**adequate** [1] - 30:18
**admin** [2] - 59:8, 61:20
**admissibility** [5] - 12:20, 45:10, 52:23, 54:1, 67:16
**admissible** [8] - 12:15, 12:16, 14:10, 15:2, 15:14, 28:4, 72:25, 79:19
**admission** [3] - 13:25, 14:25, 53:21
**admissions** [1] - 108:8
**admit** [3] - 23:20, 40:3, 44:3
**admitted** [6] - 14:23, 15:8, 53:12, 54:10, 71:25, 91:10
**advance** [7] - 30:15, 72:20, 80:20, 80:23, 96:10, 97:18, 98:18
**advances** [1] - 86:5
**adverse** [4] - 77:21, 77:22, 85:5, 85:11
**advice** [2] - 108:24, 109:4
**advisement** [1] - 69:19
**advocacy** [1] - 118:3
**affect** [4] - 6:17, 74:7, 75:12, 108:12
**affects** [2] - 67:9
**afraid** [1] - 21:5
**afternoon** [6] - 2:2, 2:3, 2:10, 2:14, 2:15, 114:11
**afterwards** [1] - 47:6
**Agent** [10] - 1:20, 2:13, 32:1, 43:20, 45:8, 52:19, 55:4, 56:6, 68:22, 98:10
**agent** [6] - 46:12,

46:14, 46:15, 49:20,
98:12, 102:6
**agents** [8] - 29:4,
36:6, 65:10, 65:12,
96:22, 98:5, 98:6,
115:20
**aggressiveness** [1] -
14:12
**ago** [1] - 45:19
**agree** [9] - 11:11,
13:13, 29:18, 31:6,
40:17, 41:9, 42:7,
42:21, 67:15
**agreed** [2] - 63:10,
83:22
**agreement** [3] - 73:7,
76:20, 78:13
**agrees** [2] - 10:15,
25:25
**aground** [1] - 84:23
**aided** [1] - 1:25
**aim** [1] - 116:9
**air** [1] - 109:24
**allegation** [1] - 6:21
**allege** [2] - 80:9, 82:10
**alleged** [10] - 9:23,
24:24, 27:2, 27:24,
38:4, 46:25, 47:15,
48:15, 50:12, 59:12
**allegedly** [4] - 45:7,
47:11, 48:15, 80:2
**alleging** [2] - 50:11,
80:7
**allow** [2] - 15:17,
67:21
**allowed** [6] - 33:1,
33:3, 79:24, 88:19,
93:23, 102:18
**almost** [1] - 74:5
**alone** [1] - 84:1
**ALSO** [1] - 1:20
**AMERICA** [1] - 1:3
**America** [1] - 2:5
**AMY** [1] - 1:9
**analysis** [3] - 75:4,
76:4, 76:5
**Andersen** [2] - 29:12,
30:2
**Andrade** [1] - 2:13
**ANDRADE** [2] - 1:21
**ANGELO** [1] - 1:5
**Angelo** [1] - 2:5
**ANN** [1] - 1:12
**Ann** [1] - 2:11
**anniversary** [1] - 72:4
**answer** [8] - 4:6, 6:1,
48:11, 66:14, 68:9,
74:10, 107:23
**anticipate** [5] - 72:11,
81:24, 110:25,

114:8, 114:17
**anticipated** [5] - 28:3,
29:1, 46:21, 68:25,
89:17
**anyway** [3] - 6:8,
38:24, 107:1
**apart** [1] - 93:14
**apologies** [1] - 20:24
**apologize** [7] - 31:5,
37:4, 37:10, 41:17,
41:21, 55:13, 91:15
**apologizing** [1] - 38:5
**appeal** [1] - 14:8
**appear** [1] - 63:10
**APPEARANCES** [1] -
1:10
**Appellant's** [1] - 14:11
**applicable** [1] - 73:20
**apply** [2] - 9:2, 27:7
**appreciate** [3] - 18:22,
37:18, 106:8
**appropriate** [9] - 17:4,
19:20, 21:17, 22:17,
25:8, 41:15, 72:24,
80:19, 83:18
**appropriately** [1] -
11:7
**April** [1] - 38:23
**argue** [10] - 10:11,
27:6, 34:3, 34:7,
34:8, 34:9, 38:1,
45:12, 91:18, 104:13
**argues** [1] - 34:3
**arguing** [6] - 19:19,
20:1, 88:23, 88:24,
89:25, 104:17
**argument** [7] - 7:25,
8:3, 8:11, 8:12, 8:14,
8:17, 9:6, 19:16,
21:2, 27:6, 36:21
**arguments** [2] - 20:22,
34:15
**arrest** [2] - 26:10,
26:11, 31:12
**arresting** [2] - 31:2,
31:3
**Arthur** [2] - 29:12,
30:2
**aside** [2] - 9:13, 65:15
**assaulted** [1] - 45:7
**asserted** [2] - 18:20,
101:9
**assertiveness** [1] -
14:12
**assigned** [1] - 40:15
**assist** [1] - 38:2
**assistance** [2] -
108:11, 111:21
**assisted** [1] - 19:25
**assisting** [2] - 39:10,

77:10
**assume** [2] - 6:13,
82:17
**assuming** [5] - 39:2,
54:8, 58:11, 65:17,
66:22
**assurances** [1] -
63:19
**asterisk** [1] - 95:20
**attached** [3] - 51:25,
52:2, 52:3
**attack** [2] - 16:18,
85:23
**attempt** [3] - 9:24,
30:4, 103:5
**attempting** [2] - 34:24,
79:10
**attendant** [1] - 12:5
**attending** [1] - 72:10
**attention** [4] - 14:20,
18:13, 26:10, 99:21
**Attorney's** [1] - 1:12
**August** [2] - 64:3, 64:4
**authentic** [1] - 57:25,
104:25
**authenticate** [7] -
39:13, 42:12, 42:15,
43:3, 58:4, 58:7,
58:9
**authenticated** [1] -
43:11
**authenticity** [18] -
42:5, 42:8, 42:9,
42:14, 42:23, 43:25,
44:4, 49:14, 49:16,
49:18, 52:15, 52:22,
53:5, 54:7, 54:9,
54:16, 57:23, 61:6
**authorization** [2] -
63:12, 118:20
**automatically** [3] -
62:16, 92:17, 93:12
**automatically-issued**
[1] - 93:12
**availability** [7] - 7:19,
62:6, 62:25, 65:11,
67:20, 110:1, 114:10
**available** [12] - 62:17,
63:9, 63:20, 64:22,
65:12, 66:5, 66:22,
105:25, 106:3,
110:10, 110:11,
110:13, 110:22,
111:16, 111:25
**award** [2] - 92:9, 93:17
**awry** [1] - 89:15

## B

**baby** [1] - 65:21
**background** [3] -
54:24, 90:25, 91:20
**bad** [5] - 13:17, 14:2,
14:5, 19:10, 89:20
**bad-acts** [1] - 14:5
**balance** [1] - 67:7
**balancing** [1] - 68:18
**balls** [1] - 109:24
**bar** [1] - 52:22
**bare** [1] - 39:16
**bare-bones** [1] - 39:16
**barring** [1] - 113:19
**base** [1] - 8:19
**based** [12] - 5:2,
10:12, 10:19, 20:1,
22:3, 22:15, 24:2,
25:18, 45:8, 76:5,
79:7, 109:18
**basic** [1] - 12:24
**basis** [8] - 13:18,
42:25, 45:4, 52:17,
53:23, 84:24, 85:13,
99:6
**Bates** [2] - 41:20,
60:17
**Bates-labeled** [1] -
60:17
**bear** [3] - 7:19, 10:4,
87:11
**bears** [1] - 25:20
**become** [1] - 38:8
**becomes** [1] - 87:4
**BEFORE** [1] - 1:9
**begin** [1] - 70:22
**beginning** [1] - 111:2
**behalf** [4] - 2:11, 2:16,
68:11, 83:24
**behind** [3] - 33:1,
33:2, 33:4
**belief** [8] - 22:8, 22:25,
23:3, 27:23, 33:18,
71:8, 73:11, 76:2
**beliefs** [1] - 9:1
**believes** [1] - 82:21
**below** [1] - 118:21
**Ben** [1] - 58:3
**bench** [1] - 4:3
**benches** [1] - 4:2
**BERMAN** [1] - 1:9
**BERMAN-JACKSON**
[1] - 1:9
**best** [1] - 118:15
**better** [2] - 55:14,
96:11
**between** [26] - 17:5,
28:15, 29:12, 30:6,

37:17, 38:3, 40:24,
41:1, 41:2, 41:10,
48:2, 48:4, 52:11,
55:9, 55:10, 55:13,
55:22, 56:1, 74:4,
81:9, 84:22, 86:1,
100:22, 104:18,
117:4, 117:11
**bias** [7] - 8:20, 76:24,
77:9, 77:19, 86:11,
106:17, 106:21
**biased** [3] - 83:1, 86:4,
112:16
**big** [3] - 11:12, 24:10,
41:23
**binder** [3] - 41:23,
58:25, 59:2
**binders** [2] - 42:2,
55:17
**biography** [1] - 12:24
**bit** [6] - 40:18, 51:1,
70:10, 110:20,
110:21, 115:14
**black** [1] - 81:3
**blame** [1] - 66:8
**blank** [1] - 12:8
**Board** [1] - 92:14
**body** [3] - 103:14,
104:3, 105:16
**body-worn** [3] -
103:14, 104:3,
105:16
**bomb** [2] - 19:24,
102:21
**bombs** [3] - 21:16,
39:10, 39:17
**bond** [1] - 70:11
**bones** [1] - 39:16
**bottom** [3] - 43:23,
58:6, 60:21
**bottom-line** [1] -
43:23
**box** [2] - 4:2, 91:8
**Boys** [2] - 74:12,
74:16
**bravery** [1] - 14:20
**breach** [1] - 35:17
**brief** [8] - 47:13, 50:7,
83:23, 84:3, 85:7,
85:8, 85:18, 112:17
**briefed** [1] - 107:10
**briefing** [2] - 106:20,
107:9
**briefly** [1] - 18:6
**bring** [8] - 3:25, 4:7,
11:3, 11:5, 18:17,
83:7, 88:22, 99:20
**bringing** [1] - 5:7
**brings** [1] - 18:2
**brought** [1] - 26:9

**building** [1] - 76:10
**Building** [1] - 50:25
**bulletin** [2] - 92:3,
93:11
**bunch** [3] - 24:11,
73:23, 81:6
**burden** [3] - 7:12,
11:14, 49:3
**Business** [1] - 54:17
**business** [7] - 54:18,
56:7, 56:12, 56:23,
56:25, 57:1, 109:20

## C

**calculation** [3] -
107:19, 108:13,
117:11
**calculations** [1] -
108:19
**calculus** [1] - 23:21
**calendar** [1] - 108:5
**camera** [3] - 103:14,
104:3, 105:17
**cameras** [1] - 104:21
**canceled** [1] - 61:20
**cannot** [11] - 10:23,
11:3, 12:2, 26:5,
65:22, 72:11, 79:11,
80:17, 89:7, 89:11,
103:23
**Capitol** [50] - 4:18,
5:1, 11:1, 12:10,
13:8, 13:9, 13:15,
19:23, 22:12, 24:20,
31:16, 33:21, 35:17,
38:8, 38:12, 38:21,
38:22, 43:4, 43:14,
47:12, 47:18, 49:22,
49:23, 50:3, 50:25,
55:23, 59:23, 62:21,
63:13, 63:18, 64:1,
64:8, 65:2, 65:8,
65:18, 66:1, 68:16,
70:18, 75:19, 90:17,
92:3, 92:14, 93:2,
93:10, 94:17, 94:18,
95:11, 105:5,
111:21, 115:20
**captured** [1] - 58:5
**captures** [1] - 103:17
**card** [3] - 3:25, 4:5,
6:4
**cards** [1] - 5:15
**care** [2] - 58:12, 63:13
**career** [4] - 92:9,
93:17, 95:3
**careful** [4] - 18:13,
20:20, 49:20, 84:21

**carefully** [1] - 33:6
**carjacking** [1] - 14:13
**carrying** [1] - 26:11
**Case** [2] - 2:4, 2:13
**case** [103] - 4:15, 4:21,
4:22, 4:25, 5:4, 5:16,
5:20, 6:18, 6:20,
6:25, 7:2, 9:15, 10:6,
13:22, 13:24, 13:25,
14:17, 15:6, 16:12,
18:23, 19:1, 19:8,
19:11, 21:24, 23:12,
25:12, 25:16, 28:2,
30:17, 31:24, 34:23,
37:10, 37:16, 37:24,
38:18, 39:21, 42:11,
45:4, 45:17, 49:4,
50:21, 55:16, 56:18,
57:11, 57:12, 63:6,
63:10, 64:10, 64:11,
68:5, 68:8, 68:9,
68:20, 69:4, 70:14,
70:20, 72:2, 72:23,
73:1, 73:3, 73:10,
73:16, 78:16, 78:17,
78:24, 79:17, 80:18,
81:7, 82:6, 84:9,
84:10, 86:5, 87:2,
87:9, 88:7, 88:22,
89:21, 90:2, 90:22,
93:23, 95:19, 95:21,
96:11, 96:23, 97:15,
99:1, 99:2, 100:17,
104:23, 105:19,
106:25, 107:11,
107:15, 108:25,
109:3, 109:25,
110:3, 111:6, 111:7,
112:6, 114:9,
114:21, 118:6
**cases** [4] - 3:8, 16:18,
22:13, 110:19
**categories** [1] - 7:24
**caution** [1] - 115:3
**caveats** [1] - 17:25
**cc'd** [2] - 63:5, 65:1
**CCTV** [1] - 25:15
**cell** [5] - 52:15, 52:18,
55:21, 56:1, 58:6
**Cell** [1] - 40:23
**certain** [4] - 43:21,
51:8, 64:9, 108:7
**certainly** [5] - 3:16,
28:25, 36:8, 42:6,
84:15
**certificate** [7] - 42:5,
42:19, 49:14, 49:17,
92:10, 93:6, 118:18
**CERTIFICATE** [1] -
118:10

**certify** [1] - 118:13
**cetera** [4] - 7:8, 36:7,
46:5, 83:10
**challenge** [1] - 77:6
**challenging** [4] - 16:9,
45:10, 49:15, 66:1
**chance** [1] - 68:15
**change** [1] - 85:17
**changed** [1] - 116:21
**character** [17] - 11:13,
14:22, 14:25, 15:2,
15:4, 15:11, 15:12,
15:13, 15:16, 15:20,
15:24, 16:1, 67:23,
90:20, 94:23
**charge** [6] - 15:20,
26:5, 29:6, 38:18,
71:9, 104:14
**charged** [32] - 4:20,
5:1, 9:19, 14:16,
16:24, 19:17, 23:12,
25:11, 25:17, 25:18,
25:20, 28:18, 29:5,
32:9, 32:10, 34:18,
34:23, 35:5, 35:6,
35:7, 35:8, 35:13,
36:3, 36:15, 46:18,
73:10, 75:21, 76:17,
80:5, 80:6, 93:3,
98:7
**charges** [5] - 20:3,
36:23, 36:24, 73:19,
74:22
**charging** [1] - 31:3
**chat** [1] - 29:5
**check** [4] - 6:15,
104:8, 110:7, 111:17
**checked** [1] - 6:4
**chef** [1] - 114:21
**chief** [11] - 19:1,
68:20, 72:23, 73:3,
78:16, 82:6, 86:5,
87:3, 95:21, 100:17,
106:25
**children** [2] - 8:22,
11:25
**choose** [1] - 20:11
**chooses** [1] - 13:9
**chose** [1] - 77:17
**CHRISTOPHER** [1] -
1:16
**Christopher** [1] - 2:16
**Circuit** [4] - 13:21,
13:24, 14:8, 14:17
**circulate** [2] - 3:23,
5:12
**circumstance** [1] -
86:10
**circumstances** [5] -
11:18, 13:14, 49:10,

84:9, 111:6
**cited** [1] - 14:17
**civilian** [1] - 110:8
**civilians** [1] - 115:23
**claim** [2] - 15:21,
15:25
**claimed** [1] - 8:9
**claiming** [3] - 11:11,
39:18, 85:1
**clarification** [2] - 19:4,
21:21
**clarify** [2] - 55:14, 94:5
**clarity** [2] - 50:22,
67:16
**class** [1] - 85:6
**classification** [1] -
47:8
**classify** [1] - 30:13
**clear** [17] - 12:14,
13:16, 14:22, 30:21,
35:5, 48:19, 50:18,
50:23, 51:24, 57:7,
63:4, 82:4, 86:13,
88:10, 88:17, 91:16,
118:1
**clearer** [1] - 55:20
**clearly** [2] - 3:10, 28:6
**clerk** [3] - 18:16,
62:10, 71:1
**client** [16] - 21:16,
21:23, 21:24, 37:12,
61:19, 67:1, 77:9,
77:12, 80:2, 82:9,
87:24, 96:24, 96:25,
108:23, 110:10,
110:14
**client's** [1] - 95:13
**close** [2] - 24:1, 69:5
**closely** [2] - 7:4, 8:24
**closing** [3] - 20:2,
27:6, 38:2
**cmacchiaroli@**
**silvermanthompson**
**.com** [1] - 1:19
**Code** [2] - 71:14,
71:17
**collateral** [3] - 8:4,
10:16, 92:25
**colleagues** [1] - 2:9
**college** [1] - 13:2
**colloquy** [1] - 37:14
**COLUMBIA** [1] - 1:1
**Columbia** [1] - 1:13
**comfortable** [1] -
56:15
**coming** [10] - 6:24,
13:12, 25:10, 32:21,
46:14, 68:3, 68:4,
90:23, 95:23, 115:10
**comm** [1] - 47:2

**commendation** [2] -
90:13, 91:9
**commendations** [3] -
14:6, 14:10, 14:19
**commit** [1] - 91:23
**commitment** [1] -
78:13
**committed** [8] - 16:21,
24:16, 27:5, 27:8,
59:11, 94:25, 103:23
**common** [1] - 56:5
**communicate** [1] -
67:2
**communicated** [4] -
65:6, 107:12,
107:13, 108:23
**communication** [5] -
24:23, 25:12, 65:24,
86:1, 100:22
**communications** [17]
- 43:3, 44:16, 44:19,
54:5, 55:9, 55:10,
55:12, 57:8, 73:18,
78:7, 79:25, 80:11,
81:1, 82:10, 100:12,
101:11, 102:9
**community** [2] - 9:2,
14:21
**compel** [1] - 105:25
**complaining** [1] - 83:1
**complaint** [3] - 73:5,
73:9, 75:20
**complete** [4] - 39:19,
70:1, 108:3, 118:15
**completely** [4] -
25:13, 33:19, 108:2
**completeness** [1] -
101:18
**comply** [3] - 62:21,
63:17, 68:16
**complying** [1] - 63:4
**composite** [2] -
102:11, 105:9
**computer** [1] - 1:25
**computer-aided** [1] -
1:25
**comrades** [1] - 19:22
**conceal** [1] - 80:3
**concede** [1] - 31:7
**concedes** [1] - 10:16
**concern** [2] - 37:15,
84:6
**concerned** [3] - 27:2,
34:24, 79:10
**concerning** [1] - 82:6
**concerns** [3] - 6:24,
21:23, 94:10
**concludes** [1] - 118:8
**concocted** [1] - 35:2
**concocting** [1] - 37:21

**concoction** [1] - 38:6
**condition** [1] - 8:23
**conduct** [16] - 5:19,
9:23, 14:1, 15:18,
22:6, 25:2, 45:6,
47:11, 50:1, 50:2,
50:13, 71:8, 73:21,
74:4, 74:6, 79:14
**conducted** [1] - 36:6
**conference** [9] - 2:4,
3:11, 3:12, 3:13,
86:12, 107:25,
111:7, 113:3, 117:19
**CONFERENCE** [1] -
1:8
**confirm** [1] - 109:15
**confirmation** [1] -
62:25
**confirmed** [1] - 72:9
**conflict** [1] - 113:19
**conflicts** [1] - 114:4
**conformity** [1] - 90:21
**confusing** [3] - 26:2,
26:17, 102:1
**Congratulations** [1] -
90:12
**congressional** [1] -
7:4
**conjunction** [1] -
92:19
**connection** [2] -
29:24, 74:18
**conscious** [1] -
106:11
**consent** [1] - 11:17
**consequences** [4] -
8:4, 10:17, 11:1,
93:1
**consideration** [1] -
11:16
**considered** [2] -
92:19, 118:18
**consist** [1] - 3:19
**consistent** [3] - 26:24,
80:13, 97:17
**conspiracy** [2] - 80:4,
80:5
**constitute** [1] - 28:17
**constituted** [1] - 28:20
**constitutes** [1] -
118:13
**Constitution** [1] - 39:1
**contact** [6] - 52:25,
64:5, 64:15, 68:14,
87:25, 88:20
**contacted** [3] - 63:8,
64:2, 67:5
**contain** [1] - 82:18
**contained** [1] - 101:5
**contend** [1] - 36:9

**contention** [1] - 21:12
**context** [6] - 12:5,
13:22, 19:20, 21:2,
54:25, 104:1
**continuance** [6] -
67:12, 67:21, 68:4,
69:6, 69:10, 80:19
**continue** [1] - 66:11
**continued** [2] - 47:6,
48:8
**continuing** [4] - 47:6,
48:8, 69:20, 94:10
**conversation** [4] -
34:16, 53:17, 79:8,
81:13, 86:19, 89:2
**conversations** [6] -
6:22, 41:10, 48:4,
79:9, 80:11, 82:15
**conveyed** [4] - 107:18,
109:5, 109:8, 109:16
**convict** [1] - 13:17
**convicted** [1] - 13:5
**conviction** [1] - 8:5
**cooperated** [1] - 83:5
**cooperating** [3] - 76:7,
77:1, 80:16
**cooperation** [1] - 76:6
**cooperator** [8] -
66:25, 77:7, 77:8,
82:22, 85:13, 85:24,
88:1, 112:15
**copies** [3] - 18:16,
18:17, 113:16
**copy** [2] - 64:11
**correct** [23] - 35:9,
43:8, 44:2, 51:4,
53:2, 53:3, 56:11,
58:10, 66:3, 66:6,
66:12, 73:4, 75:17,
76:4, 76:6, 79:1,
81:9, 85:17, 95:24,
101:11, 101:24,
109:21, 114:14
**correctly** [1] - 11:13
**correspondence** [1] -
63:6
**corroborated** [1] -
25:9
**corroborates** [3] -
25:8, 73:11, 75:24
**corrupt** [1] - 14:15
**corruptly** [3] - 3:7,
29:25
**couch** [1] - 64:24
**counsel** [18] - 2:7,
2:12, 2:21, 22:20,
23:7, 26:9, 51:4,
64:1, 64:8, 65:19,
82:16, 106:15,
106:16, 109:6,

110:7, 111:21
**Count** [7] - 39:5,
108:7, 108:9,
108:14, 109:9,
109:10
**counter** [1] - 14:4
**country** [1] - 65:21
**couple** [1] - 117:3
**course** [12] - 10:9,
12:2, 26:4, 33:25,
37:25, 38:4, 48:9,
67:2, 79:13, 81:25,
90:17
**court** [10] - 14:7, 14:9,
15:17, 26:12, 79:8,
81:17, 89:16, 95:13,
96:2, 96:8
**COURT** [224] - 1:1,
1:9, 2:14, 2:18, 5:10,
5:12, 18:5, 18:9,
18:22, 19:6, 20:4,
20:9, 21:4, 21:10,
22:10, 23:13, 25:14,
26:18, 27:3, 28:9,
29:23, 30:10, 30:22,
31:2, 32:3, 32:8,
33:12, 34:2, 34:13,
35:3, 35:18, 35:23,
36:12, 36:21, 37:1,
37:3, 38:7, 38:14,
38:20, 39:20, 40:9,
40:25, 41:6, 41:16,
41:22, 41:25, 42:4,
42:21, 42:25, 43:6,
43:12, 43:24, 44:3,
44:7, 44:14, 44:22,
45:20, 45:24, 46:7,
46:12, 46:17, 47:1,
47:21, 48:1, 48:23,
50:21, 51:9, 51:18,
51:20, 51:24, 52:9,
52:24, 53:4, 53:9,
53:16, 53:20, 53:23,
54:3, 54:6, 55:8,
55:15, 56:9, 56:14,
56:20, 57:11, 57:14,
57:20, 58:8, 58:11,
58:16, 58:20, 58:24,
59:13, 59:15, 59:17,
60:3, 60:25, 61:4,
61:17, 61:22, 63:21,
63:25, 64:17, 64:21,
65:15, 65:25, 66:4,
66:7, 66:16, 66:20,
69:13, 69:18, 71:3,
71:11, 71:16, 72:4,
72:22, 73:5, 73:22,
74:15, 75:3, 75:8,
75:20, 75:25, 76:3,
76:11, 77:13, 77:15,

77:18, 78:1, 78:4,
78:8, 78:20, 79:2,
79:5, 79:21, 80:5,
80:22, 81:5, 81:10,
81:14, 82:2, 82:25,
84:15, 85:19, 86:16,
87:16, 88:11, 88:15,
88:18, 89:1, 89:14,
90:10, 90:19, 91:14,
91:18, 92:8, 92:21,
92:24, 93:18, 94:13,
95:10, 95:18, 95:25,
96:5, 96:16, 96:19,
96:25, 97:5, 97:23,
98:10, 98:21, 98:23,
99:7, 99:15, 100:11,
100:24, 101:7,
101:16, 102:4,
102:14, 102:22,
103:3, 103:11,
103:19, 104:18,
104:24, 105:11,
105:14, 106:8,
106:23, 107:3,
107:6, 107:17,
107:24, 108:5,
108:12, 108:22,
109:12, 109:18,
109:23, 110:9,
110:15, 111:1,
111:10, 111:17,
112:23, 113:6,
113:23, 114:1,
114:12, 114:15,
114:23, 115:4,
115:7, 115:15,
116:4, 116:7,
116:17, 116:20,
116:25, 117:7,
117:15, 117:20
**Court** [49] - 1:22, 1:23,
18:12, 18:21, 19:4,
20:25, 21:21, 22:1,
22:24, 23:6, 25:7,
28:5, 29:11, 29:17,
29:19, 30:15, 30:18,
30:19, 30:20, 34:16,
37:7, 37:19, 37:23,
38:5, 47:14, 55:6,
60:13, 62:12, 62:23,
63:14, 65:23, 67:15,
67:22, 72:7, 72:15,
82:14, 84:6, 98:18,
99:3, 99:5, 99:6,
100:6, 100:9,
102:17, 102:18,
114:7, 115:1,
115:25, 118:24
**Court's** [5] - 18:8,
69:3, 85:16, 94:4,
97:21

**COURTROOM** [6] -
2:2, 111:9, 113:21,
113:25, 117:13,
117:18
**courtroom** [4] - 2:6,
2:19, 84:23, 118:4
**cousin** [1] - 76:9
**cover** [1] - 31:23
**covered** [1] - 7:15
**covers** [1] - 56:16
**COVID** [2] - 59:8,
59:25
**cows** [1] - 99:10
**CPWL** [1] - 26:11
**craft** [1] - 40:12
**crafting** [1] - 56:15
**craziest** [1] - 50:24
**create** [1] - 3:17
**credibility** [6] - 72:16,
77:6, 83:25, 85:24,
89:13, 112:22
**credit** [3] - 77:1,
83:10, 109:13
**crime** [3] - 16:21,
33:22, 103:23
**crimes** [1] - 14:21
**criminal** [6] - 9:15,
14:15, 15:6, 63:6,
82:10, 107:11
**Criminal** [2] - 1:3, 2:4
**cross** [39] - 15:16,
24:6, 24:10, 26:14,
28:1, 28:3, 33:5,
34:3, 72:13, 72:18,
72:24, 77:4, 77:19,
77:24, 79:25, 81:15,
81:17, 83:11, 83:18,
84:25, 85:4, 85:12,
86:10, 86:22, 87:5,
87:14, 87:17, 87:20,
89:12, 90:3, 90:5,
96:7, 98:5, 99:4,
99:10, 99:15,
106:20, 107:4,
112:14
**cross-examination** [8]
- 15:16, 28:3, 72:18,
72:24, 81:17, 83:11,
99:15, 107:4
**cross-examine** [21] -
24:6, 28:1, 33:5,
72:13, 77:19, 79:25,
81:15, 83:18, 85:4,
85:12, 86:10, 86:22,
87:14, 87:17, 89:12,
90:3, 90:5, 96:7,
99:10, 106:20,
112:14
**cross-examines** [1] -
34:3

**cross-examining** [4] - 24:10, 77:24, 87:5, 99:4
**crypt** [1] - 49:22
**cumulative** [1] - 100:14
**cure** [1] - 23:6
**curious** [1] - 110:1
**cuts** [1] - 71:22

**D**

**D.C** [2] - 1:6, 13:21
**daily** [1] - 84:24
**dance** [1] - 32:16
**data** [1] - 56:9
**date** [21] - 3:8, 13:7, 13:14, 13:15, 27:24, 38:13, 38:22, 46:24, 52:1, 52:2, 59:8, 62:8, 63:14, 70:7, 70:8, 98:13, 107:9, 111:4, 114:2, 115:9
**Dated** [1] - 118:23
**dates** [3] - 111:22, 115:10, 115:13
**days** [5] - 68:21, 68:23, 114:9, 114:20, 115:3
**DC** [2] - 1:14, 1:18
**deadline** [2] - 115:9, 115:25
**deal** [3] - 3:1, 40:1, 115:22
**dealing** [2] - 14:13, 67:3
**dealt** [2] - 32:10, 78:10
**debate** [1] - 69:4
**December** [3] - 91:16, 93:11, 111:14
**decent** [1] - 20:12
**decide** [2] - 10:4, 101:17
**decided** [3] - 5:19, 7:25, 78:17
**decision** [3] - 22:1, 96:10, 109:20
**decisions** [5] - 12:6, 12:7, 16:15, 31:3, 31:12
**declarant** [1] - 56:12
**decorated** [1] - 91:3
**dedication** [1] - 14:11
**deepening** [1] - 48:8
**defend** [3] - 13:18, 21:23, 39:1
**defendant** [64] - 2:8, 4:18, 4:19, 7:7, 8:9, 8:13, 8:18, 8:21, 9:8,

9:9, 9:11, 9:13, 10:8, 10:18, 10:23, 11:14, 11:19, 11:23, 12:13, 12:23, 13:1, 13:17, 14:4, 15:6, 15:7, 15:23, 16:1, 16:7, 16:21, 17:5, 17:9, 17:19, 26:10, 26:15, 30:16, 43:10, 43:18, 44:1, 44:9, 46:9, 46:10, 46:18, 48:5, 48:22, 48:24, 49:1, 50:20, 51:10, 59:5, 59:6, 59:11, 60:19, 84:12, 92:1, 92:15, 94:7, 94:10, 99:9, 100:2, 106:1, 107:12, 111:2, 117:1
**Defendant** [4] - 1:6, 73:23, 73:24, 73:25
**DEFENDANT** [3] - 1:16, 109:17, 109:22
**Defendant's** [1] - 40:23
**defendant's** [14] - 8:25, 9:1, 14:3, 15:7, 38:8, 39:6, 55:21, 62:2, 69:20, 76:17, 78:14, 94:5, 117:1
**defending** [1] - 19:23
**defense** [75] - 7:12, 9:20, 10:5, 10:15, 11:10, 11:12, 13:1, 14:4, 15:21, 15:25, 16:18, 22:7, 23:5, 26:9, 27:21, 28:1, 34:15, 34:22, 35:2, 37:6, 37:15, 37:21, 41:7, 42:5, 42:9, 42:22, 49:15, 51:4, 53:19, 53:25, 55:3, 57:4, 57:5, 59:22, 60:14, 62:7, 62:17, 63:3, 64:13, 65:11, 65:12, 67:3, 67:7, 67:10, 67:11, 67:15, 68:2, 68:12, 68:17, 69:9, 70:14, 72:8, 79:10, 79:19, 80:17, 81:25, 82:16, 83:24, 84:2, 85:9, 88:4, 88:5, 88:6, 88:22, 89:13, 96:11, 96:20, 97:18, 100:8, 101:2, 102:18, 106:21, 112:16, 117:8
**defense's** [4] - 18:18, 31:24, 87:25, 88:1
**defenses** [3] - 10:11, 18:12, 73:15

99:16
**define** [1] - 34:22
**defined** [1] - 30:2
**definition** [2] - 100:3, 100:5
**delay** [1] - 37:11
**delete** [2] - 47:18
**delivered** [1] - 111:22
**democracy** [2] - 9:3, 10:13
**depict** [1] - 43:14
**depicted** [1] - 50:13
**depicting** [1] - 46:13
**DEPUTY** [6] - 2:2, 111:9, 113:21, 113:25, 117:13, 117:18
**deputy** [3] - 18:16, 62:10, 71:1
**descent** [1] - 91:4
**describe** [2] - 6:25, 9:12
**described** [3] - 17:8, 26:16, 47:10
**describes** [1] - 11:23, 105:21
**describing** [1] - 45:16
**description** [2] - 22:6, 49:24
**desperately** [2] - 86:18, 111:14
**detail** [2] - 23:19, 88:3
**Detailed** [1] - 40:23
**detailed** [1] - 49:24
**determination** [1] - 17:7, 76:14, 76:15
**developed** [1] - 31:11
**developing** [1] - 88:21
**devices** [1] - 40:1
**difference** [8] - 17:5, 27:13, 27:15, 28:14, 30:5, 52:11, 84:22, 104:18
**different** [8] - 27:11, 29:24, 65:1, 65:10, 85:22, 89:22, 104:21, 104:23
**differently** [1] - 102:2
**difficult** [2] - 29:17, 51:1
**diffuse** [2] - 19:13, 20:15
**diffusing** [1] - 21:16
**dire** [10] - 3:23, 4:4, 4:12, 4:17, 5:19, 5:23, 5:24, 6:9, 6:10, 7:9
**direct** [12] - 51:22, 66:14, 77:24, 78:9, 80:8, 87:13, 87:16, 87:18, 87:19, 99:2,

**direction** [1] - 71:21
**directly** [9] - 10:8, 25:5, 27:16, 29:19, 33:18, 51:17, 60:24, 73:9, 84:7
**disagree** [2] - 21:11, 29:9
**disagreements** [1] - 3:19
**disappoint** [1] - 72:7
**disassembled** [1] - 118:19
**disavowed** [1] - 21:6, 32:4
**disavowing** [1] - 16:6
**discretion** [2] - 14:9, 76:16
**discuss** [2] - 78:18, 103:12
**discussed** [1] - 113:14
**discussing** [2] - 46:13, 47:12
**discussion** [3] - 69:20, 79:7, 107:14
**discussions** [2] - 22:22, 109:18
**dismiss** [4] - 34:20, 35:12, 108:9, 109:9
**dispatched** [1] - 40:1
**disposition** [2] - 14:3, 107:14
**distinction** [2] - 26:1, 26:6
**distinctions** [2] - 30:8, 30:12
**distracting** [1] - 79:13
**DISTRICT** [3] - 1:1, 1:1, 1:9
**District** [1] - 1:13
**Docket** [3] - 7:22, 7:23, 58:23
**document** [2] - 40:18, 59:5, 59:6
**documents** [3] - 82:13, 84:8, 85:1
**DOHRMANN** [70] - 1:11, 2:10, 5:9, 25:24, 34:12, 34:14, 35:15, 35:22, 36:4, 36:18, 36:25, 40:22, 41:3, 41:17, 41:24, 42:3, 42:22, 43:9, 43:16, 44:2, 44:6, 46:1, 46:8, 46:15, 46:20, 47:4, 47:24, 48:2, 48:17, 50:5, 50:14, 50:23, 51:16, 51:19, 51:22, 52:8, 55:19, 56:11, 69:17,

72:3, 73:8, 76:8, 79:4, 79:6, 81:3, 81:8, 81:11, 81:23, 82:11, 92:11, 94:1, 95:9, 99:14, 101:1, 101:14, 101:24, 105:13, 105:15, 107:16, 107:21, 108:1, 108:6, 108:15, 110:5, 111:15, 113:5, 115:8, 116:5, 116:16, 116:21
**Dohrmann** [4] - 2:11, 25:21, 60:25, 107:15
**domestic** [1] - 39:2
**done** [5] - 32:6, 68:17, 70:4, 87:11, 117:12
**door** [1] - 11:4, 11:5, 11:7
**doubling** [1] - 111:5
**down** [13] - 4:5, 23:17, 23:23, 47:3, 47:5, 47:16, 47:17, 47:22, 48:12, 48:16, 55:2, 102:1, 112:2
**downed** [3] - 102:21, 104:4, 105:17
**drafts** [1] - 68:13
**draw** [2] - 20:19, 30:12
**drawing** [1] - 30:7
**drawn** [1] - 39:12
**drug** [1] - 14:12
**due** [4] - 112:11, 113:1, 113:14, 113:16
**during** [1] - 5:7, 5:18, 38:1, 57:11, 57:12, 63:9, 64:10, 67:2, 81:20, 90:16, 104:13, 118:4
**dust** [1] - 98:3
**duties** [2] - 102:20, 105:4
**duty** [8] - 13:15, 14:20, 19:7, 39:25, 40:4, 98:13, 103:25, 105:3

**E**

**early** [1] - 4:20
**earth** [1] - 106:14
**easily** [3] - 45:12, 57:9, 99:3
**effect** [3] - 52:20, 74:5, 114:10
**effectively** [1] - 37:12
**efficient** [2] - 109:25, 111:20

**efforts** [1] - 81:25
**either** [8] - 7:6, 8:20, 14:11, 71:16, 96:2, 98:19, 100:7, 111:3
**elaborate** [1] - 103:5
**elaboration** [1] - 20:18
**element** [7] - 3:6, 3:8, 14:14, 15:20, 15:25, 29:18, 29:25
**elements** [1] - 91:19
**elicit** [9] - 33:15, 38:1, 57:9, 77:8, 77:9, 80:17, 83:14, 86:8, 106:21
**elicited** [1] - 69:12
**eliciting** [1] - 20:25
**eliminate** [1] - 60:20
**ELIZABETH** [1] - 118:12
**Elizabeth** [2] - 1:22, 118:24
**elsewhere** [1] - 16:20
**email** [2] - 106:16, 116:10
**Email** [2] - 1:15, 1:19
**emailed** [2] - 32:24, 63:11
**embark** [1] - 16:15
**employee** [1] - 62:15
**employees** [1] - 112:15
**employment** [1] - 11:1
**encourage** [1] - 10:19
**encourages** [1] - 8:11
**end** [4] - 9:7, 97:3, 111:23, 115:13
**enemies** [1] - 39:2
**enforceable** [1] - 63:12
**enforcement** [16] - 11:20, 12:4, 13:6, 16:10, 17:20, 24:22, 30:23, 31:8, 32:1, 62:15, 72:14, 77:10, 77:11, 87:23, 98:25
**engage** [1] - 14:15
**enter** [1] - 38:11
**entered** [1] - 76:9
**entering** [2] - 24:21, 33:21
**enthusiastic** [1] - 70:6
**entire** [5] - 5:14, 5:18, 11:9, 37:16, 41:18
**entirely** [1] - 55:2
**entities** [1] - 36:8
**entitled** [7] - 26:14, 36:5, 43:17, 48:6, 83:7, 94:8, 101:23
**entrapment** [1] - 14:4
**envelope** [2] - 12:18,

103:21
**envision** [1] - 98:19
**error** [1] - 92:17
**especially** [1] - 77:10
**essential** [9] - 14:14, 15:20, 15:25, 22:7, 23:5, 25:6, 37:5, 77:12, 87:25
**essentially** [1] - 113:11
**establish** [15] - 9:15, 26:25, 27:18, 27:20, 29:20, 29:23, 43:22, 44:4, 53:8, 57:16, 60:11, 60:16, 77:18, 89:15, 90:20
**established** [4] - 37:23, 54:10, 79:11, 111:23
**establishes** [1] - 94:23
**establishing** [2] - 9:15, 43:25
**et** [4] - 7:8, 36:7, 46:5, 83:10
**evening** [1] - 64:25
**event** [3] - 8:9, 9:7, 87:3
**events** [3] - 7:5, 44:4, 46:22
**eventually** [2] - 25:20, 68:13
**everywhere** [1] - 35:12
**evidence** [76] - 7:8, 7:24, 8:3, 8:8, 8:10, 8:12, 8:16, 8:17, 11:13, 12:1, 12:3, 12:21, 13:11, 13:12, 14:2, 14:5, 14:10, 14:18, 14:22, 15:1, 15:7, 15:8, 15:9, 15:10, 15:13, 16:23, 17:23, 18:19, 19:5, 21:15, 21:18, 21:19, 23:23, 25:11, 26:24, 28:5, 32:22, 38:11, 39:2, 39:16, 42:18, 43:12, 44:13, 53:7, 53:9, 53:10, 53:12, 53:14, 53:15, 53:16, 53:17, 54:20, 55:9, 55:16, 56:25, 59:19, 60:10, 67:23, 71:7, 80:1, 80:3, 83:20, 84:7, 85:6, 86:18, 86:21, 93:21, 94:8, 95:17, 96:15, 100:15, 102:1, 103:23, 105:20, 105:23, 106:4

**Evidence** [2] - 12:22, 15:1
**evidence-class** [1] - 85:6
**evil** [1] - 30:1
**exact** [4] - 37:15, 75:18, 98:18, 108:19
**exactly** [8] - 30:18, 34:6, 51:11, 70:6, 86:13, 90:22, 103:20, 106:9
**examination** [14] - 15:16, 28:3, 72:18, 72:24, 77:25, 81:17, 83:11, 87:14, 87:17, 99:2, 99:15, 100:6, 104:13, 107:4
**examine** [22] - 16:22, 24:6, 28:1, 33:5, 72:13, 77:19, 79:25, 81:15, 83:18, 85:4, 85:12, 86:10, 86:22, 87:14, 87:17, 89:12, 90:3, 90:5, 96:7, 99:10, 106:20, 112:14
**examines** [1] - 34:3
**examining** [5] - 24:10, 77:24, 87:5, 87:6, 99:4
**example** [5] - 8:21, 13:2, 46:5, 68:19, 82:22
**examples** [2] - 8:12, 22:23
**exceeding** [1] - 118:5
**exception** [2] - 15:6, 57:1
**exceptionally** [1] - 52:22
**exceptions** [1] - 98:2
**excerpted** [2] - 40:25, 41:4
**excerpts** [2] - 41:9, 102:23
**exchange** [4] - 47:6, 48:4, 101:19, 108:8
**exchanged** [2] - 58:21, 101:10
**exchanges** [1] - 101:18
**exciting** [1] - 2:19
**exclude** [6] - 8:17, 8:25, 9:9, 39:3, 117:5, 117:10
**excluded** [6] - 8:8, 8:16, 10:18, 14:7, 14:18, 93:24
**excluding** [1] - 14:9
**exculpatory** [1] -

99:24
**excuse** [1] - 5:22
**exercise** [1] - 76:15
**exhibit** [23] - 18:18, 22:11, 22:21, 34:10, 39:11, 40:21, 40:22, 41:19, 50:14, 51:12, 52:6, 54:24, 69:20, 71:19, 73:1, 95:20, 98:19, 100:20, 101:5, 102:3, 107:1, 113:15
**Exhibit** [18] - 38:7, 39:3, 39:7, 40:20, 49:21, 54:15, 55:20, 57:3, 57:21, 57:23, 71:25, 72:1, 87:1, 87:2, 90:11, 91:7, 91:8, 94:20
**exhibits** [32] - 7:16, 17:18, 18:3, 18:11, 18:13, 18:14, 18:23, 21:16, 37:9, 53:10, 58:14, 62:1, 62:2, 67:9, 67:10, 67:21, 70:17, 72:17, 78:12, 82:5, 86:18, 95:12, 95:16, 96:20, 100:13, 100:23, 102:8, 102:9, 113:8, 113:9, 113:10, 113:15
**Exhibits** [1] - 78:10
**exists** [2] - 39:3, 103:11
**exit** [1] - 24:22
**expect** [1] - 118:3
**expected** [2] - 28:4, 61:20
**experience** [6] - 10:25, 11:20, 22:3, 22:15, 30:23, 31:9
**expert** [10] - 17:6, 17:13, 22:19, 23:1, 23:8, 25:2, 30:13, 30:21, 30:25, 71:6
**explain** [12] - 5:20, 22:8, 23:10, 24:25, 31:17, 33:25, 39:9, 42:4, 66:17, 66:19, 67:13, 89:23
**explained** [1] - 13:11
**explains** [1] - 12:6
**explanation** [1] - 31:20
**explanations** [1] - 17:25
**exploit** [1] - 27:20
**explosive** [1] - 40:1
**explosives** [1] - 20:15

**extended** [1] - 108:25
**extending** [1] - 70:4
**extension** [1] - 117:8
**extent** [9] - 76:20, 83:3, 87:15, 91:16, 96:24, 101:25, 113:6, 115:19, 116:7
**extraneous** [1] - 60:23
**extremely** [2] - 6:19, 110:19
**extrinsic** [3] - 105:20, 105:23, 106:4
**eyes** [1] - 30:25

**F**

**F.2d** [1] - 14:18
**F.3d** [1] - 13:23
**Facebook** [43] - 25:19, 42:5, 42:10, 42:14, 42:24, 43:2, 43:7, 44:19, 46:23, 49:14, 50:15, 50:18, 51:4, 51:12, 51:15, 51:22, 54:15, 54:17, 54:22, 55:5, 55:24, 56:4, 56:8, 56:10, 56:17, 56:22, 57:15, 57:19, 57:23, 58:1, 58:2, 72:1, 73:18, 78:22, 81:4, 88:13, 100:11, 101:11, 102:8, 105:21, 105:23
**facing** [1] - 107:20
**fact** [49] - 4:24, 4:25, 10:10, 16:23, 17:14, 19:12, 20:5, 22:20, 25:10, 33:7, 36:2, 38:12, 38:21, 43:7, 43:15, 44:8, 44:22, 45:20, 48:23, 57:15, 57:17, 58:5, 59:5, 59:7, 60:4, 60:11, 60:16, 66:8, 83:8, 83:9, 84:13, 84:18, 85:10, 89:25, 93:10, 93:21, 95:2, 96:1, 99:23, 101:9, 103:3, 103:4, 103:25, 106:6, 108:24, 109:5, 116:25, 117:7
**facts** [17] - 13:3, 20:2, 27:5, 27:6, 27:7, 34:7, 34:8, 38:1, 50:10, 76:5, 77:8, 80:8, 80:18, 83:14, 84:9, 86:8, 90:1
**factual** [2] - 20:9, 56:16
**failure** [1] - 16:19

**fair** [5] - 6:18, 69:16, 76:11, 83:11, 95:11
**fairly** [3] - 7:7, 43:14, 59:4
**fairness** [2] - 39:6, 92:18
**falling** [1] - 75:19
**falls** [1] - 94:25
**familiar** [2] - 64:10, 64:19
**family** [5] - 8:25, 10:10, 10:19, 11:2, 95:4
**far** [5] - 5:3, 25:23, 30:6, 70:4, 91:7
**fast** [2] - 16:13, 50:9
**faster** [1] - 115:21
**favor** [2] - 29:2, 76:25
**favorable** [1] - 88:5
**FBI** [11] - 1:20, 16:12, 29:4, 35:24, 36:6, 45:8, 52:20, 65:10, 96:22, 98:12, 115:20
**FCRR** [3] - 1:22, 118:12, 118:24
**Federal** [1] - 12:21
**federal** [7] - 29:1, 35:15, 35:25, 36:6, 36:10, 36:12, 37:17
**feelings** [1] - 7:5
**fell** [3] - 31:16, 33:20, 47:12
**fellow** [4] - 19:22, 19:25, 39:18, 55:22
**felonies** [4] - 22:11, 25:18, 31:13, 74:21
**felonious** [2] - 25:2, 50:1
**felony** [10] - 8:4, 17:6, 24:9, 25:11, 26:1, 26:14, 73:19, 74:22, 75:11, 109:10
**few** [1] - 70:2
**fewer** [1] - 7:15
**figure** [5] - 57:16, 61:23, 61:24, 86:17, 105:2
**filed** [2] - 7:22, 9:11
**files** [1] - 47:18
**filings** [1] - 31:7
**final** [1] - 113:9
**finally** [3] - 5:21, 16:6, 17:17
**financial** [1] - 8:23
**fine** [8] - 20:17, 30:20, 85:20, 89:23, 91:3, 111:5, 112:23, 116:5
**fingerprints** [2] - 16:22, 98:3
**finish** [3] - 32:11,

32:12, 53:9
**fired** [1] - 19:9
**First** [1] - 14:17
**first** [12] - 3:21, 9:12, 23:20, 26:4, 51:3, 64:24, 65:9, 70:7, 70:9, 85:5, 86:6, 114:13
**fit** [3] - 4:1, 7:1, 56:3
**five** [1] - 46:10
**flagging** [1] - 87:3
**flowing** [1] - 37:16
**flux** [1] - 106:9
**focus** [2] - 37:20, 79:14
**focused** [2] - 35:19, 75:17
**folded** [1] - 7:13
**follow** [4] - 4:8, 4:11, 18:7, 67:23
**follow-up** [4] - 4:8, 4:11, 18:7, 67:23
**followed** [2] - 6:2, 24:21
**following** [2] - 7:4, 37:22
**Footnote** [1] - 10:24
**FOR** [3] - 1:1, 1:11, 1:16
**force** [3] - 14:6, 38:13, 40:13
**foregoing** [1] - 118:13
**foreign** [1] - 39:2
**foreseeability** [1] - 75:6
**foreseeable** [2] - 29:11, 75:9
**form** [2] - 10:17, 15:15
**format** [1] - 5:25
**formed** [2] - 6:6, 6:7
**former** [1] - 20:12
**formulated** [1] - 6:3
**forth** [5] - 2:24, 37:17, 71:7, 100:21
**forward** [1] - 97:19
**foundation** [1] - 45:17
**framework** [1] - 112:5
**framing** [1] - 35:1
**frankly** [4] - 11:9, 63:13, 64:13, 96:9
**frequently** [1] - 11:8
**Friday** [11] - 62:11, 62:23, 114:3, 114:4, 114:18, 115:25, 116:7, 116:8, 116:9
**friends** [11] - 23:16, 54:24, 55:5, 55:24, 56:4, 56:8, 56:10, 56:17, 56:22, 57:16, 57:19

**front** [9] - 11:5, 24:10, 28:11, 28:22, 32:19, 88:18, 88:23, 95:19, 104:15
**full** [3] - 21:19, 25:14, 118:14

## G

**gathering** [1] - 3:5
**general** [5] - 64:1, 64:8, 65:19, 111:21, 112:20
**generally** [4] - 16:19, 94:24, 107:24, 110:13
**gentleman** [2] - 26:19, 75:22
**gentlemen** [1] - 111:13
**get-go** [1] - 5:22
**gin** [1] - 8:18
**given** [12] - 3:6, 3:7, 3:9, 4:22, 14:8, 35:20, 69:9, 72:19, 110:19, 114:7, 116:25, 117:7
**glad** [1] - 2:20
**goal** [1] - 23:15
**God** [1] - 113:24
**govern** [3] - 14:23, 86:25, 112:6
**governing** [1] - 24:11
**government** [106] - 2:7, 5:6, 7:22, 7:25, 8:2, 8:10, 8:17, 8:21, 9:4, 9:8, 9:14, 11:11, 11:14, 12:15, 12:19, 14:1, 18:16, 20:23, 21:15, 21:25, 22:20, 25:25, 26:8, 26:14, 27:18, 29:20, 31:25, 34:2, 34:19, 34:23, 36:8, 37:15, 37:21, 37:23, 38:10, 40:3, 43:16, 44:12, 45:12, 48:6, 48:14, 50:7, 50:11, 53:19, 55:6, 55:25, 57:6, 58:4, 59:3, 60:14, 62:12, 62:14, 62:15, 63:22, 64:8, 64:10, 66:24, 67:9, 68:7, 68:8, 68:20, 69:13, 70:8, 71:2, 72:19, 76:25, 77:7, 79:10, 79:18, 79:25, 81:24, 82:21, 82:23, 83:1, 83:9, 84:5, 86:4, 86:9, 89:6, 89:8, 91:25,

92:2, 94:5, 94:9, 94:12, 100:13, 100:14, 101:5, 102:3, 103:1, 104:23, 105:24, 106:3, 106:16, 106:17, 108:11, 110:6, 110:17, 110:24, 112:15, 114:8, 114:20, 114:25, 115:8
**GOVERNMENT** [1] - 1:11
**government's** [36] - 7:17, 8:24, 12:8, 16:9, 17:25, 18:23, 30:17, 34:10, 39:21, 58:14, 59:9, 61:25, 67:10, 70:11, 77:8, 78:14, 80:16, 80:18, 82:19, 82:22, 83:8, 84:16, 88:7, 89:21, 90:16, 94:6, 97:17, 99:2, 100:7, 104:21, 109:8, 111:20, 112:15, 114:9, 116:15
**Government's** [2] - 39:7, 40:20
**governs** [3] - 14:25, 37:10, 78:2
**grand** [62] - 9:16, 9:22, 17:10, 22:2, 22:6, 23:11, 23:14, 24:16, 25:1, 26:4, 26:13, 27:1, 27:19, 27:22, 27:23, 28:20, 28:23, 28:24, 29:6, 29:10, 31:17, 32:17, 33:8, 33:25, 34:1, 34:18, 34:21, 34:22, 34:25, 35:9, 35:16, 35:19, 36:1, 36:2, 36:9, 36:11, 36:13, 36:17, 37:17, 37:19, 38:3, 49:7, 71:9, 73:12, 73:13, 73:16, 73:19, 73:23, 73:24, 73:25, 74:1, 74:4, 74:7, 74:11, 74:12, 74:13, 74:23, 74:24, 74:25, 75:1, 75:7
**grant** [1] - 70:5
**granted** [3] - 10:21, 18:1, 97:12
**granting** [1] - 12:7
**great** [2] - 10:14, 116:13
**grist** [2] - 77:2, 83:11
**ground** [1] - 28:13

**grounds** [4] - 42:6, 45:10, 54:7
**group** [2] - 4:13, 100:23
**guarantee** [1] - 89:11
**guaranteed** [1] - 62:17
**guess** [13] - 39:5, 43:24, 52:5, 66:8, 66:10, 69:22, 78:23, 86:4, 89:14, 101:12, 102:10, 106:19, 115:18
**guidance** [1] - 28:10
**guidelines** [3] - 107:19, 108:13, 109:10
**guilt** [2] - 17:2, 79:16
**guilty** [2] - 19:17, 109:9
**gun** [3] - 9:4, 28:2, 85:16
**guy** [3] - 19:18, 83:16, 87:18
**guys** [1] - 116:10

## H

**habits** [1] - 67:10
**hair** [1] - 16:22
**Haley** [1] - 71:4
**half** [3] - 22:12, 55:14, 68:23
**hand** [2] - 35:24, 71:4
**happy** [5] - 55:2, 55:6, 60:14, 65:7, 105:10
**harassing** [2] - 79:15, 79:20
**hard** [3] - 40:9, 103:20, 103:21
**hardship** [3] - 8:25, 10:10, 10:19
**harp** [1] - 37:14
**HART** [1] - 1:20
**Hart** [8] - 2:13, 43:20, 52:19, 55:4, 56:6, 68:22, 99:8, 99:11
**Hart's** [2] - 32:1, 45:8, 99:1
**harvested** [1] - 42:10
**hat** [1] - 36:1
**head** [2] - 32:16, 32:19
**headway** [1] - 69:7
**health** [1] - 8:23
**hear** [5] - 32:22, 66:11, 88:18, 90:3, 109:4
**heard** [12] - 4:21, 5:4, 28:6, 45:2, 55:15, 63:12, 64:22, 64:24,

65:9, 67:22, 99:1
**hearing** [5] - 30:16, 53:10, 53:15, 74:24, 85:21
**hearings** [1] - 7:4
**hearsay** [6] - 17:21, 42:6, 54:16, 100:3, 100:5, 101:2
**help** [3] - 19:13, 77:9, 88:6
**helpful** [7] - 69:19, 85:8, 85:14, 86:25, 114:22, 115:21, 116:12
**hereby** [1] - 118:12
**hero** [3] - 19:16, 39:18, 103:6
**heroic** [4] - 11:23, 20:2, 20:6, 21:1
**heroism** [1] - 13:19
**highlight** [1] - 102:5
**highly** [1] - 45:16
**Hiles** [67] - 17:8, 17:12, 22:5, 22:15, 24:12, 25:11, 27:1, 27:19, 27:22, 27:24, 28:24, 32:24, 33:9, 35:1, 40:24, 43:10, 43:19, 44:1, 44:5, 44:9, 44:18, 45:23, 45:24, 46:2, 46:9, 46:14, 46:16, 46:22, 48:5, 48:21, 49:8, 49:17, 50:13, 52:13, 52:19, 54:2, 54:23, 55:1, 55:4, 55:11, 55:13, 55:23, 56:2, 57:6, 68:3, 71:16, 72:8, 72:21, 73:13, 73:14, 75:18, 79:20, 79:21, 79:24, 80:10, 81:11, 82:9, 82:17, 84:13, 87:6, 87:10, 87:21, 88:12, 100:12, 100:22, 105:22, 115:22
**Hiles'** [11] - 22:5, 45:6, 53:1, 54:15, 56:10, 72:1, 73:17, 78:15, 88:12, 106:15, 106:16
**Hiles's** [1] - 106:17
**himself** [1] - 57:13
**history** [1] - 12:4
**hold** [1] - 114:3
**home** [1] - 99:11
**Honor** [167] - 2:2, 2:6, 2:10, 2:15, 5:9, 5:11, 18:4, 19:3, 19:20, 20:8, 20:21, 21:9,

21:22, 22:18, 24:14, 25:4, 25:24, 25:25, 26:16, 26:23, 27:15, 29:8, 29:21, 30:9, 31:22, 33:16, 34:12, 35:22, 36:4, 36:18, 36:25, 37:2, 38:10, 38:16, 39:8, 40:5, 40:22, 41:3, 41:17, 42:3, 42:16, 42:22, 43:9, 43:16, 44:2, 44:6, 44:11, 44:24, 46:1, 46:15, 46:20, 47:7, 47:24, 48:17, 50:5, 50:6, 51:2, 52:8, 52:18, 53:3, 53:6, 53:7, 53:14, 53:18, 54:21, 55:19, 56:11, 56:19, 57:4, 58:1, 58:15, 58:18, 59:3, 59:14, 59:20, 60:13, 61:14, 62:9, 64:14, 64:19, 65:22, 66:13, 66:21, 67:8, 67:11, 68:19, 69:6, 69:17, 70:25, 71:5, 72:3, 72:6, 73:8, 74:2, 74:11, 76:8, 77:5, 78:19, 79:1, 79:4, 79:24, 81:3, 81:8, 81:23, 82:11, 83:22, 85:15, 86:7, 87:12, 87:22, 88:10, 88:25, 89:5, 90:9, 90:15, 91:13, 92:11, 93:8, 94:1, 95:9, 96:14, 97:16, 98:9, 98:17, 99:14, 100:4, 101:1, 101:14, 101:24, 102:13, 103:9, 104:10, 105:13, 105:21, 106:1, 106:5, 106:18, 107:16, 107:21, 108:1, 108:6, 108:15, 108:20, 109:7, 109:17, 109:22, 110:5, 110:12, 110:13, 110:18, 111:15, 112:19, 113:5, 113:22, 114:6, 114:25, 115:6, 115:8, 115:12, 115:24, 116:2, 116:5, 116:16, 116:19, 116:21, 116:24, 117:6
**Honor's** [1] - 105:24
**HONORABLE** [1] - 1:9

**hook** [1] - 42:2
**hopefully** [2] - 61:5, 61:12
**hoping** [1] - 68:7
**house** [1] - 99:18
**human** [4] - 6:13, 20:11, 42:11, 94:22
**humanize** [2] - 13:1, 90:25
**hundreds** [1] - 74:18
**hung** [1] - 36:1

## I

**idea** [4] - 17:22, 20:18, 49:1, 115:5
**identification** [1] - 96:18
**identified** [9] - 8:12, 22:1, 22:2, 24:18, 63:9, 72:17, 76:9, 97:13
**identify** [4] - 2:9, 43:21, 70:21, 98:11
**identifying** [2] - 51:11, 96:17
**IDs** [1] - 51:4
**illegal** [1] - 99:19
**immediately** [1] - 24:21
**impact** [1] - 13:4
**impartial** [1] - 6:18
**impeach** [11] - 18:15, 72:12, 79:12, 82:1, 83:25, 84:1, 88:9, 88:12, 89:12, 89:18, 112:21
**impeachment** [3] - 82:17, 84:12, 84:23
**important** [10] - 6:1, 6:19, 7:3, 31:23, 37:9, 107:11, 112:24, 117:22, 117:23
**improper** [8] - 8:5, 13:1, 71:21, 79:20, 81:25, 88:21, 99:20, 104:12
**improperly** [1] - 17:1
**in-court** [1] - 89:16
**inaccurate** [1] - 25:13
**inadmissible** [4] - 8:5, 30:20, 44:23, 106:5
**inartful** [2] - 31:6
**inbox** [1] - 58:5
**incarcerated** [3] - 10:17, 70:12, 111:3
**incarceration** [1] - 10:11

**inclined** [2] - 60:14, 70:13
**include** [2] - 36:10, 118:5
**included** [1] - 59:23
**includes** [2] - 11:19, 36:13
**including** [12] - 9:9, 13:7, 35:16, 35:25, 67:4, 68:2, 69:2, 69:3, 76:5, 96:23, 102:20, 102:21
**inconsistent** [4] - 84:14, 91:19, 96:6, 96:7
**incorruptly** [1] - 15:24
**inculpatory** [1] - 99:24
**indeed** [2] - 8:5, 93:21
**independent** [1] - 81:16
**independently** [3] - 62:19, 64:4, 64:15
**index** [4] - 3:24, 4:5, 5:15, 6:4
**indicate** [3] - 22:4, 52:3, 113:10
**indicated** [2] - 6:5, 61:19
**indicates** [1] - 6:20
**indicted** [4] - 26:13, 35:20, 74:18, 92:15
**indictment** [6] - 24:18, 28:22, 34:20, 47:9, 47:17, 59:12
**indictments** [3] - 35:4, 74:15, 74:16
**individual** [2] - 24:19, 63:21
**individually** [2] - 4:8, 63:19
**inexact** [1] - 35:11
**infer** [2] - 11:17
**inflammatory** [1] - 105:18
**inform** [1] - 47:6
**information** [17] - 31:15, 31:18, 41:8, 41:18, 42:14, 48:4, 50:17, 54:13, 64:5, 70:20, 73:6, 73:8, 75:21, 92:19, 108:21, 109:16, 112:16
**initial** [12] - 4:16, 24:17, 25:12, 29:14, 47:4, 48:7, 48:20, 48:21, 48:22, 73:21, 93:11, 97:16
**injured** [1] - 20:16
**ink** [1] - 93:14

**innocence** [3] - 7:13, 17:3, 79:16
**innocent** [3] - 47:11, 93:1, 104:14
**innocuous** [1] - 47:11
**inquire** [2] - 96:22, 99:6
**inquiries** [1] - 64:9
**inquiry** [2] - 15:17, 62:10
**inside** [9] - 4:3, 24:19, 43:3, 43:13, 47:11, 47:18, 49:22, 49:23, 50:3
**insistence** [1] - 34:17
**insists** [1] - 10:5
**instance** [1] - 110:16
**instances** [4] - 13:19, 15:17, 15:19, 16:4
**instead** [2] - 79:15, 98:4
**instituted** [1] - 10:1
**instruct** [3] - 8:6, 10:3, 22:24
**instructed** [2] - 8:19, 87:24
**instruction** [6] - 3:11, 3:13, 9:5, 29:16, 48:12, 117:19
**instructions** [19] - 3:3, 3:5, 3:13, 3:18, 3:22, 4:16, 5:8, 5:13, 5:23, 6:9, 11:16, 23:7, 24:22, 36:19, 69:3, 112:4, 113:3, 113:19
**intelligently** [1] - 15:24
**intend** [2] - 10:11, 109:19
**intended** [3] - 17:10, 27:18, 59:4
**intends** [2] - 58:4, 82:17
**intent** [13] - 9:21, 11:15, 11:17, 12:3, 12:6, 21:6, 23:5, 27:16, 31:20, 32:25, 33:1, 33:4, 70:24
**intention** [7] - 10:9, 12:14, 16:6, 16:8, 72:10, 90:8, 98:8
**inter** [1] - 91:12
**interactions** [2] - 48:3, 48:8
**interest** [2] - 78:9, 117:9
**interested** [1] - 108:25
**interesting** [1] - 13:24
**interests** [1] - 56:5
**internet** [1] - 34:5

**interpreted** [1] - 20:25
**interrupt** [2] - 30:11, 48:18
**interview** [4] - 17:20, 96:25, 97:15, 98:14
**interviewed** [1] - 16:11
**interviewing** [1] - 96:23
**introduce** [4] - 10:18, 16:3, 60:4, 87:2
**introduced** [3] - 14:2, 42:10, 100:2
**introducing** [1] - 43:25
**introduction** [1] - 59:19
**investigate** [2] - 26:5, 31:18
**investigated** [2] - 17:1, 26:13
**investigating** [1] - 14:12
**investigation** [51] - 9:17, 9:20, 16:9, 16:12, 16:15, 16:19, 17:11, 23:15, 25:14, 28:23, 28:24, 29:1, 29:7, 32:1, 32:2, 32:15, 32:17, 32:18, 33:9, 34:18, 34:21, 34:23, 34:25, 35:9, 35:15, 35:16, 35:25, 36:1, 36:3, 36:6, 36:9, 36:10, 36:11, 36:13, 36:17, 37:17, 46:21, 49:7, 73:12, 74:13, 88:1, 90:18, 96:23, 97:11, 97:24, 97:25, 98:1, 104:22
**invite** [1] - 12:9
**invoke** [1] - 11:25
**involve** [1] - 6:21
**involved** [3] - 5:20, 26:10, 65:23
**involvement** [1] - 97:14
**involving** [1] - 44:5
**irrelevant** [5] - 26:3, 41:8, 71:22, 91:7, 93:25
**issue** [24] - 10:3, 12:18, 17:2, 22:8, 25:6, 29:21, 31:21, 44:25, 56:16, 62:4, 62:6, 65:4, 71:8, 73:9, 74:3, 75:6, 83:23, 84:3, 84:4, 85:17, 89:10, 93:15, 99:4

**issued** [3] - 92:17, 93:12, 118:5
**issues** [14] - 10:22, 11:12, 11:16, 27:16, 31:23, 37:8, 62:11, 67:7, 67:14, 67:16, 112:13, 122:22, 113:14, 117:21
**itself** [3] - 33:21, 41:19, 60:10

**J**

**JACKSON** [1] - 1:9
**Jacob** [26] - 24:12, 27:1, 27:19, 40:24, 43:10, 45:23, 46:16, 52:19, 54:2, 54:23, 55:1, 57:6, 72:1, 72:8, 72:21, 73:13, 73:14, 73:17, 75:18, 79:21, 79:23, 80:10, 87:6, 88:12, 105:22
**Jake** [1] - 46:9
**January** [59] - 3:8, 4:23, 6:12, 6:14, 6:17, 6:22, 6:23, 7:6, 9:10, 11:22, 12:11, 13:8, 19:5, 19:7, 21:3, 21:17, 21:19, 21:20, 22:13, 29:2, 31:9, 31:10, 35:17, 38:19, 39:15, 39:17, 39:25, 40:14, 44:5, 46:25, 47:25, 48:2, 48:3, 48:7, 48:10, 59:7, 59:11, 59:24, 60:4, 60:17, 60:18, 61:21, 70:22, 74:1, 74:24, 74:25, 76:18, 87:8, 87:10, 90:21, 91:23, 94:16, 94:25, 102:11, 102:19, 111:1
**job** [3] - 37:25, 91:4
**joint** [1] - 39:22
**judge** [1] - 7:7
**Judge** [2] - 41:15, 110:23
**JUDGE** [1] - 1:9
**judgment** [1] - 78:13
**juggling** [1] - 67:18
**jumped** [1] - 9:4
**jumping** [1] - 85:16
**jumps** [1] - 11:21
**juries** [4] - 35:4, 74:11, 74:12, 75:2
**jurisdiction** [2] - 80:14, 85:20

**juror** [1] - 6:15
**jurors** [2] - 4:1, 5:19
**jury** [114] - 3:2, 3:10, 3:12, 3:13, 3:17, 3:22, 4:2, 4:15, 5:18, 8:6, 8:11, 8:18, 9:2, 9:16, 9:22, 10:12, 10:19, 11:15, 11:17, 12:3, 12:8, 12:23, 13:10, 17:2, 17:5, 17:10, 17:16, 22:2, 22:7, 22:14, 23:11, 23:14, 24:16, 25:1, 26:2, 26:4, 26:13, 26:19, 27:1, 27:19, 27:22, 27:23, 28:11, 28:20, 28:23, 28:24, 29:7, 29:10, 30:10, 31:17, 32:17, 32:20, 33:8, 33:13, 33:25, 34:1, 34:18, 34:21, 34:23, 34:25, 35:9, 35:13, 35:16, 35:19, 36:1, 36:2, 36:9, 36:11, 36:13, 36:17, 36:19, 37:17, 37:19, 38:3, 40:6, 49:7, 50:1, 54:25, 56:2, 69:3, 71:9, 73:12, 73:13, 73:16, 73:19, 73:23, 73:24, 73:25, 74:1, 74:4, 74:7, 74:13, 74:23, 74:24, 74:25, 75:7, 88:19, 88:23, 90:25, 96:12, 98:11, 99:22, 104:2, 104:13, 104:15, 112:4, 113:3, 113:17, 113:18, 114:12, 115:1, 117:18
**jury's** [1] - 30:25
**justice** [9] - 11:3, 27:9, 78:9, 80:2, 80:7, 80:13, 90:18, 101:23, 117:10
**justify** [1] - 68:24

**K**

**K-9** [4] - 39:9, 39:15, 39:25, 40:15
**keep** [3] - 2:23, 43:2, 86:18
**Keepers** [2] - 74:11, 74:16
**Keepers-related** [1] - 74:11
**kept** [1] - 42:20
**key** [1] - 73:15

**kids** [1] - 13:3
**kind** [8] - 18:20, 21:1, 30:3, 30:14, 37:18, 64:14, 75:5, 94:22
**knowing** [2] - 24:15, 27:16
**knowingly** [1] - 15:23
**knowledge** [13] - 10:25, 11:15, 11:20, 12:5, 22:3, 23:3, 23:5, 24:3, 24:15, 25:9, 31:10, 31:11, 48:9
**known** [1] - 92:4
**knows** [4] - 29:7, 30:18, 55:23, 112:5

**L**

**labeled** [1] - 60:17
**lack** [4] - 12:4, 12:7, 14:14, 50:22
**language** [1] - 35:10
**large** [1] - 74:25
**largely** [2] - 41:8, 112:14
**larger** [2] - 36:6, 100:23
**last** [2] - 61:15, 102:16
**late** [1] - 4:17
**law** [49] - 5:20, 7:7, 9:3, 9:14, 10:20, 11:20, 12:4, 13:6, 13:16, 16:10, 17:14, 17:16, 17:19, 17:20, 22:15, 22:20, 22:22, 23:9, 24:11, 24:17, 24:22, 26:20, 27:7, 27:12, 29:16, 30:23, 31:8, 31:25, 33:8, 33:13, 33:17, 33:19, 34:9, 37:9, 38:6, 62:14, 72:14, 74:3, 74:9, 75:10, 77:10, 77:11, 85:17, 85:20, 87:23, 90:2, 90:6, 90:22, 98:25
**lawyer** [3] - 107:13, 109:16
**lawyers** [1] - 2:19
**lay** [1] - 24:11
**layperson** [1] - 33:23
**lead** [2] - 19:16, 22:6
**leads** [1] - 16:20
**least** [5] - 23:9, 31:19, 39:19, 99:5
**leave** [12] - 12:8, 59:7, 59:8, 60:1, 60:4, 60:12, 61:2, 61:20,

67:5, 68:4, 80:14, 95:2
**leaving** [2] - 65:21, 110:9
**leeway** [5] - 20:10, 33:4, 71:24, 91:5, 95:6
**left** [1] - 39:7
**legacy** [1] - 11:1
**legal** [13] - 30:7, 30:12, 30:21, 34:17, 65:17, 70:18, 76:4, 76:14, 76:15, 99:21, 112:5, 112:9, 113:13
**legally** [1] - 27:4
**Legambi** [12] - 54:23, 55:1, 55:4, 55:10, 55:13, 55:22, 55:23, 56:2, 56:3, 57:5, 57:8, 57:10
**legitimacy** [1] - 66:1
**legitimate** [2] - 97:13, 98:5
**lengthy** [1] - 84:8
**less** [1] - 60:23
**letter** [20] - 64:11, 65:3, 90:23, 91:16, 92:1, 92:2, 92:4, 92:15, 92:16, 92:20, 92:22, 93:3, 93:4, 93:5, 93:11, 93:12, 93:13, 93:16, 106:14, 106:15
**letting** [3] - 21:8, 92:8, 99:7
**liability** [1] - 9:15
**license** [1] - 26:12
**life** [3] - 8:25, 31:11, 103:6
**light** [5] - 60:1, 61:20, 67:25, 68:4, 69:5
**likelihood** [1] - 43:23
**likely** [1] - 82:21
**limine** [11] - 7:18, 7:23, 10:21, 17:25, 94:4, 94:6, 97:12, 97:18, 97:24, 100:10, 106:12
**limited** [8] - 26:6, 40:6, 50:2, 77:24, 95:7, 98:2, 99:16, 110:19
**line** [3] - 43:23, 69:10, 71:20
**lines** [1] - 80:15
**linked** [1] - 37:18
**list** [7] - 21:16, 34:10, 41:19, 52:1, 54:24, 68:11, 69:21
**listed** [6] - 18:24,

22:13, 22:23, 51:3, 63:22, 68:12
**listen** [1] - 4:10
**lists** [2] - 41:20, 113:15
**literally** [1] - 21:2
**live** [1] - 58:6
**Livestream** [1] - 58:2
**loading** [1] - 108:4
**locked** [1] - 111:13
**log** [1] - 49:20
**logistical** [1] - 67:6
**logistics** [1] - 67:3
**logs** [2] - 52:19, 53:8
**look** [6] - 16:22, 50:18, 89:20, 99:25, 100:18, 103:12
**looking** [12] - 7:14, 25:15, 28:17, 30:12, 39:11, 41:19, 42:19, 43:18, 51:7, 92:5, 92:12, 110:20
**looks** [1] - 60:10
**loose** [1] - 50:9
**lost** [1] - 5:18
**LOTH** [1] - 118:12
**Loth** [2] - 1:22, 118:24
**low** [1] - 52:22
**LYLE** [1] - 1:11

**M**

**Macchiaroli** [8] - 2:16, 5:10, 25:22, 28:6, 38:15, 108:22, 111:24, 116:18
**MACCHIAROLI** [131] - 1:16, 2:15, 5:11, 18:4, 18:6, 18:10, 19:3, 19:19, 20:8, 20:21, 21:9, 21:11, 22:18, 24:14, 26:23, 27:14, 29:8, 30:9, 30:11, 31:1, 31:5, 32:7, 33:11, 33:14, 37:2, 37:4, 38:16, 39:8, 41:14, 42:16, 43:2, 44:10, 44:21, 44:24, 45:23, 47:7, 47:23, 48:11, 50:6, 53:6, 53:13, 53:18, 53:22, 53:24, 54:5, 57:4, 57:12, 57:18, 58:15, 58:18, 58:23, 59:14, 59:16, 59:20, 61:14, 61:18, 62:9, 63:23, 64:2, 66:13, 66:18, 66:21, 70:25, 71:5, 71:15, 72:6,

73:4, 74:2, 75:1, 75:4, 75:16, 75:23, 76:1, 77:5, 77:14, 77:17, 77:23, 78:2, 78:5, 78:19, 79:1, 79:23, 80:6, 83:22, 85:15, 86:7, 87:12, 87:22, 88:14, 88:16, 88:24, 89:4, 90:8, 90:15, 93:8, 95:15, 95:24, 96:4, 96:14, 96:17, 96:20, 97:4, 97:16, 98:8, 98:17, 98:22, 98:25, 100:4, 100:20, 102:13, 102:15, 102:23, 103:9, 103:15, 104:7, 104:20, 105:7, 106:18, 107:2, 107:5, 109:7, 110:12, 110:16, 112:19, 114:6, 114:14, 114:19, 115:6, 115:24, 116:19, 117:5
**Macchiaroli's** [2] - 101:4, 115:19
**machine** [1] - 1:24
**magistrate** [1] - 67:1
**main** [1] - 7:16
**maintaining** [1] - 12:14
**major** [1] - 29:1
**majority** [1] - 116:2
**man** [1] - 95:10
**manner** [4] - 14:23, 16:11, 109:25, 118:20
**March** [1] - 69:24
**marginal** [1] - 60:5
**Mariela** [1] - 2:13
**MARIELA** [1] - 1:21
**mark** [1] - 78:17
**marked** [4] - 99:17, 100:13, 101:13, 101:15
**marking** [1] - 78:24
**married** [1] - 13:2
**marry** [1] - 52:6
**MARY** [1] - 1:11
**Mary** [1] - 2:11
**mary.dohrmann@ usdoj.gov** [1] - 1:15
**masked** [1] - 4:1
**mass** [1] - 41:18
**massive** [1] - 41:8
**match** [1] - 47:9
**material** [5] - 42:10, 44:1, 71:23, 83:19, 89:16

**matter** [14] - 18:10, 18:19, 22:15, 23:2, 27:12, 32:22, 33:8, 34:15, 39:21, 74:8, 75:10, 81:1, 100:1, 101:8
**MCNAMARA** [1] - 56:19
**McNamara** [23] - 1:12, 2:11, 38:10, 40:5, 52:18, 53:3, 54:21, 55:12, 58:1, 58:10, 59:3, 60:13, 61:3, 64:19, 64:23, 65:22, 66:3, 66:6, 91:13, 91:15, 91:24, 92:23, 114:25
**mean** [22] - 3:12, 12:2, 20:6, 22:10, 35:10, 46:13, 48:25, 49:20, 52:1, 54:3, 61:15, 68:24, 73:15, 75:16, 84:1, 92:6, 92:9, 101:20, 102:5, 103:3, 115:17, 116:8
**means** [4] - 10:23, 30:3, 30:4, 91:22
**meantime** [1] - 90:14
**media** [1] - 4:24
**medium** [1] - 51:21
**memo** [1] - 95:5
**memoranda** [3] - 82:19, 83:20, 113:13
**memorandum** [8] - 76:21, 78:14, 78:15, 84:4, 84:14, 84:16, 84:17, 84:19
**men** [2] - 41:10, 86:1
**mental** [1] - 23:21
**Merriman** [2] - 96:1, 98:10
**message** [8] - 47:5, 48:7, 50:12, 51:25, 52:1, 52:2, 52:7, 52:12
**messaged** [1] - 32:24
**messages** [3] - 48:16, 105:21, 105:23
**Messenger** [1] - 51:22
**messenger** [1] - 51:23
**metaphor** [1] - 11:7
**methodology** [1] - 3:25
**methods** [1] - 15:11
**Michael** [4] - 2:5, 4:19, 94:15, 102:11
**MICHAEL** [1] - 1:5
**microphone** [1] - 2:3
**microphones** [1] - 2:8
**might** [12] - 4:2, 4:24,

7:21, 34:4, 50:1, 56:3, 69:19, 86:21, 88:12, 95:19, 115:5
**Mike** [1] - 52:25
**mind** [13] - 8:21, 23:4, 24:2, 25:6, 30:1, 31:13, 36:7, 48:7, 49:11, 76:18, 87:9, 116:22
**minimum** [1] - 28:8
**minute** [1] - 104:9
**minutes** [3] - 46:10, 103:1, 104:8
**mischaracterizing** [1] - 9:13
**misdemeanant** [2] - 23:22, 33:9
**misdemeanants** [2] - 74:19, 74:20
**misdemeanor** [11] - 17:6, 17:8, 17:9, 22:16, 22:23, 26:1, 26:11, 49:6, 50:2, 73:10, 75:11
**misdemeanor/felony** [1] - 26:6
**misdemeanors** [4] - 22:11, 25:17, 31:14, 70:21
**misleading** [4] - 26:2, 26:16, 70:23, 79:13
**miss** [1] - 5:4
**missed** [1] - 117:13
**missing** [1] - 101:3
**moment** [7] - 33:21, 55:18, 66:9, 75:18, 107:22, 110:12, 118:4
**Monday** [3] - 113:21, 113:23
**months** [4] - 45:19, 101:20, 101:21, 108:18
**moreover** [2] - 17:17, 33:16
**morning** [2] - 113:4, 116:2
**most** [4] - 42:6, 50:24, 60:15, 61:3
**motion** [19] - 7:18, 7:22, 8:2, 10:9, 10:21, 12:8, 17:25, 34:20, 35:12, 66:11, 94:4, 94:6, 97:12, 97:17, 97:23, 100:10, 105:24, 106:12, 112:12
**motions** [1] - 117:3
**motivation** [1] - 34:4
**motive** [1] - 48:9

**mouth** [2] - 11:10, 24:2
**move** [19] - 19:1, 55:9, 56:25, 63:14, 63:15, 67:6, 68:25, 72:20, 72:23, 78:16, 78:24, 80:1, 81:17, 82:5, 84:7, 100:16, 111:19
**moved** [3] - 18:19, 86:21, 95:17
**moving** [4] - 69:2, 69:9, 95:21, 96:14
**MPD** [1] - 104:22
**MR** [130] - 2:15, 5:11, 18:4, 18:6, 18:10, 19:3, 19:19, 20:8, 20:21, 21:9, 21:11, 22:18, 24:14, 26:23, 27:14, 29:8, 30:9, 30:11, 31:1, 31:5, 32:7, 33:11, 33:14, 37:2, 37:4, 38:16, 39:8, 41:14, 42:16, 43:2, 44:10, 44:21, 44:24, 45:23, 47:7, 47:23, 48:11, 50:6, 53:6, 53:13, 53:18, 53:22, 53:24, 54:5, 57:4, 57:12, 57:18, 58:15, 58:18, 58:23, 59:14, 59:16, 59:20, 61:14, 61:18, 62:9, 63:23, 64:2, 66:13, 66:18, 66:21, 70:25, 71:5, 71:15, 72:6, 73:4, 74:2, 75:1, 75:4, 75:16, 75:23, 76:1, 77:5, 77:14, 77:17, 77:23, 78:2, 78:5, 78:19, 79:1, 79:23, 80:6, 83:22, 85:15, 86:7, 87:12, 87:22, 88:14, 88:16, 88:24, 89:4, 90:8, 90:15, 93:8, 95:15, 95:24, 96:4, 96:14, 96:17, 96:20, 97:4, 97:16, 98:8, 98:17, 98:22, 98:25, 100:4, 100:20, 102:13, 102:15, 102:23, 103:9, 103:15, 104:7, 104:20, 105:7, 106:18, 107:2, 107:5, 109:7, 110:12, 110:16, 112:19, 114:6, 114:19, 115:6, 115:24, 116:19, 117:5

**MS** [91] - 2:10, 5:9, 25:24, 34:12, 34:14, 35:15, 35:22, 36:4, 36:18, 36:25, 38:10, 40:5, 40:22, 41:3, 41:17, 41:24, 42:3, 42:22, 43:9, 43:16, 44:2, 44:6, 46:1, 46:8, 46:15, 46:20, 47:4, 47:24, 48:2, 48:17, 50:5, 50:14, 50:23, 51:16, 51:19, 51:22, 52:8, 52:18, 53:3, 54:21, 55:12, 55:19, 56:11, 56:19, 58:1, 58:10, 59:3, 60:13, 61:3, 64:19, 64:23, 65:22, 66:3, 66:6, 69:17, 72:3, 73:8, 76:8, 79:4, 79:6, 81:3, 81:8, 81:11, 81:23, 82:11, 91:13, 91:15, 91:24, 92:11, 92:23, 94:1, 95:9, 99:14, 101:1, 101:14, 101:24, 105:13, 105:15, 107:16, 107:21, 108:1, 108:6, 108:15, 110:5, 111:15, 113:5, 114:25, 115:8, 116:5, 116:16, 116:21
**multiple** [5] - 47:14, 67:4, 75:1, 105:6, 105:7
**must** [1] - 38:2

**N**

**name** [2] - 5:3, 55:15
**named** [1] - 89:21
**narrative** [1] - 59:10
**narrow** [2] - 25:3, 102:24
**nature** [5] - 22:22, 43:5, 45:7, 69:1, 72:11
**Nazarro** [1] - 14:18
**necessary** [2] - 42:20, 87:15
**need** [47] - 4:3, 6:23, 7:17, 7:21, 9:25, 13:10, 36:20, 38:16, 38:25, 40:2, 42:11, 48:25, 49:17, 51:9, 53:7, 57:21, 60:8, 60:11, 60:20, 62:3, 64:5, 66:7, 72:12,

72:13, 78:17, 78:20, 79:2, 84:21, 85:19, 85:25, 86:3, 86:22, 90:7, 91:8, 99:20, 100:18, 105:2, 105:5, 105:7, 107:10, 110:7, 113:1, 113:8, 114:2, 115:13, 115:18, 116:14
**needed** [3] - 6:5, 18:17, 64:13
**needs** [4] - 29:20, 68:1, 70:14, 115:22
**negate** [3] - 31:20, 67:24, 90:15
**negative** [1] - 7:6
**never** [14] - 17:1, 17:11, 20:6, 25:11, 32:5, 32:11, 32:12, 36:9, 49:6, 73:12, 73:13, 73:16, 73:18, 80:12
**nevertheless** [1] - 16:8
**new** [1] - 110:21
**next** [6] - 2:17, 3:1, 60:12, 65:21, 95:20, 112:8
**nexus** [6] - 9:22, 29:12, 29:24, 37:22, 38:3, 74:3
**nice** [3] - 90:12, 93:3, 109:24
**niceties** [1] - 65:17
**Nichols** [1] - 110:23
**night** [1] - 116:9
**nobody** [6] - 19:19, 20:1, 88:24, 93:12, 95:15
**none** [2] - 86:20, 109:19
**nonetheless** [1] - 21:7
**note** [7] - 9:12, 26:8, 37:13, 68:6, 87:12, 92:3
**notes** [2] - 11:15, 118:14
**nothing** [7] - 22:4, 48:16, 53:9, 53:16, 70:20, 93:4, 105:18
**notice** [5] - 51:11, 63:1, 63:4, 68:15, 114:4
**notified** [3] - 62:11, 62:21, 62:23
**noting** [1] - 58:5
**notwithstanding** [2] - 10:6, 62:20
**November** [3] -

110:22, 110:25, 111:12
**null** [1] - 118:18
**nullification** [2] - 8:11, 9:5
**nullify** [1] - 10:19
**number** [16] - 2:22, 4:6, 4:22, 10:6, 29:9, 29:10, 67:18, 68:2, 68:18, 69:9, 74:20, 75:23, 76:5, 82:5, 110:19, 114:7
**numbers** [2] - 41:20, 52:14
**numerous** [1] - 48:3
**NW** [2] - 1:13, 1:17

**O**

**Oath** [2] - 74:11, 74:15
**oath** [4] - 38:8, 38:17, 39:1, 81:12
**object** [11] - 41:7, 41:11, 44:7, 47:7, 47:8, 53:11, 53:20, 54:6, 55:3, 61:6, 65:13
**objected** [5] - 18:24, 42:23, 54:7, 57:8, 57:22
**objecting** [5] - 42:8, 42:9, 42:13, 53:25, 81:25
**objection** [24] - 5:7, 5:11, 39:6, 40:20, 41:11, 41:14, 43:1, 44:10, 44:13, 52:17, 52:21, 53:4, 53:14, 54:16, 58:12, 58:16, 59:1, 63:1, 65:4, 92:6, 92:12, 100:24
**objectionable** [1] - 8:1
**objections** [3] - 52:15, 62:3, 103:2
**objects** [2] - 42:6, 69:14
**observed** [1] - 45:18
**obstruct** [6] - 9:22, 17:10, 27:16, 27:19, 30:3, 80:2
**obstructed** [6] - 9:16, 11:3, 26:25, 71:9, 90:17, 101:22
**obstructing** [11] - 9:19, 21:25, 23:11, 23:14, 25:1, 27:12, 33:8, 35:8, 35:14, 36:16, 80:13
**obstruction** [17] -

9:24, 24:24, 27:2, 27:9, 27:25, 29:13, 31:25, 32:2, 38:4, 45:5, 46:25, 47:15, 47:16, 47:17, 47:25, 48:15, 80:6
**obstructive** [4] - 9:23, 48:10, 50:12, 74:4
**obvious** [1] - 8:1
**obviously** [13] - 6:3, 39:16, 52:22, 55:16, 57:6, 65:13, 66:22, 83:24, 84:8, 96:22, 100:15, 104:14, 106:19
**occasion** [1] - 15:3
**occurred** [4] - 45:16, 47:8, 47:15, 84:10
**occurs** [1] - 69:9
**October** [13] - 70:2, 110:4, 110:14, 110:25, 111:2, 111:16, 112:3, 112:4, 113:19, 117:4, 117:16, 117:19, 118:23
**OF** [3] - 1:1, 1:3, 1:8
**offense** [9] - 5:2, 10:1, 24:16, 27:5, 28:18, 44:16, 73:6, 78:13, 91:19, 91:23, 94:25
**offenses** [2] - 70:23, 74:12
**offer** [9] - 15:7, 15:9, 17:6, 107:12, 107:18, 108:6, 108:24, 109:9, 109:21
**offered** [2] - 23:1, 23:2
**office** [1] - 19:22
**Office** [1] - 1:12
**Officer** [35] - 9:16, 9:21, 10:24, 11:24, 12:2, 12:6, 12:9, 16:8, 19:4, 19:21, 20:3, 28:2, 33:16, 33:24, 33:25, 44:25, 45:1, 45:19, 50:12, 57:9, 59:22, 71:6, 73:11, 75:6, 76:1, 80:11, 80:12, 90:16, 96:21, 97:19, 99:1, 99:8, 99:11, 103:17
**officer** [41] - 4:18, 5:1, 11:2, 11:20, 11:22, 12:5, 12:10, 13:6, 13:14, 13:22, 16:5, 19:10, 19:14, 20:12, 20:16, 24:3, 30:23,

33:23, 34:5, 38:9, 38:12, 38:19, 38:21, 38:22, 39:11, 39:15, 39:18, 39:25, 55:23, 59:23, 91:4, 94:17, 94:18, 94:24, 95:1, 97:20, 102:21, 104:4, 105:5, 105:17
**officer's** [1] - 14:19
**officers** [11] - 17:21, 20:1, 23:16, 29:2, 31:2, 43:21, 45:6, 96:6, 98:24, 98:25, 115:20
**Official** [1] - 1:23
**official** [9] - 9:10, 9:25, 21:25, 26:25, 27:12, 27:17, 29:13, 35:8, 38:3, 45:5, 118:24
**often** [1] - 84:23
**old** [1] - 67:10
**older** [1] - 59:2
**omitted** [1] - 4:12
**omnibus** [1] - 7:17
**once** [4] - 38:24, 39:24, 57:20, 117:23
**one** [56] - 2:22, 4:14, 5:19, 5:21, 6:1, 6:24, 7:10, 9:5, 9:6, 9:18, 17:11, 18:7, 19:8, 19:9, 23:13, 29:6, 29:10, 33:12, 34:14, 35:3, 35:24, 37:20, 44:24, 48:19, 48:20, 50:19, 50:21, 51:5, 54:17, 58:22, 58:24, 60:11, 60:21, 62:25, 63:16, 63:23, 67:4, 72:2, 73:15, 74:17, 75:23, 82:12, 86:6, 89:18, 103:8, 104:20, 104:22, 104:25, 105:8, 105:9, 107:8, 107:22, 110:3, 110:12, 111:3
**one's** [1] - 42:8
**ones** [2] - 22:12, 72:2
**open** [6] - 2:8, 58:5, 69:5, 110:9, 110:24, 114:13
**opening** [5] - 20:2, 20:23, 36:22, 38:1, 115:2
**opinion** [7] - 6:7, 15:16, 16:3, 22:19, 22:25, 28:17
**opinions** [1] - 6:17
**opportunity** [4] - 4:23,

23:10, 61:18, 85:18
**oppose** [1] - 8:9
**opposed** [6] - 6:7,
7:23, 45:1, 73:25,
89:21, 116:8
**opposition** [4] - 9:11,
11:9, 21:13, 94:6
**order** [4] - 55:25,
78:13, 82:14, 109:25
**ordered** [1] - 67:1
**orders** [1] - 118:5
**original** [2] - 51:12,
52:4
**otherwise** [3] - 13:12,
17:22, 43:22
**ought** [1] - 35:5
**out-of-court** [4] -
81:17, 95:13, 96:2,
96:8
**outside** [2] - 47:12,
50:4
**outstanding** [2] - 91:3,
91:22
**outweigh** [1] - 70:10
**overboard** [1] - 40:8
**overkill** [1] - 40:18
**overlapping** [1] - 36:8
**oversight** [1] - 41:18
**own** [13] - 3:5, 8:2,
10:20, 17:19, 28:25,
48:16, 64:4, 64:16,
67:5, 68:14, 82:8,
84:14, 105:21

**P**

**p.m** [3] - 1:5, 116:9,
118:8
**page** [5] - 58:23, 59:6,
60:16, 60:21
**pages** [1] - 41:20
**panel** [1] - 5:14
**paper** [3] - 42:12,
60:8, 60:9
**Paralegal** [2] - 1:21,
2:12
**pared** [1] - 102:1
**part** [28] - 4:15, 13:13,
35:19, 38:23, 44:15,
47:17, 48:20, 49:10,
50:15, 50:24, 51:12,
52:4, 60:15, 62:15,
72:2, 80:3, 81:6,
90:25, 91:20, 93:22,
94:4, 97:20, 100:17,
100:23, 104:1,
108:15, 112:25
**participants** [1] - 82:9
**participation** [1] -

6:21
**particular** [7] - 5:2,
14:5, 15:3, 29:13,
66:12, 71:13, 71:17
**parties** [5] - 3:3,
40:12, 56:15, 86:23,
113:7
**parties'** [1] - 110:1
**parts** [3] - 41:12, 69:2,
69:9
**party** [3] - 106:22,
112:20, 118:20
**pending** [1] - 9:25
**people** [20] - 4:23, 5:2,
5:5, 16:24, 24:11,
25:17, 25:18, 29:6,
31:12, 31:13, 40:11,
46:7, 65:20, 68:3,
68:14, 74:18, 84:24,
85:3, 93:14, 117:23
**perfectly** [2] - 11:4,
40:12
**perform** [1] - 105:4
**perhaps** [1] - 101:6
**period** [6] - 70:15,
80:7, 81:20, 81:22,
95:1, 101:22
**permissible** [1] - 13:3
**permission** [1] -
112:10
**permit** [1] - 11:16,
26:20
**permitted** [3] - 12:19,
12:25, 16:18
**persist** [1] - 34:24
**persists** [1] - 9:13
**person** [6] - 2:19,
15:3, 16:4, 20:12,
64:21, 66:4
**person's** [4] - 15:2,
15:13, 15:15, 15:18
**personally** [1] - 51:14
**personnel** [1] - 62:15
**perspective** [3] -
31:24, 75:5, 116:15
**persuade** [1] - 16:14
**pertinent** [4] - 14:13,
14:21, 15:8, 15:10
**phone** [15] - 44:18,
46:5, 52:15, 52:19,
52:20, 53:1, 55:21,
56:1, 58:2, 58:6,
80:14, 81:6, 81:7,
81:8
**Phone** [1] - 40:23
**photocopied** [1] -
118:19
**phrase** [1] - 34:21
**phrasing** [1] - 35:1
**pick** [1] - 114:12

**piece** [4] - 41:8, 42:12,
60:8, 60:9
**pieces** [1] - 100:18
**pin** [2] - 32:16, 32:19
**pipe** [3] - 39:10, 39:17,
102:21
**pistol** [1] - 26:12
**place** [5] - 23:20,
43:22, 46:24, 70:7,
86:6
**plan** [2] - 96:21
**planning** [7] - 46:3,
55:8, 76:21, 82:5,
99:9, 99:12, 115:23
**plans** [1] - 57:4
**play** [3] - 43:17, 44:12,
44:17
**played** [1] - 45:1
**playing** [1] - 45:15
**plea** [7] - 73:6, 76:20,
78:13, 107:12,
108:24, 109:8,
109:21
**plead** [2] - 108:7,
109:9
**pleading** [2] - 10:6,
20:5
**pled** [1] - 109:13
**plus** [1] - 39:11
**point** [32] - 16:23,
21:15, 28:9, 29:14,
35:10, 37:20, 39:22,
42:17, 43:24, 47:2,
57:3, 63:14, 65:16,
66:11, 72:11, 72:24,
73:22, 76:6, 76:7,
76:8, 76:12, 77:22,
78:17, 79:19, 80:8,
82:4, 101:25,
107:11, 108:10,
114:17, 114:24,
116:15
**pointed** [1] - 16:20
**points** [6] - 11:13,
21:12, 29:9, 37:5,
108:10, 108:14
**police** [7] - 13:22,
14:6, 14:19, 16:4,
24:3, 38:19, 97:20
**Police** [36] - 4:18, 5:1,
11:2, 12:10, 13:8,
13:10, 13:15, 22:12,
38:8, 38:12, 38:21,
38:22, 55:23, 59:23,
62:22, 63:13, 63:18,
64:1, 64:9, 65:2,
65:8, 65:18, 66:1,
68:16, 70:18, 90:17,
92:3, 92:14, 93:2,
93:10, 94:17, 94:18,

95:11, 105:5,
111:21, 115:20
**portion** [1] - 60:15
**position** [5] - 57:2,
62:14, 63:3, 74:2,
84:13, 94:11, 117:2
**positive** [1] - 7:6
**posits** [1] - 16:7
**possession** [1] -
45:13
**possible** [8] - 10:16,
34:4, 62:20, 63:17,
68:24, 95:13, 108:3,
114:21
**possibly** [2] - 17:10,
18:14
**post** [14] - 47:10,
48:20, 48:21, 48:22,
50:20, 50:23, 51:12,
52:4, 72:1, 73:21,
75:18, 78:22, 88:19
**posted** [3] - 48:24,
50:19, 51:15
**posts** [2] - 17:8, 46:23
**posture** [1] - 12:14
**potential** [7] - 8:3,
10:10, 62:7, 62:11,
63:22, 67:23, 70:22,
72:17, 72:18, 77:2,
99:6
**potentially** [5] - 18:15,
86:22, 88:9, 89:7,
98:19
**precedence** [2] - 38:5,
111:4
**precedent** [1] - 29:19
**predisposition** [1] -
14:14
**prefer** [1] - 65:7
**prejudicial** [5] - 38:15,
45:16, 60:5, 104:12,
105:18
**preliminary** [3] - 3:22,
5:8, 18:10
**preparation** [1] - 79:9
**prepare** [1] - 112:9
**prepared** [6] - 28:1,
28:11, 28:12, 39:24,
107:23, 116:24
**preparing** [1] - 18:12
**PRESENT** [1] - 1:20
**present** [9] - 2:5, 12:2,
15:10, 21:18, 34:7,
57:10, 59:10, 69:4,
97:19
**presented** [2] - 13:25,
28:6
**presenting** [3] - 19:5,
21:15, 104:10
**preserving** [1] - 89:9

**pressure** [1] - 69:25
**presumably** [2] -
52:10, 76:24
**presume** [1] - 54:18
**presumed** [1] - 93:1
**presumption** [1] -
7:12
**PRETRIAL** [1] - 1:8
**pretrial** [7] - 2:3,
39:22, 68:21, 86:12,
107:25, 111:6, 111:7
**pretty** [2] - 40:9, 118:1
**prevent** [1] - 99:3
**preview** [3] - 18:21,
37:7, 100:6
**previous** [1] - 79:8
**previously** [2] - 3:6,
81:11
**primarily** [1] - 45:9
**principles** [3] - 9:2,
10:13, 10:20
**problem** [7] - 45:11,
57:18, 57:19, 71:18,
71:23, 87:5, 90:24
**proceed** [1] - 66:23
**proceeding** [34] -
9:16, 9:22, 9:25,
21:25, 22:2, 22:5,
22:7, 23:11, 25:1,
27:1, 27:12, 27:17,
27:19, 27:22, 29:10,
29:13, 35:9, 36:16,
37:18, 37:19, 38:3,
45:5, 71:10, 73:13,
73:17, 73:19, 73:24,
73:25, 74:7, 74:13,
116:3, 118:8
**Proceedings** [1] - 1:24
**proceedings** [5] -
37:12, 73:23, 74:5,
74:23, 118:15
**process** [5] - 5:15,
5:18, 49:2, 65:4,
69:12
**produce** [1] - 68:9
**produced** [5] - 1:25,
103:9, 103:16,
104:22, 105:24
**proffer** [9] - 18:12,
23:8, 30:15, 45:3,
79:18, 80:20, 80:22,
82:20, 99:5
**proffered** [5] - 55:25,
84:5, 101:1
**proffering** [1] - 73:3
**prohibited** [1] - 102:8
**prohibiting** [1] - 19:4
**promise** [1] - 83:8
**prompted** [2] - 49:7,
62:2

**proof** [2] - 7:12, 46:4
**proper** [1] - 9:7
**proposed** [5] - 4:11, 7:11, 9:6, 10:24, 116:1
**prosecution** [7] - 8:14, 16:7, 16:17, 62:16, 68:10, 78:15, 97:21
**prosecution-type** [1] - 8:14
**prosecutor** [2] - 15:9, 31:4
**prosecutorial** [2] - 76:4, 76:15
**prosecutors** [1] - 63:5
**protect** [1] - 83:4
**protocol** [1] - 63:18
**Proud** [2] - 74:12, 74:16
**prove** [13] - 11:14, 15:3, 46:3, 46:4, 48:6, 48:9, 49:3, 55:25, 60:9, 76:12, 76:13, 76:17, 94:8
**proved** [1] - 15:14
**provide** [8] - 11:2, 21:19, 31:19, 35:4, 54:12, 56:24, 102:17, 106:19
**provided** [9] - 4:11, 26:9, 49:8, 51:4, 62:1, 63:1, 64:4, 67:16, 68:15
**providing** [2] - 25:4, 41:18
**proving** [1] - 15:12
**provision** [2] - 71:13, 71:17
**provisionally** [1] - 112:2
**public** [1] - 90:13
**publicly** [2] - 83:4, 92:4
**pull** [4] - 55:2, 95:4, 108:1, 108:16
**punishment** [2] - 8:4, 10:16
**purport** [3] - 14:20, 54:9, 54:14
**purported** [1] - 106:4
**purportedly** [1] - 46:23
**purports** [1] - 42:14
**purpose** [13] - 4:3, 16:16, 40:6, 43:13, 54:21, 59:18, 78:25, 81:18, 81:22, 95:7, 97:13, 103:24, 112:25
**purposes** [1] - 96:18

**pursuant** [1] - 105:24
**pursue** [1] - 16:19
**push** [1] - 103:21
**pushed** [2] - 24:19, 47:13
**pushes** [2] - 12:18, 71:20
**pushing** [1] - 70:8
**put** [46] - 4:16, 8:2, 16:1, 20:4, 20:10, 20:24, 39:16, 43:7, 47:13, 49:8, 49:11, 54:19, 56:16, 57:15, 58:3, 59:2, 59:4, 60:8, 68:11, 70:9, 71:7, 76:11, 76:16, 76:21, 81:15, 82:8, 82:9, 82:25, 83:2, 87:18, 90:19, 91:1, 91:5, 92:3, 92:16, 95:6, 95:13, 95:20, 96:8, 99:12, 102:19, 105:8, 111:12, 112:25
**puts** [3] - 12:5, 13:11, 39:20
**putting** [14] - 21:2, 39:4, 43:6, 43:12, 54:22, 65:15, 70:12, 89:19, 96:2, 101:7, 101:8, 101:9, 101:16, 110:2

## Q

**qualifies** [1] - 9:24
**questions** [21] - 2:22, 4:4, 4:6, 4:9, 4:10, 4:11, 4:17, 5:5, 5:24, 7:9, 7:10, 7:14, 7:15, 18:7, 28:7, 30:15, 67:24, 79:16, 81:16, 81:19, 82:18
**quite** [1] - 83:13
**quote** [3] - 9:14, 94:8, 94:9
**quote/unquote** [2] - 77:11, 88:4
**quoting** [1] - 94:9

## R

**raise** [6] - 4:17, 16:16, 21:22, 83:8, 83:9, 91:25
**raised** [5] - 12:19, 21:12, 21:20, 34:15, 92:14
**raising** [5] - 10:9,

20:23, 24:5, 29:14, 29:15
**range** [2] - 108:17, 109:11
**rather** [4] - 63:18, 65:8, 114:3, 115:11
**reach** [3] - 10:12, 62:19, 115:16
**reaction** [1] - 80:10
**read** [10] - 3:3, 4:4, 4:15, 4:23, 4:25, 5:14, 11:6, 32:13, 96:9, 107:7
**reads** [1] - 75:18
**ready** [2] - 69:15, 70:14
**reality** [1] - 74:8
**really** [16] - 17:22, 23:14, 26:18, 26:21, 30:3, 32:11, 40:18, 48:21, 56:12, 85:25, 86:3, 86:17, 91:11, 111:11, 112:1, 117:23
**reason** [12] - 6:15, 12:9, 21:14, 21:20, 25:4, 48:15, 66:12, 77:22, 80:19, 89:4, 99:10, 100:19
**reasonable** [5] - 43:23, 70:13, 70:15, 80:24, 115:25
**reasons** [3] - 16:9, 17:24, 26:15
**rebut** [1] - 15:9
**receipt** [1] - 52:11
**receive** [3] - 65:7, 65:8, 108:9
**received** [7] - 44:15, 45:1, 61:15, 62:24, 65:3, 92:15, 102:15
**receiving** [1] - 43:18
**recognition** [2] - 91:1, 91:2
**recollection** [10] - 18:15, 77:3, 84:11, 84:17, 84:18, 84:20, 84:22, 85:2, 85:16, 98:20
**Record** [1] - 54:17
**record** [10] - 2:9, 26:24, 30:18, 44:4, 54:18, 56:13, 56:23, 56:25, 71:2, 97:9
**recorded** [3] - 16:11, 45:25, 99:19
**recording** [2] - 58:6, 99:20
**recordings** [1] - 46:2
**Records** [1] - 40:23

**records** [21] - 42:17, 42:18, 42:20, 43:2, 47:16, 50:15, 50:18, 52:15, 53:7, 53:8, 54:1, 54:4, 54:15, 54:22, 55:21, 56:1, 56:7, 56:8, 57:1, 80:3, 81:4
**redact** [2] - 60:15, 60:22
**redacted** [4] - 22:21, 41:12, 61:5, 71:1
**redaction** [1] - 71:22
**redactions** [1] - 25:7
**redefine** [1] - 34:17
**refer** [1] - 100:15
**reference** [3] - 36:5, 54:23, 92:1
**referenced** [1] - 18:15
**references** [1] - 10:16
**referred** [2] - 16:12, 102:2
**reflect** [1] - 36:19
**reflecting** [1] - 40:23
**refresh** [6] - 18:14, 84:11, 84:16, 84:18, 84:19, 98:20
**refresher** [1] - 70:18
**refreshing** [3] - 77:3, 84:22, 85:2
**refute** [1] - 14:3
**regard** [1] - 90:18
**regarding** [6] - 11:16, 12:7, 45:6, 54:2, 71:8, 93:11
**regulations** [1] - 62:21
**relate** [2] - 16:19, 76:24
**related** [6] - 8:24, 40:11, 74:7, 74:11, 74:14, 113:14
**relating** [2] - 22:5, 47:11
**relaying** [1] - 46:23
**relevance** [8] - 16:14, 26:7, 53:25, 54:7, 59:21, 60:5, 63:5, 65:16
**relevant** [29] - 12:3, 15:17, 16:2, 38:9, 38:18, 41:13, 42:7, 45:21, 46:20, 46:21, 54:12, 59:18, 60:1, 60:16, 60:24, 61:3, 68:9, 69:4, 70:19, 72:5, 75:14, 79:16, 81:18, 81:20, 87:4, 87:8, 90:14, 104:4, 106:2
**relevant-specific** [1] -

15:17
**religion** [2] - 10:10, 10:18
**religious** [1] - 9:1
**reluctance** [1] - 116:13
**reluctant** [3] - 26:20, 26:21
**relying** [1] - 85:6
**remain** [1] - 2:21
**remainder** [1] - 60:23
**remember** [3] - 84:22, 84:25, 86:12
**remove** [1] - 84:6
**removed** [1] - 22:22
**repeated** [1] - 34:17
**repeatedly** [1] - 9:18
**rephrase** [1] - 7:1
**reply** [2] - 7:23, 11:6
**reported** [1] - 1:24
**Reporter** [3] - 1:22, 1:23, 118:24
**represent** [2] - 37:12, 65:22
**representatives** [1] - 110:6
**reprimand** [1] - 104:15
**reputation** [2] - 15:15, 16:2
**request** [10] - 8:24, 64:1, 64:24, 65:9, 66:2, 70:5, 70:9, 79:18, 110:24, 115:9
**requested** [1] - 117:8
**requesting** [1] - 117:1
**requests** [1] - 65:1
**require** [1] - 9:24
**requirement** [1] - 37:22
**requirements** [1] - 38:17
**requires** [2] - 74:3, 74:9
**requisite** [1] - 9:21
**reserve** [3] - 87:17, 106:19, 106:24
**reserving** [1] - 87:14
**resolve** [1] - 61:12
**resolved** [3] - 67:14, 68:1, 68:2
**resolving** [1] - 37:8
**respect** [20] - 10:21, 11:12, 12:18, 32:9, 34:16, 35:1, 52:5, 57:2, 70:13, 71:24, 82:13, 82:18, 92:11, 94:1, 105:15, 106:12, 108:13, 117:2, 117:3, 117:9
**respectfully** [7] -

21:11, 29:9, 34:22, 67:8, 67:11, 67:25, 69:10
**respond** [3] - 10:8, 20:16, 25:21
**responded** [1] - 63:16
**responding** [10] - 19:24, 39:10, 39:17, 39:18, 62:10, 63:18, 64:9, 86:9, 102:20, 102:21
**responds** [3] - 46:11, 48:22, 50:20
**response** [7] - 24:17, 24:18, 33:24, 64:14, 100:21, 101:4, 112:12
**responsibilities** [1] - 102:20
**responsibility** [2] - 19:25, 109:13
**rest** [2] - 32:19, 101:19
**resulting** [1] - 35:16
**retired** [1] - 13:9
**retirement** [1] - 90:12
**retracted** [1] - 93:16
**returning** [1] - 94:3
**revealed** [1] - 73:21
**review** [2] - 61:19, 73:17
**reviewed** [3] - 45:14, 52:21, 56:7
**revised** [2] - 6:8, 113:15
**revocation** [1] - 93:4
**revoked** [3] - 92:10, 93:7, 93:9
**rewrite** [1] - 35:6
**rid** [1] - 80:14
**rights** [2] - 70:10, 87:14
**Riley** [60] - 2:5, 2:16, 4:19, 9:16, 9:21, 11:24, 12:2, 12:6, 12:9, 16:8, 19:4, 19:21, 20:3, 22:25, 23:8, 24:23, 24:25, 25:10, 27:21, 27:22, 28:2, 33:15, 33:17, 33:24, 33:25, 45:1, 45:13, 45:19, 49:16, 50:13, 52:13, 52:25, 54:25, 55:5, 55:9, 55:10, 56:2, 57:9, 59:22, 71:6, 80:11, 80:12, 83:6, 83:7, 85:9, 90:16, 94:15, 95:25, 96:21, 97:19, 100:11, 100:22, 102:11, 103:17,

109:1, 109:8, 109:15
**RILEY** [1] - 1:5
**Riley's** [8] - 10:24, 22:8, 73:11, 75:6, 76:1, 87:9, 98:23, 99:11
**role** [1] - 11:22
**room** [1] - 33:13
**RPR** [3] - 1:22, 118:12, 118:24
**Rule** [10] - 14:2, 14:25, 15:1, 15:5, 15:11, 15:12, 15:19, 92:18, 106:6, 106:7
**rule** [12] - 14:11, 30:19, 42:1, 67:22, 73:2, 79:2, 79:11, 79:12, 103:7, 105:12, 106:10, 107:7
**ruled** [5] - 10:7, 13:21, 70:16, 106:1, 106:5
**Rules** [2] - 12:21, 14:8
**rules** [5] - 14:22, 17:22, 28:13, 78:2, 86:24
**ruling** [14] - 12:20, 18:8, 69:3, 73:1, 94:4, 97:16, 97:22, 97:24, 97:25, 99:5, 99:21, 100:9, 117:24
**rulings** [2] - 67:9, 113:8
**runs** [1] - 84:23

## S

**sailing** [1] - 83:20
**Saint** [2] - 1:22, 118:24
**SAINT** [1] - 118:12
**Saint-Loth** [2] - 1:22, 118:24
**SAINT-LOTH** [1] - 118:12
**sake** [1] - 108:2
**saved** [1] - 95:21
**saw** [2] - 22:11, 49:9
**schedule** [3] - 39:5, 107:9, 110:19
**scheduled** [2] - 2:3, 62:7
**schematic** [1] - 39:12
**scope** [4] - 98:18, 99:16, 100:8, 118:5
**screen** [2] - 18:17, 102:5
**sealed** [4] - 82:14, 83:3, 83:19

**search** [1] - 53:1
**second** [4] - 18:7, 48:14, 110:10, 114:11
**seconds** [1] - 104:9
**secret** [1] - 50:16
**section** [4] - 35:20, 36:15, 40:15, 97:23
**secure** [1] - 62:18
**see** [22] - 19:12, 24:12, 25:2, 27:3, 44:23, 46:17, 49:11, 60:6, 70:24, 71:23, 80:25, 82:2, 82:7, 82:25, 83:13, 87:13, 87:16, 102:7, 103:2, 105:11, 106:10, 113:9
**seeing** [1] - 24:23
**seek** [1] - 65:11
**seeking** [13] - 18:25, 23:20, 38:11, 44:3, 54:19, 72:20, 72:22, 78:16, 78:23, 85:11, 87:2, 90:19, 106:25
**seeks** [1] - 9:8
**seem** [3] - 33:22, 40:20, 49:15
**selection** [1] - 115:1
**selective** [4] - 8:14, 16:7, 16:17, 97:20
**send** [5] - 6:9, 6:10, 63:25, 92:6, 116:10
**sending** [1] - 43:15
**sense** [4] - 40:7, 40:10, 69:22, 88:5
**sensitive** [1] - 105:17
**sent** [20] - 19:13, 20:15, 20:16, 43:10, 44:18, 44:20, 44:22, 45:21, 46:7, 46:8, 47:20, 48:7, 48:24, 50:12, 50:19, 64:7, 71:1, 92:4, 93:10, 93:17
**sentence** [1] - 107:20
**sentencing** [11] - 76:21, 78:14, 78:15, 82:19, 83:10, 84:4, 84:14, 84:16, 84:17, 84:19, 107:19
**separate** [5] - 46:4, 50:16, 74:23, 93:14, 103:16
**separated** [1] - 51:6
**September** [8] - 1:5, 64:3, 64:7, 64:25, 65:10, 70:7, 113:12, 117:4
**series** [1] - 101:10

**serve** [1] - 93:21
**served** [2] - 38:24, 90:13
**service** [6] - 90:17, 91:2, 91:3, 91:22, 92:9, 93:17
**set** [9] - 44:15, 70:8, 81:16, 84:24, 90:5, 101:10, 111:4, 112:2, 113:3
**setting** [1] - 70:6
**settled** [1] - 8:3
**several** [2] - 7:24, 94:7
**shall** [1] - 118:18
**share** [1] - 2:23
**sheets** [3] - 59:18, 59:25, 61:15
**Shepherd** [1] - 58:3
**shit** [1] - 46:11
**shore** [1] - 115:18
**short** [2] - 59:4, 102:25
**shorthand** [1] - 1:24
**shortly** [2] - 3:23, 7:10
**show** [15] - 14:3, 14:20, 38:11, 38:23, 40:4, 43:13, 46:11, 49:8, 54:22, 75:14, 79:14, 80:1, 86:3, 91:6, 102:12
**showing** [6] - 8:15, 45:6, 59:5, 59:6, 73:21, 105:25
**shown** [4] - 25:12, 49:24, 85:5, 98:3
**shows** [9] - 41:1, 56:10, 87:5, 89:16, 94:14, 94:21, 105:8, 105:9
**sic** [2] - 18:18, 96:1
**side** [2] - 8:20, 79:13
**sides** [4] - 7:14, 11:10, 85:8, 118:3
**signatory** [1] - 118:20
**signed** [2] - 93:13, 93:14
**significant** [3] - 19:25, 28:14, 30:5
**Silverman** [1] - 1:17
**simply** [10] - 11:3, 36:20, 39:14, 46:6, 55:4, 56:6, 60:11, 79:14, 81:24, 102:2
**simultaneous** [1] - 112:13
**single** [8] - 6:13, 6:15, 10:6, 12:18, 18:18, 45:2, 74:17, 86:14
**singled** [2] - 8:13, 97:19

**sitting** [3] - 2:17, 19:22, 29:4
**situation** [1] - 111:23
**six** [1] - 48:20
**size** [1] - 42:1
**slate** [1] - 12:8
**sliced** [1] - 102:2
**slipped** [1] - 89:2
**Slutkin** [1] - 1:17
**SOD** [1] - 40:15
**solely** [3] - 10:12, 22:25, 79:12
**solves** [1] - 71:18
**someone** [11] - 6:22, 16:20, 17:15, 52:24, 56:23, 57:23, 63:21, 76:9, 83:5, 89:24
**somewhat** [2] - 5:25, 7:1
**soon** [1] - 115:10
**sooner** [2] - 114:3, 115:11
**sophisticated** [1] - 23:19
**sorry** [10] - 30:11, 34:14, 48:17, 67:10, 82:12, 94:2, 107:22, 108:21, 116:21, 117:13
**sort** [6] - 8:13, 8:15, 30:24, 36:7, 52:15, 92:16
**sought** [1] - 79:20
**sounds** [1] - 40:12
**speaking** [2] - 11:10, 40:19
**special** [1] - 98:12
**Special** [7] - 1:20, 32:1, 43:20, 52:19, 55:4, 56:6, 98:10
**specific** [19] - 9:22, 11:21, 13:19, 13:21, 15:17, 15:19, 16:3, 18:2, 22:5, 29:12, 30:15, 36:15, 38:3, 38:18, 45:17, 71:9, 74:4, 97:17, 100:21
**specifically** [7] - 8:6, 10:15, 23:12, 24:18, 47:10, 59:7, 82:18
**specifics** [1] - 81:13
**specter** [1] - 16:17
**speculating** [1] - 82:20
**speculation** [1] - 12:9
**speedy** [5] - 69:14, 70:10, 116:23, 117:8, 117:10
**Speedy** [1] - 117:6
**spend** [1] - 2:24

spending [1] - 116:1
spirit [1] - 14:21
spliced [1] - 102:24
spoken [1] - 67:19
St [1] - 1:13
stand [5] - 17:15,
20:10, 23:25, 24:5,
25:10, 33:3, 33:15,
49:5, 68:23, 76:22,
77:20, 78:6, 79:15,
93:23, 96:5
standard [1] - 12:20
standards [1] - 9:2
start [8] - 5:22, 60:21,
83:1, 85:1, 88:23,
89:25, 110:1, 111:16
starts [2] - 49:25,
50:24
state [12] - 23:4, 24:2,
25:6, 29:25, 30:1,
36:7, 36:20, 48:6,
49:11, 76:17, 87:9
statement [18] - 4:15,
20:24, 23:19, 27:24,
29:1, 32:13, 33:23,
39:22, 56:12, 68:21,
73:6, 78:12, 92:16,
95:14, 96:3, 96:6,
99:11, 100:21
statements [14] -
16:10, 17:19, 72:14,
72:15, 80:10, 81:17,
94:7, 96:8, 96:9,
99:8, 99:24, 100:1
States [5] - 2:4, 2:12,
13:22, 14:17, 55:22
STATES [3] - 1:1, 1:3,
1:9
status [1] - 29:15
statute [6] - 9:23,
10:2, 29:18, 32:2,
35:20, 36:16
statutory [1] - 68:15
stenographic [1] -
118:14
Stephen [1] - 2:13
STEPHEN [1] - 1:20
stick [2] - 36:23
still [17] - 29:24, 50:3,
62:4, 62:6, 62:20,
67:12, 68:1, 69:4,
69:5, 71:23, 85:21,
89:14, 98:7, 106:9,
108:3, 108:20, 114:8
stipulate [12] - 38:19,
38:20, 39:14, 39:24,
56:21, 56:22, 57:17,
57:19, 60:19, 61:10,
61:11, 61:12
stipulated [3] - 42:18,

60:8, 61:5
stipulates [1] - 55:3
stipulating [3] - 42:13,
42:16, 59:22
stipulation [4] - 38:25,
39:3, 40:13, 60:2
stipulations [4] -
39:23, 113:7,
113:10, 113:17
stop [1] - 18:6
story [2] - 59:10,
89:22
stray [2] - 49:25,
104:12
strays [1] - 17:13
stream [1] - 58:6
streamline [2] - 55:6,
69:12
streamlining [2] -
67:21, 67:22
Street [1] - 1:17
strenuously [1] -
69:14
striking [1] - 68:17
strong [3] - 6:16, 7:5,
23:6
stronger [1] - 13:25
strongly [1] - 104:15
struck [1] - 4:14
stuff [8] - 24:8, 34:5,
47:22, 49:8, 67:17,
85:6, 89:20, 103:4
subject [5] - 28:7,
73:18, 75:7, 80:25,
100:1
subjective [6] - 10:25,
22:8, 22:25, 23:3,
71:8, 73:11
subjectively [2] -
21:24, 25:3
submission [3] -
11:21, 11:24, 107:7
submissions [3] -
112:10, 112:13,
113:1
submit [2] - 98:17,
112:10
submitted [4] - 3:4,
22:20, 47:13, 54:1
submitting [1] - 95:16
subpoena [4] - 63:11,
65:7, 65:19, 72:9
subpoenas [3] -
64:11, 68:17, 111:22
subsequent [5] -
47:19, 47:25, 78:22,
92:3
subsequently [1] -
58:21
subset [1] - 112:20

substance [1] - 86:1
substantial [1] -
108:11
substitute [1] - 41:10
sudden [1] - 56:1
sufficient [1] - 93:20
sufficiently [1] - 93:20
suggest [2] - 33:7,
99:21
suggesting [4] - 19:9,
104:24, 104:25
suggestion [4] - 9:1,
19:8, 20:13, 105:4
Suite [1] - 1:17
summarized [1] -
115:1
summary [1] - 69:16
superior [1] - 26:12
supplemental [1] -
106:20
support [4] - 8:23,
11:25, 39:1, 71:7
supposed [5] - 14:14,
15:23, 20:19, 24:2,
117:16
Supreme [5] - 29:11,
29:17, 29:19, 37:22,
38:5
surprised [1] - 64:14
surreptitiously [3] -
16:11, 97:9, 99:19
surrounding [2] -
11:18, 13:13
surveillance [1] -
104:21
suspected [1] - 20:15
sworn [2] - 38:12,
40:13
sympathy [2] - 8:18,
8:19
system [1] - 52:21

# T

table [4] - 2:12, 2:21,
79:7, 110:7
talks [1] - 75:19
teach [2] - 17:5, 49:25
team [2] - 62:16, 68:10
technically [3] - 55:12,
63:11, 70:9
ten [1] - 32:15
tend [2] - 3:24, 87:7
tender [1] - 70:25
terminology [1] -
26:12
terms [5] - 34:18,
69:23, 88:21,
101:18, 105:22

test [1] - 96:24
testified [1] - 81:12
testifies [2] - 12:24,
99:8
testify [18] - 10:24,
16:2, 20:5, 27:4,
27:5, 33:7, 43:20,
52:20, 52:25, 56:6,
56:23, 61:7, 65:12,
89:24, 93:19, 96:1,
114:16, 115:5
testifying [8] - 7:21,
55:4, 76:25, 77:11,
83:6, 89:22, 102:6,
102:7
testimony [15] - 15:14,
15:15, 17:13, 45:8,
54:8, 69:11, 71:20,
71:24, 72:12, 74:14,
79:20, 89:16, 91:1,
92:1, 114:11
text [1] - 47:21
THE [234] - 1:1, 1:9,
1:11, 1:16, 2:2, 2:14,
2:18, 5:10, 5:12,
18:5, 18:9, 18:22,
19:6, 20:4, 20:9,
21:4, 21:10, 22:10,
23:13, 25:14, 26:18,
27:3, 28:9, 29:23,
30:10, 30:22, 31:2,
32:3, 32:8, 33:12,
34:2, 34:13, 35:3,
35:18, 35:23, 36:12,
36:21, 37:1, 37:3,
38:7, 38:14, 38:20,
39:20, 40:9, 40:25,
41:6, 41:16, 41:22,
41:25, 42:4, 42:21,
42:25, 43:6, 43:12,
43:24, 44:3, 44:7,
44:14, 44:22, 45:20,
45:24, 46:7, 46:12,
46:17, 47:1, 47:21,
48:1, 48:23, 50:21,
51:9, 51:18, 51:20,
51:24, 52:9, 52:24,
53:4, 53:9, 53:16,
53:20, 53:23, 54:3,
54:6, 55:8, 55:15,
56:9, 56:14, 56:20,
57:11, 57:14, 57:20,
58:8, 58:11, 58:16,
58:20, 58:24, 59:13,
59:15, 59:17, 60:3,
60:25, 61:4, 61:17,
61:22, 63:21, 63:25,
64:17, 64:21, 65:15,
65:25, 66:4, 66:7,
66:16, 66:20, 69:13,

69:18, 71:3, 71:11,
71:16, 72:4, 72:22,
73:5, 73:22, 74:15,
75:3, 75:8, 75:20,
75:25, 76:3, 76:11,
77:13, 77:15, 77:18,
78:1, 78:4, 78:8,
78:20, 79:2, 79:5,
79:21, 80:5, 80:22,
81:5, 81:10, 81:14,
82:2, 82:25, 84:15,
85:19, 86:16, 87:16,
88:11, 88:15, 88:18,
89:1, 89:14, 90:10,
90:19, 91:14, 91:18,
92:8, 92:21, 92:24,
93:18, 94:13, 95:10,
95:18, 95:25, 96:5,
96:16, 96:19, 96:25,
97:5, 97:23, 98:10,
98:21, 98:23, 99:7,
99:15, 100:11,
100:24, 101:7,
101:16, 102:4,
102:14, 102:22,
103:3, 103:11,
103:19, 104:18,
104:24, 105:11,
105:14, 106:8,
106:23, 107:3,
107:6, 107:17,
107:24, 108:5,
108:12, 108:22,
109:12, 109:17,
109:18, 109:22,
109:23, 110:9,
110:15, 111:1,
111:9, 111:10,
111:17, 112:23,
113:6, 113:21,
113:23, 113:25,
114:1, 114:12,
114:15, 114:23,
115:4, 115:7,
115:15, 116:4,
116:7, 116:17,
116:20, 116:25,
117:7, 117:13,
117:15, 117:18,
117:20
themselves [3] - 2:9,
5:17, 83:20
theoretical [1] - 75:5
theory [4] - 90:16,
95:13, 96:10, 97:19
therefore [4] - 8:15,
10:15, 10:21, 17:9
thereof [2] - 12:4, 12:7
thinking [13] - 23:14,
28:15, 32:23, 32:25,

33:20, 75:8, 75:12, 75:13, 75:14, 75:22, 75:25, 76:13, 114:19
**thinks** [2] - 5:3, 114:25
**third** [5] - 63:21, 64:17, 64:21, 67:19, 108:10
**Thompson** [1] - 1:17
**thoughts** [1] - 114:23
**thousand** [3] - 28:21, 32:4, 32:11
**three** [18] - 46:10, 50:19, 62:24, 63:7, 64:11, 64:18, 64:20, 64:25, 65:7, 65:19, 68:20, 101:20, 101:21, 103:1, 108:14, 114:9, 114:20, 115:3
**throughout** [1] - 37:16
**throws** [1] - 102:5
**thrust** [1] - 16:25
**Thursday** [5] - 102:16, 102:25, 103:17, 114:18, 116:2
**tie** [1] - 65:17
**timeline** [1] - 59:10
**timing** [3] - 52:11, 66:9, 69:23
**tinker** [1] - 5:24
**today** [16] - 3:3, 5:13, 22:21, 32:12, 37:8, 39:23, 67:9, 67:14, 68:1, 69:7, 79:8, 112:14, 113:20, 113:21, 113:23, 115:17
**together** [6] - 3:14, 70:3, 95:4, 105:8, 112:3, 113:18
**tomorrow** [2] - 5:13, 115:17
**took** [5] - 18:13, 38:8, 43:22, 45:14, 48:16
**tool** [1] - 86:4
**top** [1] - 111:12
**total** [1] - 46:11
**totally** [1] - 27:11
**traditionally** [1] - 89:6
**trained** [4] - 23:3, 23:9, 25:5, 33:23
**training** [1] - 22:3
**trait** [9] - 15:2, 15:4, 15:8, 15:11, 15:14, 15:20, 15:25, 16:2, 16:3
**traits** [1] - 14:19
**trampled** [2] - 24:20, 47:13

**transcript** [4] - 1:25, 118:14, 118:15, 118:19
**TRANSCRIPT** [1] - 1:8
**transcription** [1] - 1:25
**transferred** [1] - 43:15
**transmitted** [10] - 44:1, 44:8, 44:11, 44:14, 45:12, 49:16, 51:13, 51:14, 51:16, 51:20
**travel** [1] - 49:20
**tread** [1] - 33:6
**treading** [1] - 24:1
**treated** [1] - 88:21
**treats** [1] - 17:14
**Trial** [1] - 117:6
**trial** [43] - 3:1, 3:11, 3:14, 12:1, 14:7, 24:13, 32:12, 62:7, 63:9, 63:14, 63:20, 66:11, 67:2, 67:12, 69:8, 69:14, 70:7, 70:8, 70:10, 70:12, 79:9, 97:18, 98:1, 98:18, 99:4, 107:9, 109:14, 110:18, 110:23, 111:2, 111:8, 111:10, 111:14, 111:16, 112:8, 113:13, 116:23, 117:9, 117:10, 117:15, 117:16, 118:4
**tried** [3] - 62:19, 68:14, 80:2
**tries** [2] - 17:19, 23:25
**trigger** [1] - 4:24
**triggers** [1] - 112:24
**trouble** [1] - 90:1
**true** [5] - 15:5, 88:8, 116:4, 118:13, 118:14
**truth** [4] - 18:19, 23:1, 40:10, 101:8
**try** [13] - 2:25, 24:6, 28:9, 70:14, 78:25, 80:2, 82:21, 89:12, 95:19, 99:21, 109:25, 110:3, 111:20
**trying** [45] - 8:18, 18:19, 19:16, 26:19, 27:7, 28:12, 30:13, 30:24, 32:8, 32:15, 34:17, 49:25, 50:8, 50:9, 63:15, 63:17, 66:10, 67:7, 68:22, 71:6, 71:7, 72:6,

75:9, 83:14, 84:7, 86:8, 86:17, 86:18, 88:6, 89:14, 90:24, 95:5, 97:11, 97:24, 97:25, 103:19, 103:20, 104:5, 105:2, 108:1, 108:16, 108:18, 108:20, 111:14
**Tuesday** [3] - 113:20, 113:25, 114:16
**TUI** [1] - 65:4
**turn** [2] - 83:15, 85:12
**turned** [1] - 47:16
**turns** [1] - 12:17
**two** [32] - 11:25, 36:7, 41:1, 41:2, 41:10, 41:20, 51:8, 53:1, 59:6, 62:21, 62:25, 63:1, 63:7, 64:12, 66:25, 67:1, 68:21, 68:23, 81:8, 82:9, 86:1, 101:10, 101:17, 103:1, 104:8, 104:23, 105:2, 108:10, 114:8, 114:22, 115:2
**two-page** [1] - 59:6
**type** [2] - 8:14, 46:21

---

**U**

**U.S** [1] - 1:12, 12:10, 35:17, 64:1, 65:18, 70:18, 71:14, 71:17, 94:17, 94:18, 95:10
**ultimate** [1] - 108:17
**ultimately** [4] - 31:3, 69:8, 76:17, 93:16
**umbrella** [1] - 34:21
**unavailable** [1] - 65:20
**under** [19] - 14:2, 14:11, 15:1, 15:12, 15:19, 32:2, 35:21, 36:15, 39:6, 56:25, 69:19, 72:9, 81:12, 82:15, 86:10, 92:18, 95:12, 111:5, 117:5
**underlies** [1] - 44:16
**underlying** [4] - 16:15, 53:14, 54:1, 54:4
**undermine** [3] - 80:18, 88:6, 89:7
**understandable** [2] - 33:14, 63:17
**understood** [4] - 50:5, 82:11, 91:24, 100:4
**unfairly** [1] - 8:13
**unfortunately** [1] -

108:3
**unit** [1] - 39:9
**United** [5] - 2:4, 2:12, 13:22, 14:17, 55:22
**UNITED** [3] - 1:1, 1:3, 1:9
**unlawful** [1] - 19:12
**unlawfully** [1] - 17:2
**unless** [5] - 13:11, 41:6, 84:18, 99:7, 101:3
**unlikely** [1] - 114:15
**unnecessary** [1] - 113:11
**unprepared** [1] - 72:8
**unsuccessfully** [1] - 108:18
**unusual** [2] - 12:25, 30:14
**up** [37] - 4:8, 4:11, 6:2, 6:16, 6:24, 8:18, 18:7, 18:17, 20:7, 24:6, 27:11, 31:9, 46:3, 46:4, 52:6, 62:13, 65:17, 66:15, 67:23, 69:11, 72:23, 81:16, 84:24, 86:3, 86:24, 88:22, 89:3, 90:5, 102:5, 108:2, 108:16, 111:5, 111:13, 111:23, 112:13, 115:10, 115:18
**upheld** [1] - 14:7
**uploaded** [1] - 52:20
**USAO** [1] - 1:21
**useful** [1] - 52:3
**uses** [1] - 11:7
**utilizing** [2] - 102:8, 102:9

---

**V**

**V.L** [1] - 54:23
**vacated** [1] - 110:23
**valuable** [1] - 47:15
**various** [2] - 80:8, 104:20
**vary** [1] - 90:1
**verdict** [2] - 8:19, 10:12
**version** [11] - 22:21, 41:1, 41:5, 41:9, 41:12, 58:20, 58:22, 59:2, 61:6, 71:1, 113:9
**versus** [1] - 26:1
**via** [1] - 44:19
**video** [30] - 6:12, 6:14,

43:3, 43:4, 45:2, 45:18, 50:12, 51:1, 51:25, 57:23, 58:2, 58:6, 102:11, 102:16, 102:22, 103:10, 103:16, 104:3, 104:6, 104:7, 104:11, 104:20, 105:16, 105:17, 105:25, 106:3
**videos** [25] - 42:24, 43:9, 43:17, 43:21, 44:8, 44:13, 44:20, 45:6, 45:11, 45:15, 46:10, 47:1, 47:19, 47:20, 48:13, 48:19, 48:20, 50:19, 51:2, 51:13, 73:21, 105:6, 105:7, 105:23
**view** [2] - 73:22, 74:22
**viewed** [2] - 44:25, 45:18
**Vinny** [3] - 54:23, 55:1, 55:22
**violate** [1] - 79:11
**violated** [2] - 71:13, 71:17
**violates** [3] - 42:2, 106:6
**violating** [1] - 24:17
**violent** [1] - 50:24
**Virginia** [1] - 68:3
**void** [1] - 118:18
**voir** [10] - 3:22, 4:4, 4:11, 4:17, 5:19, 5:23, 5:24, 6:9, 6:10, 7:9
**volition** [1] - 67:5
**vs** [3] - 1:4, 13:23, 14:18

---

**W**

**waiting** [3] - 5:18, 87:13, 102:10
**waived** [2] - 117:2, 117:8
**wake** [1] - 31:9
**walk** [1] - 60:9
**walked** [1] - 39:23
**walking** [2] - 2:24, 85:1
**wants** [7] - 20:5, 30:19, 63:14, 80:1, 91:25, 94:5, 111:24
**warn** [1] - 5:22
**Washington** [4] - 1:6, 1:14, 1:18, 13:23
**watch** [2] - 51:2, 51:5

**watched** [2] - 45:2, 46:9
**Wednesday** [2] - 114:18, 115:10
**week** [12] - 3:1, 61:16, 63:9, 64:22, 65:21, 68:5, 110:10, 110:11, 110:13, 112:7, 112:8, 115:13
**weekend** [1] - 63:8
**weeks** [2] - 64:12, 70:2
**weight** [1] - 52:23
**welcome** [4] - 2:18, 28:2, 85:7, 85:18
**well-established** [1] - 79:11
**whatsoever** [5] - 23:8, 48:13, 70:21, 81:19, 81:22
**whence** [1] - 36:1
**white** [1] - 81:3
**White** [1] - 1:17
**whole** [6] - 4:13, 16:16, 23:18, 44:15, 71:19, 73:23
**wide** [1] - 110:24
**widening** [1] - 48:9
**wife** [2] - 8:22, 11:25
**willing** [5] - 25:7, 60:19, 61:10, 61:12, 67:6
**wisdom** [1] - 79:12
**wish** [1] - 65:12
**withdrawn** [1] - 113:11
**witness** [53] - 12:25, 15:16, 16:1, 17:15, 20:10, 39:13, 49:25, 57:5, 58:3, 58:9, 61:7, 63:16, 63:17, 63:20, 63:22, 64:2, 64:6, 67:19, 68:11, 72:9, 76:22, 77:4, 77:6, 77:7, 77:10, 77:12, 77:21, 79:12, 79:15, 79:22, 80:16, 80:17, 83:2, 83:12, 83:24, 84:1, 84:11, 85:9, 85:10, 85:11, 86:14, 87:6, 88:11, 89:13, 89:24, 102:6, 106:21, 110:8, 112:21, 114:10
**witness's** [1] - 79:14
**witnessed** [1] - 50:25
**witnesses** [54] - 7:19, 7:20, 20:24, 37:9, 62:7, 62:18, 62:20, 62:24, 63:5, 63:7,

64:13, 64:15, 66:22, 66:25, 67:1, 67:3, 67:4, 67:11, 67:18, 67:22, 67:24, 68:2, 68:8, 68:12, 68:13, 68:18, 68:21, 68:25, 69:11, 85:4, 86:22, 87:23, 87:24, 88:3, 88:5, 88:19, 89:5, 89:6, 89:8, 100:7, 100:8, 110:17, 111:18, 111:24, 114:7, 114:11, 114:16, 115:2, 115:5, 115:17, 115:18, 115:19
**wonder** [2] - 10:5, 56:3
**wondering** [1] - 41:24
**word** [2] - 20:6, 32:14
**words** [4] - 32:25, 33:1, 33:2, 33:4
**wordsmithing** [1] - 3:2
**workable** [1] - 40:12
**works** [1] - 5:15
**worn** [3] - 103:14, 104:3, 105:16
**worried** [1] - 70:11
**worth** [1] - 117:22
**writ** [1] - 74:25
**write** [1] - 4:5
**writing** [4] - 86:23, 92:19, 92:20, 117:3
**wrongdoing** [1] - 6:21
**wrongful** [1] - 30:1
**wrote** [2] - 11:6, 33:20

## Y

**year** [1] - 110:21
**years** [9] - 10:25, 13:7, 59:23, 91:2, 91:4, 91:22, 94:19, 94:22
**yes-or-no** [2] - 4:10, 66:16
**you-all** [1] - 113:20
**yourself** [1] - 98:11

## Z

**zealous** [1] - 118:3