**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | :      No. 21-cr-628-ABJ |
| | : |
| v. | : |
| | : |
| MICHAEL ANGELO RILEY, | : |
| | : |
| *Defendant*. | : |
| | : |
| | : |

## NOTICE OF FILING OF SUPPLEMENT TO
## DEFENDANT'S ORAL MOTION FOR JUDGMENT OF ACQUITTAL

Defendant Michael Angelo Riley, through his undersigned counsel, submits this supplement to his oral motion for judgment of acquittal on both counts of obstruction of a grand jury proceeding in violation of 18 U.S.C. § 1512 that was raised initially at the conclusion of the Government's case and reraised after the conclusion of the defense case.

### INTRODUCTION

Michael Riley was charged with two counts of obstructing a grand jury proceeding for telling Jacob Hiles to "take down" a portion of Hiles' public Facebook post on January 7, 2021 (Count One) and for deleting his own Facebook direct messages with Hiles on January 20, 2021 during the process of notifying Hiles that he was terminating all contact with him and deleting Hiles' "posts" (Count Two). To satisfy its burden of proof as to each and every element of the charged offenses, the Government was required to establish beyond a reasonable doubt that Officer Riley *intended* to obstruct a grand jury proceeding resulting from the January 6 breach of the U.S. Capitol and *knew* that his actions would likely affect that grand jury proceeding. The evidence presented at trial was insufficient for a reasonable trier of fact to find guilt beyond a reasonable

doubt on either count of obstruction of a grand jury proceeding.

Instead, the evidence (or lack thereof) confirmed that Officer Riley never intended to obstruct a grand jury proceeding and never knew or could have imagined that his actions would have affected a grand jury proceeding. There was not a single reference to a grand jury proceeding or grand jury subpoena in any evidence submitted to the jury or from any witness who testified at trial. Absent a single direct message on January 7, 2021, there was no evidence that Officer Riley took any action to assist Hiles in avoiding being arrested, instructed any individual to not report Hiles, informed Hiles that he had been reported, or directed anyone (including Hiles) to not cooperate with law enforcement. There was simply no evidence supporting any intent to obstruct, or knowledge of an ability to affect, a grand jury proceeding.

As for Count One, on January 7, 2021, Officer Riley did not know that by telling Hiles to "take down" a *part* of a public Facebook post — which described at best non-intentional conduct, and at worst misdemeanor trespassing, and was viewed, reposted, and reported by numerous individuals — he would affect a grand jury proceeding. In the text of the post, Hiles stated that he was "disheartened and disgusted" by what he saw, specifically officers being assaulted, and that he regretted his presence at the event. He noted he was indirectly "gassed and sprayed" to the point of choking by police — as they attempted to control the crowd and sprayed attendees who, as Hiles admitted, "deserved it" — but could not leave because he would have been "trampled" by the crowd. Hiles described being pushed forward, as thousands of people pushed towards the building, and then "funneled" into and through the Capitol by police.[1] The post stated that Hiles left

---

[1] Hiles' account of being "funneled" through the building by police comported generally with Officer Riley's understanding of the events, as evidenced by messages sent on January 8, 2021. Officer Riley stated that the door "was opened because [they] had officers who were trapped in the crowd and fighting for their lives, some were already sever[e]ly injured" and the "decision was

immediately after being pushed into the building.

Officer Riley clearly did not intend to obstruct any grand jury proceeding (as exemplified by every action *after* that direct message, which showed both a lack of intent to obstruct and of a belief that he would affect a grand jury). Hiles' post did not describe any conduct by Hiles that equated to assaulting officers or destroying property. From the experience of Officer Riley (and the Capitol Police Officer witnesses who testified at trial on that subject), Hiles' conduct would not be the subject of a grand jury proceeding or result in any offense higher than a misdemeanor trespassing offense.

As for Count Two, at the conclusion of the Government's case, even the Government did not know — when questioned by this Court — whether the Government was arguing that Officer Riley's deletion of his Facebook direct messages was obstruction as to a grand jury proceeding regarding *Hiles' conduct* **or** a grand jury proceeding regarding *Officer Riley's own conduct.* Notwithstanding the language of the Indictment that charged obstruction of a grand jury resulting from the January 6 breach of the U.S. Capitol, neither of the Government's two conflicting theories was supported by sufficient evidence from which a reasonable juror could find guilt beyond a reasonable doubt.

Officer Riley deleted his direct messages with Hiles as part of his express notice to Hiles that he would no longer have any contact with him and was deleting all of Hiles' "posts." At that moment on January 20, 2021, Officer Riley was aware, based on Hiles' written messages, that Hiles had been arrested on misdemeanor charges and that the FBI had downloaded "everything" from his cellphone. Officer Riley could not have known or imagined that, by deleting his *own*

---

made to open the door so they could get to safety;" in other words, the police "surrendered the bldg. . . . to save lives and fortify the areas and people of importance." Gov't Ex. 202a at 27.

*communications*, he could impair a grand jury for conduct that was already charged as a misdemeanor, for information already in the Government's possession, and for an individual that Officer Riley knew had been reported separately by another Capitol Police officer and captured by cameras inside the U.S. Capitol. As for a potential investigation *of himself*, Officer Riley could not have known or believed that, by deleting his own direct messages, he could impair a grand jury resulting from the January 6 breach of the U.S. Capitol, when he did not participate in the events of January 6 or assist anyone in the breach of the U.S. Capitol, and his direct messages did not discuss criminal conduct (as evidenced by Officer Riley's reporting of his conduct to two separate Capitol Police officers, who took no action in response). Even assuming Officer Riley believed he had committed a crime (which there is absolutely no evidence to support), he had already been told by Hiles that the Government had secured the contents of Hiles' cellphone, negating any belief that he could impair the grand jury's ability to obtain his direct messages with Hiles.

Moreover, the Government's evidence of the grand jury proceeding was non-existent. On direct examination, FBI Special Agent ("SA") Stephen Hart, consistent with the Government's opening, testified regarding the FBI's investigation and information that *he* would have wanted as an FBI investigator of the January 6 breach of the U.S. Capitol. He also testified that a grand jury proceeding goes hand-in-hand with an FBI investigation, thereby conflating obstruction of an FBI investigation with obstruction of a grand jury proceeding by suggesting that one does not exist without the other.

On cross-examination, it quickly became clear that SA Hart had no personal knowledge of the charged grand jury proceeding about which he had testified extensively on direct examination. Excluding the present case, SA Hart only participated in the investigation of four to five January 6 cases (of nearly 800). The first time he was purportedly ever in a grand jury proceeding relating

to the January 6 breach of the Capitol was when he appeared before the grand jury that *indicted Officer Riley*, which SA Hart testified was part of the same grand jury proceeding he described on direct examination. The problem with that is the grand jury that charged Officer Riley was not empaneled on January 8, 2021 — it was empaneled on ***August 11, 2021***. *See* Indictment (D.E. 1) (returned on October 14, 2021, by a grand jury sworn in on August 11, 2021). Thus, contrary to his testimony on direct examination, SA Hart's "personal knowledge" of a January 6 grand jury does not relate to the grand jury purportedly sworn in on January 8, 2021 and resulting from the January 6, 2021 Capitol breach.

The Government's theory and arguments, based in part on SA Hart's testimony, that Officer Riley was protecting *himself* by deleting his own messages is entirely inconsistent with Count Two, which charges Officer Riley with obstruction of the grand jury proceeding pertaining to the January 6 breach of the U.S. Capitol. Because the grand jury investigating Officer Riley did not exist until months later, it would not have been reasonably foreseeable to Officer Riley on January 20, 2021, as he did not engage in any criminal conduct through his direct messages with Hiles, often discussing with him fishing, politics, and life experiences. Moreover, the direct messages were already in the Government's possession prior to Officer Riley deleting them in the process of ending all contact with Hiles.

SA Hart's testimony as to the grand jury at issue in this case was so lacking that the Government was forced — at the eleventh hour before resting its case — to obtain judicial notice as to the existence of the charged grand jury. The judicial notice provided no facts, substance, or details that would make a reasonable trier of fact find beyond a reasonable doubt that Officer Riley intended to obstruct that grand jury and knew that his actions would have affected that grand jury. Hiles' conduct was, at worst, misdemeanor conduct, which is not traditionally the subject of a

grand jury proceeding, and Officer Riley would have had no belief that his actions *after* January 6 would be within the purview of a grand jury *resulting from* January 6. This contention is further supported by the fact that, when Officer Riley deleted his Facebook messages as part of his termination of his contact with Hiles, Hiles had already been arrested on misdemeanor offenses, Hiles had alerted Officer Riley that the FBI downloaded his cellphone, and none of the direct messages were criminal in nature so as to support a belief that a grand jury would seek them for a prosecution of Officer Riley. The Government's entire obstruction of justice case against Officer Riley consists of a direct message to Hiles to "take down" a part of a public Facebook post and Officer Riley's deletion of his own messages with Hiles during the process of terminating his online contact with him.

Notwithstanding the Government's anger, distain, and outrage for Officer Riley's contact with a January 6, 2021 protestor — whom the Government referred to as a "known rioter" before the jury, but championed publicly as someone deserving of probation and who was neither violent nor assaultive — that anger, distain, and outrage does not warrant a felony conviction or continued felony prosecution, when Officer Riley's conduct does not meet the elements of the charged offenses. The Government did not present sufficient evidence that Officer Riley intended to and knew he would affect, a grand jury proceeding in violation of 18 U.S.C. § 1512. Officer Riley's conduct, while inappropriate (as he acknowledged under oath), was not criminal, and he should not be a felon because of a misguided and inappropriate conversation. Entering judgment of acquittal does not reward Officer Riley's conduct, because he has already been punished for his actions, which continues to this day.

## FACTUAL RECORD

At trial, the Government was required to establish that Officer Riley obstructed a grand jury proceeding when he told Hiles to "take down" part of a Facebook post on January 7, 2021 (Count One) and when he deleted his direct messages with Hiles on January 20, 2021 (Count Two). As set forth in the jury instructions at trial, the Government alleged that Officer Riley obstructed a "grand jury proceeding resulting from the January 6 breach of the U.S. Capitol." *See* Jury Instructions at 21-24 (D.E. 81).

The Government's evidence did not provide any details whatsoever as to the purpose or scope of the grand jury underlying Counts One and Two of the Indictment — *i.e.*, whether the grand jury was: (i) empaneled solely in anticipation of the large volume of cases in the District resulting from the U.S. Capitol attack on January 6, 2021, with no guidance on what if any matters or charges the grand jury would investigate or charge upon empanelment; (ii) convened specifically for January 6 offenses and no other offenses; or (iii) focused on assaults, threats, destruction of property, and theft of property relating to the Capitol attack (traditional felony offenses), as well as, any individual who paraded and demonstrated in and near the U.S. Capitol, anyone who aided and abetted such conduct, or anyone who obstructed the grand jury's investigation of such conduct.

At trial, the Government did not introduce any evidence or testimony regarding the empaneling of the grand jury or any instructions given to the grand jury as to what matters it would consider and investigate. The Government did not call any witnesses or move into evidence documents attesting to what the grand jury was investigating on January 8, 2021, the date the grand jury at issue was empaneled. Also, the Government did not ask the Court, *prior to* trial, to take judicial notice as to any aspect of the grand jury that underlies Counts One and Two of the

Indictment, instead waiting until its only witness was shown to have no personal knowledge to support his direct examination testimony.

During the Government's eleventh-hour crafting of a judicial notice, the Government identified a memorandum attesting to why the grand jury was extended — which is a common practice when there are pending investigations that would be frustrated by the expiration of the grand jury — and referenced an earlier memorandum from the time of the grand jury's empanelment that was ambiguous as to its purpose. The defense did not see the subsequent memorandum until just before the Government rested and, to this day, the defense has never seen the earlier memorandum. Nor did the defense receive any advance notice that the Government would seek to cure its completely deficient order of proof on the existence of the grand jury by either calling an additional witness or by scrambling to provide evidence for the Court to support the taking of judicial notice.

Aside from the judicial notice, the Government's only evidence regarding the charged grand jury came from SA Hart, who had no personal knowledge of any January 6 related grand jury proceeding until he appeared as a witness in the Government's request for an indictment of Officer Riley. Putting aside momentarily the elements of intent, foreseeability, and likelihood of affecting the grand jury, the fact is that the initial indictments returned relating to January 6 were for assaultive conduct (with pendent charging of misdemeanor trespassing offenses) and were returned by a *different* grand jury that the grand jury that returned the Indictment against Officer Riley. *Compare United States v. Mark Jefferson Leffingwell*, 21-cr-5-ABJ (D.E. 6) (Indictment, returned on January 11, 2021, by a grand jury sworn on ***January 8, 2021***) *with United States v. Michael Riley,* 21-cr-628-ABJ (D.E. 1) (Indictment, returned on October 14, 2021, by a grand jury sworn on ***August 11, 2021***).

**Holding a Criminal Term**
**Grand Jury Sworn in on August 11, 2021**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| | : | |
| v. | : | |
| | : | VIOLATION: |
| MICHAEL ANGELO RILEY, | : | |
| | : | Count 1: 18 U.S.C. § 1512(b)(2)(B) |
| | : | (Obstruction) |
| Defendant. | : | |
| | : | Count 2: 18 U.S.C. § 1512(c)(1) |
| | : | (Obstruction) |

*See* Indictment at 1 (D.E. 1). Accordingly, SA Hart's first appearance in a January 6 grand jury was *not* for the grand jury purportedly sworn in on January 8, 2021 resulting from the January 6, 2021 breach of the U.S. Capitol.

To be clear, SA Hart had no idea what he was talking about relating to the purported grand jury investigating the January 6, 2021 Capitol breach, in part because his focus was on how Officer Riley purportedly obstructed his FBI investigation, which he testified went hand-in-hand with an open grand jury proceeding. The Government's evidence at trial remained consistent with its understanding of its case at the Pretrial Conference when the Government wanted to instruct the jury that Officer Riley obstructed an investigation, which the defense had asserted for over a year could not establish criminal liability under the charged statute:

**THE COURT:**          What are you going to tell the jury he is charged with obstructing?

**MS. DOHRMANN:**  ***The federal investigation, including a grand jury investigation, resulting from the January 6th breach of the U.S. Capitol.***

**THE COURT:**          All right. But you have told me over and over again that you are focused on the grand jury part given the section of the statute that he's been indicted under.

**MS. DOHRMANN:** Yes, Your Honor.

**THE COURT:**          All right. So I am not sure that you can, on the one hand, say, We're not talking about the FBI investigation; and say, A federal investigation including a grand jury investigation, whence you have hung your hat on the fact that you are talking about the grand jury investigation. Isn't that what he's charged with?

9

**MS. DOHRMANN:**  Yes, Your Honor.

Sept. 12, 2022 Tr. at 35:13-36:4 (emphasis added).[2]

After the Government's opening and direct examination of SA Hart, the Court indicated

that it was necessary to instruct the jury prior to deliberations that Officer Riley had not been

charged with obstruction of an FBI investigation. A similar instruction was given to the jury that

Officer Riley was not charged with failing to report information, as the Government raised the

issue in opening and closing and asked every law enforcement officer who testified at trial whether

they would have reported information regarding Hiles, notwithstanding that a failure to report was

not charged in the case.

---

[2] Just as there is absolutely no evidence or testimony establishing Officer Riley's intent to obstruct a grand jury proceeding or knowledge that he would affect one, every aspect of the Government's case, from its instruction to the FBI to open an investigation against Officer Riley on August 5, 2021 to its closing argument at his trial, was consistent with a belief that he impaired an FBI investigation, rather than a belief that Officer Riley obstructed a grand jury proceeding. When the Government could not find a conspiracy between Hiles and Officer Riley after Hiles repeatedly told the Government during debriefs that he never had any contact with Riley before January 7, 2021, the Government persisted on gathering every record of Officer Riley, which included going back to the November 2020 election. When that effort went nowhere, the Government sent two agents to Officer Riley's home with separate tape recorders to, in their words, "surreptitiously" record him, in the hope of obtaining an § 1001 false statement to law enforcement charge. When that went nowhere, the Government turned to pursuing charges for obstruction of an investigation. Fortunately for Officer Riley, that conduct is not a basis for criminal liability under 18 U.S.C. § 1512 and that is not what the Government charged in this case.

The Government tried to remedy its case by simply presenting an FBI agent to say that an FBI investigation and grand jury proceeding go hand-in-hand. That did not cure the Government's deficient proof and the Government cannot convert its entire case theory to fit a statute simply with a direct examination question. The fact still remains that the FBI's investigation makes no mention of obstruction of a grand jury proceeding, the Government's press release regarding Officer Riley upon his arrest alleges obstruction of an "investigation," and, just before the commencement of the trial of this matter, the Government told the Court that it wanted the jury to be instructed that Officer Riley obstructed "the federal investigation, including a grand jury investigation," which this Court rejected as inconsistent with the Government's prior position with the Court and the charged offenses. *See* Sept. 12, 2022 Tr. at 35:13-36:4.

1.       **<u>Absence of Sufficient Evidence as to Count One of the Indictment.</u>**

The evidence in the record established that Officer Riley did not instruct Hiles to take down any video posted on the internet or the entirety of his public content about January 6, but rather suggested that he take down "part" of a lengthy Facebook post that mentioned Hiles being inside the U.S. Capitol. SA Hart testified that a grand jury indictment is not required to charge an individual with misdemeanor offenses and that his own investigation of protestor *Jacob Lewis* (No. 21-cr-100) resulted in misdemeanor offenses charged by an information, exactly like Hiles was.

SA Hart further testified that Hiles had hundreds of Facebook friends and that numerous individuals viewed, reposted, and reported Hiles' Facebook post. While SA Hart conspicuously could not describe Hiles' conduct inside the U.S. Capitol or confirm when the FBI was first in possession of Hiles' post (and nor could the FBI agent who actually received a screenshot of the post, even after being advised by defense counsel the evening before of the purpose for him being called as a witness), SA Hart confirmed that the information contained in Defense Ex. 25-1 showed 759 views of the post within hours of it being posted, and five hours before Officer Riley had responded to it. Although SA Hart testified on direct examination as to the information that he (as an FBI agent) would have wanted, the evidence established that Hiles' post was in the FBI's possession no later than January 8 and potentially as early as 8:28 a.m. on January 7, 2021, five hours  prior to Officer Riley's response to that post. Officer Riley did not receive this evidence in discovery or in advance of trial, but only after the cross-examination of SA Hart when the Court ordered it to be produced.



Def. Ex. 25-1.

The evidence at trial also established the following facts upon which no reasonable juror

could have found Officer Riley guilty beyond a reasonable doubt as to Count One:

(i)    There were no discussions of a grand jury proceeding or subpoena anywhere in any messages between Officer Riley and Hiles or in any messages between Officer Riley and the numerous law enforcement and civilian witnesses with whom he discussed Hiles;

(ii)   None of the witnesses discussed with Officer Riley a grand jury proceeding or grand jury subpoena;

(iii)  Officer Riley discussed with two law enforcement officers that he told Hiles to take down information from Facebook, even after Hiles informed Officer Riley that he had spoken to the FBI and mentioned to them that their friendship was a positive result of January 6, 2021, which was the motivating factor for Officer Riley in ending his contact with Hiles;

(iv)   There was no request or instruction by Officer Riley to Hiles advocating the destruction or removal of any evidence relevant to Hiles' arrest or prosecution following Officer Riley's initial direct message;

(v)    There was no instruction by Officer Riley to Hiles as to how to avoid being arrested or charged or how to avoid detection by law enforcement;

(vi)   There was no statement by Officer Riley to Hiles informing him that he had been reported to the Capitol Police Intelligence Unit by Officer Vinnie Legambi or that civilian Ben Shepherd had captured videos of Hiles inside the Capitol;

(vii)  Officer Riley did not try to dissuade anyone who indicated an intention to report Hiles to authorities;

(viii) Officer Riley directed Hiles to ask his attorney and articulate his story to the Court in resolving his conduct on January 6, 2021;

(ix)   Numerous civilian and law enforcement officers reported Hiles to authorities based on his Facebook posts, and the FBI had the post to which Officer Riley responded in its

possession by no later than January 8, 2021 and potentially, as early as January 7, 2021;

(x)    Cameras inside the U.S. Capitol captured every inch of space inside the U.S. Capitol, including any conduct by Hiles inside the building; and

(xi)   Preservation requests were used by the FBI to preserve all evidence relating to January 6, 2021 on social media, such as Facebook, for gathering at a future time.

### 2.    <u>Absence of Sufficient Evidence as to Count Two of the Indictment.</u>

The jury was instructed that Officer Riley obstructed a "grand jury proceeding resulting from the January 6 breach of the U.S. Capitol" by deleting his own direct messages with Hiles. The Government did not know what theory it was prosecuting in the case, even when the Court inquired of the Government after the Government had rested its case. As an initial matter, there is no basis to believe, based on the record presented to the jury, that the purported grand jury at issue was empaneled to investigate individuals who did not partake in the breach of the U.S. Capitol on January 6, 2021, but otherwise obstructed a grand jury proceeding into such conduct. In fact, contrary to SA Hart's sworn testimony, the grand jury that investigated and charged Officer Riley was sworn in on August 11, 2021, and not on January 8, 2021, and was a completely different grand jury from the grand jury about which the limited evidence in the record was presented.

Even after the Government rested its case, it conceded to proceeding to trial on two separate theories of what Officer Riley was intending to obstruct, which is contradicted by what was charged in the Indictment:

**MS. DOHRMANN:**   Yes, Your Honor, I think the government would submit that the primary intent was to protect himself. But, of course, no doubt understanding that, you know, now that the FBI had interviewed Hiles and all of this, that, you know, he deleted the other evidence of Hiles' own admissions and statements and, you know, now defendant's statements at a point when those, too, would have been relevant to an official proceeding. So certainly the primary intent under the government's theory is to protect himself, the defendant. But it is not insignificant that those were deleted.

**THE COURT:**    I mean, you have the point that he's –he's telling Gus on the 25th, well, they were all private, and maybe not appreciating that that meant they weren't gone or that Facebook still had them. But, is it -- if you're going to talk about two motivations, I thought -- I want to know, you're saying he corruptly altered, destroyed, or concealed a record or attempted to do so with the intent to impair its integrity or availability for use in a[n] official proceeding. ***And you've already talked about his reasonable belief at the time, and whether he had it or he didn't, that there was going to be a grand jury investigation involving people that went in, comma, people who destroyed property, comma, people who assaulted officers, and that they would be charged with felonies are things that he said at various points. Is that the official proceeding that you're saying he is trying to obstruct in count 2? Or are you saying he was trying to stave off an investigation of himself for potentially doing what's alleged in Count 1? What are you going to tell the jury you've proved?***

**MS. DOHRMANN:**    Your Honor, I think what we have proved is that the grand jury investigating the attack on the Capitol on January 6 was interested in a lot of facets of that. That includes the defendant's obstructive conduct, certainly. It also includes –

**THE COURT:**    I'm not suggesting that that doesn't fall under the umbrella, I'm just asking you what are you saying Count 2 is about? I want to be sure I know what you're trying to prove before I can rule on the motion of whether you've prove[d] it or not.

**MS. DOHRMANN:**    Can I have one moment with counsel, just to make sure that we are answering your question?

**THE COURT:**    This should be a question to which you know the answer. But go ahead.

**MS. DOHRMANN:**    Thank you, Your Honor.

(Off-the-record discussion between government counsel.)

**MS. DOHRMANN:**    Your Honor, ***I think the, sort of, the two options that you've phrased, I think it is fair to say that our theory is more that this is about saving himself and his messages, but at the same time knowing that there's an investigation into Hiles. So they are -- they are related and interrelated, and that's just by their nature how these investigations*** –

**THE COURT:**    All right. So he acted with the intent to impair their availability in considering offenses -- charging him and considering Hiles, is your theory.

**MS. DOHRMANN:**    Yes, Your Honor.

Oct. 20, 2022 Tr. at 20-23 (emphasis added).[3]

None of the Government's conflicting theories could support a conviction in this case. Prior to January 20, 2021, Hiles informed Officer Riley that he had been arrested on misdemeanor charges and provided photos of his charging documents and the relevant statute, which indicated that he was not charged with an offense punishable in excess of twelve months, and that the offense was outside the purview of a grand jury investigation into felony conduct (especially, when the conduct at issue was traditionally charged as misdemeanor trespassing and did not involve grand jury proceedings). Prior to January 20, 2021, Hiles also had already informed Officer Riley that he spoke to the FBI and they "took [his] phone and downloaded everything" (Gov't Ex. 202a, at USA-4482). The Government's cross-examination of Officer Riley and closing argument attempted to demonstrate a concern by Officer Riley that he could no longer control where the direct messages went, but in reality, his knowledge that the FBI had "everything" from Hiles' phone is evidence that Officer Riley could not affect the ability of a grand jury — any grand jury — to obtain evidence law enforcement already had in its possession.

Moreover, communicating with a January 6, 2021 protestor was, and still remains, not a crime. Deleting someone from Facebook and your communications with that person also does not implicate a grand jury proceeding resulting from the January 6 breach of the U.S. Capitol. The only evidence in the record purporting to show Officer Riley's intent as to his actions was his

---

[3] After the Court granted in part Officer Riley's motion to compel, the Government sent the defense a discovery letter dated May 13, 2022, that stated, "we attach an indictment that was returned by the grand jury that was empaneled immediately after January 6, 2021, on January 8, 2021, *largely for the purpose of considering Capitol attack cases*." May 13, 2022 Ltr. at 1 (emphasis added). The grand jury was not empaneled specifically for the January 6 breach of the U.S. Capitol and Officer Riley would have had absolutely no reasonable belief that the grand jury charged in the Indictment would be considering misdemeanor conduct as to Hiles, and most importantly, information contained in *his* direct messages with Hiles, when the focus of the grand jury was "Capitol attack cases."

"guess" that a pending disciplinary action stemmed from telling Hiles to take down information from Facebook, not that such conduct was a crime or that he had intended to obstruct a grand jury proceeding.

After the Government's case-in-chief, the evidence in the record to which the Government could point to show either an intent to obstruct a grand jury proceeding or knowledge that the deletion of direct messages would impair a grand jury was entirely insufficient for a reasonable trier of fact to find guilt beyond a reasonable doubt. The Government's evidence became even more deficient after the conclusion of the defense case.

## ARGUMENT

Rule 29(a) of the Federal Rules of Criminal Procedure provides that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In considering a Rule 29 motion, this Court must determine whether upon the evidence, viewed "in a light most favorable to the Government giving full play to the right of the [trier of fact] to determine credibility, weigh the evidence and draw justifiable inference of fact," a reasonable mind might fairly conclude guilt beyond a reasonable doubt. *United States v. Recognition Equip., Inc.*, 725 F. Supp. 587, 588 (D.D.C. 1989); *United States v. Kayode*, 254 F.3d 204, 212-13 (D.C. Cir. 2001) (quoting *United States v. Harrington*, 108 F.3d 1460, 1464, (D.C. Cir. 1997)); *United States v. Safavian*, 644 F. Supp. 2d 1, 7-8 (D.D.C. 2009); *United States v. Duran*, 884 F. Supp. 577, 583 (D.D.C. 1995), *aff'd*, 96 F.3d 1495 (D.C. Cir. 1996).

The Court must grant a motion for judgment of acquittal if "a reasonable juror must necessarily have had a reasonable doubt as to the defendant[']s guilt." *See United States v. Weisz*,

718 F.2d 413, 437 (D.C. Cir. 1983) (citing *United States v. Singleton*, 702 F.2d 1159, 1162-63 (D.C. Cir. 1983)); *accord Curley v. United States*, 160 F.2d 229, 232-33 (D.C. Cir. 1947) ("[I]f there is no evidence upon which a reasonable mind might fairly conclude guilt beyond reasonable doubt, the motion [for judgment of acquittal] must be granted.").

"Although the evidence must be viewed in the light most favorable to the Government, this Court is obligated to take a hard look at the evidence and accord the government the benefit of only 'legitimate inferences.' In other words, this Court will not indulge in fanciful speculation or bizarre reconstruction of the evidence." *Recognition Equip.*, 725 F. Supp. at 588 (citing *Singleton*, 702 F.2d at 1163). Moreover, Rule 29 does not require the Court "to view the evidence through dirty windowpanes and assume that evidence which otherwise can be explained as equally innocent must be evidence of guilt." *Recognition Equip.*, 725 F. Supp. at 588 (citation omitted); *accord Curley*, 160 F.2d at 233 (instructing that if "a reasonable mind must be in balance as between guilt and innocence, a verdict of guilt cannot be sustained"). "Rather, in order to find a legitimate and nonspeculative inference of guilt the government must articulate a rational basis in the evidence upon which that inference can arise." *Recognition Equip.*, 725 F. Supp. at 588.

Most importantly, this Court must grant Officer Riley's motion for judgment of acquittal if it finds that the evidence, even if viewed in the light most favorable to the Government, is such that a reasonable trier of fact would have a reasonable doubt as to the existence of any of the essential elements of the crime. *See*, *e.g.*, *United States v. Durant*, 648 F.2d 747 (D.C. Cir. 1981); *United States v. Foster*, 783 F.2d 1087, 1088 (D.C. Cir. 1986).

While not frequently granted, motions for acquittal are granted in this District when the evidence is either insufficient or the conduct at issue does not fall within the criminal statute at issue. *See*, *e.g.*, *United States v. Jabr*, No. 18-cr-0105-PLF, 2019 WL 13110682, at *10 (May 16,

2019) (granting judgment of acquittal when conduct did not fall within statute punishing the allegedly unlawful conduct); *United States v. Bowser*, 318 F. Supp. 3d 154, 166 (D.D.C. 2018) (granting judgment of acquittal on obstruction charge when statute at issue did not cover conduct undertaken by the defendant); *United States v. Wilson*, 720 F. Supp. 2d 51, 60 (D.D.C. 2010) (granting judgment of acquittal when evidence was insufficient to support aiding and abetting drug trafficking); *United States v. Stagliano*, No. 08-cr-93-RJL, 2010 WL 3119385, at *1 n.2 (D.D.C. Aug. 4, 2010) (granting acquittal based on insufficient evidence that the defendant was responsible for distribution of contraband into the jurisdiction); *United States v. Naegele*, 537 F. Supp. 2d 36, 43 (D.D.C. 2008) (granting judgment of acquittal on two separate counts of false statements when the evidence was insufficient to find that any reasonable juror would not have had reasonable doubts as to defendant's answers being false on a filing); *United States v. Hoover-Hankerson*, 406 F. Supp. 2d 76, 88-89 (D.D.C. 2005) (granting judgment of acquittal on theft count because evidence was "insufficient to permit a rational trier to find beyond a reasonable doubt that [defendant] was responsible for converting over $5,000 in investigator voucher funds"); *Recognition Equip.*, 725 F. Supp. at 587-88 (granting judgment of acquittal when "government's evidence [was] insufficient" and "much of what the government characterize[d] as incriminatory evidence [was] not persuasive of guilt when viewed in its full context" and "some of the government's evidence [was] exculpatory and point[ed] toward innocent conduct"); *United States v. Childress*, 746 F. Supp. 1122, 1127 (D.D.C. 1990) (granting acquittal on conspiracy charge when evidence was inconsistent with a conspiratorial relationship and was more akin to a buyer/seller relationship); *United States v. Broadus*, 664 F. Supp. 592, 600-01 (D.D.C. 1987) (granting judgment of acquittal on two fraud counts when there was insufficient "evidence from which a specific intent to defraud could be inferred" and the court would not permit a verdict to

be based on "speculation").

There is ample precedent for this Court to grant Officer Riley's motion for judgment of acquittal when the Government has failed to present sufficient evidence that he ever intended to obstruct a grand jury proceeding or knew his actions would affect a grand jury proceeding.

1. **Officer Riley Had No Intent to Obstruct Any Grand Jury Proceeding.**

No reasonable juror could find beyond a reasonable doubt that Officer Riley intended to obstruct a grand jury proceeding resulting from the January 6 breach of the U.S. Capitol.[4]

As for Count One, the Facebook post to which Officer Riley responded (after being directed to it by another Facebook user) described Hiles as observing and videotaping the events at the Capitol on January 6, 2021. The sole video accompanying the post was taken from outside of the building. In the text of the post, Hiles stated that he was "disheartened and disgusted" by what he saw, specifically officers being assaulted, and that he regretted his presence at the event. The post stated that he left immediately after making it through the building. Although Hiles made other posts relating to January 6, including those showing his activities inside the building, the post depicted in Government Exs. 201 and 201a is the only post that the evidence confirms Officer Riley viewed before sending his initial direct message. Hiles' post described non-intentional conduct that would at worst amount to misdemeanor trespassing, not conduct subject to a grand jury proceeding. This was confirmed by the testimony of Capitol Police officers who testified at trial, including Officer Riley, that protestors who did not engage in violent acts or possess weapons

---

[4] The intent element is dispositive of the Court's evaluation of Officer Riley's motion for judgment of acquittal. Since the offense conduct did not occur in the District of Columbia, there is no jurisdiction for this Court unless the evidence establishes beyond a reasonable doubt that Officer Riley *intended to affect* a grand jury proceeding in the District of Columbia. *See* 18 U.S. Code § 1512 (i) ("A prosecution under this section or section 1503 may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected or in the district in which the conduct constituting the alleged offense occurred).

were not the subject of grand jury proceedings and were given citations or charged with misdemeanors. The Government offered no rebuttal to this evidence. Even SA Hart testified that misdemeanors could be charged by information and, in fact, one of his few January 6 cases concerned misdemeanor trespassing offenses that were charged by information.

Moreover, the post at issue had already been viewed and commented on by hundreds by the time Officer Riley was directed to it. There were cameras inside the Capitol (a fact which Office Riley testified he knew) that would have captured footage of Hiles in the building, and preservation requests would allow law enforcement to preserve evidence on Facebook. The evidence in the record is insufficient to prove that Officer Riley intended to obstruct a grand jury resulting from the January 6 breach of the Capitol, or that he knew his suggestion that Hiles "take down" a portion of his Facebook post would likely affect the grand jury, when Hiles did not describe any assaultive or violent conduct or intentional actions to breach the Capitol in his public and widely available post.

As for Count Two, the Government alleged in its Indictment — and this Court instructed the jury — that Officer Riley's direct messages pertained to a grand jury investigating the January 6, 2021 Capitol breach and *not* a potential grand jury investigating Officer Riley's alleged obstruction by his direct message to Hiles on January 7, 2021. After the Government closed its case-in-chief, it was not even clear to this Court the theory on which the Government was proceeding. *See supra* at 12 (citing Oct. 20, 2022 Tr. at 20-23). The Government charged Officer Riley with intending to make his direct messages unavailable to the grand jury for the January 6 breach of the Capitol, with which he was not involved, nor is there evidence that, on January 20, 2021, Officer Riley was trying to assist Hiles in any manner. Even then, there would be no reason for Officer Riley to believe that the grand jury would be investigating Hiles on January 20, 2021,

or still have a need for the content of Officer Riley's direct messages. As of that date, Officer Riley knew that: (i) Hiles had been arrested on misdemeanor offenses; (ii) Hiles had been interviewed by the FBI; (iii) Capitol Police Officer Vinnie Legambi had reported Hiles; (iv) Ben Shepherd had captured other videos from Hiles' Facebook; and (v) Officer Riley's direct messages were already in the possession of the FBI, which had "downloaded everything" from Hiles' cellphone. Officer Riley's actions show the exact opposite intent, specifically, his unwillingness to have any contact with Hiles going forward, as exemplified by his direct message to Hiles on January 21, 2021 that he was having no additional contact with him and was deleting his "posts."

The Government proceeded with a theory inconsistent with its own Indictment, in arguing that Officer Riley was protecting himself by seeking to delete the direct messages so that the FBI would not get them, even though the FBI had them in its possession after downloading Hiles' cellphone. As shown on the face of Officer Riley's Indictment, he was indicted by a different grand jury that the one in the judicial notice and the one charged in the Indictment — a grand jury that he could not reasonably have foreseen on January 20, 2021 or could believe his actions would impair (when the evidence at issue was in the Government's possession prior to deletion). There was also absolutely no evidence in the record that Officer Riley believed communicating with Hiles was ever criminal, although it could have possibly resulted in a work administrative investigation.  Moreover, there is no evidence in the record tending to show that Officer Riley believed that a grand jury would be investigating him, when he did not participate in the events of January 6, 2021, and did not aid Hiles in his participation on January 6, 2021.

Officer Riley testified in his defense that he terminated his contact with Hiles (which lasted 14 days) after learning that Hiles chose to mention him in his meeting with the FBI, described Officer Riley as his "new buddy," and told the FBI that their friendship was one positive result of

January 6. Officer Riley testified that he did not want to have to explain that he never talked to Hiles prior to January 6, 2021, had no knowledge of his intent in going to the U.S. Capitol, and did not facilitate or aid his actions on January 6, 2021. As shown in Officer Riley's final message, he made it clear to Hiles that he was having no future contact with him, felt misled by his initial description of his presence inside the U.S. Capitol, and was deleting Hiles' Facebook "posts." He saved his final message to Hiles to be prepared to make clear to anyone who inquired, that January 21, 2021 was the last day he communicated with Hiles.

The Government questioned Officer Riley about his alleged negligence in reaching out, suggesting that the decision was inconsistent with his training and that he should have conducted a full investigation of Hiles before initiating contact. At most, the Government's line of questioning confirmed that sending the first message was negligent and in poor judgment, far from eliciting evidence of an intent to obstruct a grand jury proceeding.

**2.**      **Officer Riley Did Not Know His Actions Would Affect Any Grand Jury Proceeding.**

In accordance with the Court's instructions to the jury, the Government was required to establish "that the defendant had knowledge that his actions were likely to affect the proceeding." Jury Instructions at 22-25 (D.E. 81).

As for Count One, Officer Riley responded to a Facebook post that was disseminated throughout the internet; viewed, re-posted, and liked by hundreds of individuals; and discussed conduct that was, at best, unintentional criminal conduct, and at worst, conduct consistent with trespassing, which, according to the testimony of Capitol Police officers, including Officer Riley, was not the subject of grand jury proceedings. Officer Riley's experience, and his knowledge that cameras were inside the Capitol building and information remains on Facebook, negates any suggestion that he would know that his actions in telling Hiles to take down part of a Facebook

post would affect a grand jury proceeding resulting from the January 6 breach of the U.S. Capitol. Hiles' conduct described in the post at issue did not rise to felony conduct, and even the full account of his conduct, as revealed in other messages and posts, does not support a finding that a grand jury proceeding would arise from his actions (and one never did). Additionally, the Post was reviewed, stored, and screenshotted by multiple individuals, making it impossible that Officer Riley would have knowledge that his actions in telling Hiles to take down part of the post would obstruct a grand jury proceeding.

As for Count Two, the Government's conflicting theories fail to show how Officer Riley would know his actions in deleting his own direct messages would affect any grand jury proceeding resulting from the January 6 breach of the U.S. Capitol, whether as to his conduct or as to the conduct of Hiles. Officer Riley would not believe on January 20, 2021 that his direct messages would contain information sought by a grand jury investigating the breach of the Capitol, when Hiles had already been arrested on misdemeanor charges, the Government had the contents of Hiles' communications in its possession, and Officer Riley's own actions would not come within the purview of a grand jury investigating conduct resulting from the January 6 breach of the U.S. Capitol (especially, when Officer Riley's communications were not criminal). On January 20, 2021, the record evidence is clear that Officer Riley had no intent to assist Hiles. Rather, Officer Riley wanted to have no further contact with Hiles, who had told the FBI that the two were "buddies." Inconsistent with a theory of a cover-up, Officer Riley never instructed Hiles to lie to the FBI, and in fact, told Hiles that he was deleting Hiles Facebook "posts" because he wanted to have no additional contact with him.

Looking at the Government's second theory, there were no facts before the jury that the charged grand jury was investigating Officer Riley's conduct, sufficient so that Officer Riley

would know he affected the grand jury by deleting his own direct messages (especially when they were already in the Government's possession).

## CONCLUSION

For all these reasons, Officer Riley respectfully requests that the Court grant his motion and enter judgments of acquittal on both counts of the Indictment.

Dated: November 4, 2022                    Respectfully submitted,

                                           SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC

                                                /s/ Christopher Macchiaroli
                                           Christopher Macchiaroli (D.C. Bar No. 491825)
                                           1750 K Street, NW, Suite 810
                                           Washington, D.C. 20006
                                           Telephone: (202) 539-2444
                                           Facsimile:  (410) 547-2432
                                           Email: cmacchiaroli@silvermanthompson.com

                                           Emma J. Mulford (Bar No. MD0146)
                                           400 East Pratt Street, Suite 900
                                           Baltimore, MD 21202
                                           Telephone: (410) 385-6249
                                           Facsimile: (410) 547-2432
                                           Email: emulford@silvermanthompson.com

                                           *Counsel for Defendant Michael Angelo Riley*