UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL ANGELO RILEY,<br><br>    *Defendant.* | Case No. 21-CR-00628 (ABJ) |

GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

A jury convicted Defendant, Michael Angelo Riley, of one count of Obstruction of Justice and was unable to reach a verdict as to a second count of Obstruction of Justice. Defendant now asks the Court to enter a judgment of acquittal as to both counts, asserting that the evidence was insufficient to sustain a conviction on either. *See* Notice of Filing of Supplement to Defendant's Oral Motion for Judgment of Acquittal (hereinafter "Motion"), ECF No. 82. In pressing this argument, Defendant contorts the facts and the applicable law, attempting to substitute his preferred conclusions as to the meaning of the evidence at trial for the conclusions of the jury. In other words, Defendant asks the Court to flip the Rule 29 standard on its head and interpret the evidence in the manner most favorable to Defendant. That is not the law, and with good reason: it would disregard the jury's reasonable interpretation of the evidence it saw and heard at trial. Accordingly, Defendant's Motion should be denied, and this case should proceed to sentencing.

## BACKGROUND

On October 14, 2021, a federal grand jury in the District of Columbia returned an indictment charging Defendant with two counts of Obstruction of Justice, in violation of 18 U.S.C.

§ 1512(b)(2)(B) (Count One) and 18 U.S.C. § 1512(c)(1) (Count Two). ECF No. 1. A jury trial began on October 17, 2022.[1]

The Government's evidence at trial established that on January 6, 2021, Defendant was a United States Capitol Police Officer with over 25 years of experience. That day, when the U.S. Capitol was attacked and breached by a mass of rioters, Defendant was on duty. He responded to reports of explosive devices within the Capitol complex, as well as reports of downed officers. On January 7, 2021, Defendant posted on Facebook, "Every protestor that assaulted an officer yesterday, committed property damage, and broke in to the Capitol building should be charged federally in District Court. If we don't send a message it will surely happen again." Gov't Ex. 307(amended). Within two hours of that public post, Defendant became aware that a Facebook friend was posting about his participation in the riot at the U.S. Capitol on January 6, 2021, including a lengthy first-person account attaching a five minute and forty-one second video of violence on the Capitol grounds. Gov't Exs. 302, 303, 201a, 201.1. Defendant sent the rioter a private message stating the following: "Hey Jake, im a capitol police officer who agrees with your political stance. Take down the part about being in the building they are currently investigating and everyone who was in the building is going to be charged. Just looking out!" Gov't Ex. 202a.

Facebook direct messages in evidence at trial established that when the rioter responded, "Investigate me however youd like and thank you for the heads up," and sent Defendant three videos filmed by the rioter showing law enforcement officers being attacked, Defendant responded, "I get it…it was a total shit show!!!! Just wanted to give you a heads up." Gov't Ex. 202a. And the evidence also established that Defendant continued to attempt to persuade the rioter

---

[1] As of the deadline for this opposition, the Government has sought, but not been able to obtain, a complete transcript from the trial.

2

to take down evidence. Specifically, on January 7, Defendant said to the rioter, among other things, "The only thing I can see is if you went in the building and they have proof you will be charged. You could always articulate that you have no where to go, but that's for court," "Personally i don't know what they have decided, just know our guys and the fbi are going through everything," and "I have allot of buddies who know you and thats why I reached out." *Id*.

The evidence at trial also established that Defendant was a seasoned law enforcement officer who quickly understood the seriousness of the events of January 6. In additional private messages exchanged with the rioter on January 7 about the events of the prior day, Defendant explained, "Yesterday was a sickening day. Theres so much other shit I cant tell you on here of shoe you pictures of, but lets just say there were straight up acts of terrorism yesterday," "It was a total shit show!!!!," "Remember when the building was breached there was a joint session going on. Number 2 through 5 in our government was in the building at the time. Also several rooms in that building are critical to national security. Truthfully…its absolutely amazing more people weren't shot." Gov't Ex. 202a.

Likewise, the evidence established that Defendant knew that individuals involved in the Capitol breach would be charged federally with felonies: "Every protestor that assaulted an officer yesterday, committed property damage, and broke into the Capitol building should be charged federally in District Court," Gov't Ex. 307(amended), "theyre all being charged federally with felonies" Gov't Ex. 202a, "I thought everyone was getting charged with felonies!" Gov't Ex. 306a, "Federal court is no joke" Gov't Ex. 202a. Defendant also expressed similar views during this period with his United States Capitol Police colleagues, messaging one colleague V.L. that "All those morons posting shit are going to be charged" Gov't Ex. 401.

Despite this, the evidence demonstrated that Defendant remained friendly with the rioter throughout the following weeks, even after receiving videos and images from a mutual acquaintance on January 9 of the rioter smoking marijuana inside the U.S. Capitol, to which Defendant responded, "Yep I know" Gov't Exs. 306.1, 306a. Likewise, Defendant continued to exchange friendly private messages with the rioter, even after he was federally charged. For example, when the rioter informed Defendant on January 16 that he was being charged, Defendant initially responded that numerous people were being arrested daily and "all being charged federally with felonies" Gov't Ex. 202a. He then talked to the rioter on the phone, and sent him a private message inviting him to "stay at my house on the shore for free," stating, "If you want to see the capitol building, lets do it legally next time... I know a guy who can get you a tour...lol." Gov't Exs. 202a, 102. The evidence further established that the two continued exchanging friendly messages until January 20, when the rioter messaged Defendant "The fbi was very curious that I had been speaking to you if they havent already asked you about me they are gonna. They took my phone and downloaded everything." Gov't Ex. 202a. Thereafter, Defendant responded "That's fine," then deleted his hundreds of private messages with the rioter. *Id.*

The following day, Defendant sent the rioter the following cover story message: "Hey Jake, another mutual friend was talking about you last night. I tried to defend you but then he showed me a video of you in the Capitol smoking weed and acting like a moron. I have to say, I was shocked and dumbfounded, since your story of getting pushed in the building with no other choice now seems not only false but is a complete lie. I feel like a moron for believing you. I originally reached out to you as someone who looked up to you in the fishing arena and because I have seen your numerous posts about being a single dad and how much you cared for your daughter. I was so mad last night I deleted all your post, but I wanted to text you this morning and let you know

4

that I will no longer be conversing with you." *Id.*, 304a.  Evidence at trial established that when a search warrant was executed on Defendant's Facebook account, this was the only private message from Defendant to the rioter that was found in Defendant's account.  Gov't Ex. 304a.

Evidence showed that on January 25, after receiving notification that he was the subject of an internal investigation at work, Defendant exchanged messages with his colleague and union representative. Gov't Ex. 402a. When asked what the investigation was for, Defendant responded "if I had to guess for telling that retard I know to take down his shit from the capitol breach. But I did it on private message so it should be like a private conversation but who knows." *Id.*  Defendant then continued, "He told me that he told the FBI that he talked to me. Wonder what kind of trouble I'm in." *Id.*

The Government's evidence at trial, including through witness testimony, stipulations, and judicial notice, established, *inter alia*, that grand juries gather and consider evidence to investigate possible crimes, in conjunction with law enforcement agencies and prosecutors; that grand juries, along with prosecutors, make charging decisions; and that a grand jury is required to bring felony charges. The evidence made clear that the criminal investigation into January 6 would be one of the largest in history, involving multiple law enforcement agencies and the use of every tool available to the government, including the grand jury.  In fact, the Government's evidence further showed that, in fact, on January 8, 2021, a federal grand jury was convened and that it considered matters resulting from the breach of the U.S. Capitol on January 6, 2021.

At the close of the Government's case-in-chief, on October 20, 2022, Defendant moved orally for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. *See* Oct. 20, 2022 Min. Order. The Government opposed the motion. After hearing argument, the Court reserved decision under Rule 29(b), and it remains pending.

On October 28, 2022, the jury returned a verdict finding Defendant guilty of Count Two. That same day, the jury was deemed to have deadlocked on Count One, and the Court declared a mistrial as to Count One. ECF No. ECF No. 76; *see also* Oct. 28, 2022 Min. Order. On November 4, 2022, Defendant filed the instant Motion, requesting that the Court enter a judgment of acquittal on both counts, to which the Government now timely responds in opposition.

## **STANDARD OF REVIEW**

Federal Rule of Criminal Procedure 29(a) provides that at the close of the government's evidence, the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Rule 29(c) allows a defendant to renew a motion for judgment of acquittal within 14 days of a guilty verdict. "In ruling on a motion for a judgment of acquittal, the trial court must view the evidence in the light most favorable to the Government giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact." *United States v. Treadwell*, 760 F.2d 327, 333 (D.C. Cir. 1985) (citation and internal quotation marks omitted); *see also United States v. Kayode*, 254 F.3d 204, 212 (D.C. Cir. 2001) (when considering a Rule 29 motion, the court must consider "the evidence in the light most favorable to the government and determin[e] whether, so read, it is sufficient to permit a reasonable trier of fact to find all of the essential elements of the crime beyond a reasonable doubt" (citation and internal quotation marks omitted)).  The Court must also "accord [] the government the benefit of all legitimate inferences." *United States v. Weisz,* 718 F.2d 413, 437 (D.C. Cir. 1983).

Moreover, the Court must, "drawing no distinction between direct and circumstantial evidence, and giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact." *United States v. Battle*, 613 F.3d 258, 264 (D.C. Cir. 2010) (quoting *United States v. Andrews*, 532 F.3d 900, 903 n.1 (D.C. Cir. 2008)); *see also United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983) (affirming a court "must

6

presume that the jury properly carried out its functions of evaluating the credibility of witnesses, finding the facts, and drawing justifiable inferences"). "When a reasonable mind might fairly have a reasonable doubt of guilt or might fairly have none, the decision is for the jurors to make." *United States v. Herron,* 567 F.2d 510, 514 (D.C. Cir. 1977); *see also United States v. Davis, 763 F. Supp. 645,* 648 (D.D.C. 1991) ("Sentencing courts should therefore be wary of rejecting a jury's assessment of witness credibility."); *United States v. Khanu,* 675 F. Supp. 2d 55, 60 (D.D.C. 2009) ("This stringent standard contemplates that the ultimate decision of guilt or innocence should be left to the jury, and that it is the province of the jury to credit certain testimony and reject other testimony."). No distinction is made between direct and circumstantial evidence in evaluating the sufficiency of evidence supporting a guilty verdict. *United States v. Maxwell*, 920 F.2d 1028, 1035 (D.C. Cir. 1990); *see also United States v. Long,* 905 F.2d 1572, 1576 (D.C. Cir. 1990) ("a jury is entitled to draw a vast range of reasonable inferences from [the] evidence").

When considering a Rule 29 motion after a verdict, such as was the case here in Count Two, the Court "must view the evidence in the light most favorable to the verdict and must presume that the jury has properly carried out its functions of evaluating the credibility of witnesses, finding the facts, and drawing justifiable inferences." *United States v. Campbell,* 702 F.2d 262, 264 (D.C. Cir. 1983). A defendant's Rule 29 burden at the post-verdict stage is "very high," in part because evidence to support a conviction does "not need to be overwhelming." *United States v. Pasha,* 797 F.3d 1122, 1135 n.9 (D.C. Cir. 2015). Indeed, the Court owes "tremendous deference to a jury verdict." *Long,* 905 F.2d at 1576. The jury's verdict here was amply supported by the evidence at trial.

# ARGUMENT

Defendant seeks a judgment of acquittal on both counts, asserting that the "evidence at trial was entirely insufficient for a reasonable trier of fact to find guilty beyond a reasonable doubt." Def.'s Mot. at 16. His arguments do not meet the high burden under Rule 29; rather, his Motion is largely an attempt to re-argue positions that have already been considered and rejected by this Court and the jury. To the contrary, viewed in the light most favorable to the Government, the evidence was more than sufficient for a rational jury to find that Defendant obstructed justice as charged in both counts.

**A. There is Sufficient Evidence for a Rational Trier of Fact to Find that Defendant Obstructed Justice as Charged in Count One.**

To prove a violation of Section 1512(b)(2)(B), as charged in Count One, the Government had to prove the following elements beyond a reasonable doubt:

(1) That the defendant knowingly corruptly persuaded another person, or attempted to do so;

(2) That the defendant acted with intent to cause or induce the other person to alter, destroy, mutilate, or conceal an object with intent to impair the object's availability for use in an official proceeding;

(3) That the defendant knew or should have known that the official proceeding was pending or was likely to be instituted and acted with awareness that the natural and probable effect of his conduct would be to obstruct or impede that proceeding; and

(4) That the official proceeding was in fact a federal proceeding.

Final Jury Instructions, ECF No. 81, at 21.

The Government's evidence was more than sufficient for a rational trier of fact to find guilt on each of these elements.

With respect to the first element, the evidence showed that on January 7, after being notified of a rioter's post about being at and inside the Capitol on January 6, Defendant sent a rioter a private Facebook message using imperative language, telling him to "take down" evidence

that would cause the rioter to get "charged," noting Defendant was "Just looking out!" Gov't Exs. 100, 202a, 302, 303, 201a. In that message, in order to make himself more persuasive, Defendant also established his credentials as a U.S. Capitol Police officer and noted his agreement with the rioter's political stance. Gov't Ex. 202a. The evidence also showed that even after the rioter stated "[i]nvestigate me however you like," Defendant continued to emphasize that the rioter would be charged if there was "proof" that he was inside the U.S. Capitol on January 6, and that federal law enforcement was reviewing evidence. *Id.* The evidence showed hundreds of further friendly communications between the rioter and Defendant, who had never spoken before Defendant's message on January 7. Gov't Ex. 202a, 102, 400. Further, the evidence showed that Defendant described his communications with the rioter inaccurately to other mutual acquaintances, Gov't Exs. 306a, 401, and deleted hundreds of messages, including Defendant's initial message, between himself and the rioter. The evidence also showed that Defendant cut off communication with the rioter and fabricated an explanation as to why, but only after learning that the rioter had told the FBI about Defendant. Gov't Ex. 202a, 304a. Finally, the evidence showed that Defendant believed he was in trouble for his initial January 7 message to the rioter, citing to his union representative about how the rioter told the FBI about Defendant. Gov't Ex. 402a. This is ample evidence for a rational trier of fact to conclude that Defendant knowingly and corruptly, with a wrongful purpose and consciousness of wrongdoing, tried to persuade another person.

      As to the second element and third elements, the evidence showed that Defendant told the rioter to "take down" evidence showing the rioter had been inside the Capitol building, lest the rioter be "charged." Gov't Exs. 100, 202a. Defendant did so on private message, not as a public comment on the post, where he had been tagged in a public comment just moments before. Gov't Exs. 202a, 302. And Defendant sent the private message just twenty minutes after being informed

9

by a different Facebook user that the rioter was publicly posting videos about January 6. Gov't Exs. 202a, 302, 303. While continuing conversations with the rioter and with others, Defendant repeatedly displayed an understanding of the severity of the events of January 6. Gov't Exs. 202a, 306a, 401. Defendant received and responded to posts and messages with videos filmed by the rioter showing officers being attacked on Capitol grounds. Gov't Exs. 201.1, 202.1-202.3. Indeed, Defendant, a 25-year veteran of the U.S. Capitol Police, was himself present on January 6 when Congress was evacuated, officers injured, and bombs placed within the Capitol complex. And just hours before sending the private message, Defendant had publicly posted about charging rioters federally in "District Court." Gov't Ex. 307 (Amended). Moreover, over the course of the conversation with the rioter, as well as in conversations with others, Defendant repeatedly referenced federal law enforcement, "proof," being "charged," felony charges, his belief that rioters who were "morons posting shit" would be "charged," and his hopes that the rioter would not get "throw[n] [] to the wolves." Gov't Exs. 202a, 306a, 401. These facts amply demonstrate Defendant's intent of impairing the availability of the evidence for use in an official proceeding as to the January 6 breach that could result in charges against the rioter. They further show that Defendant knew that a grand jury proceeding would be instituted as part of a massive criminal investigation into the crimes that the defendant himself said were so serious. Finally, Defendant's quick action in reaching out to a rioter publicly posting about being inside the Capitol on January 6 show his awareness that persuading the rioter to take down the evidence would obstruct or impede the grand jury's investigation of the January 6 breach.

Finally, with respect to the fourth element, the evidence at trial, including testimony by Special Agent Hart and judicial notice provided by the Court, established that the official

proceeding in question was a federal proceeding, with a federal grand jury convened on January 8, 2021, that considered matters resulting from the January 6 breach of the U.S. Capitol.[2]

Defendant asserts that "the evidence (or lack thereof) confirmed that Officer Riley never intended to obstruct a grand jury proceeding and never knew or could have imagined that his actions would have affected a grand jury proceeding." Def.'s Mot. at 2. As support for this contention, Defendant relies primarily on his own testimony and the testimony of his own witnesses, and he attacks the credibility of the Government's evidence. In approaching the argument this way, Defendant misapprehends the Rule 29 standard, which does not require that evidence be viewed in the light most favorable to Defendant. It is the opposite.

In any event, Defendant's arguments are unpersuasive here just as they were with the jury. For example, Defendant points to the fact that other individuals had viewed and liked the rioter's Facebook post in Government Exhibit 201a before Defendant told him to hide it. Def.'s Mot. at 11, 20. He suggests that Defendant could not possibly have meant to encourage the rioter to conceal evidence because others had already seen it, but there is no suggestion that law enforcement officers were among those who had seen it. His exhibit does nothing to further his core argument that Defendant "never knew or could have imagined that his actions would have affected a grand jury proceeding." Def.'s Mot. at 2. To the contrary, a rational trier of fact could conclude that Defendant saw the urgency of the rioter expeditiously taking down evidence that would lead the

---

[2] Defendant's Motion repeatedly takes issue with the Government's use of judicial notice during its case-in-chief (*see* Def's Mot. at 5, 8). However, such evidence was properly admitted pursuant to Fed. R. Evid. 201. Moreover, Defendant's argument is misplaced because in the context of a Rule 29 Motion, no distinction is made between types of evidence when evaluating the sufficiency of evidence supporting a guilty verdict. *United States v. Maxwell*, 920 F.2d 1028, 1035 (D.C. Cir. 1990).

rioter to be charged, and that is why Defendant quickly sent a private message containing an imperative statement to the rioter about what to do with that evidence.

Defendant also focuses on the content of the rioter's post, Gov't Ex. 201a, characterizing it as describing "non-intentional conduct that would at worst amount to misdemeanor trespassing," to argue that Defendant would not have known he was obstructing a grand jury proceeding (though under Defendant's theory he was apparently aware that he was obstructing an official proceeding – just a *court*, not grand jury proceeding). Def.'s Mot. at 19–20. But a rational trier of fact could conclude that individuals who commit crimes do not always tell the whole truth, that the rioter's post had indicia of being self-serving, and that any person with common sense, let alone a veteran law enforcement officer, would know that a grand jury would want to obtain, investigate, and consider rioters' statements about their conduct at the Capitol on January 6. Moreover, evidence such as the communications between the rioter and Defendant, Gov't Ex. 202a (*e.g.,* "[p]ersonally I don't know what they have decided") and the testimony of Special Agent Hart established that Defendant, as a police officer, was not the decisionmaker as to what charges would ultimately be brought against any individual, and that he of course was aware of that fact. A rational trier of fact could find that Defendant acted with the intent to help the rioter avoid being detected by law enforcement and being charged with federal crimes.

Defendant also cites a laundry list of eleven purported "facts upon which no reasonable juror could have found Officer Riley guilty beyond a reasonable doubt as to Count One." Def.'s Mot. at 12. This laundry list of items consists of arguments that the defendant made to the jury and that were rejected. They fare no better now. Item one notes the absence of "discussions of a grand jury proceeding or subpoena" in Defendant's messages, but there is no requirement that Defendant use the magic words. Here, the evidence established that Defendant was a veteran law enforcement

officer who knew that a massive federal criminal investigation into the events related to January 6 was underway at the time he sent his message. A rational trier of fact could conclude that Defendant intended to obstruct a grand jury proceeding, without using the words "grand jury," when he talked about the rioter being "charged" and "felony" charges. Gov't Ex. 202a, 306a, 401. Similarly, item two asserts that no "witnesses discussed with Officer Riley a grand jury proceeding or grand jury subpoena," but this does nothing to negate Defendant's intent to affect a federal criminal investigation that he knew would include the grand jury. A rational trier of fact could certainly draw that inference from all of the evidence, and the Court need not choose defendant's proposed inferences over those that the jury drew from the evidence.  Item three notes that Defendant "discussed with two law enforcement officers" his communication with the rioter, but the evidence at trial established that these officers were quite friendly with Defendant and, even so, Defendant was not honest with them about the specific nature of his communications with the rioter. Gov't Ex. 401, 402a. Moreover, Defendant did not tell them anything at all about his obstructive act until after the rioter had told the FBI about Defendant. *Id.* A reasonable jury could easily conclude that in those communications, Defendant was attempting to downplay, or put a spin on, his obstructive conduct, realizing that he would likely be caught.[3] These exchanges with friendly officers do nothing to undermine the evidence of Defendant's corrupt intent.

---

[3] Item three also states in conclusory fashion that the rioter "mentioning to [the FBI] that their friendship was a positive result of January 6 . . . was the motivating factor for [Defendant] in ending his contact with" the rioter. Def.'s Mot. at 12. Defendant testified as such at trial in an effort to explain why he deleted messages, as charged in Count Two, and sent a fabricated cover up story to the rioter. But the jury plainly did not credit this testimony, as they convicted Defendant of Count Two. Defendant's assertions in support of his own view of the evidence are contrary to Rule 29's requirement that evidence be viewed in the light most favorable to the Government, not the Defendant.

Items four through seven list various obstructive acts that Defendant purportedly did not commit. Def,'s Mot. at 12. For example, Defendant asserts that "[t]here was no request or instruction by [Defendant to the rioter] advocating the destruction or removal of any evidence . . . following [Defendant's] initial direct message" and that Defendant "did not try to dissuade anyone who indicated an intention to report [the rioter] to authorities." *Id.* Even assuming the correctness of Defendant's factual assertions in items four through seven, the absence of such additional crimes does nothing to negate the jury's reasonable conclusion that the Defendant obstructed justice. Whether or not he obstructed justice in every way possible, a rational trier of fact could certainly find that he obstructed justice as charged in Counts One and Two.

Item eight of Defendant's list avers that Defendant "directed [the rioter] to ask his attorney and articulate his story to the Court." Def.'s Mot. at 12. Defendant suggests that this conduct negates the ample evidence proving his intent to obstruct justice. But a rational trier of fact could find that, in referencing the rioter's attorney and "articulat[ing]" a "story" to the Court, Defendant was further assisting the rioter, consistent with his obstructive message on January 7. Moreover, Defendant's characterization in item eight leaves out important context. Specifically, Defendant told the rioter to "ask your attorney whats next" only after the rioter had been charged. And Defendant's complete message to the rioter about what to tell the Court stated, "The only thing I can see is if you went in the building and they have proof you will be charged. You could always articulate that you had no where to go, but that's for court." That message was sent on January 7, when the rioter had suggested he would not take down the evidence as directed by Defendant. A rational trier of fact would consider the entire context in determining Defendant's intent in making those communications and could conclude that Defendant was intending to further assist the rioter.

14

Finally, items nine through eleven of Defendant's list describe other purported means of obtaining evidence of the rioter's conduct inside the Capitol building, apparently as support for the contention that Defendant did not intend to obstruct the grand jury investigation when he sent the rioter a message telling the rioter to take down evidence. Def.'s Mot. at 12. Specifically, Defendant states that "[n]umerous civilian and law enforcement officers reported [the rioter] to authorities based on his Facebook posts," "[c]ameras inside the U.S. Capitol captured every inch of space inside the U.S. Capitol," and "[p]reservation requests were used by the FBI to preserve all evidence relating to January 6, 2021 on social media." *Id.* As a preliminary matter, Defendant assertions exaggerate the evidence at trial. Regardless, however, a rational trier of fact would also consider that on January 7 when Defendant sent the message to the rioter, Defendant did not know whether the rioter had been reported, whether his face had been captured on Capitol cameras, or whether any preservation request for his account has been sent. In evaluating the weight to give the evidence of other possible means of obtaining the evidence Defendant directed the rioter to remove, a reasonable jury could also consider Defendant's statement on January 9 to a friend and fellow law enforcement officer that "[a]ll those morons posting shit are going to be charged." Gov't Ex. 401. Based on that evidence, a rational trier of fact could conclude that Defendant saw the significant evidentiary value of evidence made public by rioters on Facebook. Moreover, a rational trier of fact could conclude that Defendant would have had no reason to tell the rioter to "take down" evidence unless he believed that it would help the rioter avoid being charged. As Defendant said, he was "just looking out."

In sum, the Government's evidence was more than sufficient for a rational trier of fact to find Defendant guilty on Count One.

**B. There is Sufficient Evidence for a Rational Trier of Fact to Find that Defendant Obstructed Justice as Charged in Count Two.**

To prove a violation of Section 1512(c)(1), as charged in Count Two, the Government had to prove the following elements beyond a reasonable doubt:

(1) That the defendant altered or destroyed or mutilated or concealed any record;

(2) That the defendant acted with intent to impair the record's integrity or availability in an official proceeding;

(3) That the defendant knew or should have known that the official proceeding was pending or was likely to be instituted and acted with awareness that the natural and probable effect of his conduct would be to obstruct or impede that proceeding;

(4) That the defendant acted corruptly; and

(5) That the official proceeding was in fact a federal proceeding.

Final Jury Instructions, ECF No. 81, at 24.

As for Count One, the Government's evidence was more than sufficient for a rational trier of fact to find guilt – just as the jury did – on each of the elements of Count Two.

There was no dispute at trial that evidence of Defendant's conduct satisfied the first element. *Compare* Gov't Ex. 202a, *with* Gov't Ex. 304a. As to the second and third elements, the Government's evidence showed that Defendant deleted hundreds of messages with the rioter, including the initial January 7 message, within hours of being informed that the rioter had been interviewed by the FBI, that he had told the FBI about his relationship with Defendant, and that the FBI had downloaded "everything" from the rioter's phone. In addition to this, as described in the above discussion of Count One, Defendant was aware of the severity of the events of January 6, the seriousness of the charges that were forthcoming, and the magnitude of the investigation. Indeed, this knowledge had only increased in the two weeks since January 7. When informed by the rioter on January 16 that the rioter was being charged, Defendant had told the rioter that "theyre arresting dozens of people aday . . . and theyre all being charged federally with felonies" and talked

to the rioter on the phone. Gov't Exs. 202a, 102. Critically, the evidence at trial established that it was only on January 20, after being informed that the rioter had told the FBI about Defendant, that Defendant deleted the incriminating messages. A rational trier of fact could readily conclude, as the jury in this case did, that Defendant deleted the messages to prevent the messages from being used in the same grand jury proceeding that was the focus of Count One: that is, the grand jury investigation into the events at the Capitol on January 6, 2021.

With respect to the fourth element, the Government's evidence showed that Defendant acted with consciousness of wrongdoing and an improper purpose when he deleted the messages with the rioter. Specifically, the evidence showed that while Defendant eventually told mutual acquaintances that he had communicated with the rioter, Defendant was not honest about the nature of those communications with the rioter, and purposely failed to tell the mutual acquaintances that he had deleted the initial January 7 message, among hundreds of others of messages with the rioter. Gov't Exs. 306a, 401, 402. In addition, the evidence at trial established that on January 21, Defendant fabricated a story to explain why he had deleted the messages with the rioter, then sent this cover up message to the rioter. Gov't Exs. 202a, 304a. The evidence also showed that Defendant retained the message containing the fabricated story, while deleting all previous messages showing Defendant's obstruction and assistance to the rioter, Defendant's friendly communications with the rioter and shared interests, and everything that the rioter had said to Defendant about the rioter's conduct at the Capitol on January 6, his remorse and regret, and other admissions after being charged. A reasonable jury could readily conclude that Defendant's creation and retention of the fabricated message shows that he intended to mislead others about his conduct in deleting the incriminating messages. This establishes both an improper purpose and consciousness of wrongdoing.

Finally, as was also this case with Count One, the Government proved that the grand jury proceeding was in fact a federal proceeding.

Defendant repeatedly refers to "conflicting [Government] theories" as to the grand jury proceeding in Count Two, but it is Defendant who has attempted to manufacture a conflict. Def.'s Mot. at 3, 15, 20, 23. Specifically, Defendant attempts – as he has done throughout this case – to define the scope of the grand jury proceeding narrowly. That is, he suggests that the grand jury proceeding must have related to the rioter specifically, rather than more generally to the events of January 6 in which the rioter participated. Defendant thus attempts to create a false dichotomy between "a grand jury proceeding regarding [the rioter's] conduct or a grand jury proceeding regarding [Defendant's] own conduct." Def.'s Mot. at 3 (emphasis omitted). No such dichotomy exists, and there is no factual or legal reason that the grand jury proceeding should be defined so narrowly. Instead, the evidence showed that the nature of the grand jury proceeding was one that the Defendant himself would have foreseen. Defendant was aware on January 16 that the rioter had already been charged and became aware on January 20 that a further investigation, including of the rioter's phone, was ongoing. That is when Defendant decided to delete the messages and invent a story that the jury did not credit. A rational trier of fact could find that the primary reason Defendant deleted his Facebook messages with the rioter was to avoid becoming embroiled in the investigation of the events of January 6, which included a grand jury. Accordingly, the evidence showed that Defendant foresaw that both his conduct and the rioter's conduct would fall within the purview of the grand jury proceeding resulting from the January 6 breach of the U.S. Capitol.

Defendant also repeatedly asserts that as of January 20, Defendant's "direct messages were already in the possession of the FBI." Def.'s Mot. at 21; *see also* 5, 15, 23–24. But there is no evidence in the record to support this erroneous assertion. Rather, the evidence showed that the

only Facebook message from the Defendant that was retrieved by the FBI from the rioter's phone was the initial January 7 message, and that was only because the rioter had taken a screenshot of the message. Gov't Ex. 100. The Government then obtained search warrants for Defendant's account – where the messages were not present – and the rioter's account – where the messages were present. The evidence showed that Defendant did not know what the rioter had deleted or not deleted. The evidence showed that the rioter did not specifically tell Defendant that he had told the FBI that the two communicated on Facebook. Gov't Ex. 202a. And the evidence also showed that Defendant retained in his Facebook account his purported rationale for deleting the messages with the rioter. Gov't Ex. 304a. A reasonable juror could infer that Defendant deleted his Facebook messages with the rioter so that they would no longer be available to a grand jury, even if, for example, the rioter's call logs showed some relationship between Defendant and the rioter.

Without legal authority, Defendant describes as a "problem" the fact that the grand jury that indicted him was sworn on August 11, 2021, not January 8, 2021. Def.'s Mot. at 5, 8, 13, 21. As has been true throughout the history of this case, Defendant attempts to shift the focus away from his conduct and state of mind and confuse the issues. First, the statute does not require the Government to prove every detail of the grand jury proceeding that Defendant intended to obstruct at the time of his deletions. The Government must prove only that a grand jury proceeding was reasonably foreseeable to Defendant and that he intended to impair the evidence's availability in that proceeding. Final Jury Instructions, ECF No. 81, at 21–24. The Government must also prove that the proceeding was in fact – whether Defendant knew so – federal in nature. *Id.* As stated in the jury instructions, that grand jury proceeding is "a federal grand jury proceeding resulting from the January 6 breach of the U.S. Capitol." *Id.* at 21, 24. As described above, ample evidence

supported the jury's conclusion that Defendant foresaw such a proceeding, and as required by the statute, that the proceeding was in fact federal.

Accordingly, the evidence at trial established that the Government easily surmounted the Rule 29 standard as to Count Two. As detailed above, the Government presented more than sufficient evidence to support the jury's unanimous finding on Defendant's guilt on Count Two, and their unanimous verdict should not now be overturned.

## CONCLUSION

Defendant's Motion provides no basis to disturb the outcome at trial and enter a judgment of acquittal on either count. Accordingly, the Government respectfully requests that the Court deny Defendant's Motion without a hearing and allow this case to proceed to sentencing.

Respectfully submitted,
MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

*/s/ Mary L. Dohrmann*
MARY L. DOHRMANN
Assistant United States Attorney
NY Bar No. 5443874
601 D Street N.W.
Washington, DC 20530
Mary.Dohrmann@usdoj.gov
(202) 252-7035

*/s/ Anne P. McNamara*
ANNE P. MCNAMARA
Assistant United States Attorney
DC Bar No. 1006550
601 D Street N.W.
Washington, DC 20530
Anne.McNamara2@usdoj.gov
(202) 809-3502