**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | No. 21-cr-628-ABJ |
| | : | |
| v. | : | |
| | : | |
| MICHAEL ANGELO RILEY, | : | |
| | : | |
| *Defendant*. | : | |
| | : | |
| | : | |

**DEFENDANT'S MOTION FOR NEW TRIAL**

Defendant Michael Angelo Riley, through his undersigned counsel, moves this Court for a new trial pursuant to Federal Rule of Criminal Procedure 33.

**INTRODUCTION**

On October 14, 2021, Michael Riley, a 25-year veteran of the U.S. Capitol Police, was charged with two counts of obstructing a grand jury proceeding for telling Jacob Hiles to "take down" a portion of his public Facebook post on January 7, 2021 (Count One), and for deleting his own Facebook direct messages with Hiles on January 20, 2021 during the process of notifying Hiles that he was terminating all contact with him and deleting Hiles's "posts" (Count Two). As was made clear in this Court's jury instructions, the specific grand jury proceeding charged in the Indictment was "the grand jury proceeding resulting from the January 6 breach of the U.S. Capitol." At the trial of this matter that concluded on October 28, 2022, the jury could not reach a verdict on Count One, but reached a verdict of guilty on Count Two.

A serious miscarriage of justice would occur if this Court permitted the verdict on Count Two to stand. As discussed below, at the conclusion of the Government's case, even the Government did not know — when questioned by this Court — whether the Government was

arguing that Officer Riley's deletion of his Facebook direct messages was obstruction as to their availability for use, in the grand jury proceeding resulting from the breach of the U.S. Capitol, as evidence of *Hiles's conduct or* as evidence of *Officer Riley's own conduct*. The Government decided to pursue both theories, but acknowledged that it believed that Officer Riley's "primary intent" in deleting his messages was to "protect himself" (Oct. 20, 2022 Tr. at 21). Notwithstanding the language of the Indictment and this Court's jury instructions, the Government took the position that the specific grand jury proceeding "resulting from the January 6 breach of the U.S. Capitol" "certainly" "include[d] the defendant's obstructive conduct" (*id.* at 22).

Nothing from the materials produced in discovery or from any evidence presented by the Government at trial supported such an expansive scope of the grand jury charged in the Indictment. The Government's sole witness at trial on that issue, FBI Special Agent ("SA") Stephen Hart, had no personal knowledge of the charged grand jury and in fact testified that his first appearance before that grand jury was when he testified in securing an indictment against Officer Riley. Unfortunately for the Government and SA Hart, the grand jury that evaluated the evidence regarding Officer Riley and returned an Indictment against him was *not* the January 6 grand jury empaneled on January 8, 2021 — it was a separate grand jury empaneled on *August 11, 2021*. Thus, contrary to his own testimony on direct examination, SA Hart's "knowledge" of a purported grand jury resulting from the "January 6 breach of the U.S. Capitol" was based on a *totally different* grand jury. After SA Hart was found not to have any "personal knowledge," the Government, in seeking an eleventh-hour judicial notice to establish the existence of the charged grand jury, produced for the first time a January 3, 2022 Order extending that grand jury because of its continued work on a "large scale matter." To date, the Government has not even tried to explain why Officer Riley was *not* investigated *or* indicted by that grand jury — the one charged in the

Indictment — which was at the center of the Government's case, its presentation of evidence before the jury, and its arguments to this Court for why the Court should take judicial notice of the charged grand jury, and also deny Officer Riley's motion for a judgment of acquittal.

In its recent filing (D.E. 85 at 19), the Government completely brushes aside this enormous hole in its case, suggesting that all that is required for a guilty verdict on Count Two is "that a grand jury proceeding was reasonably foreseeable to [Officer Riley] and that he intended to impair the evidence's availability in that proceeding." The Government asks this Court to ignore the Court's own express jury instructions (for which the parties spent hours litigating) and abandon the "nexus" requirement to permit a guilty verdict based solely on a grand jury proceeding that was *not* the grand jury proceeding charged in the Indictment. To do so would be a miscarriage of justice. If the Government's lead law enforcement officer was not aware that the charged grand jury proceeding did not investigate Officer Riley, nor was the Government when it tried to expand criminal liability under Count Two of the Indictment, how was Officer Riley to have known that the deletion of his own direct messages would impair that grand jury, or to have intended such a result? He did not and he could not, especially when his direct messages were not evidence of a crime, Hiles already had already been reported by multiple individuals and arrested and charged with misdemeanor offenses, and the Government already had in its possession the contents of Hiles's cellphone.

Separate and apart from the Government's improper attempt to expand liability under Count Two, the evidence (or lack thereof) leans "heavily" against guilt, and permitting a guilty verdict to stand on the evidence in the record would constitute a miscarriage of justice. As was established at trial, Officer Riley deleted his direct messages with Hiles as part of his express notice to Hiles that he would no longer have any contact with him and would accordingly be deleting all

of his "posts." Officer Riley did so in response to Hiles's statement that he had discussed Officer Riley with the FBI and referred to him as a "buddy." Since Officer Riley had never met Hiles or had any contact with him prior to January 7, 2021, Officer Riley took steps to terminate contact with Hiles and to make clear that his contact with Hiles ended on January 21, 2021. Officer Riley took the additional step of notifying two separate Capitol Police officers that he told Hiles to take information off of Facebook, and a civilian friend that he had reached out to Hiles, conduct inconsistent with wanting to hide any evidence of having communicated with Hiles.

The evidence in the record weighs against any finding that Officer Riley could have known or imagined, that by deleting his *own Facebook communications*, he could impair a grand jury for conduct that was already charged as a misdemeanor, for information already in the Government's possession, and for an individual that had already been reported by law enforcement and captured on video. As for a potential investigation *of himself*, Officer Riley could not have known or believed that, by deleting his own direct messages, he could impair a grand jury resulting from the January 6 breach of the U.S. Capitol. Even assuming Officer Riley believed he had committed a crime (which there is absolutely no evidence to support), he had already been told by Hiles that the Government had secured the contents of Hiles's cellphone, negating any belief that he could impair the grand jury's ability to obtain his direct messages with Hiles.

A serious miscarriage of justice would occur if this Court permitted Officer Riley to be convicted on Count Two of the Indictment because he had no idea, notice, or discovery supporting the Government's conflicting theories as to what grand jury he was allegedly obstructing and for what purpose, and when the evidence underlying the guilty verdict weighs heavily in support of acquittal.

Notwithstanding the Government's anger, distain, and outrage for Officer Riley's contact with a January 6, 2021 protestor — whom the Government referred to as a "known rioter" before the jury, but championed publicly as someone deserving of probation and who was neither violent nor assaultive — that anger, distain, and outrage does not warrant a felony conviction, when Officer Riley's conduct does not meet the elements of the charged offense.

To avoid a miscarriage of justice, a new trial should be ordered in this case.

## FACTUAL BACKGROUND

### A.    The Charged "Grand Jury Proceeding."

As it pertains to Count Two of the Indictment, the Government was required to establish that Officer Riley obstructed a grand jury proceeding when he deleted his Facebook direct messages with Hiles on January 20, 2021. As set forth in this Court's instructions to the jury, the Government specifically alleged that Officer Riley obstructed a "grand jury proceeding resulting from the January 6 breach of the U.S. Capitol." *See* Jury Instructions at 24 (D.E. 81).

At trial, the Government took the position that the specific grand jury proceeding "resulting from the January 6 breach of the U.S. Capitol," empaneled on January 8, 2021, "certainly" "include[d] the defendant's obstructive conduct" (Oct. 20, 2022 Tr. at 22). Nonetheless, the Government did not call any witnesses or move into evidence any documents attesting to what the charged grand jury was investigating on the date it was empaneled. Consequently, there is nothing in the record to establish basic details regarding the purpose and scope of the charged grand jury, such as whether it was: (i) empaneled solely in anticipation of the large volume of cases in the District resulting from the U.S. Capitol attack on January 6, 2021, with no guidance on what, if any, matters or charges the grand jury would investigate or charge upon empanelment; (ii) convened specifically for offenses committed on January 6, 2021 and no other offenses; or

(iii) focused on individuals who committed traditional felony offenses, including assaults, threats, and destruction or theft of property, relating to the U.S. Capitol attack, as well as anyone who paraded and demonstrated in and near the U.S. Capitol, who aided and abetted such conduct, or who obstructed the grand jury's investigation of such conduct.

The Government's sole witness at trial on the issue of the charged grand jury was SA Hart, who had no personal knowledge of the charged grand jury. SA Hart testified on direct examination that he did not participate in any January 6 related grand jury proceeding until he appeared as a witness in the Government's request for an indictment of Officer Riley, months after the charged grand jury was empaneled. Putting aside momentarily the elements of intent, foreseeability, and likelihood of affecting the grand jury, the fact is that the initial indictments returned relating to January 6 were for assaultive conduct (with pendent charging of misdemeanor trespassing offenses) and were returned by a *different* grand jury that the grand jury that returned the Indictment against Officer Riley. *Compare United States v. Mark Jefferson Leffingwell*, 21-cr-5-ABJ (D.E. 6) (Indictment, returned on January 11, 2021, by a grand jury sworn on ***January 8, 2021***) *with United States v. Michael Riley,* 21-cr-628-ABJ (D.E. 1) (Indictment, returned on October 14, 2021, by a grand jury sworn on ***August 11, 2021***).

**Holding a Criminal Term**
**Grand Jury Sworn in on August 11, 2021**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| | : | |
| v. | : | |
| | : | VIOLATION: |
| MICHAEL ANGELO RILEY, | : | |
| | : | Count 1: 18 U.S.C. § 1512(b)(2)(B) |
| | : | (Obstruction) |
| Defendant. | : | |
| | : | Count 2: 18 U.S.C. § 1512(c)(1) |
| | : | (Obstruction) |

*See* Indictment at 1 (D.E. 1). Accordingly, contrary to his testimony on direct examination and as elicited during cross examination, SA Hart's first purported appearance before the charged grand

jury in this case that resulted from the "January 6 breach of the U.S. Capitol" was in fact for a totally different grand jury.[1]

After its only witness was shown to have no personal knowledge to support his direct examination testimony, the Government sought a judicial notice to establish the existence of the charged grand jury, an essential element of its case. The Government identified to the Court an Order attesting to why the grand jury was extended — which is a common practice when there are pending investigations that would be frustrated by the expiration of the grand jury — and referenced an earlier memorandum or order from the time of the grand jury's empanelment that was ambiguous as to its purpose.[2] Nonetheless, the Government has failed to explain why Officer

---

[1] SA Hart's testimony was further undermined when he claimed to not be comfortable discussing Hiles' conduct inside the U.S. Capitol, despite being the case agent in this case, having conducted a "lengthy" interview of Hiles, having been present at the courthouse with prosecutors the day Hiles testified before the grand jury, and when his co-agent's statement of facts in support of the criminal complaint against Hiles was a publicly available document on DOJ's website, which SA Hart should be aware of as the lead FBI agent in this case. *See* https://www.justice.gov/usao-dc/defendants/hiles-jacob, last visited November 18, 2022. SA Hart also claimed to not be comfortable discussing the circumstances of when the FBI actually received Hiles' Facebook post, which occurred no later than January 8, 2021 and no earlier than approximately 8:30 am on January 7, 2021, based on a document only disclosed to the defense for the first time pursuant to an Order of the Court *after* the Government's chief witness had finished his testimony. At trial, SA Hart went so far as to have no knowledge regarding whether FBI administrative subpoenas (which SA Hart testified that he did not use, but other FBI agents did) required the presence of an open grand jury. They do not and it is unconscionable that SA Hart did not know this obvious fact. *See Report to Congress on the Use of Administrative Subpoena Authorities by Executive Branch Agencies and Entities* at II.A.1, https://www.justice.gov/archive/olp/rpt_to_congress.htm, last visited November 15, 2022 ("Administrative subpoena authorities allow executive branch agencies to issue a compulsory request for documents or testimony without prior approval from a grand jury, court, or other judicial entity").

[2] The defense did not see the extension order until just before the Government rested and, to this day, the defense has never seen the earlier memorandum/order. Nor did the defense receive any advance notice that the Government would seek to cure its completely deficient order of proof on the existence of the grand jury by either calling an additional witness or by scrambling to provide evidence for the Court to support the taking of judicial notice. During the discovery phase in this matter, after the Court granted in part Officer Riley's motion to compel, the Government sent the defense a letter dated May 13, 2022 that stated, "we attach an indictment that was returned by the

Riley was *not* investigated *or* indicted by that grand jury — the one charged in the Indictment — which was at the center of the Government's case, its presentation of evidence before the jury, and its arguments to this Court for why the Court should take judicial notice of the charged grand jury. In light of the Government's failure to adduce sufficient evidence at trial, or even sufficient discovery, to prove that the scope of the charged grand jury included Officer Riley's conduct at issue, there is no basis to allow the verdict on Count Two to stand.

As it specifically pertains to Count Two, the jury was instructed that the Government alleged that Officer Riley obstructed a "grand jury proceeding resulting from the January 6 breach of the U.S. Capitol" by deleting his own direct messages with Hiles. The Government did not know what theory it was prosecuting in this case, even when the Court inquired of the Government after the Government had rested its case:

| | |
|---|---|
| **THE COURT:** | All right. And what are you saying – I know that when you started talking at the second pretrial conference *that he took all this down in connection with a potential investigation of Jacob Hiles, that that took me by surprise because I always thought that Count 2 is to impair their availability for a potential investigation of him*, even though it included other -- all of his communications, the private communications with Mr. Hiles and then his phone logs of his communication was Hiles. I just want to make sure that I understand still that that's what you're talking about. |
| **MS. DOHRMANN:** | Yes, Your Honor, I think the government would submit that the primary intent was to protect himself. But, of course, no doubt understanding that, you know, now that the FBI had interviewed Hiles and all of this, that, you know, he deleted the other evidence of Hiles' own admissions and statements and, you know, now defendant's statements at a point when those, too, would have been relevant to an official proceeding. So certainly the primary intent under the government's theory is to protect himself, the defendant. But it is not insignificant that those were deleted. |

grand jury that was empaneled immediately after January 6, 2021, on January 8, 2021, *largely for the purpose of considering Capitol attack cases.*" ). In accordance with the Government's pretrial disclosures, the grand jury was not empaneled exclusively for the January 6 breach of the U.S. Capitol and Officer Riley would have had absolutely no reasonable belief that the grand jury charged in the Indictment would be considering *his* direct messages with Hiles, when the focus of the grand jury was "Capitol attack cases."

**THE COURT:**     I mean, you have the point that he's –he's telling Gus on the 25th, well, they were all private, and maybe not appreciating that that meant they weren't gone or that Facebook still had them. But, is it -- if you're going to talk about two motivations, I thought -- I want to know, you're saying he corruptly altered, destroyed, or concealed a record or attempted to do so with the intent to impair its integrity or availability for use in a[n] official proceeding. ***And you've already talked about his reasonable belief at the time, and whether he had it or he didn't, that there was going to be a grand jury investigation involving people that went in, comma, people who destroyed property, comma, people who assaulted officers, and that they would be charged with felonies are things that he said at various points. Is that the official proceeding that you're saying he is trying to obstruct in count 2? Or are you saying he was trying to stave off an investigation of himself for potentially doing what's alleged in Count 1? What are you going to tell the jury you've proved?***

**MS. DOHRMANN:**     Your Honor, I think what we have proved is that the grand jury investigating the attack on the Capitol on January 6 was interested in a lot of facets of that. That includes the defendant's obstructive conduct, certainly. It also includes –

**THE COURT:**     I'm not suggesting that that doesn't fall under the umbrella, I'm just asking you what are you saying Count 2 is about? ***I want to be sure I know what you're trying to prove before I can rule on the motion of whether you've prove[d] it or not***.

**MS. DOHRMANN:**     ***Can I have one moment with counsel, just to make sure that we are answering your question***?

**THE COURT:**     This should be a question to which you know the answer. But go ahead.

**MS. DOHRMANN:**     Thank you, Your Honor.

(Off-the-record discussion between government counsel.)

**MS. DOHRMANN:**     Your Honor, ***I think the, sort of, the two options that you've phrased, I think it is fair to say that our theory is more that this is about saving himself and his messages, but at the same time knowing that there's an investigation into Hiles. So they are -- they are related and interrelated, and that's just by their nature how these investigations*** –

**THE COURT:**     All right. So he acted with the intent to impair their availability in considering offenses -- charging him and considering Hiles, is your theory.

**MS. DOHRMANN:**     Yes, Your Honor.

**THE COURT:**     All right.

**MS. DOHRMANN:**  I mean, I think at that point – I don't think the government is going to say he's trying to save Hiles at that point. But to the extent it leads back to him, that it implicates him, of course.

Oct. 20, 2022 Tr. at 20-23 (emphasis added). In effect, the Government conceded to proceeding to trial on two separate theories of what Officer Riley was intending to obstruct, which is contradicted by what was charged in the Indictment, confirming that the Government's focus was never on the obstruction of a grand jury proceeding.

Similarly, SA Hart's testimony relating to the purported grand jury investigating the January 6 breach of the U.S. Capitol was misinformed in part because his focus was on how Officer Riley purportedly obstructed an FBI investigation, which SA Hart testified goes hand-in-hand with an open grand jury proceeding. The Government's evidence at trial remained consistent with its understanding of its case at the Pretrial Conference when the Government wanted to instruct the jury that Officer Riley obstructed an "investigation," which the defense had asserted for over a year could not establish criminal liability under the charged statute:

**THE COURT:**     What are you going to tell the jury he is charged with obstructing?

**MS. DOHRMANN:**  ***The federal investigation, including a grand jury investigation, resulting from the January 6th breach of the U.S. Capitol.***

**THE COURT:**     All right. But you have told me over and over again that you are focused on the grand jury part given the section of the statute that he's been indicted under.

**MS. DOHRMANN:** Yes, Your Honor.

**THE COURT:**     All right. So I am not sure that you can, on the one hand, say, We're not talking about the FBI investigation; and say, A federal investigation including a grand jury investigation, whence you have hung your hat on the fact that you are talking about the grand jury investigation. Isn't that what he's charged with?

**MS. DOHRMANN:**  Yes, Your Honor.

Sept. 12, 2022 Tr. at 35:13-36:4 (emphasis added).

Just as there is absolutely no evidence or testimony establishing Officer Riley's intent to obstruct a grand jury proceeding or his knowledge that he would affect one, every aspect of the Government's case, from its instruction to the FBI to open an investigation against Officer Riley on August 5, 2021 to its closing argument at his trial, was consistent with a belief that he impaired or obstructed an FBI investigation, rather than a belief that Officer Riley obstructed a grand jury proceeding. When the Government could not find a conspiracy between Hiles and Officer Riley after Hiles repeatedly told the Government during debriefs that he never had any contact with Riley before January 7, 2021, the Government persisted on gathering every record of Officer Riley, which included going back to the November 2020 election. When that effort went nowhere, the Government sent two agents to Officer Riley's home with separate tape recorders to, in their words, "surreptitiously" record him, in the hope of obtaining an § 1001 false statement to law enforcement charge. When that too went nowhere, the Government turned to pursuing charges for obstruction of an investigation.

The Government tried to remedy its case by simply presenting SA Hart to say that an FBI investigation and grand jury proceeding go hand-in-hand. That did not cure the Government's deficient proof, and the Government cannot convert its entire case theory to fit a statute simply with a direct examination question. The fact still remains that the FBI's investigation makes no mention of obstruction of a grand jury proceeding,[3] the Government's press release regarding

---

[3] As proffered to the Court, undersigned counsel sought to cross-examine SA Hart regarding the FBI's investigation — opened at the *request* of the U.S. Attorney's Office and memorialized in an opening FBI report — which concerned the obstruction of an investigation, not a grand jury proceeding. Undersigned counsel further sought to cross-examine SA Hart about sworn search warrants by the lead FBI agents, including SA Hart, which sought information from Officer Riley

Officer Riley upon his arrest alleges obstruction of an "investigation," and, just before the commencement of the trial of this matter, the Government told the Court that it wanted the jury to be instructed that Officer Riley obstructed "the federal investigation, including a grand jury investigation," which this Court rejected as inconsistent with the Government's prior position with the Court and the charged offenses. *See* Sept. 12, 2022 Tr. at 35:13-36:4.[4]

The Government's argument before, during, and after the trial in this matter are all consistent with the Government's consistent theory that Officer Riley obstructed an investigation and not a grand jury proceeding, which the Government did not charge in this case and which the section of the statute at issue, 18 U.S.C. § 1512, does not permit criminal liability to be based upon. The Government's post-trial filings mirror its own admissions at the Pretrial Conference and its representations in its opening statement and closing argument that Officer Riley obstructed a law enforcement investigation, rather than having the intent to obstruct a specific grand jury proceeding with the knowledge that his actions would affect a specific grand jury proceeding. *See,*

---

going back to the date of the election in November 2020, based on the unfounded belief that Officer Riley was involved in a conspiracy with Hiles even though Hiles told the Government and the FBI repeatedly that he had no contact with Officer Riley prior to January 7, 2021.

[4] In light of the Government's repeated arguments indicating obstruction of an investigation and not of a grand jury proceeding, there should be absolutely zero confidence that the grand jury that returned the Indictment against Officer Riley (which was not the grand jury empaneled on January 8, 2021 that was charged in the Indictment) had ever been properly instructed regarding the charged offenses in this case. In fact, the entire record before the grand jury that indicted Officer Riley on the issue of Officer Riley's obstruction of a grand jury proceeding consisted of two lines. *See* Oct. 14, 2021 Hart GJ Tr. at 4 ("**Q.** And did the United States Capitol Police force and the Federal Bureau of Investigation launch a criminal investigation immediately following these events? **A.** Yes, they did. **Q.** And in connection with that investigation, was a federal grand jury convened in the District of Columbia? **A.** Yes."). The entire record before the indicting grand jury was silent on any nexus or connection between Officer Riley's actions and the grand jury that he allegedly obstructed and the scope of that alleged grand jury. Rather, consistent with both its representations at the pretrial conference and its arguments at trial, the Government's theory has always been that Officer Riley obstructed an FBI investigation that led to a grand jury, which does not establish liability under the charged obstruction statute in this case.

*e.g.*, Gov't Opp'n at 13 (D.E. 85) (emphasis added) ("[T]his does nothing to **negate Defendant's intent to affect a federal criminal investigation that he knew would include the grand jury**."); *id.* at 12-13 ("Here, the evidence established that Defendant was a veteran law enforcement officer who knew that a massive federal criminal investigation into the events related to January 6 was underway at the time he sent his message."). As this Court stated at the Pretrial Conference, and was required to instruct the jury in light of the Government's improper arguments and examination of SA Hart at trial, Officer Riley was *not* charged with obstruction of an investigation, but rather, a grand jury proceeding.[5] *See* Sept. 12, 2022 Tr. at 35:13-36:4 ("So I am not sure that you can, on the one hand, say, We're not talking about the FBI investigation; and say, A federal investigation including a grand jury investigation, whence you have hung your hat on the fact that you are talking about the grand jury investigation."); Jury Instructions at 22 (D.E. 81) ("The defendant is not charged with obstructing an FBI investigation."); *id.* at 25 ("[T]he official proceeding must be a grand jury proceeding, not simply an FBI investigation.").

**B.**     **Count Two - Officer Riley's Facebook Direct Messages.**

The evidence presented at trial established that Officer Riley deleted his Facebook direct messages with Hiles as part of his express notice to Hiles that he would no longer have any contact

---

[5] The Government had access to extensive resources and over a year to prepare for trial, but chose to present absolutely no evidence about the grand jury that was allegedly obstructed, how Officer Riley intended to obstruct that grand jury, or knew his actions would affect that grand jury. To date, the Government has still not produced any evidence surrounding the empaneling of the grand jury charged in this case, absent: (i) an Indictment returned by a grand jury sworn in on January 8, 2021 for assault with a weapon (knife) and trespassing offenses resulting from the January 6, 2021 breach of the U.S. Capitol; (ii) an Indictment from that same grand jury for assaulting officers, robbery of Government property, and trespassing offenses resulting from January 6; and (iii) a January 3, 2022 Order extending that grand jury because its work "on a large-scale matter" was not complete. In evaluating Officer Riley's motion here, there remains nothing in the trial record to establish the scope of the grand jury that the Government describes as purportedly supporting Count Two of the Indictment.

with him and would be deleting all of his "posts." Officer Riley did so in response to Hiles's statement that he had discussed Officer Riley with the FBI, going so far as to tell the FBI that Officer Riley was his "buddy," and that developing a relationship with him was a positive outcome of his actions on January 6, 2021. Because Officer Riley had never met Hiles or had contact with him prior to January 7, 2021 and, accordingly, had no knowledge of Hiles' intentions on January 6, 2021 and had not assisted him in any way in coming to Washington, D.C. or entering the U.S. Capitol (and did not want to give anyone the impression otherwise), Officer Riley terminated all contact with Hiles to ensure that, if he was ever asked about the extent of his contact with Hiles, he could explain that his contact ended decisively on January 21, 2021.

To be clear, Officer Riley told Hiles that he would have no further contact with him; regretted reaching out to him in the first place, in light of the facts learned being different from what Hiles described in his initial post; and was, in fact, deleting Hiles's "posts." After his January 21, 2021 message, Officer Riley never had any further social media contact with Hiles, never spoke with him, and still, to this day, has never met him. Officer Riley took the additional step of notifying: (i) two separate Capitol Police officers that he told Hiles to take information off of Facebook; and (ii) a civilian friend that he had reached out to Hiles, conduct inconsistent with wanting to hide any evidence of having communicated with Hiles.

Moreover, on the day he deleted his Facebook direct messages, January 20, 2021, Officer Riley was aware, based on Hiles's written messages, that Hiles had been arrested on misdemeanor charges and that the FBI had downloaded "everything" from Hiles's cellphone. Officer Riley also knew that Hiles had been reported by another Capitol Police officer for being inside the Capitol; that Hiles's Facebook post had been viewed, liked, and reposted, by hundreds of individuals; that Hiles's presence in the U.S. Capitol would be confirmed by cameras located inside the U.S.

Capitol; and that Hiles's Facebook communications would be subject to preservation requests to Facebook.

Officer Riley could not have known or imagined, that by deleting his *own Facebook communications*, he could impair a grand jury for conduct that was already charged as a misdemeanor, for information already in the Government's possession, and for an individual that had already been reported by law enforcement and captured on video.[6] As for a potential investigation *of himself*, Officer Riley could not have known or believed that, by deleting his own direct messages, he could impair a grand jury resulting from the January 6 breach of the U.S. Capitol, when he did not participate in the events of January 6 or assist anyone in the breach of the U.S. Capitol, and his direct messages did not discuss criminal conduct (as evidenced by Officer Riley's reporting of his conduct to two separate Capitol Police officers, who took no action in response). Even assuming Officer Riley believed he had committed a crime (which there is absolutely no evidence to support), he had already been told by Hiles that the Government had secured the contents of Hiles' cellphone, negating any belief that he could impair the grand jury's ability to obtain his direct messages with Hiles.

## ARGUMENT

Federal Rule of Criminal Procedure 33 provides that a "court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Courts enjoy 'broad discretion' in deciding whether to grant a new trial." *United States v. Doost*, No. 17-cr-109-

---

[6] SA Hart confirmed that in the limited January 6 related matters he was involved with, one of the cases, just like Hiles, concerned misdemeanor trespassing offenses, where the individual was charged, not by an indictment, but by an information filed by the assigned prosecutor, which is a routine and common practice for charging misdemeanor offenses. Even this Court remarked at one of the pretrial conferences that the Court could not recall the last time it saw an indictment for standalone misdemeanor offenses.

APM, 2019 WL 1560114, at *2 (D.D.C. Apr. 10, 2019) (quoting *United States v. Wheeler*, 753 F.3d 200, 208 (D.C. Cir. 2014)). "A new trial motion is warranted only in those limited circumstances where 'a serious miscarriage of justice may have occurred.'" *Doost*, 2019 WL 1560114, at *2 (quoting *Wheeler*, 753 F.3d at 208). In order to warrant a new trial, "the evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." *United States v. Howard*, 245 F. Supp. 2d 24, 30 (D.D.C. 2003) (quoting *United States v. Edmond*, 765 F. Supp. 1112, 1118 (D.D.C. 1991)). In making its determination, the district court "weighs the evidence and evaluates the witnesses' credibility and decides whether 'a serious miscarriage of justice may have occurred.'" *United States v. Rogers*, 918 F.2d 207, 213 (D.C. Cir. 1990) (quoting *Tibbs v. Florida*, 457 U.S. 31, 38 n.11 (1982)). "Grounds for granting such a motion can include a wide variety of errors, including where the Court finds that the weight of the evidence is such that the verdict constitutes a miscarriage of justice." *United States v. Safavian*, 644 F. Supp. 2d 1, 8 (D.D.C. 2009) (citation omitted).

Although Officer Riley's oral motion for judgment of acquittal initially raised at the conclusion of the Government's case and reraised at the conclusion of the defense case still remains pending, Officer Riley preserves his right to request a new trial on Count Two of the Indictment to the extent the Court denies his motion for judgment of acquittal on that count.[7]

As explained below, a serious miscarriage of justice has occurred in this case.[8]

---

[7] While Officer Riley has reserved a number of arguments and challenges to the Court's rulings and the Government's evidence in this proceeding, Officer Riley does not intend to address each one in this motion and the exclusion of any matter previously objected to or otherwise preserved for appeal is not indicative of anything other than that the focus of this motion is limited to a few select issues that warrant an immediate new trial on Count Two of the Indictment.

[8] The grounds on which this Court may grant a new trial are limitless. As discussed herein, among the many justifiable reasons, a new trial should be granted based on the Government's: (i) changing theories as to what grand jury proceeding Officer Riley allegedly obstructed in Count Two of the

I. **The Government Improperly Argued That Officer Riley Obstructed a Grand Jury Proceeding _Different_ from the Proceeding Charged in the Indictment.**

Consistent with the language of Count Two of the Indictment, this Court instructed the jury at trial that the Government alleged "that on January 20, 2021, the defendant himself corruptly altered, destroyed, mutilated, or concealed a record, document, or other object, or attempted to do so, with the intent to impair its integrity or availability for use in an official proceeding – that is, that on that date, defendant Riley _deleted his Facebook direct communications_ with Jacob Hiles to _impair_ their _use_ in the federal _grand jury proceeding resulting from the January 6 breach of the U.S. Capitol_." Jury Instructions at 24 (emphasis added) (D.E. 81).

At the conclusion of the Government's case, even the Government could not clearly tell the Court whether the Government was arguing that Officer Riley's deletion of his Facebook direct messages was obstruction as to their availability for use in the grand jury proceeding as evidence regarding _Hiles' conduct or_ regarding _Officer Riley's own conduct_. Notwithstanding the language of the Indictment that charged obstruction of a grand jury resulting from the January 6 breach of the U.S. Capitol, neither of the Government's two conflicting theories was supported by sufficient evidence from which a reasonable juror could find guilt beyond a reasonable doubt.

At trial, the Government completely altered its charged theory, that Officer Riley's actions were taken to remove evidence from a grand jury investigating the "January 6 breach of the U.S.

---

Indictment and how his actions allegedly affected that specific grand jury; (ii) improper arguments that Officer Riley obstructed an "investigation," rather than a grand jury proceeding, as well as, his alleged failure to report Hiles, which he was also not charged with in this case; (iii) failure to produce discovery relating to the charged grand jury; (iv) failure to timely disclose information relating to the FBI's possession of Hiles' Post until after the trial commenced and only when ordered to do so by the Court (which prevented additional discovery being sought from the untimely production); and (v) evidence (or lack thereof) so heavily pointing towards an acquittal in this case.

Capitol," to rather, a grand jury investigating Officer Riley *himself* for conduct that did not occur on January 6, 2021 and did not involve the breach of the U.S. Capitol. Applying mental gymnastics, the Government took the position that the charged grand jury encompassed Officer Riley's own conduct, even though there was absolutely no evidence in the record that the grand jury resulting from the January 6 breach of the U.S. Capitol had such a broad scope at the time it was empaneled, on January 8, 2021, and the Government's sole witness on the issue, SA Hart, had no personal knowledge of the grand jury. The problem with the Government's theory on Count Two is that Officer Riley was never indicted by the grand jury investigating the January 6 breach of the U.S. Capitol, which was empaneled on January 8, 2021 — rather, he was indicted by a totally separate grand jury, empaneled on August 11, 2021. *See* Indictment at 1. To date, the Government offers no explanation why the charged grand jury empaneled on January 8, 2021 and extended on January 3, 2022, did not investigate or charge Officer Riley. This is exactly why the defense requested discovery as to the grand jury referenced in the Indictment to understand what the grand jury was tasked to investigate and for what felony offenses it was asked to return indictments. From the Government's instruction to the FBI to open a case against Officer Riley to the Government's most recent written Opposition (D.E. 85) to Officer Riley's motion for judgment of acquittal, the Government has consistently evinced a theory that Officer Riley obstructed an investigation, which he is not charged with in this case. This is exactly why even the Government was not sure what grand jury it was arguing Officer Riley obstructed by deleting his messages.

In its recent Opposition, the Government first resorted to criticizing Officer Riley for raising this challenge to the Government's evidence and argument at trial, and then reverted to removing the nexus requirement from the jury instructions given by the Court to the jury at trial:

> As has been true throughout the history of this case, Defendant **attempts to shift the focus away from his conduct and state of mind and confuse the issues**. First, the

statute does not require the Government to prove every detail of the grand jury proceeding that Defendant intended to obstruct at the time of his deletions. The Government ***must prove only that a grand jury proceeding was reasonably foreseeable to Defendant and that he intended to impair the evidence's availability in that proceeding***. Final Jury Instructions, ECF No. 81, at 21-24.

Gov't Opp'n at 19 (emphasis added) (D.E. 85). The Government's legal analysis is wrong now, as it was months ago. Officer Riley must have intended to obstruct a specific grand jury and must have known that his actions would affect that specific grand jury.

## II.   <u>The Weight of the Evidence Overwhelmingly Supports an Acquittal on Count Two.</u>

None of the Government's conflicting theories as to Count Two support a conviction in this case. Prior to January 20, 2021, Hiles informed Officer Riley that he had been arrested on misdemeanor charges and provided photos of his charging documents and the relevant statute, which indicated that he was not charged with an offense punishable in excess of twelve months, and that the offense was outside the purview of a grand jury investigation into felony conduct (especially, when the conduct at issue was traditionally charged as misdemeanor trespassing and did not involve grand jury proceedings).

Prior to January 20, 2021, Hiles had already been reported to law enforcement by another Capitol Police officer, his videos and post had been seen by hundreds of individuals, and most importantly, the Government had the contents of Hiles's cellphone and none of the direct messages were criminal in nature (even the initial direct message, where the jury could not find a crime was committed). Hiles also had already informed Officer Riley that he spoke to the FBI and they "took [his] phone and downloaded everything" (Gov't Ex. 202a, at USA-4482). The Government's cross-examination of Officer Riley and closing argument attempted to demonstrate a concern by Officer Riley that he could no longer control where the direct messages went, but in reality, his knowledge that the FBI had "everything" from Hiles's phone is evidence that Officer Riley could

not affect the ability of a grand jury — any grand jury — to obtain evidence law enforcement already had in its possession.

Officer Riley testified that he told Hiles he was having no further contact with him, regretted reaching out to him in the first place, and was deleting his "posts," which people commonly do when they are terminating all social media contact with someone. Officer Riley took the additional step of notifying two separate Capitol Police officers that he told Hiles to take information off of Facebook and a civilian friend that he had reached out to Hiles, conduct inconsistent with wanting to hide any evidence of having any contact with Hiles.

The Government also rested its case on Officer Riley's messages to his union representative, wherein he "guess[es]" that a disciplinary action resulted from telling Hiles to take information off of Facebook and ponders, "Wonder what kind of trouble I'm in." *See* Gov't Opp'n at 5 (D.E. 85). This entire conversation applied to an administrative matter and potential consequences to Officer Riley's employment as a Capitol Police Officer, not criminal conduct or obstruction of a grand jury. The Government has also claimed that Officer Riley was not truthful about his conduct when speaking to others. *See id.* at 9, 17. That is completely inaccurate. As shown in the Government's exhibits, Officer Riley told both Capitol Police officer witnesses who testified at trial that he told Hiles to take down information on Facebook, knowing that Hiles had spoken to the FBI and the FBI had the contents of Hiles's cellphone. Neither Capitol Police officer took any action as if a crime had been committed or a grand jury had been obstructed, nor did Officer Riley ask them to shield him from any purported criminal investigation. Similarly, Officer Riley told his friend, Ben Shepherd, that he had reached out to Hiles.

Moreover, communicating with a January 6, 2021 protestor was, and still remains, not a crime. Deleting Facebook communications with someone at the end of a relationship also does not

implicate a grand jury proceeding resulting from the January 6 breach of the U.S. Capitol. The only evidence in the record purporting to show Officer Riley's intent as to his actions was his "guess" that a pending disciplinary action stemmed from telling Hiles to take down information from Facebook, not that such conduct was a crime or that he had intended to obstruct a grand jury proceeding. The Government cannot sustain a conviction on a theory that Officer Riley should have been aware of another grand jury proceeding, potentially investigating him for deleting his own Facebook messages, where the only purportedly incriminating content, among the approximately two hundred messages, was a message telling Hiles to take down a portion of a Facebook post, which the jury could not find was a crime.

The evidence in the record overwhelmingly supports an acquittal on Count Two. The Government cannot even begin to point this Court to evidence showing that, by deleting his Facebook messages while terminating contact with Hiles, Officer Riley *intended* to obstruct a *grand jury proceeding* resulting from the *January 6 breach of the U.S. Capitol* and *knew* that his actions would *affect* that *specific* grand jury proceeding, particularly when Officer Riley knew Hiles had been arrested and charged with misdemeanor trespassing offenses. As summarized below, the evidence (or lack thereof) weighs heavily against a finding of guilt beyond a reasonable doubt, such as:

(i)   There were no discussions of a grand jury proceeding or subpoena anywhere in any messages between Officer Riley and Hiles or in any messages between Officer Riley and the numerous law enforcement and civilian witnesses with whom he discussed Hiles;

(ii)  None of the witnesses discussed with Officer Riley a grand jury proceeding or grand jury subpoena;

(iii) Officer Riley discussed with two law enforcement officers that he told Hiles to take down information from Facebook, even after Hiles informed Officer Riley that he had spoken to the FBI and mentioned to them that their friendship was a positive result of January 6, 2021, which was the motivating factor for Officer Riley in ending his contact with Hiles;

(iv)  There was no request or instruction by Officer Riley to Hiles advocating the destruction or removal of any evidence relevant to Hiles's arrest or prosecution following Officer Riley's initial direct message;

(v)   There was no instruction by Officer Riley to Hiles as to how to avoid being arrested or charged or how to avoid detection by law enforcement;

(vi)  There was no statement by Officer Riley to Hiles informing him that he had been reported to the Capitol Police Intelligence Unit by Officer Vinnie Legambi or that civilian Ben Shepherd had captured videos of Hiles inside the Capitol;

(vii) Officer Riley did not try to dissuade anyone who indicated an intention to report Hiles to authorities;

(viii) Officer Riley directed Hiles to ask his attorney and articulate his story to the Court in resolving his conduct on January 6, 2021;

(ix)  Numerous civilian and law enforcement officers reported Hiles to authorities based on his Facebook posts, and the FBI had the post to which Officer Riley responded in its possession by no later than January 8, 2021 and potentially, as early as January 7, 2021;

(x)   Cameras inside the U.S. Capitol captured every inch of space inside the U.S. Capitol, including any conduct by Hiles inside the building; and

(xi)  Preservation requests were used by the FBI to preserve all evidence relating to January 6, 2021 on social media, such as Facebook, for gathering at a future time.

Permitting a conviction on Count Two would be a miscarriage of justice because the evidence in the record confirmed that Officer Riley never intended to obstruct a grand jury proceeding, particularly the grand jury proceeding resulting from the January 6 breach of the U.S. Capitol, and never knew or could have imagined that his actions would have affected a grand jury proceeding.

## CONCLUSION

For all these reasons, Officer Riley respectfully requests that the Court grant his motion for a new trial.

Dated: November 18, 2022

Respectfully submitted,

**SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC**

    /s/ Christopher Macchiaroli
Christopher Macchiaroli (D.C. Bar No. 491825)
1750 K Street, NW, Suite 810
Washington, D.C. 20006
Telephone: (202) 539-2444
Facsimile:  (410) 547-2432
Email: cmacchiaroli@silvermanthompson.com

Emma J. Mulford (Bar No. MD0146)
400 East Pratt Street, Suite 900
Baltimore, MD 21202
Telephone: (410) 385-6249
Facsimile: (410) 547-2432
Email: emulford@silvermanthompson.com

*Counsel for Defendant Michael Angelo Riley*