**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 21-CR-00628 (ABJ)** |
| **MICHAEL ANGELO RILEY,** | |
| *Defendant.* | |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR NEW TRIAL

A jury convicted Defendant, Michael Angelo Riley, of one count of Obstruction of Justice (Count Two) and was unable to reach a verdict as to a second count of Obstruction of Justice (Count One). Defendant now moves for a new trial on Count Two pursuant to Federal Rule of Criminal Procedure 33.[1] *See* Defendant's Motion for New Trial ("Def.'s Mot."), ECF No. 87. Repeating arguments that he raised in his motion for judgment of acquittal, ECF No. 82, Defendant asserts that a "serious miscarriage of justice" would occur if the Court does not set aside the unanimous verdict of the jury, despite the fact that the jury was properly instructed on all of the elements of the offenses charged. His challenge focuses on the specific nature of the official proceeding that was charged and proved in Count Two. Brushing aside the plain statutory language and jury instructions that make clear that the official proceeding need not even be pending at the time of the offense, so long as it is reasonably foreseeable, Defendant splits hairs and attempts to create confusion regarding the specific focus of the grand jury that was actually empaneled and that was actually investigating the January 6 riot on the date of Defendant's crime. Defendant then

---

[1] Defendant asserts in the Motion that he "preserves his right to request a new trial on Count Two." Def.'s Mot. at 16. Based on the arguments made in the Motion, the Government believes Defendant intended to reference Count One, not Count Two.

goes on to challenge the sufficiency of the evidence, attempting to substitute his own inferences and interpretations of the evidence for those of the unanimous jury. Defendant's arguments are unavailing, as they are largely attempts to relitigate issues already decided by this Court, and they rely on misinterpretations of the law and evidence, as well as this Court's pretrial and trial rulings. Accordingly, Defendant's Motion should be denied without a hearing, and this case should proceed to sentencing.

## BACKGROUND[2]

On October 14, 2021, a federal grand jury in the District of Columbia returned an indictment charging Defendant with two counts of Obstruction of Justice, in violation of 18 U.S.C. § 1512(b)(2)(B) (Count One) and 18 U.S.C. § 1512(c)(1) (Count Two). ECF No. 1. A jury trial began on October 17, 2022.[3]

The Government's evidence at trial established that on January 6, 2021, Defendant was a United States Capitol Police Officer with over 25 years of experience. That day, when the U.S. Capitol was attacked and breached by a mass of rioters, Defendant was on duty. He responded to reports of explosive devices within the Capitol complex, as well as reports of downed officers. On January 7, 2021, Defendant posted on Facebook, "Every protestor that assaulted an officer yesterday, committed property damage, and broke in to the Capitol building should be charged federally in District Court. If we don't send a message it will surely happen again." Gov't Ex. 307(amended). Within two hours of that public post, Defendant became aware that a Facebook friend was posting about his participation in the riot at the U.S. Capitol on January 6, 2021,

---

[2] With the exception of the final paragraph, this section is taken from the Government's Response in Opposition to Defendant's Motion for Judgment of Acquittal, ECF No. 85.

[3] As of the deadline for this opposition, the Government has sought, but not yet been able to obtain, a complete transcript from the trial.

including a lengthy first-person account attaching a five minute and forty-one second video of violence on the Capitol grounds. Gov't Exs. 302, 303, 201a, 201.1. Defendant sent the rioter a private message stating the following: "Hey Jake, im a capitol police officer who agrees with your political stance. Take down the part about being in the building they are currently investigating and everyone who was in the building is going to be charged. Just looking out!" Gov't Ex. 202a.

Facebook direct messages in evidence at trial established that when the rioter responded, "Investigate me however youd like and thank you for the heads up," and sent Defendant three videos filmed by the rioter showing law enforcement officers being attacked, Defendant responded, "I get it…it was a total shit show!!!! Just wanted to give you a heads up." Gov't Ex. 202a. And the evidence also established that Defendant continued to attempt to persuade the rioter to take down evidence. Specifically, on January 7, Defendant said to the rioter, among other things, "The only thing I can see is if you went in the building and they have proof you will be charged. You could always articulate that you have no where to go, but that's for court," "Personally i don't know what they have decided, just know our guys and the fbi are going through everything," and "I have allot of buddies who know you and thats why I reached out." *Id.*

The evidence at trial also established that Defendant was a seasoned law enforcement officer who quickly understood the seriousness of the events of January 6. In additional private messages exchanged with the rioter on January 7 about the events of the prior day, Defendant explained, "Yesterday was a sickening day. Theres so much other shit I cant tell you on here of shoe you pictures of, but lets just say there were straight up acts of terrorism yesterday," "It was a total shit show!!!!," "Remember when the building was breached there was a joint session going on. Number 2 through 5 in our government was in the building at the time. Also several rooms in

that building are critical to national security. Truthfully…its absolutely amazing more people weren't shot." Gov't Ex. 202a.

Likewise, the evidence established that Defendant knew that individuals involved in the Capitol breach would be charged federally with felonies: "Every protestor that assaulted an officer yesterday, committed property damage, and broke into the Capitol building should be charged federally in District Court," Gov't Ex. 307(amended), "theyre all being charged federally with felonies" Gov't Ex. 202a, "I thought everyone was getting charged with felonies!" Gov't Ex. 306a, "Federal court is no joke" Gov't Ex. 202a. Defendant also expressed similar views during this period with his United States Capitol Police colleagues, messaging one colleague V.L. that "All those morons posting shit are going to be charged" Gov't Ex. 401.

Despite this, the evidence demonstrated that Defendant remained friendly with the rioter throughout the following weeks, even after receiving videos and images from a mutual acquaintance on January 9 of the rioter smoking marijuana inside the U.S. Capitol, to which Defendant responded, "Yep I know" Gov't Exs. 306.1, 306a. Likewise, Defendant continued to exchange friendly private messages with the rioter, even after he was federally charged. For example, when the rioter informed Defendant on January 16 that he was being charged, Defendant initially responded that numerous people were being arrested daily and "all being charged federally with felonies" Gov't Ex. 202a. He then talked to the rioter on the phone, and sent him a private message inviting him to "stay at my house on the shore for free," stating, "If you want to see the capitol building, lets do it legally next time... I know a guy who can get you a tour...lol." Gov't Exs. 202a, 102. The evidence further established that the two continued exchanging friendly messages until January 20, when the rioter messaged Defendant "The fbi was very curious that I had been speaking to you if they havent already asked you about me they are gonna. They took

my phone and downloaded everything." Gov't Ex. 202a. Thereafter, Defendant responded "That's fine," then deleted his hundreds of private messages with the rioter. *Id.*

The following day, Defendant sent the rioter the following cover story message: "Hey Jake, another mutual friend was talking about you last night. I tried to defend you but then he showed me a video of you in the Capitol smoking weed and acting like a moron. I have to say, I was shocked and dumbfounded, since your story of getting pushed in the building with no other choice now seems not only false but is a complete lie. I feel like a moron for believing you. I originally reached out to you as someone who looked up to you in the fishing arena and because I have seen your numerous posts about being a single dad and how much you cared for your daughter. I was so mad last night I deleted all your post, but I wanted to text you this morning and let you know that I will no longer be conversing with you." *Id.*; 304a.  Evidence at trial established that when a search warrant was executed on Defendant's Facebook account, this was the only private message from Defendant to the rioter that was found in Defendant's account. Gov't Ex. 304a.

Evidence showed that on January 25, after receiving notification that he was the subject of an internal investigation at work, Defendant exchanged messages with his colleague and union representative. Gov't Ex. 402a. When asked what the investigation was for, Defendant responded "if I had to guess for telling that retard I know to take down his shit from the capitol breach. But I did it on private message so it should be like a private conversation but who knows." *Id.* Defendant then continued, "He told me that he told the FBI that he talked to me. Wonder what kind of trouble I'm in." *Id.*

The Government's evidence at trial, including through witness testimony, stipulations, and judicial notice, established, *inter alia*, that grand juries gather and consider evidence to investigate possible crimes, in conjunction with law enforcement agencies and prosecutors; that grand juries,

along with prosecutors, make charging decisions; and that a grand jury is required to bring felony charges. The evidence made clear that the criminal investigation into January 6 would be one of the largest in history, involving multiple law enforcement agencies and the use of every tool available to the government, including the grand jury. In fact, the Government's evidence further showed that, in fact, on January 8, 2021, a federal grand jury was convened and that it considered matters resulting from the breach of the U.S. Capitol on January 6, 2021.

At the close of the Government's case-in-chief, on October 20, 2022, Defendant moved orally for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. *See* Oct. 20, 2022 Min. Order. The Government opposed the motion. After hearing argument, the Court reserved decision under Rule 29(b), and it remains pending.

On October 28, 2022, the jury returned a verdict finding Defendant guilty of Count Two. That same day, the jury was deemed to have deadlocked on Count One, and without objection from either party, the Court declared a mistrial as to Count One, and the jury was dismissed. ECF No. 76; *see also* Oct. 28, 2022 Min. Order.

On November 4, 2022, Defendant filed a supplement to his oral motion for judgment of acquittal, ECF No. 82, requesting that the Court enter a judgment of acquittal on both counts, which the Government timely opposed, ECF No. 85. On November 18, 2022, Defendant filed the instant Motion, ECF No. 87, which the Government now opposes.

## **LEGAL STANDARD**

Defendant moves for a new trial under Federal Rule of Criminal Procedure 33. "Motions for a new trial are not favored and are viewed with great caution." *United States v. Borda*, 786 F. Supp. 2d 25, 31 (D.D.C. 2011) (internal citations and quotation marks omitted). "Despite the court's broad authority to order a new trial, it should be exercised sparingly and limited to situations presenting a serious danger that a miscarriage of justice has occurred—that is, that an

innocent person has been convicted." *Id.* at 32 (internal quotations and citations omitted); *see also United States v. Edmonds,* 765 F. Supp. 1112, 1118 (D.D.C. 1991) (The power to grant a new trial under Rule 33 "should be exercised with caution, and . . . invoked only in . . . exceptional cases."); *United States v. Wheeler*, 753 F.3d 200, 208 (D.C. Cir. 2014) (A new trial "is warranted only in those limited circumstances where 'a serious miscarriage of justice may have occurred.'" (quoting *United States v. Rogers*, 918 F.2d 207, 213 (D.C. Cir. 1990))); *United States v. Cook*, 526 F. Supp. 2d 10, 14 (D.D.C. 2007), *aff'd*, 330 F. App'x 1 (D.C. Cir. 2009) (finding that where defendant asserted a constitutional *Brady* violation, to be entitled to a new trial under Rule 33, defendant had to demonstrate that the violation resulted "in a verdict [not] worthy of confidence"); *United States v. Howard*, 245 F. Supp. 2d 24, 30 (D.D.C. 2003) ("In order to grant a new trial, the evidence must preponderate heavily against the verdict." (citations and internal quotation marks omitted)).

In considering a new trial motion based on a challenge to the sufficiency of the evidence, the Court "weighs the evidence and evaluates the witnesses' credibility and decides whether a 'serious miscarriage of justice may have occurred.'" *United States v. Dale*, 991 F.2d 819, 838 (D.C. Cir. 1993) (internal citations omitted).

Accordingly, to be entitled to a new trial, Defendant bears the high burden of demonstrating that "(1) there was substantial error and (2) the error affected the defendant's substantial rights." *United States v. Williamson*, 81 F. Supp. 3d 85, 89 (D.D.C. 2015); *see also United States v. Mangieri*, 694 F.2d 1270, 1285 (D.C. Cir. 1982) (noting the defendant bears the burden of proving a new trial is warranted). In making this showing, Defendant must "overcome a strong presumption . . . in favor of upholding the jury verdict." *United States v. Rogers*, 918 F.2d at 213 (citations and internal quotation marks omitted). Defendant cannot meet his high burden in this case.

## ARGUMENT

Defendant seeks a new trial on the grounds that "the Government improperly argued that [Defendant] obstructed a grand jury proceeding *different* from the proceeding charged in the Indictment," and "the weight of the evidence overwhelmingly supports an acquittal on Count Two." Def's Mot. at 17, 19 (capitalization modified; emphasis in original). Neither assertion is correct, and Defendant has failed to meet his burden under Rule 33. Accordingly, his Motion fails.

### A. There Is No Defect in the Evidence or Jury Instructions as to the Official Proceeding Charged in Count Two.

Defendant's first argument for a new trial is that "[a] serious miscarriage of justice would occur if this Court permitted [Defendant] to be convicted on Count Two of the Indictment because he had no idea, notice, or discovery supporting the Government's conflicting theories as to what grand jury he was allegedly obstructing and for what purpose." Def.'s Mot. at 4. According to Defendant, it is an "enormous hole" in the Government's case that Defendant was indicted by a grand jury sworn in on August 11, 2021, rather than a grand jury sworn in on January 8, 2021. *Id.* at 3. The Government has addressed this argument in connection with its opposition to Defendant's motion for judgment of acquittal and incorporates that discussion by reference here. *See* Government's Response in Opposition to Defendant's Motion for Judgment of Acquittal, ECF No. 85, at 17, 19. Moreover, as set forth below, Defendant's argument rests on an inaccurate reading of the obstruction statute, and he provides no reason to conclude that the jury's verdict, which was based upon accurate and clear legal instructions, presents any danger of a serious miscarriage of justice.

Put simply, there were no "conflicting theories" as to the grand jury proceeding charged in Count Two. During trial, the jury was instructed that the official proceeding Defendant was charged with obstructing was "a federal grand jury proceeding resulting from the January 6 breach

8

of the U.S. Capitol." Final Jury Instructions, ECF No. 81, at 24. The Government's evidence at trial established that at the time Defendant committed the crime charged in Count Two, he knew the following: that the rioter had already been charged with federal offenses and was being further investigated by the FBI for his conduct on January 6, 2021; that a massive federal investigation was underway; and that felonies were being charged. The evidence also showed that, as of the date of the offense charged in Count Two, a federal grand jury was, in fact, investigating crimes related to the riot. Based on that and other trial evidence, and consistent with the Court's jury instructions, the Government argued that the grand jury proceeding resulting from the January 6 breach of the U.S. Capitol was foreseeable to Defendant and that he deleted Facebook messages on January 20, 2021, to impair their availability for use in that proceeding.

Defendant now contends that the evidence as to the official proceeding was insufficient to support the verdict, or alternatively, that the Government's arguments relating to the official proceeding were improper. Def.'s Mot. at 19. In support of his argument, Defendant cites the precept that Defendant "must have intended to obstruct a specific grand jury." *Id.* In Defendant's professed view, forming such intent requires knowing the swearing-in date of the grand jury that ultimately indicted him. Def.'s Mot. at 5–6.

Yet, the statute, § 1512(c)(1), does not require such fortune-telling. To the contrary, the crime charged in Count Two was completed on January 20, 2021, when Defendant deleted the Facebook messages. Under the statute, what matters is that, at the time he deleted the messages, Defendant foresaw a "grand jury proceeding resulting from the January 6 breach of the U.S. Capitol." ECF No. 81 at 24. The evidence at trial amply proved that Defendant foresaw just such a proceeding. The Government was not required to prove technical details regarding dates of empanelment of the various grand juries that were later called into service in this massive and

ongoing criminal investigation, much less to prove the specific focus of those later grand juries. These are details that no one, including Defendant, could have known at the time he committed the offense.

According to Defendant, a new trial is merited because the Government was required to establish at trial various facts about the "the purpose and scope of the charged grand jury, such as whether it was: (i) empaneled solely in anticipation of the large volume of cases in the District resulting from the U.S. Capitol attack on January 6, 2021, with no guidance on what, if any, matters or charges the grand jury would investigate or charge upon empanelment; (ii) convened specifically for offenses committed on January 6, 2021 and no other offenses; or (iii) focused on individuals who committed traditional felony offenses, including assaults, threats, and destruction or theft of property, relating to the U.S. Capitol attack, as well as anyone who paraded and demonstrated in and near the U.S. Capitol, who aided and abetted such conduct, or who obstructed the grand jury's investigation of such conduct." Def.'s Mot. at 5. He is incorrect. The grand jury proceeding Defendant is charged with obstructing is one "resulting from the January 6 breach of the U.S. Capitol." ECF No. 81, at 24. More than sufficient evidence pertaining to the official proceeding charged in Count Two was established at trial, and the jury was properly instructed as to the official proceeding at issue. There is nothing in the statute or case law to support Defendant's argument that the Court should now import a new list of elements into the offense.

In arguing that the Government's proof on Count Two was defective, Defendant suggests that the jury should have been instructed that it had to find that Defendant was in fact indicted by the grand jury that was empaneled on January 8, 2021. Again, the statute requires no such thing, and he offers no support for the idea that a defendant must be indicted by the initial grand jury whose investigation he obstructed. Indeed, a defendant may be indicted long after the expiration

of an initial grand jury whose investigation he obstructed. *Cf. In re Sealed Case*, 223 F.3d 775, 778 (D.C. Cir. 2000) (identifying "no prejudice arising from enforcement of a subpoena where the originally issuing grand jury has expired and another has indisputably carried the investigation forward"). Defendant similarly impugns the jury instructions when he asserts that the Government proved only that Defendant "obstructed an investigation and not a grand jury proceeding." Def.'s Mot. at 11–12.[4] Yet, the jury instructions in this case made clear the nature of the official proceeding foreseen by Defendant and that guilt could not be found based on obstruction of an FBI investigation alone. ECF No. 81 at 24–25. The statute requires nothing different.

In sum, there was more than sufficient evidence for the jury to find—as it did here—that Defendant obstructed justice as charged in Count Two. Accordingly, Defendant's Motion should be denied because the neither the Government's evidence nor the Court's instructions were defective regarding the official proceeding at issue in Count Two.

## B. The Evidence Does Not Preponderate Heavily Against a Guilty Verdict on Count Two.

Defendant's second argument for a new trial is that "[p]ermitting a conviction on Count Two would be a miscarriage of justice because the evidence in the record confirmed that Officer Riley never intended to obstruct a grand jury proceeding, particularly the grand jury proceeding resulting from the January 6 breach of the U.S. Capitol, and never knew or could have imagined that his actions would have affected a grand jury proceeding." Def.'s Mot. 22. In making this claim, Defendant relies upon precisely the same arguments made in connection with his pending motion for judgment of acquittal. *Compare* ECF No. 82 at, *inter alia*, 12–13, *with* Def.'s Mot. at

---

[4] As he has done throughout the pendency of this case, Defendant attempts to draw a false distinction between "grand jury proceedings" and "investigations." As Defendant well knows, grand juries conduct investigations and grand jury proceedings are a part of large federal investigations.

19–22 (repeating much of the same language, including the same list of eleven factual assertions purportedly negating the verdict in this case).

The Government has already responded to those arguments in its opposition to that motion and incorporates that discussion by reference here for purposes of efficiency. *See* ECF No. 85, at 8–19. However, the Government notes that Defendant's laundry list of claims remain as unpersuasive here as they were both in his prior motion and with the jury. For example, item four on Defendant's list contends that the "evidence in the record overwhelmingly supports an acquittal on Count Two because" there was "no request or instruction by Officer Riley to Hiles advocating the destruction or removal of any evidence relevant to Hiles's arrest or prosecution following Officer Riley's initial direct message." Def.'s Mot. at 21–22. While the Government agrees with Defendant's apparent concession that he advocated the destruction or removal of evidence in his initial January 7 message to the rioter, Defendant's purported failure to issue any subsequent destruction or removal request or instruction to the rioter is irrelevant to the instant Motion, as Count Two pertains to actions Defendant took, not actions he encouraged the rioter to take.

As to actions Defendant took, the evidence at trial established that on January 20, 2021, the rioter messaged Defendant "The fbi was very curious that I had been speaking to you if they havent already asked you about me they are gonna. They took my phone and downloaded everything." Gov't Ex. 202a. Defendant responded "That's fine," then deleted his hundreds of private messages with the rioter. *Id.*  The following day, Defendant sent the rioter the following cover story message: "Hey Jake, another mutual friend was talking about you last night. I tried to defend you but then he showed me a video of you in the Capitol smoking weed and acting like a moron.  I have to say, I was shocked and dumbfounded, since your story of getting pushed in the building with no other choice now seems not only false but is a complete lie. I feel like a moron

for believing you. I originally reached out to you as someone who looked up to you in the fishing arena and because I have seen your numerous posts about being a single dad and how much you cared for your daughter. I was so mad last night I deleted all your post, but I wanted to text you this morning and let you know that I will no longer be conversing with you." *Id.*, 304a. When a search warrant was executed on Defendant's Facebook account, this was the only private message from Defendant to the rioter that was found in Defendant's account. Gov't Ex. 304a. As noted above, this was just some of the evidence that the jury was able to consider in correctly reaching its verdict as to Count Two.

Under Rule 33, for a new trial to be granted, "the evidence must preponderate heavily against the verdict." *Howard*, 245 F. Supp. 2d at 30. As discussed in connection with the pending motion for judgment of acquittal, Defendant's arguments rely upon convoluted interpretations or misstatements of the evidence. Moreover, Defendant suggests that his trial testimony should be credited over contrary evidence, such as contemporaneous written messages indicating his intent at the time he committed the offenses. Def.'s Mot. at 19–22. Credibility determinations are for the jury to make, not for the Defendant, and the jury spoke clearly on that subject with its verdict.

Finally, Defendant contends that the evidence in the record confirmed that he never intended to obstruct a grand jury proceeding, and "never knew or imagined that his actions would do so." Def.'s Mot. at 22. In fact, the evidence at trial established quite the opposite: Defendant was a United States Capitol Police officer with more than 25 years of criminal law enforcement experience; he knew that a massive federal investigation into January 6 was underway; and he knew that the FBI was interested to learn that a USCP officer had been talking with a rioter. All of those facts were proven at trial, and they amply support the jury's verdict on Count Two. The jury's verdict should not be set aside.

13

## **CONCLUSION**

Defendant's Motion provides no basis to disturb the jury's verdict and order a new trial. Accordingly, the Government respectfully requests that the Court deny Defendant's Motion without a hearing and allow this case to proceed to sentencing.

Respectfully submitted,
MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

*/s/ Mary L. Dohrmann*
MARY L. DOHRMANN
Assistant United States Attorney
NY Bar No. 5443874
601 D Street N.W.
Washington, DC 20530
Mary.Dohrmann@usdoj.gov
(202) 252-7035

*/s/ Anne P. McNamara*
ANNE P. MCNAMARA
Assistant United States Attorney
DC Bar No. 1006550
601 D Street N.W.
Washington, DC 20530
Anne.McNamara2@usdoj.gov
(202) 809-3502