**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | No. 21-cr-628-ABJ |
| | : | |
| v. | : | |
| | : | |
| MICHAEL ANGELO RILEY, | : | |
| | : | |
| *Defendant.* | : | |
| | : | |

---

**DEFENDANT'S RESPONSE TO THE**
**GOVERNMENT'S SENTENCING MEMORANDUM**

The trial of this matter — the actual trial and the trial of Officer Riley in the court of public opinion — is over. The parties' focus should be on the upcoming sentencing, not on what the Government hoped the evidence would be or the verdict that it thought the jury should return. Consistent with federal law and the voluntary United States Sentencing Guidelines, the relevant inquiry is what constitutes an appropriate sentence for Officer Riley that is sufficient, but not greater than necessary, for the offense of conviction — the deletion of Officer Riley's own Facebook direct messages on January 20, 2021. After a thorough investigation into the offense conduct and a review of the history and characteristics of Officer Riley, and after hearing from both parties, United States Probation has recommended a sentence of 12 months of probation.

The Government strenuously objects to all of this — the applicable sentencing guidelines, the sentencing recommendation, and any notion that Officer Riley should be sentenced any differently from any January 6 case or defendant, even though this is *not* a

January 6 prosecution. Even if it was, although nearly two hundred January 6 "rioters" received *no incarceration*, including Jacob Hiles, the Government asks this Court to sentence Officer Riley to *more than two years of incarceration* in a federal prison. Indeed, in its brief discussion of the need for deterrence, the Government urges this Court to sentence Officer Riley to incarceration to "convey[] to *future rioters or would-be mob participants* that their actions will have consequences." D.E. 103 at 18 (emphasis added). Still, to this day, the Government cannot bring itself to acknowledge that Officer Riley defended the U.S. Capitol on January 6 from explosives and responded to a downed officer, and continued to serve the U.S. Capitol until his arrest nine months later.

And, while United States Probation in its recommendation relied thoroughly and sincerely on Officer Riley's current and serious medical condition and his exemplary life of public service, including saving multiple lives, the Government does not even bother to acknowledge either, as if it those facts simply do not matter. The Government's disregard for all but what occurred between January 7 through January 20, 2021 makes clear that if the Government could ask for more incarceration, it would.[1]

Unlike the Government, this Court's compass at sentencing is 18 U.S.C. § 3553. Here, the details of Officer Riley's life outside of the period when he was communicating with Mr. Hiles — details the Government sought fervently to exclude from trial — not only matter and have value, but also are exactly what this Court should be evaluating when determining

---

[1] The Government has confirmed that it will not seek a sentence above the Guidelines as determined by the Court at sentencing. Though undersigned counsel inquired, the Government has given no indication that it sought approval for an upward variance or departure of the Guidelines range at sentencing from the United States Attorney's Office's Departure Committee, which would authorize such a request, nor should it have for this case.

whether to impose a sentence of incarceration. No matter how outraged the prosecutors are that Officer Riley reached out to Hiles or shared similar "political beliefs" with him (D.E. 103 at 18), this Court does not punish opinions or views, it punishes criminal conduct. Officer Riley should be sentenced only as to what he did and what the jury convicted him of in this case, and nothing more.

To that end, it is unclear what purpose the Government's sentencing memorandum serves at this stage. It clearly does not discuss the specific facts of this case, the offense of conviction, or the evidence as it was presented at trial. It is not a meaningful evaluation of the sentencing factors as they apply to the history and characteristics of Officer Riley, who has lived an exemplary life before and after January 20, 2021, the date of the offense of conviction. It is not a useful explanation of a split verdict by a jury. Nor does it provide any helpful examination of a conviction based *solely* on the deletion of personal Facebook direct messages, not to purportedly obstruct an investigation into the January 6 breach of the U.S. Capitol (the Government's original theory of the case) but instead to purportedly obstruct an investigation into Officer Riley *himself*, for a single message that was alleged to have been obstructive, but which the jury could not find was either obstructive or criminal in its deliberations on Count One.

Rather than focus on the relevant considerations governing federal sentencing, the Government injects completely irrelevant comments into its sentencing memorandum, such as its speculation as to the vote count on the hung charge and a citation to the PSR noting the value of Officer Riley's boat.[2] The Government also relies on the facts of January 6 and the

---

[2] Even if the value of the boat were relevant here, which it clearly is not, the Government omits the fact that Officer Riley worked part-time for years at the boat company to be able to obtain

actions of the "rioters" as the basis for why Officer Riley should receive a two-year plus period of incarceration, when it knows full well that Officer Riley did not participate in the attack on January 6, or conspire with or aid anyone during the attack of the Capitol. Still to this day, the Government cannot bring itself to acknowledge that Officer Riley defended the Capitol on January 6 and continued to do so until his arrest months later.[3] The Government cannot change the fact that despite investigating Officer Riley for nine months, this case concerns, as alleged in the Indictment, a single message regarding a partial public Facebook post and the deletion of Officer Riley's own Facebook direct messages.

The opening to the Government's sentencing memorandum gives the public the impression that Jacob Hiles was an armed mercenary who violently attacked the Capitol, and that Officer Riley tried to protect him from being brought to justice. That is not this case and never was this case. This matter has always been about Officer Riley telling Hiles to take down a part of a public Facebook post and then cutting all ties with Hiles days later, which included deleting prior Facebook direct messages they had exchanged. The Government's attempt to equate Officer Riley's statement to Hiles, who claimed to have been pushed into the Capitol and then left immediately, with approval of the violent conduct on January 6, is completely inappropriate and serves no legitimate purpose at sentencing. Officer Riley's Facebook

_____

the boat, and still makes routine monthly payments on it.

[3] Prior to trial, the Government tried to exclude evidence of Officer Riley's actions on January 6, his history as a law enforcement officer, and every action he took after January 6 in his role as a Capitol Police officer. The Government also claimed initially it had no video of Officer Riley on January 6. When viewing video at the FBI Field Office, however, Officer Riley and undersigned counsel identified him, clear as day, setting up a command center and briefing the bomb squad. This was separate and apart from the video that undersigned counsel requested from the Government showing him responding to a downed officer in the Senate subway area.

messages and his statements at trial described the terrible and horrible actions committed on January 6, including the assaults against officers, which nobody in this case condones.

As the Government knows full well, Officer Riley had no intent to cause any harm to this country on January 6, 2021, and took no adverse action against this country on that day. Rather, his actions on January 6, 2021 were in protection of this country, as they had been throughout his 25 years of public service. And while the Government unsuccessfully attempted to exclude every piece of video and testimony pertaining to Officer Riley's actions on January 6, 2021, it was clear that Officer Riley served honorably that day, as confirmed by the numerous letters submitted on his behalf and the commendations he received for his actions on that day. In summary, he responded to pipe bombs, set up a command center on site, ran his K-9 around various locations surrounding the Capitol and subsequently at the Capitol later that evening when order had been restored. Officer Riley also left his post and raced to the Senate side of Capitol Hill to attempt to provide aid to a downed officer. Actions inconsistent with the man described in the Government's sentencing memorandum.

The Government also needlessly describes Jacob Hiles as "wearing protective goggles and a Kevlar vest," a transparent effort to create the specter that Officer Riley was colluding with an armed insurrectionist. In reality, Hiles was charged with misdemeanor trespassing before the Government even heard the name Michael Riley.[4] Subsequently, the Government

---

[4] As reflected in law enforcement notes, less than two weeks after January 6, 2021, Jacob Hiles told the FBI that he had been talking with a Capitol Police officer who reached out to him on January 7, 2021. The FBI apparently did not feel this was noteworthy and omitted it from the FBI-302 report of the interview of Hiles. The case against Officer Riley did not begin until the United States Attorney's Office asked the FBI to open an investigation of Officer Riley, after reading his messages when probing the cellphones of Hiles and other misdemeanor defendants.

sponsored Hiles as a witness in the grand jury; permitted him a plead to a petit misdemeanor offense with a maximum period of incarceration of six months; and allocuted for a sentence of probation, which he received, and is now set to complete in approximately 45 days, as this Court appropriately granted his motion in part to terminate his probation early. If called as a witness at trial, Hiles would have testified that:[5]

- At no time did Officer Riley give him any instructions on destroying evidence, such as getting rid of his phone, discarding the clothes he wore on January 6, 2021, or deleting his Facebook account, nor did Officer Riley tell him to lie to anyone regarding his conduct, or to not cooperate with law enforcement, or any other such similar conduct;

- At no time did he or Officer Riley ever discuss a grand jury proceeding;

- Officer Riley did not discuss with him that a law enforcement officer was aware of him and had reported him;

- He did not believe Officer Riley was trying to take actions to prevent him from getting arrested; according to him, he knew his "goose was cooked," with the various cameras inside the U.S. Capitol and his various posts on Facebook, which were viewed by the thousand friends he had on Facebook. He did not believe that Officer Riley was leading him out of getting into trouble, rather, he  would testify that he interpreted Officer Riley's direct message to take down the portion of his Facebook post about being inside the U.S. Capitol as guidance to "not to make things worse for him;" and

- He believed that he would only be subjected to prosecution for trespassing, as he did not assault or threaten anyone, or steal or destroy any property inside the U.S. Capitol (which is corroborated by his text messages). He knew what he did and knew that he would one day have to face the consequences. He did not subjectively believe he would be charged with any felony offense or indicted by a grand jury and when arrested, he accepted responsibility for his conduct.

Moreover, even though Jacob Hiles was emphatic that he never spoke to Officer Riley prior to January 6, and did not change his answer in response to multiple follow up inquiries

---

[5] Because the trial in this case is over, there is no reason to protect the defense's litigation strategy from pretrial disclosure as the Government requested and, accordingly, for that purpose and for adequate appellate review, if necessary, the defense files publicly, as Exhibit 1, its previously submitted *ex-parte*, *in camera* submission on this issue.

by the Government, the Government still chose to investigate Officer Riley all the way back to before the 2020 presidential election, based on its assumption that Officer Riley had conspired with Hiles relating to January 6 because of shared "political beliefs." When that was debunked, the Government sent two FBI agents to Officer Riley's house to "conduct a surreptitiously recorded interview," in the hope that he would either deny knowing Hiles or deny having reached out to him, neither of which occurred. When trial came around, the Government sought to exclude any reference to the FBI's "surreptitiously recorded interview" of Officer Riley, and never confronted Officer Riley with the interview transcript. Now, at sentencing, the Government wants to use Officer Riley's statements on August 31, 2021 as to his recollection of communications with Jacob Hiles from seven months earlier, as purported evidence that he perjured himself at trial, after Officer Riley was able to review all his prior communications with Jacob Hiles. The transcript does nothing more than confirm Officer Riley's continued acknowledgement that he reached out to Hiles, which he admitted to multiple law enforcement officers and a civilian, and his belief that he did not think it was smart for Hiles to be talking on Facebook. That transcript also highlights Officer Riley's utter shock as to how he could be investigated for obstruction, where no one, not Officer Riley, Hiles, fellow law enforcement officers, or his civilian friend, discussed or contemplated a grand jury proceeding. The FBI agents' inability to clarify that point furthers Officer Riley's disbelief that he, not Hiles, was the subject of the investigation —similar to the reaction of the Government's only other trial witness, who thought he was testifying before the grand jury in an investigation of Jacob Hiles, only to see Mr. Hiles outside the courthouse as a witness *against Officer Riley*.

During this case, the Government posited several other unsupported theories about Officer Riley. Initially, the Government wanted to argue that he called in sick after January 6 because he did not want to deal with the aftermath of conservatives having attacked the Capitol. The Government abandoned that unsupported claim when Officer Riley produced evidence of a Covid notification and that he had followed Capitol Police protocol of not returning to work until he obtained a negative test, which he immediately did. At trial, the Government's FBI case agent Stephen Hart suggested that it was Officer Riley who discovered the pipe bombs. As the FBI knew from its investigation, a security officer at the location reported the explosives and Officer Riley was the first officer to make contact with that security officer on scene (upon dispatch) to obtain a picture of the device and to transmit it to the command structure and bomb squad. Without surprise, social media bloggers have raised the unfounded notion that Officer Riley planted the explosive device, akin to the "trial by media" of Richard Jewel.

In the end, the crux of the Government's sentencing memorandum is that Officer Riley is a liar and committed perjury. Why — apparently because he refuses to say he obstructed a grand jury proceeding, when Hiles had already been arrested on misdemeanor charges, Officer Riley knew the FBI had the contents of Hiles' phone and his communications, and his Facebook posts were publicly available to everyone. To further conceal his purported obstruction from a grand jury, Officer Riley apparently decided to tell Hiles that he was deleting his messages when he knew Hiles was speaking with the FBI, and to show his union representative the message stating that he was deleting his communications with Hiles. As argued in the defense's opening and confirmed by Officer Riley's testimony at trial, Officer Riley sent Hiles a message to make clear to Hiles that he wanted no further contact with him and why. Officer Riley knew then what he knows now — that he would have to answer

questions about his relationship with Hiles and whether he knew Hiles prior to January 6, and/or knew that he was coming to the Capitol, which he clearly did not. He never met Hiles and communicated with him for less than two weeks, but if anyone ever asked, Officer Riley had a clear record, that he ended his relationship with him on Facebook on January 20, 2021, deleted his communications with him, and confirmed as such, by maintaining his last message to Hiles that identified his deletion of their prior messages.

The Government's sentencing memorandum also takes several extraordinary positions unsupported by the factual record or the law, all in the hope that this Court will sentence Officer Riley to years in prison.

*First*, contrary to its assertion otherwise, sentencing Officer Riley to incarceration, when nearly two-hundred January 6 rioters were sentenced to non-incarceration sentences, *creates* unwarranted sentencing disparities, which the statutory factors strongly prohibit.[6]

*Second*, the Government wants to import an automatic enhancement every time it prosecutes a police officer, by claiming that any conduct, even deleting one's own Facebook messages uses one's status as a police officer to "facilitate the offense." That argument is not

---

[6] In the same discussion, the Government cites to *United States v. Levinson*, 543 F.3d 190, 201 (3d Cir. 2008) for the proposition that "[i]mposing a probationary sentence . . . runs the risk of creating sentencing disparities with other kinds of crimes based on socio-economic status." *Levinson* involved a defendant who pleaded guilty to wire fraud and filing a false income tax return. 543 F.3d at 191. In that context, the Third Circuit noted that "[t]he Sentencing Commission recommended terms of imprisonment for economic crimes like [the defendant's] because of its concern that sentencing for white-collar crime had been ineffectual," and that "probationary sentences for white-collar crime raise concerns of sentencing disparities according to socio-economic class." *Id.* at 201. This is not a tax evasion or economic crime case. Moreover, the case is inapposite here, where a sentence of incarceration would raise concerns of sentencing disparities, as so many January 6 "rioters" have received probationary sentences and rather than being a January 6 rioter, Officer Riley defended the Capitol on January 6, regardless of whether the Government is willing to acknowledge that fact or not.

supported in fact or law and was appropriately rejected by United States Probation. At trial, the jury convicted Officer Riley only on Count Two, for the deletion of his own Facebook messages, which occurred outside of his capacity as a police officer. The deletion of Facebook messages or Posts also does not require any special skills or training, and occurs daily amongst thousands of Facebook users who terminate communications or connections with other users. The Government fails to explain how using Facebook while at home constitutes an abuse by Officer Riley of his "position of public trust," or use of "a special skill," "in a manner that significantly facilitates the commission or concealment of the offense." *See* United States Sentencing Guidelines ("USSG") § 3B1.3.

*Third*, the Government continually states that the Court "noted" when claiming that Officer Riley "perjured" himself, thereby alluding to some findings by this Court on that issue. The Government's reliance on this Court's interpretation of the facts in the light most favorable to the Government at the motion for judgment of acquittal stage, including, what a juror could reasonably infer in the light most favorable to the Government, is not findings of fact, especially, on the issue of perjury, which did not occur in this case. The Government also attempts to rests its perjury claim on the allegation that Officer Riley lied to his friends because he had not "reached out to Hiles to 'see what his deal was.'" For the Government, it is apparently impossible for an individual to believe it was not smart for someone to be posting on Facebook, while at the same time seeing what the individual was about and learning about fishing from him, when it was undisputed that Officer Riley had never met Jacob Hiles or talked to him prior to January 7, 2021.

Officer Riley regretted his decision to message Hiles and expected that people would ask whether he knew Hiles was coming to the Capitol before January 6. He was embarrassed

about reaching out to Hiles, wanted civilian and law enforcement colleagues to hear from him first that he had spoken to Hiles, and recognized that he should not have done it in the first place. While he came to anticipate administrative disciplinary action, his interview with law enforcement confirmed he had no notion that he had allegedly obstructed a grand jury proceeding, and never intended to affect any grand jury process as to him or anyone else. For this serious lapse in judgment, he is now a convicted felon. Apparently, the loss of his honorable career, national headlines of his prosecution, the loss of his health, and the restrictions that accompany a felony conviction are not enough for the prosecutors, because they want him to serve years in a federal prison. It is because this case is not about Michael Riley the person, rather, it is the fact that he was a police officer and the Government tells us so, in the FBI's interview of him at his residence and in its sentencing memorandum. While appearing nowhere in the statutory factors of 18 U.S.C. § 3553, the Government claims that "[o]f upmost importance, this Court should send the message that law enforcement officers cannot be allowed to let their *personal political beliefs* drive their behavior." D.E. 103 at 18 (emphasis added). The Government's sentencing recommendation in this case is unjustified, unnecessary, and completely inconsistent with the statutory sentencing factors, the history and circumstances of Officer Riley, and how other non-violent, non-dangerous, first-time offenders are sentenced in this Court, this city, and this country. This Court should send the message that the prosecutors' personal beliefs should not drive their sentencing recommendation in this case.

United States Probation looked at this case for what it was, and for what it was not, evaluated Michael Riley not as to his political views or the fact that he was a police officer,

but that of a human person, with a lifetime of service and a serious medical condition, and concluded that twelve months of probation was a just sentence in this case.

Michael Riley respectfully asks this Court to follow that sentencing recommendation.

Dated: April 11, 2023                         Respectfully submitted,

**SILVERMAN|THOMPSON|SLUTKIN|WHITE, LLC**

    /s/ Christopher Macchiaroli
Christopher Macchiaroli (D.C. Bar No. 491825)
1750 K Street, NW, Suite 810
Washington, D.C. 20006
Telephone: (202) 539-2444
Facsimile:  (410) 547-2432
Email: cmacchiaroli@silvermanthompson.com

Emma J. Mulford (Bar No. MD0146)
400 East Pratt Street, Suite 900
Baltimore, MD 21202
Telephone: (410) 385-6249
Facsimile: (410) 547-2432
Email: emulford@silvermanthompson.com

*Counsel for Defendant Michael Riley*